Albert P. Barker, ISB #2867
**BARKER ROSHOLT & SIMPSON LLP**
1010 W. Jefferson, Suite 102
P.O. Box 2139
Boise, ID 83701-2139
Telephone: (208) 336-0700
Facsimile: (208) 344-6034
E-mail: apb@idahowaters.com

William L. Greene
**LEONARD, STREET AND DEINARD**
150 S. Fifth Street, Suite 2300
Minneapolis, MN 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657
Email: william.greene@leonard.com

*Attorneys for Defendant R.D. Offutt Company*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE: FRESH AND PROCESS POTATOES ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. 4:10-MD-02186-BLW<br><br>**DEFENDANT R.D. OFFUTT CO.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

Defendant R.D. Offutt Co. ("R.D. Offutt") respectfully submits this Reply Memorandum in Support of Motion to Dismiss, which responds to the arguments made by Direct Purchaser Plaintiff Brigiotta's Farmland Produce and Garden Center, Inc. (*see* Doc. 110) and joined by Indirect Purchaser Plaintiffs (collectively, "Plaintiffs") (*see* Doc. 114).

In its opening brief, R.D. Offutt demonstrated that the First Amended Class Action Complaints filed on behalf of the direct and indirect purchaser plaintiffs ("Complaints") do not plausibly allege that R.D. Offutt conspired with anyone to reduce the supply of potatoes. Specifically, R.D. Offutt demonstrated:

- This lawsuit focuses on the activities of a group of Idaho-based potato growers, who openly sought to manage the supply of potatoes through Capper-Volstead-protected agricultural cooperatives;

- R.D. Offutt is not alleged to have joined any such cooperative;

- R.D. Offutt is not alleged to have participated in *any* of the cooperatives' supply-reducing activities or programs; and

- R.D. Offutt's decision, as an owner of dehydration plants needing potatoes, to form a joint venture that would purchase potatoes from certain potato growers does not suggest R.D. Offutt agreed to reduce the supply of potatoes.

Apparently recognizing the deficiencies of their allegations against R.D. Offutt, Plaintiffs resort to several tactics in an effort to defeat R.D. Offutt's motion to dismiss. First, Plaintiffs misrepresent R.D. Offutt's legal argument. R.D. Offutt does not, as Plaintiffs contend, demand that a complaint contain "intricate details" as to each defendant's involvement in the alleged conspiracy. Instead, R.D. Offutt's motion relies on the same standard of review that Plaintiffs themselves espouse: to state a claim against each defendant, a complaint must plausibly allege

that each defendant joined the conspiracy. Nor does R.D. Offutt claim that a defendant can be liable under the antitrust laws only if it joined an illegal conspiracy from the inception. Plaintiffs' attempt to attribute such a position to R.D. Offutt is baseless.

Second, Plaintiffs mischaracterize their own allegations. Contrary to Plaintiffs' assertions in their opposition brief, the Complaints do *not* allege that Idahoan Foods – the limited liability company formed by R. D. Offutt and United II Potato Growers of Idaho, Inc. ("United II") – "disposed" of potatoes or did anything with the potatoes it purchased other than use them to make dehydrated potato products. (*See* Pls.' Mem. in Opp. to Mots. to Dismiss, hereinafter "Pls.' Mem.," Doc. 110, at 33.)

Finally, Plaintiffs invoke principles of joint venture and partnership liability, even though Idahoan Foods was formed as a limited liability company under Delaware law (a fact pled in the Complaints but ignored in Plaintiffs' opposition brief). Any suggestion that common law theories of vicarious liability apply to members of a limited liability company is plainly without merit.

Once these diversions are set aside, it appears Plaintiffs' sole basis for suing R.D. Offutt is the fact that R.D. Offutt, as the owner of potato dehydration plants, did business with United II, a cooperative of potato growers made up of United Potato Growers of Idaho, Inc. ("UPGI") members. But, as Plaintiffs acknowledge, the Complaints do not allege that the formation or operation of Idahoan Foods had any impact on "market competition." (*See* Pls.' Mem. at 29.) Nor do the Complaints allege that R.D. Offutt engaged in any conduct that would be inconsistent with the independent self-interest of any owner of dehydration plants looking to acquire potatoes for processing. All the Complaints allege is that UPGI's president made several public statements about *UPGI*'s subjective views on how a dehydration venture would advance the

cooperative's goals.  Consequently, the Complaints contain no factual allegations regarding R.D. Offutt's involvement in Idahoan Foods that even remotely suggest R.D. Offutt had a "conscious commitment to a common scheme" to reduce or limit the supply of potatoes.

I.  **Under the Legal Standard Confirmed by Plaintiffs, in the Absence of Factual Allegations that a Defendant Joined the Alleged Conspiracy, the Claims Against the Defendant Must Be Dismissed**

In their memorandum, Plaintiffs suggest that each of the Defendants moving to dismiss "relies on the false premise that [Plaintiffs are] legally obligated to plead intricate details regarding the involvement of each named Defendant." (Pls.' Mem. at 16.)  That is plainly not what R.D. Offutt argued in its opening brief.  Instead, R.D. Offutt asserted the uncontroversial proposition that, to state a claim against each defendant in a conspiracy-based lawsuit, a complaint must include allegations that plausibly suggest each defendant joined the alleged conspiracy.  This is the exact formulation of the standard of review espoused by Plaintiffs in their opposition brief.  (*See* Pls.' Mem. at 17 n.14 (quoting *Hinds County v. Wachovia Bank N.A.*, 620 F.Supp. 2d 499, 513 (S.D.N.Y. 2009), for proposition that plaintiffs must plausibly allege each defendant participated in conspiracy); *accord* R.D. Offutt Mem., Doc. 72-1, at 5-6 (citing *Hinds*, among other cases, for same proposition).)

Plaintiffs further mischaracterize R.D. Offutt's legal argument by attributing to R.D. Offutt the position that, because R.D. Offutt declined to join the cooperatives in 2004, R.D. Offutt was "unable" to join the alleged conspiracy "at a later date." (Pls.' Mem. at 30.)  But R.D. Offutt does not ask the Court to ignore case law regarding the liability of late-joining conspirators.  Instead, R.D. Offutt's motion relies on the settled principle that, in order to state a claim that a defendant joined a conspiracy, "at a later date" or otherwise, a complaint must allege *facts plausibly suggesting* that the defendant did, in fact, join the alleged conspiracy.  As set forth

below and in the opening brief, the absence of the requisite factual allegations suggesting that R.D. Offutt joined the alleged conspiracy *at any time* compels the dismissal of the Complaints as to R.D. Offutt.

## II. Plaintiffs Have Not Plausibly Alleged that R.D. Offutt Joined or Participated in the Alleged Conspiracy

### A. Plaintiffs Do Not Contend that R.D. Offutt Joined a Cooperative or Agreed to Any of the Supply Management Initiatives Recommended by the Cooperatives

In its opening brief, R.D. Offutt pointed out that, in contrast to the allegations made against the cooperative defendants, Plaintiffs do not allege that R.D. Offutt "joined a cooperative, observed 'shipping holidays,' participated in 'flow control' efforts, reduced its acreage of potatoes, implemented price floors, destroyed its crops, or engaged in any of the supply management activities allegedly initiated by the cooperatives." (R.D. Offutt Mem. at 4.) In the portion of Plaintiffs "Legal Argument" addressed to R.D. Offutt, Plaintiffs do not dispute R.D. Offutt's assertion. (*See* Pls.' Mem. at 30-32.) Plaintiffs also confirm that they do not claim R.D. Offutt joined the conspiracy by virtue of attending a single UPGI meeting. (*Id.* at 31 n.28.)

There is an isolated error in a section of Plaintiffs' brief that purports to summarize Paragraph 173 of the Direct Purchaser Complaint. Paragraph 173, which discusses a November 3, 2004 meeting, differentiates R.D. Offutt from other growers that allegedly agreed to a supply agreement "on the spot" and agreed to pay annual dues based on acreage. Importantly, the sentence referring to R.D. Offutt does *not* include those allegations. Instead the sentence referring to R.D. Offutt contains conclusory allegations which, as explained in R.D. Offutt's opening brief (*see* R.D. Offutt Mem. at 7-8), are legally insufficient to state a claim:

> Many farmers signed on to the supply agreement on the spot agreeing to pay annual dues ranging from about $10,000 to $500,000 depending on how much acreage each farmer utilized for growing potatoes. Defendant R.D. Offutt Co., one of the world's largest

> potato growers, sent a representative to this meeting and the company subsequently agreed to the price-fixing scheme alleged herein, as well, and participated in a joint venture to further aid the potato supply reduction efforts.

(DP Compl., Doc. 39, at ¶ 173.)  The fact section of Plaintiffs' brief erroneously states that the reference to other farmers in the first of the above-quoted sentences includes R.D. Offutt, even though it clearly does not.[1]  (*See* Pls.' Mem. at 7.)  This error may have been inadvertent, as the argument section of Plaintiffs' brief does not rely on the erroneous summary of paragraph 173.  (*See id.* at 30-32.)  In any event, a motion to dismiss is evaluated based on the facts as alleged in the complaint, and mischaracterizations of the complaint or other allegations introduced in a brief have no bearing on the motion.  *See Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 173 (D.D.C. 2004) ("Plaintiffs cannot reinforce their complaint by creatively recasting and embellishing the allegations of their complaint in their opposition brief.").

> **B.  The Allegations Regarding R.D. Offutt's Contribution of Dehydration Plants to Idahoan Do Not Plausibly Suggest that R.D. Offutt Joined or Participated in a Conspiracy to Limit the Supply of Potatoes**

There are no allegations that the formation or operation of Idahoan Foods had an adverse impact on competition.  (*See* Pls.' Mem. at 29 ("Plaintiff does not address the impact of the dehydration venture on market competition . . . .").)  Plaintiffs nonetheless argue that they have stated a conspiracy claim against R.D. Offutt by alleging that, when R.D. Offutt and United II formed Idahoan Foods in 2007, UPGI and the other cooperatives were continuing to manage

---

[1] Plaintiffs' brief states:  "Many of these growers in attendance, including Defendant Offutt (the country's largest potato grower with farming operations across eight states), signed on to the plan and agreed to pay annual membership dues between $10,000 and $500,000."  (Pls.' Mem. at 7.)

supply under a claim of Capper-Volstead immunity, and R.D. Offutt "possessed knowledge of UPGI's goals."[2] (*Id.* at 31.)

As an initial matter, this allegation regarding R.D. Offutt's "knowledge" is unremarkable in light of Plaintiffs' observation that the cooperative defendants had publicly announced what they were doing and why, as reflected in the numerous references to press releases, newspaper articles, and websites in the Complaints. "[B]elieving erroneously that Capper-Volstead grants them full immunity from the antitrust laws," Plaintiffs assert, Defendants "have participated in the conspiracy in a manner that has been both *open* and *notorious*." (Pls.' Mem. at 3 (emphasis added).) Merely possessing public information that the cooperatives were managing supply under a claim of immunity does not plausibly suggest the "conscious commitment to a common scheme" required to allege that a non-member, like R.D. Offutt, joined the alleged conspiracy.[3]

Plaintiffs implicitly acknowledge the "conscious commitment" requirement by not disputing (at least in the case of a "simple sales contract between a buyer and seller") that doing

---

[2] Even the unremarkable contention that R.D. Offutt had knowledge of UPGI's goals is hedged by Plaintiffs' admission that R.D. Offutt may not have acquired any such knowledge until after the formation of Idahoan, LLC. (Pls.' Mem. at 31 n.29.) Any allegedly unlawful acts committed by the limited liability company after its formation would not be acts for which R.D. Offutt could be held liable. *See* Del. Code Ann. tit. 6, § 18-303 ("[T]he debts, obligations and liabilities of a limited liability company . . . shall be solely the debts, obligations and liabilities of the limited liability company, and no member . . . of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member . . . .").

[3] In the section of Plaintiff's brief addressing arguments made by Idahoan Foods, Plaintiffs imply that the "conscious commitment to a common scheme" requirement does not apply to a motion to dismiss under Rule 12(b)(6). (Pls.' Mem. at 32.) In fact, a "conscious commitment to a common scheme designed to achieve an unlawful objective" is the essence of a defendant's violation of Section One of the Sherman Act (*see* R.D. Offutt Mem. at 5), and courts routinely dismiss claims under Rule 12(b)(6) where the factual allegations do not plausibly suggest that a defendant had such a conscious commitment to a common scheme, *see, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 315, 327-36 (3d Cir. 2010); *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2010 WL 3430833, at *5 (D. Vt. Aug. 30, 2010); *Invamed, Inc. v. Barr Labs., Inc.*, 22 F. Supp. 2d 210, 222 (S.D.N.Y. 1998).

business with an alleged conspirator does not plausibly suggest participation in the conspiracy unless there is something about the outsider's conduct that indicates a commitment to the unlawful scheme. (Pls.' Mem. at 33; s*ee also* R.D. Offutt Mem. at 11 n.4.) There are no facts that indicate any such commitment on the part of R.D. Offutt. R.D. Offutt owned dehydration plants. Owners of dehydration plants purchase potatoes for processing into potato products. (*See* Pls.' Mem. in Opp. to Mot. Based on Capper-Volstead Act, Doc. 111, at 35 ("A dehydrator . . . purchases potatoes for processing.").) R.D. Offutt contributed its dehydration plants to Idahoan Foods, a limited liability company, which then purchased potatoes to be processed from United II. Plaintiffs do not allege that R.D. Offutt engaged in any conduct inconsistent with its independent self-interest as an owner of dehydration plants.

> C. **In the Absence of Any Allegations Implicating R.D. Offutt in a Conspiracy, Plaintiffs Cannot Drag R.D. Offutt into This Case by Relying on Statements About UPGI's Beliefs Regarding Idahoan Foods**

Plaintiffs focus much of their discussion regarding Idahoan Foods on statements made by *UPGI* that purportedly reveal *UPGI*'s beliefs about why it would be advantageous for members of *UPGI* to join United II. Plaintiffs focus, in particular, on a statement by UPGI personnel expressing the belief that Idahoan "provides United with an outlet for surplus potatoes," and another statement indicating that UPGI "feels" that "the current dehy strategy being implemented is critical to United's overall mission of supply management." (DP Compl. ¶¶ 318-19.) Based on an ambitious interpretation of those statements, Plaintiffs contend that UPGI believed that, by participating in Idahoan, United II could "remove surplus fresh potatoes from the market through the use of dehydration plants." (Pls.' Mem. at 9.)

However, whatever relevance UPGI's beliefs may have in evaluating the allegations against other parties, they do not provide any basis to drag R.D. Offutt into this case. Under the

authorities cited in R.D. Offutt's opening brief, in order to state a claim against R.D. Offutt, Plaintiffs must allege facts plausibly suggesting that *R.D. Offutt* "knowingly joined or agreed to participate in the conspiracy" by making a "conscious commitment" to achieve an unlawful objective. (R.D. Offutt Mem. at 5-6.) As explained above and in R.D. Offutt's opening brief, there are no facts alleged in either Complaint that remotely indicate any commitment by *R.D. Offutt* to reduce the supply of potatoes.

Moreover, although R.D. Offutt is not under any obligation to answer for the subjective beliefs or motivations of the other defendants, it should be noted that new theory advanced in Plaintiffs' opposition briefs makes no economic sense. Without any plausible explanation, Plaintiffs declare that because the formation of Idahoan Foods was to result in purchases by certain buyers of potatoes (the dehydration plants contributed to Idahoan Foods) from certain sellers of potatoes (United II), the formation of Idahoan Foods would somehow "divert" potatoes, "tighten[] supply" and raise prices. (Pls.' Mem. in Opp. to Mot. to Dismiss Based on Capper-Volstead Act at 36.) However, the formation of a joint venture does not "tighten" the aggregate supply of potatoes merely because it contemplates matching a particular buyer of potatoes with a particular seller. Regardless of who owns the dehydration plants contributed to Idahoan Foods, those plants generate a demand for potatoes. If Idahoan Foods had not been formed and if the owners of the dehydration plants had not entered into a contract to purchase potatoes from United II, the owners of the plants (including R.D. Offutt) would have needed to acquire the requisite potatoes from other growers. The aggregate supply and demand conditions

that determine market price are not affected based on which buyers are matched with which sellers.[4]

The Complaints contain no allegations suggesting R.D. Offutt acted in any manner inconsistent within its independent self-interest as an owner of potato dehydration plants. Allegations regarding another party's subjective views, whether announced to the public or not, certainly do not give rise to any such inference. Because conduct is not suggestive of a conspiracy where a defendant's independent self-interest is an "obvious alternative explanation" for the conduct, *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 326, 350 (3d Cir. 2010), Plaintiffs' allegation that R.D. Offutt contributed plants to a dehydration joint venture is insufficient to state a plausible claim for relief.

> **D.    To the Extent the Authorities Cited by Plaintiff Are Intended to Suggest That R.D. Offutt Is *Vicariously* Liable for Any Unlawful Conduct by United II, That Suggestion Is Without Merit**

Plaintiffs make a final, one-sentence argument that R.D. Offutt should be held "jointly liable" with United II for the "wrongdoing inherent in the dehydration joint venture." (Pls.' Mem. at 31.)  As discussed above, not only do Plaintiffs fail to allege any facts showing "wrongdoing inherent" in the formation and operation of Idahoan Foods, but Plaintiffs also acknowledge that the Complaints do not even purport to "address the impact of the dehydration venture on market competition." (*Id.* at 29.)

---

[4] It also bears noting that Plaintiffs' new theory regarding United II's motives is inconsistent with the theory of the Complaints. Plaintiffs' new theory – that United II used Idahoan to divert potatoes from the "fresh market" (s*ee* Pls.' Mem. in Opp. to Mot. to Dismiss Based on Capper-Volstead Act at 36) – is premised on the existence of entirely separate markets for fresh and process potatoes. The Complaints, however, allege that the fresh and process markets are "interconnected" – in fact, the Complaints state that "one of the problems contributing to excess potato supply was process growers planting acres of potatoes not under contract to sell on the open market." (DP Compl. ¶ 156.)  If, as alleged in the Complaints, the fresh and process markets are "interconnected" such that process growers can impact the supply and price of fresh potatoes, merely selling potatoes to a dehydration plant would not reduce aggregate supply.

The cases cited by Plaintiffs suggest a more sweeping proposition to the effect that, even if R.D. Offutt did not join any conspiracy, R.D. Offutt can be held vicariously liable for United II's acts under legal principles that apply to partnerships and joint ventures.  (*See* Pls.' Mem. at 31-32.)  What Plaintiffs fail to mention is that, according to the Complaints, Idahoan was formed as a "limited liability company" under Delaware law (*see* DP Compl. ¶119, IP Compl. ¶ 153), which is "a wholly different animal than a joint venture or partnership." *Leber v. Universal Music & Video Distrib., Inc.*, 225 F. Supp. 2d 928, 937 (S.D. Ill. 2002) (applying Delaware law).  The authorities cited by Plaintiff are therefore irrelevant, and any suggestion that R.D. Offutt could be vicariously liable for the actions of United II because they were both members of a limited liability company would be contrary to settled principles of corporate law.  *See* Del. Code Ann. tit. 6, § 18-303 ("[T]he debts, obligations and liabilities of a limited liability company . . . shall be solely the debts, obligations and liabilities of the limited liability company, and no member . . . of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member . . . ."); *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 287 (Del. 1999) (holding that LLC provides "limited liability akin to the corporate form").

## CONCLUSION

For the reasons set forth above and in its initial memorandum, R.D. Offutt's motion to dismiss for failure to state a claim should be granted.

/ / /

DATED this 3rd day of June, 2011.

      /S/
Albert P. Barker, ISB #2867
**BARKER ROSHOLT & SIMPSON LLP**
1010 W. Jefferson, Suite 102
P.O. Box 2139
Boise, ID 83701-2139
Telephone:  (208) 336-0700
Facsimile:  (208) 344-6034
Email:  apb@idahowaters.com

William L. Greene
**LEONARD, STREET AND DEINARD**
  *Professional Association*
150 S. Fifth Street, Suite 2300
Minneapolis, MN 55402
Telephone:  (612) 335-1500
Facsimile:  (612) 335-1657
Email:  william.greene@leonard.com

Attorneys for Defendant R.D. Offutt Company

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 3rd day of June, 2011, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing, as more fully reflected on the Notice of Electronic Filing.

      /S/
Albert P. Barker