Monte N. Stewart (ISB #8129)
Daniel W. Bower (ISB #7204)
**BELNAP STEWART TAYLOR & MORRIS PLLC**
12550 W. Explorer Drive, Suite 100
Boise, Idaho 83713
Telephone: (208) 345-3333
Facsimile: (208) 345-4461
stewart@belnaplaw.com
dbower@belnaplaw.com

Stephen V. Bomse
Robert A. Rosenfeld
**ORRICK HERRINGTON & SUTCLIFFE LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5759
sbomse@orrick.com
rrosenfeld@orrick.com

*Counsel for Defendants Blaine Larsen, Blaine Larsen Farms, Inc., Driscoll Potatoes, Inc. and Rigby Produce, Inc.*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE: FRESH AND PROCESS POTATOES ANTITRUST LITIGATION | **Case No. 4:10-MD-02186-BLW**<br><br>Judge B. Lynn Winmill |
| THIS DOCUMENT RELATES TO:<br><br>*Brigiotta's Farmland Produce and Garden Center, Inc. v. United Potato Growers of Idaho, Inc., et al.,* Case No. 4:10-CV-307<br><br>*Todd Simon v. United Potato Growers of Idaho, Inc., et al.,* Case No. 4:10-CV-520<br><br>*Heiden et al. v. United Potato Growers of America, Inc., et al.,* Case No. 4:10-CV-546<br><br>*Rizzo, et al. v. United Potato Growers of America, Inc.,* Case No. 4:10-CV-576 | REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST BLAINE LARSEN, BLAINE LARSEN FARMS, INC., DRISCOLL POTATOES, INC. AND RIGBY PRODUCE, INC.<br><br>Case No. 4:10-CV-307<br>Case No. 4:10-CV-520<br>Case No. 4:10-CV-546<br>Case No. 4:10-CV-576 |

## INTRODUCTION

In addition to their motion asserting Capper-Volstead immunity (Doc. 85-1), defendants Blaine Larsen, Blaine Larsen Farms, Inc., Driscoll Potatoes, Inc. and Rigby Produce, Inc. (for convenience, "Larsen et al.") have moved to dismiss on the separate ground that the plaintiffs' complaints are legally insufficient as to those defendants because they fail to contain sufficient allegations regarding Larsen et al. to meet the standards established by the Supreme Court in *Twombly* and, additionally, because they are inconsistent with the standards for asserting "member" liability established by the Ninth Circuit in *Kline v. Coldwell Banker & Co.,* 508 F.2d 226 (9th Cir. 1974) and *Kendall v. VISA U.S.A. Inc.,* 518 F.3d 1042 (9th Cir. 2008).[1] The Direct Purchaser Plaintiffs ("DPPs") respond to this motion at pages 20-26 of their omnibus brief addressing the separate motions of various defendant groups. *See* Doc. 110 ("Opp.").[2] However, that purported response is actually no response at all since it effectively ignores both what defendants said in their opening memorandum as well as what the key and controlling case regarding member liability—*Kendall*—holds.

## ARGUMENT

### I.   PLAINTIFFS' ALLEGATIONS AGAINST LARSEN ET AL ARE INSUFFICIENT UNDER *TWOMBLY*

Defendants' opening brief pointed out that the only specific allegations against the Larsen et al. defendants are that they are members (or, in some instances, "found[ing]" members) of UPGI and/or UPGA. *See* Doc. 75-1 at 4, 5. Although the DPPs' opposition does not explicitly concede that fact, their laundry list of specific allegations on page 23 of their response recites

---

[1] As set forth in defendants' opening brief (Doc. 75-1 at 3, n.2), Larsen et al. have moved to dismiss the claims asserted against them in the indirect purchaser actions (*Simon, Heiden* and *Rizzo*) on grounds of lack of jurisdiction and improper venue. Larsen et al. continue to join in and incorporate the discussion of those issues as set forth by the other grower defendants and individuals.

[2] The Indirect Purchaser Plaintiffs have filed a joinder to the DPPs' memorandum in opposition. *See* Doc. 114. Thus, this reply brief applies both to the direct and indirect purchaser cases as previously indicated in defendants' opening memorandum. *See* Doc. 75-1 at 1, n.1.

nothing further about those defendants. *See* Opp.[110] at 23. Plaintiffs also candidly acknowledge that "the bulk of [their] factual allegations focus on the cooperatives themselves" and they, equally forthrightly, describe the alleged conspiracy as having been "orchestrated" by the coops. Opp. at 22, 25.

Plaintiffs attempt to dismiss the significance of those concessions on the ground that their amended complaint supposedly discusses the "respective roles" of the various grower defendants "in the conspiracy that was orchestrated by the cooperatives." Opp. at 22, 25 (citing various paragraphs of the First Amended Complaint including ¶¶ 67-70 (Larsen); ¶¶ 100-102 (Driscoll); and ¶¶ 106-108 (Rigby)). The cited paragraphs, however, do not support plaintiffs' characterization of them. There is no discussion in those paragraphs of the "respective roles" played by Larsen, Rigby or Driscoll (or any other individual grower defendant, for that matter) in the conspiracy that plaintiffs allege.

Indeed, even as "amplified" by paragraph 246, these allegations contain no specifics beyond the conclusory assertions that the various growers "signed on" and "participated in the supply restriction and price-fixing scheme." Opp. at 22. In other words, what the DPPs, themselves, characterize as their "more specific" allegations against the grower defendants amount to nothing more than the assertion that they were coop "members" (*i.e.*, that they "signed on" to the coops) and that they "participated" in the coops' purported violations. Moreover, these allegations are in the disjunctive, leaving the defendants to guess which of the boilerplate claims relate to them. *Id.* It is hard to imagine how plaintiffs could even claim that those allegations suffice under *Twombly* or *Kendall*.

## II. PLAINTIFFS' ALLEGATIONS ALSO ARE INSUFFICIENT TO ASSERT "MEMBER" LIABILITY UNDER THE NINTH CIRCUIT'S OPINIONS IN *KLINE* AND *KENDALL*

Leaving aside these pleading matters, the more important issue raised by Larsen et al.'s motion is whether plaintiffs' complaints satisfy the legal standard for holding individual members of an association liable for the acts and policies of their organization. That issue was

addressed in two important Ninth Circuit cases discussed in defendants' opening memorandum, *Kline v. Coldwell Banker & Co.,* 508 F.2d 226 and *Kendall v. VISA U.S.A. Inc.,* 518 F.3d 1042, and plaintiffs' opposition correctly observes that defendants' motion places "heavy reliance" on those decisions. Opp. at 25. Careful attention to the facts of those cases (*Kendall* in particular) underscores their particular pertinence to the issues before the Court on this motion and why plaintiffs' attempt to state a claim against individual grower defendants fails as a matter of law.

*Kendall* was a purported price fixing class action against Visa U.S.A. Inc. and a number of its owner-member banks. 518 F.3d at 1045-46. Visa was a joint venture (in effect, a "cooperative") of various banks that collectively owned and operated the Visa payment card system.[3] Visa's owner-member banks were each licensed to issues credit and debit cards bearing the Visa name and to sign up merchants to accept those cards as payment for goods or services in lieu of cash, checks or other forms of payment. Among other things, plaintiffs in *Kendall* claimed that defendants were guilty of price fixing with respect to the adoption and enforcement of a common price term known as the Visa "interchange fee." *See Kendall,* 518 F.3d at 1048.

Specifically, as a condition of "signing on" to become a Visa member-owner and "participat[ing]" in the Visa system, each Visa bank member was required to agree to abide by Visa's rules. Among those rules was a Visa rule establishing a "fee" (known as the "Interchange Fee") that the Issuer (the particular bank that issued the card bearing the Visa name to its customer) deducts from the face amount of the transaction before reimbursing the Visa member bank that processes the transaction and reimburses the merchant. (The merchant-signing bank is referred to as the "Acquirer"). *See id.* at 1045-46. That deduction, or "fee" *was set by the cooperative* (to wit, by Visa). *Id.* at 1046. Payment of this centrally-set Interchange Fee by the

---

[3] Visa was reorganized and became a standard publicly traded corporation in March, 2008. That fact, however, is irrelevant to the discussion in text, since the decision in *Kendall* deals with Visa at a time when it was a bank-owned joint venture. *See Kendall,* 518 F.3d at 1046.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST BLAINE LARSEN, BLAINE LARSEN FARMS, INC., DRISCOLL POTATOES, INC. AND RIGBY PRODUCE, INC. - Pg. 4

Acquirer to the Issuer was mandatory and was not subject to separate negotiations between different member banks.[4]

The plaintiffs in *Kendall* claimed that this mandatory "Interchange Fee" fixed by Visa and implemented by (and for the benefit of) its member banks was a per se illegal price fixing conspiracy among Visa and its owner members. *See id.* at 1048. That is, like this case, the plaintiffs in *Kendall* alleged that the Visa member banks had "signed on to" and "participated" in the allegedly unlawful fixing of the Visa Interchange Fee and, for that reason, were liable if the fee was found to constitute unlawful price fixing. The defendant banks moved to dismiss on the ground that even if they were owners of the Visa system (and, in many cases, Board members who actually set the interchange fees in the Visa system), they could not be held individually liable, as a matter of law, under *Kline*. The district court agreed and granted their motion as to the Interchange Fee and the Ninth Circuit affirmed. *Id.* at 1045. Addressing the individual liability of the member banks, the Ninth Circuit succinctly held: "Regarding the allegations that the Banks conspired to fix the Interchange fee, merely charging, adopting or following the fees

---

[4] For clarity, the following is a somewhat fuller description of how a Visa transaction takes place: A Visa cards is issued by an individual bank that is a member of the Visa joint venture (Issuer) to a customer (Cardholder) on terms that are set forth in an agreement between the Issuer and its Cardholder that specifies such things as the fee for the card, the interest rate payable in the event the customer chooses to defer payment, additional fees for late payments, any "rewards" (such as cash back or frequent flier miles) and other matters of that kind. That card may then be used by the Cardholder to purchase goods or services at any store (Merchant) that has agreed to accept Visa cards as payment. The terms of the agreement between the merchant and its bank (as we say, called an "Acquirer") are also negotiated and set by those parties individually. However, the agreement between the Acquirer and its Merchant universally requires the Acquirer to reimburse the Merchant for the amount of all valid Visa transactions less some negotiated amount, known as the Merchant Discount fee. That reimbursement is made very promptly and does not await or depend upon whether the Cardholder ultimately ever pays the Issuer for the amount of her Visa purchases.

Having paid the Merchant, the Acquirer then is entitled, in turn, to be reimbursed by the Issuer regardless of whether the Cardholder ever pays her bill or even if the transaction was fraudulent. The amount of the reimbursement is the face amount of the transaction less an amount known as the "Interchange Fee". Unlike the terms between the Issuer and Cardholder, or the Merchant and its Acquirer, the amount of the Interchange Fee is *set by Visa,* and must be accepted by all Visa members as a condition of their participation in the Visa system.

For a fuller explanation of the nature of the Visa system as well as merchant discount and interchange fees, see *National Bancard Corporation (NaBanco) v. Visa U.S.A. Inc.,* 596 F. Supp 1231 (S.D. Fla. 1984) *aff'd* 779 F.2d 592 (11th Cir. 1986). Although the merits of the underlying attack on the Visa Interchange Fee are irrelevant to the issues raised by this motion, a principal justification for the fee is that since the Issuer bears the risk of non-payment or fraud by the cardholder, the Issuer is entitled to be compensated. That reason, among others, was found persuasive in *NaBanco*.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST BLAINE LARSEN, BLAINE LARSEN FARMS, INC., DRISCOLL POTATOES, INC. AND RIGBY PRODUCE, INC. - Pg. 5

set by [Visa] is insufficient as a matter of law to constitute a violation of Section 1 of the Sherman Act." *Id.* at 1048 (citing *Kline* and *Twombly*).[5]

With this focus on—as plaintiffs urge—the "specific facts" of *Kendall* (*see* Opp. at 18), we now return to the allegations made by plaintiffs here against Larsen et al. Taking those allegations at their broadest, the most that plaintiffs assert is that those growers—like the banks in *Kendall*— agreed to participate in UPGI's supply management system and that, in doing so, they "adopt[ed]" or "follow[ed]" the coops' allegedly unlawful supply management system as members of UPGI. While plaintiff may contend that "[b]y signing on to and participating in the supply management scheme orchestrated by the cooperatives the Grower Defendants necessarily (and knowingly) engaged in such conduct as well," *Kendall* clearly holds that, at least in this Circuit, that is not enough "as a matter of law" to state a viable antitrust claim against an association member and, thus, is not enough to survive a motion to dismiss.

## CONCLUSION

For the reasons set forth above and in Larsen et al.'s opening memorandum, plaintiffs' claims should be dismissed.

---

[5] In addition to their attack upon the interchange fee, plaintiffs also alleged that Visa's members were guilty of conspiring to fix the separate "merchant discount" rate or "fee." As explained in footnote 3, *supra*. the merchant discount is an amount that is negotiated between a merchant that wants to accept Visa cards in its stores and whatever bank (Acquirer) agrees to process that merchant's Visa transactions and guarantee payment to the merchant (less the discount fee) for all Visa transaction done in the merchant's store. Despite the fact that the merchant discount fee for each merchant is set individually, plaintiffs claimed that the parallel pricing among banks was the product of an agreement among member banks. However, the Court correctly held that those bare allegations of parallel conduct, standing alone, were insufficient under *Twombly*. Importantly, *it is that fee (to wit, the Merchant Discount) and that portion of the Ninth Circuit's opinion which plaintiffs focus on in their opposition.* See Opp. at 22. However, as we explain in text, it is the allegations with regard to the centrally set "interchange fee," and not the separate allegations of parallel conduct involving "merchant discount" fees that are relevant to the present motion. *See Kendall*, 518 F. 3d at 1048.

Dated June 3, 2011.

*signature: Monte Stewart*

Monte N. Stewart
Daniel W. Bower
**BELNAP STEWART TAYLOR
 & MORRIS PLLC**
12550 W. Explorer Dr. Suite 100
Boise, Idaho  83713

Stephen V. Bomse
Robert A. Rosenfeld
**ORRICK HERRINGTON &
 SUTCLIFFE LLP**
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669

*Counsel for Defendants Blaine Larsen, Blaine Larsen Farms, Inc., Driscoll Potatoes, Inc. and Rigby Produce, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day of June, 2011, a true and correct copy of the foregoing document was served on all counsel of record using the Court's CM/ECF system

*Monte N. Stewart*

Monte N. Stewart

| | | |
|---|---|---|
| Albert P Barker<br>apb@idahowaters.com | Daniel M Cohen<br>danielc@cuneolaw.com | Jay L Himes<br>jhimes@labaton.com |
| Allan Steyer<br>asteyer@steyerlaw.com | David J Syrios<br>dsyrios@ademilaw.com | Jay S Cohen<br>jcohen@srkw-law.com |
| Andrew G Deiss<br>adeiss@joneswaldo.com | Donald Amamgbo<br>donald@amamgbolaw.com | Jeffrey Alan LeVee<br>jlevee@jonesday.com |
| Arthur N Bailey, Jr<br>abailey@hausfeldllp.com | Donald Michael Barnes<br>dbarnes@porterwright.com | Jeffrey L Spector<br>jspector@srkw-law.com |
| Bart M Davis<br>bmdavis@bmdlaw.net | Douglas A Millen<br>dmillen@fklmlaw.com | John Michael Avondet<br>javondet@beardstclair.com |
| Benjamin Andrew Schwartzman<br>bschwartzman@bwslawgroup.com | Elizabeth McKenna<br>emckenna@milberg.com | Jon T King<br>jking@hausfeldllp.com |
| Billie Jean Siddoway<br>bsiddoway@joneswaldo.com | Eric P Enson<br>epenson@jonesday.com | Joseph Michael Barton<br>jbarton@glancylaw.com |
| Bonny E Sweeney<br>BonnyS@rgrdlaw.com | Eugene A Spector<br>espector@srkw-law.com | Julio Joaquin Ramos<br>ramosfortrustee@yahoo.com |
| Brad P Miller<br>bmiller@hawleytroxell.com | Gregory L Crockett<br>gregcrockett@hopkinsroden.com | Kimberly A Kralowec<br>kkralowec@kraloweclaw.com |
| Bruce S Bistline<br>bbistline@gordonlawoffices.com | Hollis Salzman<br>hsalzman@labaton.com | Lauren Block<br>lblock@milberg.com |
| Carmen A Medici<br>cmedici@rgrdlaw.com | James A Wilson<br>jawilson@vorys.com | Lionel Z Glancy<br>lglancy@glancylaw.com |
| Chad V. Bonanni<br>chad@essex.bpflegal.com | James E Hartley<br>jhartley@hollandhart.com | Mark A Griffin<br>mgriffin@kellerrohrback.com |
| Christopher Emrich Ondeck<br>condeck@crowell.com | James J Pizzirusso<br>jpizzirusso@hausfeldllp.com | Matthew McBurney<br>mmcburney@crowell.com |
| Daniel G Swanson<br>dswanson@gibsondunn.com | James S Lowrie<br>jlowrie@joneswaldo.com | Michael D Gaffney<br>gaffney@beardstclair.com |

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST BLAINE LARSEN, BLAINE LARSEN FARMS, INC., DRISCOLL POTATOES, INC. AND RIGBY PRODUCE, INC. - Pg. 8

| | | |
|---|---|---|
| Michael Hausfeld<br>mhausfeld@hausfeldllp.com | Phillip A. Proger<br>No email listed | Steven A Kanner<br>skanner@fklmlaw.com |
| Michael M Goldberg<br>mmgoldberg@glancylaw.com | Reginald Von Terrell<br>reggiet2@aol.com | Steven B Andersen<br>sandersen@hollandhart.com |
| Michael Kowsari<br>mkowsari@girardikeese.com | Richard C Boardman<br>rboardman@perkinscoie.com | Susan G Kupfer<br>skupfer@glancylaw.com |
| Michael P Lehmann<br>mlehmann@hausfeldllp.com | Ronald J Aranoff<br>aranoff@bernlieb.com | Wade L. Woodard<br>wwoodard@bwslawgroup.com |
| Mindee J Reuben<br>reuben@wka-law.com | Salvatore Anthony Romano<br>sromano@porterwright.com | William L Greene<br>william.greene@leonard.com |
| Neil D McFeeley<br>nmcfeeley@eberle.com | Samuel G Liversidge<br>Sliversidge@gibsondunn.com | William V Reiss<br>wreiss@labaton.com |
| Paul Novak<br>pnovak@milberg.com | Sharron Williams Gelobter<br>sgelobter@yurumeinlaw.com | Winston V Beard<br>winstonbeard@me.com |
| Peter Safirstein<br>psafirstein@milberg.com | Stephen R Thomas<br>srt@moffatt.com | |
| Philip Howard Gordon<br>pgordon@gordonlawoffices.com | Steven A Asher<br>asher@wka-law.com | |