Neil D. McFeeley, ISB # 3564
EBERLE, BERLIN, KADING,
TURNBOW & MCKLVEEN, CHTD.
1111 West Jefferson, Ste 530
PO Box 1368
Boise, ID 83701
Telephone: (208) 344-8535
Facsimile: (208) 344-8542
E-mail: nmcfeeley@eberle.com

James A. Wilson, Ohio State Bar # 0030704
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Telephone: (614) 464-5606
Facsimile: (614) 719-5039
E-mail: jawilson@vssp.com

Attorneys for the Defendant Idahoan Food, LLC

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE: FRESH AND PROCESS POTATOES ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>   ALL ACTIONS | Case No. 4:10-md-02186-BLW<br><br>**DEFENDANT IDAHOAN FOODS, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS (DOCKET # 77) DIRECT PURCHASERS' FIRST AMENDED CLASS ACTION COMPLAINT AND INDIRECT PURCHASERS' FIRST AMENDED CLASS ACTION COMPLAINT** |

## TABLE OF CONTENTS

**PAGE**

I. Introduction ........................................................................................................... 1

II. Allegations Related to Idahoan Foods ................................................................. 2

III. Argument .............................................................................................................. 4

    A. Under *Twombly*, the Standard for Pleading that Idahoan Foods Participated in a Conspiracy Is High. ................................................................................ 4

    B. Plaintiffs Have Failed to Rebut any of Idahoan Foods' Arguments ........ 6

IV. Conclusion ............................................................................................................ 9

CERTIFICATE OF SERVICE ...................................................................................... 10

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 7

*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).......................................... 8

*In re Cal. Title Ins. Antitrust Litig.*, 2009 U.S. Dist. LEXIS 103407 (N.D. Cal. Nov. 6, 2009) ................................................................................................................................. 4, 6

*In re Fla. Cement & Concrete Antitrust Litig.*, 2010 U.S. Dist. LEXIS 108528 (S.D. Fla. Oct. 12, 2010) ..................................................................................................................... 9

*In re Flash Memory Antitrust Litigation*, 643 F. Supp.2d 1133 (N.D. Cal. 2009) ......................... 4

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010).................................................. 9

*In re Pa. Title Antitrust Litig.*, 648 F. Supp. 2d 663 (E.D. Pa 2009) ........................................ 9, 10

*Kendall v. Visa U.S.A.*, Inc., 518 F.3d 1042 (9th Cir. 2008) ........................................................... 4

*Mitchael v. Intracorp, Inc.*, 179 F.3d 847 (10th Cir. 1999)............................................................. 9

*Person v. Google, Inc.*, 2007 U.S. Dist. LEXIS 22499 (N.D. Cal. Mar. 16, 2007)........................ 6

*Rick-Mik Enters. v. Equilon Enters., LLC*, 532 F.3d 963 (9th Cir. 2008) ...................................... 8

*Starr v. Sony BMG Music Entertainment*, 592 F.3d 314 (2d Cir. 2010) .................................... 5, 6

*Toscano v. Prof'l Golfers Ass'n*, 258 F.3d 978 (9th Cir. 2001)....................................................... 6

*William O. Gilley Enters., Inc. v. Atl. Richfield Co*., 588 F.3d 659 (9th Cir. 2008) ....................... 5

**RULES**

Fed. R. Civ. P. 12(b)(6).............................................................................................................. 7, 8

I.      Introduction

The Direct Purchasers devote only two-and-a-half pages of their Memorandum in Opposition (Dock. # 110, hereinafter Mem. Opp.) to addressing the arguments in Idahoan Foods LLC's Motion to Dismiss.  The Indirect Purchasers have not separately opposed Idahoan Foods' Motion, but rather, simply join in the Direct Purchasers' memorandum.  The Mem. Opp. points to no allegations in the Amended Complaints of either the Direct or Indirect Purchasers that Idahoan Foods ever participated in any conspiracy, nor does it point to any allegation plausibly pleading that Idahoan Foods engaged in conspiratorial conduct.  Tellingly, while conceding that they must plead facts making plausible the participation in a conspiracy by each Defendant,[1] Plaintiffs in effect argue that they need not make allegations plausibly connecting each individual defendant to the purported conspiracy.  Instead, Plaintiffs argue without any support in their Complaints that the alleged motives of other Defendants can be imputed to Idahoan Foods.  *See* Mem. Opp. pp. 16, 18, 32-33.  As shown in Idahoan Foods' Motion to Dismiss, the relevant allegations as to Idahoan Foods' conduct are equally as consistent with procompetitive conduct as with an illegal conspiracy.  Such allegations are insufficient to survive Idahoan Foods' Motion to Dismiss.

Further, Plaintiffs fail to address much of Idahoan Foods' argument in support of dismissal.  While Plaintiffs broadly claim that they have made allegations linking Idahoan Foods to the purported conspiracy, the Mem. Opp. fails to rebut Idahoan Foods' detailed review of the allegations actually made against it.  Likewise, the Mem. Opp. ignores twenty-two of the thirty-six cases cited by Idahoan Foods, and only discusses five of those thirty-six cases in the section

---

[1] *See, e.g.*, Mem. Opp. p. 17 n. 14 ("To state a claim against each Defendant, [DPP] must 'make allegations that plausibly suggest that each Defendant participated in the alleged conspiracy.'"  *See also id.* p. 18 (quoting *SRAM* to the effect that Plaintiff now only needs to "make allegations that plausibly suggest that each Defendant participated in the alleged conspiracy").

responding to Idahoan Foods' Motion. And, as for the few cases Plaintiffs do discuss, they are unable to meaningfully distinguish them. Thus, Plaintiffs have failed to undercut either Idahoan Foods' analysis of the claims actually pled against it or the application of controlling case law to those claims.

Accordingly, Idahoan Foods is entitled to dismissal of the claims against it because: (1) the Direct Purchaser Complaint fails to allege facts sufficient to plausibly plead any commitment by Idahoan Foods to the alleged conspiracy; (2) the allegations concerning Idahoan Foods' purchase agreement with United II directly contradict any inference that the agreement was an effort by Idahoan Foods to participate in a conspiracy to reduce output and raise prices to itself; and (3) the ownership of Idahoan Foods is irrelevant to its liability because the antitrust laws do not imply liability simply by reason of ownership.

## II.    Allegations Related to Idahoan Foods

In their Mem. Opp., the Plaintiffs make several unfounded, unpled, and unsupported allegations about Idahoan Foods:

- On page 28 Plaintiffs state: "The Dehydration Defendants conspired by entering into this dehydration venture with knowledge that it was designed with an impermissible motive."
    - However, the complaints plead no facts to support this allegation, let alone facts that Idahoan Foods joined this purported conspiracy.
- On page 30 Plaintiffs state: "The DPP has sufficiently alleged that the Dehydration Defendants conspired to reduce the supply of potatoes. By describing the nature of the conspiracy and the roles of the participants, and by quoting the UPGI on the purposes of the dehydration scheme, DPP has set forth

enough factual matter (taken as true) to suggest that an agreement was made." (quotation omitted).

- o However, the complaints plead no facts that Idahoan Foods engaged in any activity that was illegal or bought potatoes to reduce supply rather than because it needed them for its processing plants.

- On page 32 Plaintiffs state: "As detailed above, the DPP has plausibly alleged that, separate from its role as purchaser of all of United II's dehydration-grade potatoes, Idahoan has agreed to take on 'surplus' fresh potatoes from UPGI in order to advance the supply reduction conspiracy. This cooperation with UPGI, United II and Offutt in the interest of reducing *fresh* potato supply plausibly suggests that Idahoan knowingly conspired in contravention of the Sherman Act."

  - o Contrary to Plaintiffs' assertion, Plaintiffs' allegations do not assert that Idahoan Foods entered into an agreement whereby *it agreed* to take on 'surplus' in order to advance the supply reduction conspiracy.

- On pages 32-33 Plaintiffs assert: "DPP has pled that Idahoan was not merely an ordinary purchaser; rather it was a co-conspirator in the supply reduction scheme through its acquisition and disposal of 'surplus' potatoes. The fact that Idahoan *purchased* potatoes from the cartel does not lessen the plausibility of DPP's claim." They further assert: "The instant allegation goes far beyond that of a simple sales contract between a buyer and seller. Here, the DPP has detailed an anticompetitive scheme undertaken by the Dehydration Defendants. Idahoan's acquisition of potatoes from United II and Offutt was one important element of that scheme. Plaintiff has, at a minimum, plausibly suggested that Idahoan's

arrangement to dispose of UPGI's surplus potatoes amounts to conspiratorial conduct in violation of the antitrust laws."

- o Contrary to Plaintiffs' assertion, they do not plead that Idahoan Foods participated in the conspiracy or agreed to purchase potatoes for some nefarious purpose. Plaintiffs only plead that Idahoan Foods purchased potatoes from members of the alleged conspiracy. At best, that allegation is equally consistent with both legal and illegal activity and thus does not meet the plausibility threshold.

Plaintiffs completely fail to show any facts that Idahoan Foods purposely joined the alleged conspiracy.

## III. Argument

### A. Under *Twombly*, the Standard for Pleading that Idahoan Foods Participated in a Conspiracy Is High.

Despite Plaintiffs' claim to the contrary, they must allege facts sufficient to plausibly plead that Idahoan Foods participated in a conspiracy. *Kendall v. Visa U.S.A.*, Inc., 518 F.3d 1042, 1047 (9th Cir. 2008); *In re Cal. Title Ins. Antitrust Litig.*, 2009 U.S. Dist. LEXIS 103407, *13-14, 17-18 (N.D. Cal. Nov. 6, 2009). The cases Plaintiffs rely upon to avoid this requirement are inapposite.

Plaintiffs first rely on *In re Flash Memory Antitrust Litigation*, 643 F. Supp.2d 1133 (N.D. Cal. 2009), for the proposition that they do not need to show specific facts regarding how each defendant joined the conspiracy. Mem. Opp. p. 16 (citing *id.* at 1142 n.7). However, while that court said that allegations of conspiracy need not be detailed on a defendant by defendant basis, it made that statement in light of the fact that the complaint in question *did* detail (a) the time frame of the alleged conduct; (b) "facts pertaining to the coordination of pricing as a means

to control pricing"; (c) "specific instances where output was reduced following meetings by Defendants" that led to implausible price increases; and (d) that the marketplace was conducive to coordinated pricing. 643 F. Supp. 2d at 1142. In sharp contrast to that case, Plaintiffs have pled no facts demonstrating that Idahoan Foods had a conscious commitment to any conspiracy.

Plaintiffs then rely on *Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 325 (2d Cir. 2010), for the proposition that they do not need to "mention a specific time, place or person involved in each conspiracy allegation." Mem. Opp. p. 16 (quotation omitted). However, in the language cited, the *Starr* court simply indicated that if a claim is based on circumstantial allegations of a conspiracy, one must specifically plead parallel conduct and sufficient plus factors (actions contrary to one's own economic interest) to make the existence of a conspiracy plausible. *Starr*, 592 F.3d at 324-25. If one is pleading direct allegations of a conspiracy, specificity as to time, place, and manner is needed. In other words, *Starr* holds that *Twombly* requires conspiracy be plausibly pled, regardless of whether it is pled through allegations of circumstantial conduct or direct allegations as to the formation of a conspiracy. *Cf. William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2008) ("On a motion to dismiss in an antitrust case, a court must determine whether an antitrust claim is 'plausible' in light of basic economic principles."). *Starr* thus stands only for the unremarkable proposition that if a plaintiff is pleading allegations of circumstantial conduct, those allegations must be specific enough to be plausible.

Plaintiffs then argue that their use of the word "Defendants" refers to all Defendants, and thus they have satisfied their pleading burden. *See* Mem. Opp. p. 18 (citations omitted). Fatal to this argument with respect to Idahoan Foods is that all of the allegations regarding the formation and the joining of the conspiracy by the "Defendants" predate Idahoan Foods' existence. *See*

Idahoan Foods' Motion to Dismiss at 3-4. It is axiomatic that Idahoan Foods could not join a conspiracy before it was created.

Despite making this argument, Plaintiffs then argue that "[e]ach of the Defendants … is alleged to have signed on or otherwise participated in the" alleged conspiracy. Mem. Opp. p. 20. But Plaintiffs point to no allegation whereby Idahoan Foods "signed on or otherwise participated" in the alleged conspiracy.

While Plaintiffs seek to avoid the requirement that they have to plead a conscious commitment to joining a conspiracy by arguing that one of the cases cited by Idahoan Foods – *Toscano v. Prof'l Golfers Ass'n*, 258 F.3d 978, 983 (9th Cir. 2001) – was decided on summary judgment, they ignore the authority cited by Idahoan Foods for the proposition that facts supporting such a conscious commitment on the part of each defendant must be alleged. *See In re Cal. Title Ins. Antitrust Litig.*, 2009 U.S. Dist. LEXIS 103407, *13-14, 17-18 (N.D. Cal. Nov. 6, 2009); *Person v. Google, Inc.*, 2007 U.S. Dist. LEXIS 22499, * 17 (N.D. Cal. Mar. 16, 2007). Here, at best, Plaintiffs plead no more than facts that are "merely consistent with" a defendant's liability – that Idahoan Foods bought potatoes from an alleged group of conspirators bent on reducing the supply. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) . To survive a Rule 12(b)(6) motion, however, a plaintiff must allege enough facts to make misconduct more plausible than an "obvious alternative explanation" – that as a potato processor, Idahoan Foods needed a supply of potatoes. *Id*. at 567. Accordingly, having failed to plead that Idahoan Foods did anything contrary to its own economic interest, each of the complaints "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

**B. Plaintiffs Have Failed to Rebut any of Idahoan Foods' Arguments.**

Plaintiffs by their silence acknowledge that they failed to allege any facts that Idahoan Foods participated in a conspiracy with anyone, let alone the other Defendants, insofar as they do

not now show where they pled any facts plausibly supporting such an inference.  Instead, Plaintiffs misconstrue a couple of cases cited by Idahoan Foods (ignoring twenty-two other cases) and do not present any substantial argument in rebuttal.

Plaintiffs first argue that they have pled that Idahoan Foods was a co-conspirator because it purchased and disposed of "surplus" potatoes.  Mem. Opp. p. 33.  The complaints, however, do not allege that Idahoan Foods ever disposed of surplus potatoes – all that they allege is that Idahoan Foods purchased potatoes for its processing facilities and used them to make products for resale.  Direct Purchasers' First Amended Class Action Complaint ¶¶ 123, 126-27, 318, 321; Indirect Purchasers' First Amended Class Action Complaint ¶¶ 157, 331, 334.  Crucially absent from Plaintiffs' argument or their complaints, apart from their insufficient allegations as to the ownership of Idahoan Foods, is any explanation or pleading as to why Idahoan Foods' purchases of potatoes are different than those of any other potato processor.

Plaintiffs' only attempt to support this argument is in its attempt to distinguish *Rick-Mik Enters. v. Equilon Enters., LLC*, 532 F.3d 963 (9th Cir. 2008), a Fed. R. Civ. P. 12(b)(6) case in which the Ninth Circuit held that an "ordinary sales contract" is insufficient to link a defendant to a price-fixing conspiracy.  *Rick-Mik Enters.*, 532 F.3d at 976.  Plaintiffs argue that they pled more facts than those alleged in *Rick-Mik,* claiming that they have "detailed an anticompetitive scheme undertaken by the Dehydration Defendants."  This claim is simply not true – all Plaintiffs have alleged is that the cooperatives wanted an outlet for their potatoes in order that the supply not be available to other purchasers.  Apart from the fact that any sale of a product to one purchaser by definition makes the subject of the sale unavailable to others – without creating an antitrust violation – the fundamental flaw with this argument is that it confuses the actions of Idahoan Foods with different entities (e.g., the cooperatives) and suggests that because one of the

cooperatives had an ownership interest in Idahoan Foods, that it can be presumed that Idahoan Foods had a conscious commitment to joining a conspiracy when all it did was enter a purchase contract that was in its own economic interest.

Plaintiffs' apparent justification for applying a different rule of liability to Idahoan Foods than to any other purchaser of potatoes is a misapplication of the Supreme Court's decision in *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984). *See* Mem. Opp. pp. 33-34. Plaintiffs' argument on this point, however, simply does not square with the case law holding that a subsidiary or separately incorporated joint venture is "not liable for the actions of its parent or sister corporations simply by dint of the corporate relationship." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n.44 (3d Cir. 2010); *see also In re Fla. Cement & Concrete Antitrust Litig.*, 2010 U.S. Dist. LEXIS 108528 (S.D. Fla. Oct. 12, 2010).

Rather than cite the Court to any case that has found liability on the theory that a joint venture can be presumed to have entered into a conspiracy based on the actions of its owners, Plaintiffs simply argue that two of the cases Idahoan Foods cited, *Mitchael v. Intracorp, Inc.*, 179 F.3d 847 (10th Cir. 1999), and *In re Pa. Title Antitrust Litig.*, 648 F. Supp. 2d 663 (E.D. Pa 2009), are distinguishable from the present case. They are not.

*Mitchael* held that, absent coordinated activity, a parent company cannot be held liable for the illegal activity of a subsidiary. 179 F.3d at 856. Thus, a subsidiary does not become a member of an illegal conspiracy simply because one of its owners allegedly participated.

*In re Pa. Title Antitrust Litig*. held that when a parent directs its subsidiary to enter into an illegal conspiracy with others, the parent is liable as if it entered into the conspiracy itself. 648 F. Supp. 2d at 689. In reaching this conclusion, the court did not hold or imply, as Plaintiffs seem to argue, that a subsidiary is liable for the actions its parent takes on its own. Indeed, *In re*

*Pa. Title Antitrust Litig*. granted a motion to dismiss because there were no more than allegations that the parent acquiesced in its subsidiary's conduct, and thus the parent company could not be held liable for the alleged wrongs of its subsidiary under the single entity doctrine. *Id*. Likewise, here there are no allegations that Idahoan Foods did anything more than purchase produce from an alleged cartel.

Ultimately, Plaintiffs' own brief belies their argument. While Plaintiffs argue that they have "alleged that Idahoan coordinated with its parent entities, and that Idahoan has been an active participant in the conspiracy at the behest of its parent entities," Mem. Opp. p. 34, they do not and cannot cite to any language in their complaints that makes such an allegation. In fact, unable to plead facts plausibly suggesting Idahoan Foods acted at the direction of its owners in any anticompetitive manner, Plaintiffs are not entitled to any inference that Idahoan Foods did anything other than to pursue its own independent economic interest.

### IV.     Conclusion

For the forgoing reasons, the Direct and Indirect Purchasers' Amended Complaints against Idahoan Foods should be dismissed in their entirety.

Dated this 3rd day of June, 2011.

        **EBERLE, BERLIN, KADING, TURNBOW & MCKLVEEN, CHARTERED**

            /s/ Neil D. McFeeley
        Neil D. McFeeley

        James A. Wilson
        **VORYS, SATER, SEYMOUR AND PEASE LLP**

        Attorneys for Defendant Idahoan Foods, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of June, 2011, I electronically filed the foregoing Memorandum in Support of Motion to Dismiss with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to all counsel of record.

      /s/ James A. Wilson
Attorneys for Defendant Idahoan Foods, LLC