James S. Lowrie
   jlowrie@joneswaldo.com
Andrew G. Deiss
   adeiss@joneswaldo.com
Billie J. Siddoway (ISB# 6628)
   bsiddoway@joneswaldo.com
JONES WALDO HOLBROOK & MCDONOUGH PC
170 South Main Street, Suite 1500
Salt Lake City, UT 84101
Telephone: (801) 521-3200
Facsimile: (801) 328-0537

Steven B. Andersen (ISB #2618)
   sandersen@hollandhart.com
HOLLAND & HART LLP
101 S Capital Boulevard, Suite 1400
Boise, ID 83701-2527
Telephone: (208) 342-5000
Facsimile: (208) 343-8869

James E. Hartley
   jhartley@hollandhart.com
HOLLAND & HART LLP
555 Seventeenth St., Suite 3200
Denver, CO 80201-8749
Telephone: (303) 295-8000
Facsimile: (303-295-8261

Donald M. Barnes
   dbarnes@porterwright.com
Salvatore A. Romano
   sromano@porterwright.com
PORTER WRIGHT
1919 Pennsylvania Ave, N.W., Ste 500
Washington, D.C. 20006
Telephone: (202) 778-3056
Facsimile: (202) 778-3063

*Counsel for United Potato Growers of Idaho, Inc.; United Potato Growers of America, Inc.; United II; Potato Growers of Idaho, Inc.; Albert Wada; Wada Farms, Inc.; Wada Farms Potatoes, Inc.; Wada-Van Orden Potatoes, Inc.; Wada Farms Marketing Group, LLC; Michael Cranney; Keith Cornelison; Cornelison Farms, Inc.; Snake River Plains Potatoes, Inc.; and Raybould Brothers Farms LLC*

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE: FRESH AND PROCESS POTATOES ANTITRUST LITIGATION | Case No. 4:10-md-02186-BLW |
| THIS DOCUMENT RELATES TO: | **REPLY TO [110] BRIGIOTTA'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS . . . [79] CERTAIN DEFENDANTS AND DEFENDANT ASSOCIATIONS and REPLY TO [113] INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLAIMS AGAINST [79]CERTAIN DEFENDANTS AND DEFENDANT ASSOCIATIONS** |
| *Brigiotta's v. United Potato Growers of Idaho, Inc., et al.*, Case No. 4:10-cv-307 | |
| *Simon v. United Potato Growers of Idaho, Inc., et al.*, Case No. 4:10-cv-520 | |
| *Heiden, et al v. United Potato Growers of America, Inc., et al.*, Case No. 4:10-cv-546 | |
| *Rizzo, et al. v. United Potato Grower of America, Inc., et al.*, Case No. 4:10-cv-576 | |

977216.6

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................1

II. ARGUMENT ...........................................................................................................2

    A.    The IP Plaintiffs' Claims Should Be Dismissed for Improper Venue and Lack of Personal Jurisdiction........................................................................................2

        1.    Each of the IP Plaintiffs' Actions Maintains a Seprate Identity Not Superseded by the Consolidated Complaint. ...............................3

        2.    Venue is Not Supported by the Clayton Act or the General Venue Statute. ........................................................................................5

        3.    The IP Plaintiffs Do Not Have Personal Jurisdiction in the Transferor Courts. .......................................................................7

    B.    Plaintiffs Must Plead Specific Factual Allegations as to Each Defendant. .................9

    C.    Conclusory Allegations Do Not Suffice to Avoid Dismissal. ...................................11

    D.    Plaintiffs Have Not Identified Any Unlawful Agreement or Overt Action by United II to Support a Claim Against It........................................................................12

        1.    The Alleged Agreements by United II Are Statutorily Authorized........................................................................................13

        2.    The Alleged Agreements Do Not Plausibly Suggest a Violation of the Antitrust Laws by United II. ..................................................14

    E.    Plaintiffs Have Failed to Make Factual Allegations Suggesting Participation of Each Moving Defendant Grower  in an Alleged Conspiracy................................15

III.  CONCLUSION.......................................................................................................19

977216.6

## TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*49er Chevrolet, Inc. v. Gen. Motors Corp.,* 803 F.2d 1463 (9th Cir. 1986) ................................. 14

*Action Embroidery Corp. v. Atl. Embroidery, Inc.,* 368 F.3d 1174 (9th Cir. 2004) .................. 5, 8

*Am. Needle, Inc. v. NFL,* 130 S. Ct. 2201 (2010) .......................................................... 17

*Anrig v. Ringsby United,* 603 F.2d 1319 (9th Cir. 1978)....................................................... 6

*Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) ..................................................................... 9

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955 (2007) ....................... 2, 9, 10, 12, 18

*Bell v. Fur Breeders Agric. Corp.,* 348 F.3d 1224 (10th Cir. 2003)....................................... 17

*Boschetto v. Hansing,* 539 F.3d 1011 (9th Cir. 2008) ........................................................ 7

*Conley v. Gibson,* 355 U.S. 41 (1957) .......................................................................... 9

*Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752 (1984)..................................... 17

*Cornelius v. DeLuca,* 709 F. Supp. 2d 1003 (D. Idaho 2010) .............................................. 7

*Daniel v. Am. Bd. of Emergency Med.,* 428 F.3d 408 (2d Cir. 2005)..................................... 5, 8

*Eaby v. Richmond,* 561 F. Supp. 131 (E.D. Pa. 1983) ....................................................... 6

*Farmers Bank of State of Del. v. Bell Mortg. Co.,* 452 F. Supp. 1278
 (D. Del. 1978)............................................................................................ 6

*Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122
 (9th Cir. 2003) .......................................................................................... 7

*Hinds County, Miss. v. Wachovia Bank N.A.,* 620 F. Supp. 2d 499
 (S.D.N.Y. 2009) ..................................................................................... 9, 10

*Imperial Constr. Mgmt. v. Laborers Union Int'l,* 729 F. Supp. 1199
 (N.D. Ill 1990) ......................................................................................... 14

*In re Citric Acid Litig.,* 191 F.3d 1090 (9th Cir. 1999)...................................................... 16

*In re Digitek Products Liab. Litig.,* Case No. 2:08-md-01968, 2009 WL 2433468
 (S.D.W. Va. 2009)...................................................................................... 3

*In re Elec. Carbon Prods. Antitrust Litig.,* 333 F. Supp. 2d 303 (D.N.J. 2004)........................... 9

*In re Elevator Antitrust Litig.,* 502 F.3d 47 (2d Cir. 2007)............................................. 10, 12

*In re Flash Memory Antitrust Litig.,* 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ........................... 16

*In re Graphics Processing Units Antitrust Litig.,* 527 F. Supp. 2d 1011
 (N.D. Cal. 2007)...................................................................................... 18

*In re Late Fee and Over-Limit Fee Litig.,* 528 F. Supp. 2d 953 (N.D. Cal. 2007)...................... 10

*In re Nuvaring Products Liab. Litig.,* 2009 WL 2425391 (E.D. Mo. 2009)................................ 4

*In re Packaged Ice Antitrust Litigation,* 723 F. Supp. 2d 987 (E.D. Mich. 2010)................. 10, 11

*In re Papst Licensing GMBH & Co. KG Litig.,* 602 F. Supp. 2d 10 (D.D.C. 2009) .................... 3

*In re Static Random Access Memory (SRAM) Antitrust Litig.,* 580 F. Supp. 2d 896
 (N.D. Cal. 2008)...................................................................................... 9, 16

*In re Text Messaging Antitrust Litig.*, 630 F.3d 622 (7th Cir. 2010) .............................................. 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109
(N.D. Cal. 2008) ............................................................................................................. 9, 10

*In re Travel Agent Comm'n. Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009)) ............................... 11

*In re W. States Wholesale Natural Gas Antitrust Litig.*, Case No. 2:03-cv-01431,
2010 WL 2539728 6 (D. Nev. June 4, 2010) ........................................................................ 4

*Jackson v. BellSouth Telecomms.*, 372 F.3d 1250 (11th Cir. 2004) ............................................... 11

*Karsten Mfg. Corp. v. U.S. Golf Ass'n*, 728 F. Supp. 1429 (D. Ariz. 1990) ................................. 6

*Kendall v. VISA U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) ........................................................ 10

*Kline v. Coldwell Banker & Co.*, 508 F.2d 226 (9th Cir. 1974) .................................................... 17

*Korean Air Lines Co., Ltd. Antitrust Litig.* _ F.3d _, 2011 WL 1458794
(9th Cir. April 18, 2011)................................................................................................... 3

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, et al.*, 523 U.S. 26
(1998) ................................................................................................................................. 4

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988)........................................................ 7

*N. Calif. Supermarkets v. Cent. Calif. Lettuce Producers, Coop.*, 413 F. Supp. 984
(N.D. Cal. 1976) ............................................................................................................... 17

*Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491 (9th Cir. 1979)............................ 6

*Propulsid Products Liab. Litig.*, 208 F.R.D. 133 (E.D. La. 2002) ............................................ 3, 4

*Redmond v. Atl. Coast Football League*, 359 F. Supp. 666 (S.D. Ind. 1973)................................. 6

*Rick-Mik Enters., Inc. v. Equilon Enters., LLC*, 532 F.3d 963 (9th Cir. 2008) ............................ 14

*Sanderson v. Spectrum Labs, Inc.*, 227 F. Supp. 2d 1001 (N.D. Ind. 2000).................................. 6

*Shah v. Pan Am. World Servs., Inc.*, 148 F.3d 84 (2d Cir. 1998) ................................................... 4

*Sunkist Growers v. Winkler & Smith Citrus Prods.*, 370 U.S. 19 (1962) ..................................... 17

*Treasure Valley Potato Bargaining Ass'n v. Ore-Ida Foods, Inc.*, 497 F.2d 203
(9th Cir. 1974) ................................................................................................................. 17

*Unified and Consolidated Complaints in Multidistrict Litig.*, 132 F.R.D. 597
(1991) ................................................................................................................................. 4

**FEDERAL STATUTES**

28 U.S.C. § 1391 ...................................................................................................................... 5, 6

28 U.S.C. § 1391(b)(2) ................................................................................................................. 2

28 U.S.C. § 1407 ........................................................................................................................... 4

Capper-Volstead (7 U.S.C. § 291)..................................................................................... 13, 14, 16, 18

Clayton Act § 1 (15 U.S.C. § 12) ........................................................................................... 1, 5, 8

Clayton Act § 5 (15 U.S.C. § 16)................................................................................................... 5

Clayton Act § 6 (15 U.S.C. § 17).......................................................................................... 16, 17

Cooperative Marketing Act of 1926 (7 U.S.C. § 455)................................................................ 17

Federal Rule of Civil Procedure 8 ......................................................................................... 10, 12

Sherman Act § 1 (15 U.S.C. § 1) ................................................................................................. 18

**LEGISLATIVE HISTORY**

59 Cong. Rec. 7851-2 (1920) ........................................................................... 17

62 Cong. Rec. 2059 (1922) ............................................................................. 17

62 Cong. Rec. 2259 (1922) ............................................................................. 17

H.R. Rep. No. 627, 63d Cong., 62d Sess. (1914) ........................................ 17

S. Rep. No. 698, 63d Cong., 2d Sess. (1914) .............................................. 17

Defendants United Potato Growers of America, Inc.; United Potato Growers of Idaho, Inc; United II Potato Growers of Idaho, Inc; Albert Wada; Wada Farms, Inc.; Wada Farms Potatoes, Inc.; Wada-Van Orden Potatoes, Inc.; Wada Farms Marketing Group, LLC; Michael Cranney; Keith Cornelison; Cornelison Farms, Inc.; Snake River Plains Potatoes, Inc.; Lance Funk; and Raybould Brothers Farms, LLC ("Certain Defendants"), respectfully submit this reply in response to portions of [110][1] *Plaintiff Brigiotta's Farmland Produce and Garden Center, Inc.'s Memorandum in Opposition to motion to Dismiss Nos. 72 (R.D. Offut Co.), 73 (Pleasant Valley Potato, Inc.), 75 (Blaine Larsen, Blaine Larsen Farms, Inc., Driscoll Potatoes, Inc. and Rigby Produce Inc.), 76 (Potandon Produce L.L.C.), 77 (Idahoan Foods, LLC), 79 (Certain Defendants and Defendant Associations) and 88 (Dole Food Company, Inc. and Dole Fresh Vegetables, Inc.) Dated March 18 2011* ("DP Pls.' Mem. Opp.") and in response to [113] *Indirect Purchaser Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss Claims Against Certain Defendants and Defendant Associations* ("IP Pls.' Mem. Opp.") in further support of [79] *Motion to Dismiss Claims Against Certain Defendants and Defendant Associations*.  Plaintiffs' oppositions as identified above are hereinafter referred to collectively as the "Oppositions."

## I.  INTRODUCTION

The Indirect Purchase Plaintiffs ("IP Plaintiffs"), by omission, admit that they cannot establish venue and personal jurisdiction over all defendants by traditional means.  And neither the Clayton Act's personal jurisdiction provision nor the fact that the consolidated complaints have been filed in the District of Idaho can save IP Plaintiffs' allegations from these fundamental shortcomings.

---

[1]  Unless otherwise indicated, docket numbers refer to *In re Fresh and Process Potatoes Antitrust Litigation*, Case No. 4:10-md-02186-BLW.

977216.6

The IP Plaintiffs and the Direct Purchaser Plaintiffs ("DP Plaintiffs") attempt to avoid the pleading standard, as described by the Supreme Court in *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955 (2007), predominantly by arguing that it is sufficient to make general allegations against all defendants.  In fact, the plaintiffs must make specific factual allegations which allow the Court to conclude that it is plausible that *each* defendant was party to a prohibited anticompetitive agreement.  Moving defendant growers and United II submit that plaintiffs have not done so with respect to them.  Plaintiffs have only presented conclusory allegations concerning agreements which are authorized by law and, therefore, will not support a conspiracy claim.

## II.  ARGUMENT

### A.  THE IP PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR IMPROPER VENUE AND LACK OF PERSONAL JURISDICTION.

Despite the IP Plaintiffs' consolidated complaint, the defendants are not subject to venue and jurisdiction in the Districts of Central California, Eastern Wisconsin or Vermont (the "Transferor Districts").  The IP Plaintiffs concede by omission that the defendants do not reside, are not found, do not have an agent, and do not transact business in the transferor districts to satisfy the venue provisions of the Clayton Act.  Contrary to the arguments asserted in their opposition, the IP Plaintiffs cannot base venue on the personal jurisdiction provision of the Clayton Act.  Furthermore, the IP Plaintiffs cannot establish venue under the general venue statute, 28 U.S.C. § 1391(b)(2), because the location of an indirect purchaser's alleged injury is not a substantial part of the events giving rise to an antitrust action.  Venue is not proper in any of the Transferor Districts.  For similar reasons, many of which are conceded by the IP Plaintiffs, the Transferor Districts cannot exercise personal jurisdiction.  Because they have not and cannot meet their burden of establishing venue and jurisdiction based on the allegations of their

consolidated complaint, the IP Plaintiffs' claims against the moving defendants should be dismissed.

**1.    Each of the IP Plaintiffs' Actions Maintains a Seprate Identity Not Superseded by the Consolidated Complaint.**

A consolidated complaint does not relieve the IP Plaintiffs of the burden of establishing jurisdiction and venue in the transferor courts. *See In re Papst Licensing GMBH & Co. KG Litig.,* 602 F. Supp. 2d 10, 14 (D.D.C. 2009) (holding that jurisdiction is derived from the transferor court). The Ninth Circuit holds that consolidated actions maintain separate identities, stating: "Within the context of MDL proceedings, individual cases that are consolidated or coordinated for pretrial purposes remain fundamentally separate actions, intended to resume their independent status once the pretrial stage of litigation is over." *In re Korean Air Lines Co., Ltd. Antitrust Litig._ _ F.3d _, 2011 WL 1458794 *11 (9th Cir. April 18, 2011) ("*Korean Air*") (cited by IP Plaintiffs).[2]

In multidistrict litigation, a master consolidated complaint is an administrative tool that does not supersede the individual complaints. *In re Propulsid Products Liab. Litig.*, 208 F.R.D. 133, 141 (E.D. La. 2002) ("consolidation is not supposed to 'merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another'") (internal citation omitted). *See also In re Digitek Products Liab. Litig.*, Case No. 2:08-md-01968, 2009 WL 2433468 *8 (S.D.W. Va. 2009) ("MDL Courts have observed generally that a

---

[2] IP Plaintiffs incorrectly cite *Korean Air* in support of their argument that the consolidated complaint "creates original jurisdiction in this Court over those claims." (IP Pls.' Mem. Opp. at 6.) Contrary to IP Plaintiffs argument, the *Korean Air* court was addressing an action originally filed in the Central District of California and consolidated for pretrial proceedings in a multidistrict litigation action in that same district when it said: "Where, as here, the particular case at issue is initiated in the transferee court's district, the district court's jurisdiction is not always similarly circumscribed to purely pretrial proceedings." *Korean Air*, 2011 WL 1458794 *11 n.13. Unlike the complaint at issue in *Korean Air*, none of the IP Plaintiffs' complaints were originally filed in the District of Idaho.

'master complaint should not be given the same effect as an ordinary complaint,'" and "should be considered as only an administrative device to aid efficiency and economy"(internal citation omitted)); *In re Nuvaring Products Liab. Litig.*, 2009 WL 2425391 *2 (E.D. Mo. 2009) (holding that "the filing of the master consolidated complaint in this action was simply meant to be an administrative tool to place in one document all of the claims at issue in this litigation"); *Unified and Consolidated Complaints in Multidistrict Litig.*, 132 F.R.D. 597, 597-98 (1991) ("consolidation is intended only as a procedural device to promote judicial efficiency and economy").

Contrary to IP Plaintiffs' assertion, the transferee court is not vested with the authority to transfer consolidated actions to itself.  In *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, et al.*, 523 U.S. 26 (1998) ("*Lexecon*"), the U.S. Supreme Court held that 28 U.S.C. § 1407 obligates the multidistrict litigation panel to remand a consolidated case to its originating court when pretrial proceedings end.  This decision barred a transferee court from transferring a consolidated action to itself for trial.  *Id.*  As noted by IP Plaintiffs in their opposition, the filing of a consolidated complaint does not waive remand.[3]  The multidistrict litigation panel is bound by *Lexecon* to remand the separate consolidated actions to the transferor courts for trial.  *See In re Propulsid Products Liab. Litig.*, 208 F.R.D. at 142.[4]

To the extent the IP Plaintiffs intended to assert a separate, independent action in the District of Idaho, they have not done so.  The only action in this multidistrict litigation that

---

[3]  IP Pls.' Mem. Opp. at 3.

[4]  As explained by the Supreme Court in *Lexecon*, 523 U.S. 26, 41 n.4, "§ 1407 precludes a transferee court from granting any § 1404(a) motion. . . ."  "*Lexecon*'s reasoning applies equally to transfers pursuant to any venue statute."  *Shah v. Pan Am. World Servs., Inc.*, 148 F.3d 84, 90 (2d Cir. 1998).  *See also In re W. States Wholesale Natural Gas Antitrust Litig.*, Case No. 2:03-cv-01431, 2010 WL 2539728 6 (D. Nev. June 4, 2010) (holding that dismissal rather than transfer was appropriate where, absent a waiver from Plaintiffs, § 1407(a) precludes transfer).

originated in this District is the DP Plaintiff action captioned as *Brigiotta's Farmland Produce and Garden Center, Inc. v. United Potato Growers of Idaho, Inc., et al.*, Case No. 4:10-cv-307 (D. Idaho filed 6/18/10).  It is, accordingly, appropriate that motions to dismiss on grounds of improper venue and lack of jurisdiction, which are derived from the transferor court, are framed as challenges to claims asserted in the transferred actions rather than to the consolidated complaint.

**2.    Venue is Not Supported by the Clayton Act or the General Venue Statute.**

The defendants are not subject to venue in the Transferor Districts.  Plaintiffs have, by omission, conceded many of the statutory bases for venue under Sections 4 and 12 of the Clayton Act and under 28 U.S.C. § 1391.  In their response, IP Plaintiffs make two arguments in support venue, neither of which is sufficient.  First, the nationwide service provision of the Clayton Act does not confer venue.  Second, the forum of an indirect purchaser's alleged injury is not a substantial part of the events in an antitrust action.

The nationwide service provision of the Clayton Act confers personal jurisdiction over corporate defendants, not venue.  *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1179-80 (9th Cir. 2004) (recognizing that Clayton Act § 12 (15 U.S.C. § 22) confers nationwide personal jurisdiction over corporate defendants).[5]  The Clayton Act's venue provisions require that the defendant resides, is an inhabitant, is found, has an agent, or transacts business in the district.  15 U.S.C. §§ 16, 22.  Plaintiffs have not alleged facts to support any of

---

[5]  But *see Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005) (holding that nationwide service under the Clayton Act only confers personal jurisdiction when the statute's venue requirements are met).  Accordingly, IP Plaintiffs' contention that "the cure for improper venue is not dismissal, but transfer to a district with proper venue" is not well founded.  (IP Pls.' Mem. Opp. at 8.)

- 5 -

these requirements and have not argued in their Opposition that such facts exist.  Accordingly, venue is not proper under the Clayton Act.

IP Plaintiffs have also failed to allege facts sufficient to confer venue under the general venue provision of the judicial code.  Plaintiffs do not argue that venue is proper under 28 U.S.C. 1391(a) or (c).  They only assert venue under 28 U.S.C. 1391(b) – "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred" – based on the IP Plaintiffs' alleged injury in the Transferor Districts.  A plaintiff's alleged injury is not a substantial part of the events giving rise to an antitrust claim.  *See Sanderson v. Spectrum Labs, Inc.*, 227 F. Supp. 2d 1001, 1007 (N.D. Ind. 2000) *aff'd* 248 F.3d 1159 (7th Cir. 2000) (holding that an allegation of injury in the district, without more, does not confer venue for purposes of a motion to dismiss); *Redmond v. Atl. Coast Football League*, 359 F. Supp. 666, 669 (S.D. Ind. 1973), *aff'd* 478 F.2d 1405 (7th Cir. 1973) (holding that "while it may be appropriate in tort cases to find that the plaintiff's cause of action arose in the jurisdiction where the injury occurred, the current trend is to view this as a simplistic rationale to which antitrust actions are not susceptible").[6]  Lacking a statutory basis for venue in the Transferor Districts, the IP Plaintiffs' claims against the defendants should be dismissed.

---

[6] IP Plaintiffs contend that their complaints "target a nationwide cartel."  To the extent the IP Plaintiffs hope to establish venue through a conspiratorial theory, such efforts have been soundly rejected.  *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 495 (9th Cir. 1979) ("venue in a private antitrust action cannot be solely based on allegations that a defendant was a member of a conspiracy and that a co-conspirator performed acts in the forum district").  *Accord Anrig v. Ringsby United*, 603 F.2d 1319, 1326 (9th Cir. 1978); *Karsten Mfg. Corp. v. U.S. Golf Ass'n*, 728 F. Supp. 1429, 1434 (D. Ariz. 1990); *Eaby v. Richmond*, 561 F. Supp. 131, 140 n.2 (E.D. Pa. 1983); *Farmers Bank of State of Del. v. Bell Mortg. Co.*, 452 F. Supp. 1278, 1281 n.5 (D. Del. 1978).

- 6 -

3.     **The IP Plaintiffs Do Not Have Personal Jursidiction in the Transferor Courts.**

Plaintiffs bear the burden of proving personal jurisdiction against each defendant. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Conclusory allegations without more are insufficient to defeat a motion to dismiss.  *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 805 (9th Cir. 1988) (dismissing claims where plaintiffs did not "allege[] facts which would support a prima facie case for personal jurisdiction").  The IP Plaintiffs concede that they have not alleged general jurisdiction against the defendants.  (IP Pls.' Mem. Opp. at 9.)  They have not alleged facts sufficient to support a showing of specific jurisdiction.

The IP Plaintiffs asserted claims against Albert Wada, Michael Cranney, Keith Cornelison and Lance Funk in their individual capacities.[7]  Without citing any of the particular allegations of their consolidated complaint, the IP Plaintiffs argue that they have pled elements of the three prong test articulated in *Cornelius v. DeLuca*, 709 F. Supp. 2d 1003, 1010-1011 (D. Idaho 2010).  The IP Plaintiffs' conclusory allegations are insufficient to demonstrate a factual basis for personal jurisdiction to survive a motion to dismiss.  *See, e.g., Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122 (9th Cir. 2003) (in response to motion to dismiss for lack of jurisdiction, a plaintiff needs to demonstrate facts that if true would support jurisdiction over the defendant).  For example, in the "Interstate and Intrastate Trade and Commerce" section of the consolidated complaint, the IP Plaintiffs allege that "Defendants conducted business throughout the United States and purposefully availed themselves of the laws of the United States."  Such allegations are devoid of any facts which would support a probable

---

[7]  Individuals are not subject to the nationwide service provision of the Clayton Act.  15 U.S.C. § 22 ("Any suit, action, or proceeding under the antitrust laws against a corporation, . . . may be served in the district of which it is an inhabitant, or wherever it may be found") (emphasis added).

inference that Wada, Cranney, Cornelison or Funk purposefully availed themselves of the privilege of conducting business in California, Wisconsin or Vermont.  Accordingly, the claims asserted against Wada, Cranney, Cornelison and Funk in the Transferor Districts should be dismissed for want of personal jurisdiction.

The corporate defendants present a more complex personal jurisdiction question.  As discussed in defendants' initial memorandum, the Ninth Circuit and Second Circuit are split in their interpretation of the nationwide service provision of the Clayton Act.  The Ninth Circuit maintains that 15 U.S.C. § 22 confers nationwide personal jurisdiction over corporate defendants.  *Action Embroidery Corp.*, 368 F.3d at 1179-80.  The Second Circuit holds that the Clayton Act only confers personal jurisdiction when the statute venue requirements are met.  *Daniel v. Am. Bd. of Emergency Med.,* 428 F.3d 408 (2d Cir. 2005).  The defendants respectfully submit that the Second Circuit has adopted the correct interpretation of 15 U.S.C. § 22 as applied to the instant case.  The interpretation adopted by the Ninth Circuit has particularly harsh consequences if applied under the circumstances of this action, seemingly establishing personal jurisdiction for pretrial purposes, and then requiring the corporate defendants to reassert their personal jurisdiction defenses following remand for dismissal under the law of the Second Circuit.  Accordingly, the corporate defendants affirmatively assert the defense of personal jurisdiction in all of the IP Plaintiff actions, and particularly in *Rizzo v. United Potato Growers of America, Inc.* originating in the Second Circuit District of Vermont.  Because the IP Plaintiffs have not made any non-conclusory allegations upon which to base jurisdiction, to the extent the corporate defendants are not subject to nationwide service, the claims against them should be dismissed for lack of personal jurisdiction.

- 8 -

### B.     PLAINTIFFS MUST PLEAD SPECIFIC FACTUAL ALLEGATIONS AS TO EACH DEFENDANT.

The long-accepted rule was that a "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561, 127 S.Ct. 1955, 1968 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In *Twombly*, however, the Supreme Court wrote: "this famous observation has earned its retirement." 127 S. Ct. at 1969.

Now, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Id*. These facts must allow a court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Rather than meet this standard, plaintiffs seek to have this Court avoid it.

Contrary to their characterization of case law, Plaintiffs are not excused from providing individualized allegations against each individual defendant. Plaintiffs must make allegations that "plausibly suggest that ***each Defendant participated in the alleged conspiracy***." *See In re Static Random Access Memory (SRAM) Antitrust Litig.,* 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008) ("*SRAM*") (emphasis added); *see also Hinds County, Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 513 (S.D.N.Y. 2009).

Plaintiffs "***must allege that each individual defendant . . . played some role*** in [the conspiracy] because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (emphasis added) (quoting *In re Elec. Carbon Prods. Antitrust Litig.,* 333 F. Supp. 2d 303, 311-12 (D.N.J. 2004)). General allegations as to a single group or a

single entity are insufficient to put the remaining defendants on notice of the claims against them as required by Federal Rule of Civil Procedure 8.  *See, e.g., id.*

Moreover, the Supreme Court in *Twombly* "suggested that to allege an agreement between antitrust co-conspirators, the complaint must allege facts such as a 'specific time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin."  *Kendall v. VISA U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1970 n.10); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007); *Hinds County,* 620 F. Supp. 2d at 513; *In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 962 (N.D. Cal. 2007).  Plaintiffs attempt to distinguish *Kendall*, in part, on the basis that the plaintiffs in that action were permitted to conduct limited discovery and still failed to assert allegations as to "who, did what, to whom (or with whom) . . . ."  *Kendall*, 518 F.3d at 1048.[8]  In so doing, plaintiffs implicitly request that the Court permit them to compel discovery of the multitude of defendants in this case in the hope of turning up evidence of wrongdoing.  This, however, is one of the central evils which the Supreme Court sought to prevent in *Twombly*. 127 S. Ct. at 1967.[9]

Even authority cited by Plaintiffs in an effort to avoid providing the who, what, when and where of agreement, acknowledges that it is the exception that a party can escape the specificity requirement.  In *In re Packaged Ice Antitrust Litigation* – a post-*Twombly* decision – the court acknowledged that "parallel conduct and bare assertion of conspiracy no longer supply an

---

[8]  *See* IP Pls.' Mem. Opp. at 15.

[9]  As recently explained by the Seventh Circuit:  "When a district court by misapplying the *Twombly* standard allows a complex case of extremely dubious merit to proceed, it bids fair to immerse the parties in the discovery swamp – 'that Serbonian bog . . . where armies whole have sunk.'"  *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625-26 (7th Cir. 2010) (quoting *Paradise Lost* ix 592-594).  It is such a bog that must be avoided here where the required specific allegations of each individual defendant's role and agreement is unspecified.

- 10 -

adequate foundation to support a plausible § 1 claim." 723 F. Supp. 2d 987, 1007 (E.D. Mich. 2010) (citing *In re Travel Agent Comm'n. Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009)). The court, however, excused the lack of specificity based upon the "level of factual content proffered." *Id.* at 1006. This factual content included "government and internal investigations of the very corporate entities and individual executives involved on the same claims of conspiracy as well as guilty pleas by the defendants and their executives to the same anticompetitive conduct in a significant market." *Id.* There are no similar allegations here. There is no basis on which to excuse the specificity of factual allegations generally required.

### C.   CONCLUSORY ALLEGATIONS DO NOT SUFFICE TO AVOID DISMISSAL.

Plaintiffs assert in their complaints that the various grower defendants "participated" in or "signed onto" an alleged supply-restriction and price-fixing "scheme as alleged herein."[10] These are conclusory allegations and must be disregarded. Similarly, plaintiffs allege that United II was part of a supply reduction scheme relying on hypothetical and conclusory allegations which do not support this contention. That is, they allege that the joint venture between United II and R.D. Offut Co. ("RDO") was an "important tool" of UPGI for ensuring "long-term stability" with the objective of "improving growers' returns."[11] These are not factual allegations of any act or agreement by United II to reduce supply.

The allegations identified here, and more fully in Certain Defendants' moving papers, are nothing more than generalized and conclusory statements which are not sufficient to avoid dismissal. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004). Not only do these allegations offer no clues as to who agreed and when, but they do not even specify to

---

[10]  *See, e.g., First Amended Class Action Complaint* (Docket 39) (hereafter "DP Compl.") ¶¶ 30-32, 45, 91, 94, 97, 103, 112, 170, 246; *First Amended Class Action Complaint* (Docket No. 63) (hereafter ,"IP Compl.") ¶¶ 45, 67, 79, 97, 102, 105, 113, 124, 208, 268.

[11]  *See, e.g.,* DP Compl. ¶¶ 318-319, 321-322; IP Compl. ¶¶ 331-332, 334-335.

what the parties allegedly agreed.  Rather, plaintiffs leave it to the defendants to deduce from

hundreds of paragraphs what wrong they allegedly committed.  This is not the notice required by

Rule 8.  *See, e.g., Twombly*, 127 S. Ct. at 1966; *In re Elevator Antitrust Litig.*, 502 F.3d at 50-51.

### D.   PLAINTIFFS HAVE NOT IDENTIFIED ANY UNLAWFUL AGREEMENT OR OVERT ACTION BY UNITED II TO SUPPORT A CLAIM AGAINST IT.

Crucial to the pleading of an antitrust claim is that the complaint "must contain 'enough

factual matter (taken as true) to suggest that an agreement [to engage in anticompetitive conduct]

was made.'"  *In re Elevator Antitrust Litig,* 502 F.3d at 50 (alteration in original) (quoting

*Twombly*, 127 S. Ct. at 1965).  Plaintiffs have not made such factual allegations to justify the

continued participation of United II in this lawsuit.

According to the operative complaints, the agreements entered into by United II were an

agreement with RDO to form Idahoan to "create a broad network of potato processing plants

with convenient access to markets and to customers"[12]; an agreement with Idahoan for the supply

of potatoes from United II's members[13]; and the growers' membership agreements in United II

which required membership in UPGI.[14]  Plaintiffs allege that the dehydration plants operated by

Idahoan received surplus potatoes provided by the member growers of United II in furtherance of

supply reduction efforts.  These alleged agreements, however, do not present a plausible claim

for an illegal antitrust conspiracy against United II.

---

[12]  *See* DP Compl. ¶¶ 28, 118, 120, 122; IP Compl. ¶¶ 47-48, 131, 156.

[13]  *See* DP Compl. ¶¶ 28, 316, 318; IP Compl. ¶ 47.

[14]  *See* DP Compl. ¶ 316; IP Compl. ¶ 329.

### 1. The Alleged Agreements by United II Are Statutorily Authorized.

Plaintiffs allege that United II is a cooperative comprised of potato growers.[15]  In response to pending motions, plaintiffs vigorously argue that Capper-Volstead protections for such a cooperative apply only to post-planting activities.  Plaintiffs specifically reference the language of the Capper-Volstead Act which permits: "processing, preparing for market, handling, and marketing" of agricultural products.[16]  Similarly, and more importantly, United II, as a cooperative of growers, is statutorily authorized to "make the necessary contracts and agreements to effect" the permitted activities including entering into contracts for the processing of agricultural products.  7 U.S.C. § 291.  It is this type of authorized agreement that is alleged to have been made by United II.

No agreement between UPGI and United II is alleged, whether for acreage reduction or otherwise.  Rather, the sole agreements between United II and RDO and between United II and Idahoan pled by the IP Plaintiffs involved the formation of the Idahoan joint venture which created "a broad network of *potato processing plants* with convenient access to *markets and to customers*."[17] (emphasis added).  That is, the agreements fall squarely within the statutory authorization permitting associations of growers to enter into contracts for the purpose of "processing, preparing for market, handling, and marketing" of agricultural products."  7 U.S.C. § 291.  Similarly, the membership agreement between United II and its members, while alleged

---

[15]  See DP Compl. ¶¶ 28-29; IP Compl. ¶ 47.

[16]  *Plaintiff Brigiotta's Farmland Produce and Garden Center, Inc.'s Memorandum in Opposition to Joint Motion to Dismiss No. 85 Based on the Capper-Volstead Act and Related Statutes* (Docket No. 111) at 12.

[17]  DP Compl. ¶¶ 122; IP Compl. ¶ 156.

to require membership in UPGI, does not implicate pre-planting supply.  Thus, those agreements are also within the authorization of the Capper-Volstead Act.

>    **2.    The Alleged Agreements Do Not Plausibly Suggest a Violation of the Antitrust Laws by United II.**

The alleged United II agreements are specifically authorized by the Capper-Volstead Act.  But even if they were not, these agreements are simply not anticompetitive.

The agreement between RDO and United II created Idahoan – a business which purchases potatoes for processing and marketing.[18]  Plaintiffs allege that the potatoes for the Idaho and Nevada dehydration facilities operated by the joint venture are supplied by United II growers.[19]  The motives of the sellers of potatoes to Idahoan, however, are immaterial to the transactions conducted.  *See, e.g., Imperial Constr. Mgmt. v. Laborers Union Int'l*, 729 F. Supp. 1199, 1210 (N.D. Ill 1990) (no presumption of participation in conspiracy because of receipt of some benefit from the conspiracy of another).  It is immaterial that the United II's members are also members of UPGI.  Even if UPGI committed some anticompetitive wrong in pre-planting supply reduction – which it has not – that is an issue for UPGI and its members.  It is not an issue for United II and its members which supply potatoes to Idahoan for processing and marketing.

Producers desire to sell potatoes.  Idahoan desires to purchase potatoes.   Idahoan buys producers' potatoes.  The law has long held that an ordinary purchase contract is not sufficient to bind a party to a conspiracy.  *See, e.g., Rick-Mik Enters., Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 976 (9th Cir. 2008); *49er Chevrolet, Inc. v. Gen. Motors Corp.,* 803 F.2d 1463, 1467 (9th Cir. 1986).  Plaintiffs attempt to characterize the relationship between United II and Idahoan as

---

[18]  DP Compl. ¶¶ 28, 119, 316, 321; IP Compl. ¶¶ 47, 329, 334.

[19]  DP Compl. ¶¶ 28, 316; IP Compl. ¶¶ 47, 329.

something pernicious.  Regardless of the characterizations, the facts alleged show that the arrangement is an ordinary commercial arrangement which is not actionable.

Plaintiffs characterize the joint venture between RDO and United II as "an outlet for surplus fresh potatoes."[20]  By so doing, plaintiffs acknowledge that United II's participation in Idahoan is inconsistent with a conspiracy to reduce supply.  That is, in the event of a surplus of fresh potatoes for any variety of reasons, the dehydration venture, as alleged, merely serves as one of a multitude of potential destinations for fresh potatoes already harvested for which the fresh potato market is only one potential destination.  In the absence of United II and the alleged joint venture, this surplus would still remain and be addressed through other means.  By way of example, the potatoes might be placed with a different processer.  And, plaintiffs acknowledge that they do not seek to "address the impact of the dehydration venture on market competition."[21] United II's interest in obtaining supply for processing is not indicative of an anticompetitive agreement to reduce supply through pre-planting acreage reduction with UPGI or any other party.

### E. PLAINTIFFS HAVE FAILED TO MAKE FACTUAL ALLEGATIONS SUGGESTING PARTICIPATION OF EACH MOVING DEFENDANT GROWER IN AN ALLEGED CONSPIRACY.

The allegations specifically referencing each of the moving grower defendants are identified in their moving papers and are not repeated here.[22]  The vague and conclusory allegations against the moving defendant growers predominantly pertain to their status as

---

[20]  DP Compl. ¶ 318; IP Compl. ¶ 48.

[21]  DP Pls.' Mem. Opp. at 29.

[22]  The moving defendant growers include Albert Wada; Wada Farms, Inc.; Wada Farms Potatoes, Inc.; Wada-Van Orden Potatoes, Inc.; Wada Farms Marketing Group, LLC; Michael Cranney; Keith Cornelison; Cornelison Farms, Inc.; Snake River Plains Potatoes, Inc.; Lance Funk; and Raybould Brothers Farms, LLC.

members of and participants in the defendant cooperatives.  Such allegations are not sufficient to

suggest that "*each* Defendant participated in the alleged conspiracy" as required.  *See SRAM*,

580 F. Supp. 2d at 904 (N.D. Cal. 2008) (emphasis added).

"Generally, there is nothing particularly nefarious in attending industry functions."  *In re*

*Flash Memory Antitrust Litig.,* 643 F. Supp. 2d 1133, 1148 (N.D. Cal. 2009).  Similarly, there is

nothing inherently improper with membership and participation in industry trade associations.

*See In re Citric Acid Litig.,* 191 F.3d 1090, 1098 (9th Cir. 1999).  The focus of the allegations is

on the status of defendant growers and their participation as members of the defendant

cooperatives.[23]

It is generally true, as plaintiffs contend, that courts have recognized that affiliations with

trade associations and attendance at industry events may be alleged to show that putative

conspirators had the opportunity and means to develop and/or further their alleged collusive

scheme.  But, such allegations cannot alone support plaintiffs' claims.  *See, e.g., SRAM*, 580 F.

Supp. 2d at 903.  This is consistent with Section 6 of the Clayton Act and Section 1 of the

Capper-Volstead Act which immunize the members of a cooperative from prosecution as

conspirators under the antitrust laws.  Section 6 of the Clayton Act provides in unambiguous

language that a cooperative and its members cannot "be held or construed to be illegal

combinations or conspiracies in restraint of trade under the antitrust laws."  15 U.S.C. § 17

---

[23] *See, e.g.,* Raybould Brothers:  DP Compl. ¶¶ 112, 114, 194; IP Compl. ¶¶ 124, 126, 232;
Lance Funk: DP Compl.  ¶¶ 103-105; IP Compl. ¶¶ 112, 114; Snake River: DP Compl. ¶¶ 98-99;
IP Compl. ¶¶ 106-107; Cornelison Farms:  DP Compl. ¶¶ 40, 95-96, 197; IP Compl. ¶¶ 95, 98,
205; Keith Cornelison: IP Compl. ¶ 96; Michael Cranney: DP Compl. ¶¶ 92, 93, 290; IP Compl.
¶¶ 99, 101, 103, 306; Wada Marketing: DP Compl. ¶¶ 46-47; IP Compl. ¶¶ 76-77; Wada Van
Orden: DP Compl. ¶ 32; IP Compl. ¶ 63; Wada Potatoes: DP Compl. ¶ 31; IP Compl. ¶ 62;
Wada Farms: DP Compl. ¶¶ 31, 33-34, 37-38; IP Compl. ¶¶ 62, 65, 68, 71.

(1914).[24]  Significantly, Congress intended to eliminate any fear by farmers that they could be exposed to personal litigation and the threat of prosecution because of the formation and operations of their cooperatives.  59 CONG. REC. 7851-2 (1920); *see also* 62 CONG. REC. 2059, 2259 (1922).[25]

The allegation that certain moving defendant growers acted as officers or directors of the defendant cooperatives is similarly deficient.  As made clear long ago, the allegation that a defendant is an officer or director of a defendant entity is not sufficient alone to hold those defendants to answer to an antitrust complaint.  *Kline v. Coldwell Banker & Co.*, 508 F.2d 226, 232 (9th Cir. 1974).

Plaintiffs also acknowledge that one of the purposes of the defendant cooperatives of which the moving defendant growers were members was for the dissemination and receipt of agricultural and market data.[26]  The dissemination or receipt of agricultural and market information, however, cannot form the basis of an antitrust complaint as a matter of law. Cooperative Marketing Act of 1926, 7 U.S.C. § 455 (1926); *see also Treasure Valley Potato Bargaining Ass'n v. Ore-Ida Foods, Inc.,* 497 F.2d 203, 214 (9th Cir. 1974).

---

[24] "The general effect of § 6 was to assure that the existence of agricultural organizations *per se* would not be deemed to be an illegal conspiracy or restraint of trade, and that the members . . . would not be judicially harassed under the antitrust laws for combining to carry out the legitimate objects of the organization."  *N. Calif. Supermarkets v. Cent. Calif. Lettuce Producers, Coop.*, 413 F. Supp. 984, 988 (N.D. Cal. 1976), *aff'd*, 580 F.2d 369 (9th Cir. 1978); *see also* H.R. REP. No. 627, 63d CONG., 2d Sess. (1914), H.R. Rep. No. 627, 63d Cong., 63d Sess. at 16 (1914); S. REP. No. 698, 63d CONG., 2d Sess. at 12 (1914).

[25] The Supreme Court applied this rationale to legal entities within a cooperative structure as well as extended it to non-cooperative corporate entities because they shared a unitary interest. *Sunkist Growers v. Winkler & Smith Citrus Prods.*, 370 U.S. 19, 27-28 (1962); *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 773 n.21 (1984); *see also Am. Needle, Inc. v. NFL*, 130 S. Ct. 2201 (2010).  The rationale also applies to the officers, directors and employees of an entity or cooperative.  *Bell v. Fur Breeders Agric. Corp.*, 348 F.3d 1224, 1233-35 (10th Cir. 2003).

[26] *See, e.g.,* IP Pls.' Mem. Opp. at 26.

Plaintiffs have attempted to skirt the fact that there is nothing inherently disreputable in the moving defendants' cooperative membership and participation by suggesting that the cooperatives were formed with the intent to commit antitrust violations.  In fact, by their own admission, plaintiffs acknowledge that defendants joined the cooperative "believing erroneously that the Capper-Volstead grants them full immunity from the antitrust laws . . . ."[27]  That is, the cooperatives were not intended to violate any law and there is no allegation tying any individual defendant to an agreement in violation of § 1 of the Sherman Act.[28]

Plaintiffs' allegations as to the individual defendants amount to nothing more than a description of conduct which is innocent as a matter of law but told with a censorious tone.  At most, the individual defendants were members, officers and directors of cooperatives which shared market and agricultural information.  None of this conduct is prohibited or indicative of an antitrust conspiracy.  Where allegations are subject to both an inference of prohibited conduct and an equally plausible inference of permissible conduct, the complaint should be dismissed. *See, e.g., Twombly*, 127 S. Ct. at 1966 n.5 (pleadings must cross the line between the "factually neutral and the factually suggestive."); *see also In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007) (finding allegations of parallel conduct insufficient where they were "equally consistent with lawful conduct.").  In such a case, the plaintiffs have failed to "nudge[ ] their claims across the line from conceivable to plausible" and their complaint must be dismissed.  *Twombly*, 127 S. Ct. at 1974.

---

[27]  DP Pls.' Mem. Opp. at 3.

[28]  This issue is explored in detail in the motion to dismiss based upon Capper-Volstead and is not restated here.

## III.  CONCLUSION

Accordingly, for the reasons set forth herein and in Certain Defendants' moving papers, Certain Defendants hereby respectfully request that the Court enter an order: (1) dismissing the claims of the IP Plaintiffs against identified defendants for lack of jurisdiction and improper venue; (2) dismissing the claims of the IP Plaintiffs and the DP plaintiffs against United II for failure to sufficiently plead a plausible anticompetitive agreement; and (3) dismissing the claims of the IP Plaintiffs and the DP plaintiffs against those identified moving grower defendants for failure to plead sufficient factual information suggesting that their participation in an antitrust conspiracy is plausible and because the actions alleged are statutorily authorized and protected.

Respectfully submitted on June 3, 2011.


By: /s/ _____
JONES WALDO HOLBROOK & MCDONOUGH PC
James S. Lowrie
Andrew G. Deiss
Billie J. Siddoway

HOLLAND & HART LLP
James E. Hartley
Steven B. Andersen

PORTER WRIGHT
Donald M. Barnes
Salvatore A. Romano

*Counsel for United Potato Growers of Idaho, Inc.; United Potato Growers of America, Inc.; United II Potato Growers of Idaho, Inc.; Albert Wada; Wada Farms, Inc.; Wada Farms Potatoes, Inc.; Wada-Van Orden Potatoes, Inc.; Wada Farms Marketing Group, LLC; Michael Cranney; Keith Cornelison; Cornelison Farms, Inc.; Snake River Plains Potatoes, Inc.; and Raybould Brothers Farms LLC*

977216.6

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 3rd day of June, 2011, I caused the foregoing to be electronically filed through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Albert P. Barker
abp@idahowaters.com

Allen Steyer
asteyer@steyerlaw.com

Andrew G. Deiss
adeiss@joneswaldo.com

Arthur N. Bailey, Jr.
abailey@hausfeldllp.com

Bart M. Davis
bmdavis@bmdlaw.net

Benjamin Andrew Schwartzman
bschwartzman@bwslawgroup.com

Billie Jean Siddoway
bsiddoway@joneswaldo.com

Bonny E. Sweeney
bonnys@rgrdlaw.com

Brad P. Miller
bmiller@hawleytroxell.com

Bruce S. Bistline
bbistline@gordonlawoffices.com

Carmen A. Medici
cmedici@rgrdlaw.com

Christopher Emrich Ondeck
condeck@crowell.com

Chad V. Bonanni
chad@essex.bpflegal.com

Daniel G. Swanson
dswanson@gibsondunn.com

Daniel M. Cohen
danielc@cuneolaw.com

David J. Syrios
dsyrios@ademilaw.com

David R. Lombardi
drl@givenspursley.com

Donald Michael Barnes
dbarnes@porterwright.com

Donald Amamgbo
Donald@amamgbolaw.com

Douglas A. Millen
dmillen@fklmlaw.com

Elizabeth McKenna
emckenna@milberg.com

Eugene A. Spector
espector@srkw-law.com

Gregory L. Crockett
gregcrockett@hopkinsroden.ocm

Guri Ademi
gademi@ademilaw.com

Hollis Salzman
hsalzman@labaton.com

James A. Wilson
jawilson@vorys.com

James E. Hartley
jhartley@hollandhart.com

James S. Lowrie
jlowrie@joneswaldo.com

James Pizzirusso
jpizzirusso@hausfeldllp.com

Jay L. Himes
jhimes@labaton.com

Jay S. Cohen
jcohen@srkw-law.com

Jeffrey L. Spector
jspector@srkw-law.com

John Michael Avondet
javondet@beardstclair.com

Jon T. King
jking@hausfeldllp.com

Joseph Michael Barton
jbarton@glancylaw.com

Julio Joaquin Ramos
ramosfortrustee@yahoo.com

Kimberly A. Kralowec
kkralowec@kraloweclaw.com

Lionel Z.  Glancy
lglancy@glancylaw.com

Lauren Block
lblock@milberg.com

Mark A Griffin
mgriffin@kellerrohrback.com

Matthew McBurney
mmcburney@crowell.com

Matthew S. Wild
mwild@wildlawgroup.com

Michael D. Gaffney
gaffney@beardstclair.com

Michael P. Lehmann
mlahmann@hausfeldllp.com

Michael M. Goldberg
mmgoldberg@glancylaw.com

| | | |
|---|---|---|
| Michael Kowsari<br>mkowsari@girardikeese.com | Robert Rosenfeld<br>rrosenfeld@orrick.com | Steven A. Asher<br>asher@wka-law.com |
| Mindee J. Reuben<br>reuben@wka-law.com | Ronald J. Aranoff<br>aranoff@bernlieb.com | Steven A. Kanner<br>skanner@fklmlaw.com |
| Monte N. Stewart<br>stewart@belnaplaw.com | Salvatore Anthony Romano<br>sromano@porterwright.com | Steven B. Andersen<br>sandersen@hollandhart.com |
| Neil D. McFeeley<br>nmcfeeley@eberle.com | Samuel G. Liversidge<br>sliversidge@gibsondunn.com | Steven Bomse<br>sbomse@orrick.com |
| Paul Novak<br>pnovak@milberg.com | Sharron Williams Gelobter<br>sgelobter@yurumeinlaw.com | Wade L. Woodard<br>wwoodard@bwslawgroup.com |
| Peter Safirstein<br>psafirstein@milberg.com | Shpetim Ademi<br>sademi@ademilaw.com | William L. Greene<br>William.greene@leonard.com |
| Michael D. Gaffney<br>gaffney@beardstclair.com | Stephen R. Thomas<br>srt@moffatt.com | William V. Reiss<br>wreiss@labaton.com |
| Michael P. Lehmann<br>mlahmann@hausfeldllp.com | Susan G. Kupfer<br>skupfer@glancylaw.com | Winston V. Beard<br>winston@beardstclair.com |

In addition, a true and correct copy of the foregoing was caused to be sent by United States mail, postage prepaid to the following attorneys not registered to receive electronic notice via CM/ECF:

Charles Slidders
One Pennsylvania Plaza, 48th Fl
New York, NY 10119

/s/  Billie J. Siddoway