James S. Lowrie
    jlowrie@joneswaldo.com
Andrew G. Deiss
    adeiss@joneswaldo.com
Billie J. Siddoway (ISB# 6628)
    bsiddoway@joneswaldo.com
JONES WALDO HOLBROOK & MCDONOUGH PC
170 South Main Street, Suite 1500
Salt Lake City, UT 84101
Telephone: (801) 521-3200
Facsimile: (801) 328-0537

Steven B. Andersen (ISB #2618)
    sandersen@hollandhart.com
HOLLAND & HART LLP
101 S Capital Boulevard, Suite 1400
Boise, ID 83701-2527
Telephone: (208) 342-5000
Facsimile: (208) 343-8869

James E. Hartley
    jhartley@hollandhart.com
HOLLAND & HART LLP
555 Seventeenth St., Suite 3200
Denver, CO 80201-8749
Telephone: (303) 295-8000
Facsimile: (303-295-8261

Donald M. Barnes
    dbarnes@porterwright.com
Salvatore A. Romano
    sromano@porterwright.com
PORTER WRIGHT
1919 Pennsylvania Ave, N.W., Suite 500
Washington, D.C. 20006
Telephone: (202) 778-3056
Facsimile: (202) 778-3063

*Counsel for United Potato Growers of Idaho, Inc.; United Potato Growers of America, Inc.; United II; Potato Growers of Idaho, Inc.; Albert Wada; Wada Farms, Inc.; Wada Farms Potatoes, Inc.; Wada-Van Orden Potatoes, Inc.; Wada Farms Marketing Group, LLC; Michael Cranney; Keith Cornelison; Cornelison Farms, Inc.; Snake River Plains Potatoes, Inc.; and Raybould Brothers Farms LLC*

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| IN RE: FRESH AND PROCESS POTATOES ANTITRUST LITIGATION | Case No. 4:10-md-02186-BLW |
| THIS DOCUMENT RELATES TO: | **REPLY TO [112] INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO [82] DEFENDANTS' MOTION TO DISMISS THE INDIRECT PURCHASER PLAINTIFFS' CLAIMS** |
| *Brigiotta's v. United Potato Growers of Idaho, Inc., et al.*, Case No. 4:10-cv-307 | |
| *Simon v. United Potato Growers of Idaho, Inc., et al.*, Case No. 4:10-cv-520 | |
| *Heiden, et al v. United Potato Growers of America, Inc., et al.*, Case No. 4:10-cv-546 | |
| *Rizzo, et al. v. United Potato Grower of America, Inc., et al.*, Case No. 4:10-cv-576 | |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT ...............................................................................................................2

  A.  Federal Law Pre-empts Plaintiffs' State Law Claims.......................................2

  B.  The Plaintiffs Lack Standing to Bring Claims Arising from the Laws of
       Jurisdictions in Which They Have Not Been Injured. ........................................3

  C.  The Plaintiffs Lack Antitrust Standing to Assert Their Claims........................11

      1.  The Plaintiffs Do Not Have Automatic Standing. .....................................11

      2.  The Plaintiffs Do Not Satisfy the *AGC* Factors. .....................................14

          a.  The Alleged Injury Is Inherently Vague and Speculative.....................14

          b.  The Relation Between the Alleged Antitrust Act and Injury Is Too
              Remote. ..........................................................................................16

          c.  The Alleged Damages Are Speculative and too Difficult to Calculate. ...............18

          d.  Duplicative Recovery Is Inevitable.....................................................19

  III. CONCLUSION........................................................................................................20

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Amchem Prod., Inc. v. Windsor,* 521 U.S. 591 (1997)............................................................ 3, 4, 5

*Ass'n of Washington Public Hosp. Districts. v. Philip Morris, Inc.*, 241 F.3d 696
    (9th Cir. 2001) ......................................................................................................... 15

*Associated General Contractors of California v. California State Council of
    Carpenters,* 459 U.S. 519 (1983) ...................................... 2, 11, 12, 13, 14, 20, 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 18

*Blue Shield of Virginia, Inc. v. McCready*, 457 U.S. 465 (1982) ................................ 12

*Brothers v. Hewlett-Packard Co.*, No. 06-cv-2254, 2006 WL 3093685
    (N.D. Cal. 2006) ....................................................................................................... 7

*California v. ARC Am. Corp.*, 490 U.S. 93 (1989) ............................................... 11, 19

*Carfango v. Schnitzer*, 591 F. Supp. 2d 630 (S.D.N.Y. 2008).................................... 6

*Catlin v. Hanser*, No. 10-cv-451, 2011 WL 1002736 (S.D. Ind. Mar. 17, 2011)...................... 6, 8

*Cornelius v. Fidelity Nat'l Title Co.,* No. 08–754, 2009 WL 596585
    (W.D. Wash. Mar. 9, 2009)................................................................................. 6, 8

*D.R. Ward Construction Co. v. Rohm and Haas Co.*, 470 F. Supp. 2d 485
    (E.D. Pa. 2006) ........................................................................................................ 18

*Easter v. Am. W. Fin.*, 381 F.3d 948 (9th Cir. 2004) .................................................. 6, 7

*Erickson v. Pardus*, 551 U.S. 89 (2007) .................................................................... 15

*Feheley v. Lai Games Sales, Inc.*, No. 08-23060, 2009 WL 2474061
    (S.D. Fla. Aug. 11, 2009) ........................................................................................ 9

*Ford v. NYLCare Health Plans of Gulf Coast, Inc.,* 301 F.3d 329 (5th Cir. 2002)...................... 6

*Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100 (D. Mass. 2006) .......................... 7

*Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3d Cir. 1996) ................................ 5

*Gunther v. Capital One, N.A.*, 703 F. Supp. 2d 264 (E.D.N.Y. 2010) .......................... 6

*Hoffman v. UBS-AG*, 591 F. Supp. 2d 522 (S.D.N.Y. 2008)........................................ 8

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ................................................. 12, 16

*In re  Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085
    (N.D. Cal. 2007) ................................................................................................. 13, 14

*In re Actimmune Mktg. Litig.*, No. 08-02376, 2009 WL 3740648
    (N.D. Cal. Nov. 6, 2009) ......................................................................................... 8

*In re Aftermarket Filters Antitrust Litig.*, 2010 WL 1416259
    (N.D. Ill. Apr. 1, 2010)........................................................................................... 10

*In re AllianceBernstein Mutual Fund Excessive Fee Litig*., No. 04-cv-4885, 2005
    WL 2677753 (S.D.N.Y. Oct. 19, 2005) .............................................................. 7

*In re Apple & AT&TM Antitrust Litig*., 596 F. Supp. 2d 1288 (N.D. Cal. 2008) ...................... 6, 9

979806

*In re Checking Account Overdraft Antitrust Litig.*, 694 F. Supp. 2d 1302
(S.D. Fla. 2010) .................................................................................................. 8

*In re Ditropan XL Antitrust Litig.,* 529 F. Supp. 2d 1098 (N.D. Cal. 2007) ............................... 6, 9

*In re Eaton Vance Corp. Securities Litig.*, 220 F.R.D. 162 (D. Mass. 2004) ................................. 7

*In re Flash Memory Antitrust Litig.,* 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ...................... 13, 14

*In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524 (E.D. Pa. 2010) .................................... 6, 8, 10

*In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011
(N.D. Cal. 2007) ............................................................................................ 6, 9

*In re Lehman Bros. Sec. and ERISA Litig.*, 684 F. Supp. 2d 485 (S.D.N.Y. 2010) ..................... 8

*In re Napster, Inc. Copyright Litigation*, 354 F. Supp. 2d 1113 (N.D. Cal. 2005) ................ 14, 15

*In re Packaged Ice Litigation*, No. 08-md-01952, 2011 WL 891169
(E.D. Mich. Mar. 11, 2011) ......................................................................... 4, 6, 8

*In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907 (N.D. Ill. 2009) .................................... 6, 8, 12

*In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579
(S.D.N.Y. 2006) .................................................................................................. 7

*In re Terazosin Hydrochloride Antitrust Litig.,* 160 F. Supp. 2d 1365
(S.D. Fla. 2001) .................................................................................................. 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179
(N.D. Cal. 2009) .......................................................................................... 13, 14

*In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009) ........................................ 6, 8

*In re Wells Fargo Mortg.-Backed Certs. Litig.*, 712 F. Supp. 2d 958
(N.D. Cal. 2010) ................................................................................................ 6

*Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199 (1990) ............................................................... 16

*Lewis v. Case*, 518 U.S. 343 (1996) ............................................................................................. 7

*Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003) .................................. 8

*Lyng v. NW. Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988) ......................................... 5

*Lyons v. Coxcom, Inc.*, No. 08-cv-2047, 2009 WL 347285
(S.D. Cal. Feb. 6, 2009) ..................................................................................... 6

*Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379 (1884) ..................................................... 3

*Mull v. Alliance Mortg. Banking Corp.*, 219 F. Supp. 2d 895 (W.D. Tenn. 2002) ...................... 7

*O'Shea v. Littleton*, 414 U.S. 488 (1924) .................................................................................... 8

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1998) ........................................................ 3, 4, 5, 7, 9

*Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002) .......................................... 6

*Sawl v. The Borough of West Kittanning*, No. 10-008, 2010 WL 1444868
(W.D. Pa. Apr. 9, 2010) .................................................................................... 18

*Siemers v. Wells Fargo & Co.*, No. 05-0452006, 2006 WL 3041090
(N.D. Cal. Oct. 24, 2006) ................................................................................... 7

*Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26 (1976) .................................................. 7

*Smith v. Lawyers Title Ins. Corp.*, No. 07-cv-12124, 2009 WL 514210
(E.D. Mich. Mar. 2, 2009) .............................................................................. 6, 8

979806

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)............................................ 3

*Taylor v. Enter. Rent-A-Car Co.*, No. 10-cv-1849, 2011 WL 1195898
    (C.D. Cal. Mar. 30, 2011) .................................................................. 6

*Temple v. Circuit City Stores, Inc.,* Nos. 06CV5303 and 06CV5304, 2007 WL
    2790154 (E.D.N.Y. Sept. 25, 2007) ................................................. 9

*Thomas v. Met. Life Ins. Co.*, 540 F. Supp. 2d 1212 (W.D. Okla. 2008).................................. 6, 7

*Tidd v. Adecco USA, Inc.*, No. 07-11214, 2008 WL 4286512
    (D. Mass. Sep. 17, 2008) ................................................................. 10

*Warth v. Seldin*, 422 U.S. 490 (1975) ........................................................... 3, 7

**STATE CASES**

*Lorix v. Crompton Corp.*, 736 N.W.2d 619 (Minn. 2007) ........................................ 18

**FEDERAL STATUTES**

28 U.S.C.A. § 1332............................................................................... 9

Capper-Volstead Act............................................................................ 2, 20

Class Action Fairness Act..................................................................... 9

Clayton Act, Section 4 ......................................................................... 14

**STATE STATUTES**

Cal. Bus. & Prof. Code § 16750 ............................................................. 11

Minn. Stat. Ann. § 325D.57 ................................................................. 19

N.M. Stat. Ann. § 57-1-3..................................................................... 11, 19

N.Y. Gen. Bus. Law § 340.................................................................... 19

S.D. Codified Laws § 37-1-33 .............................................................. 19

Vt. Stat. Ann. tit. 9, § 2465 ............................................................... 20

**OTHER AUTHORITIES**

Am. Bar Ass'n, *Indirect Purchaser Handbook*, 93 ...................................... 9

Black's Law Dictionary ........................................................................ 15

Linda S. Mullenix, *Standing and Other Dispositive Motions after Amchem and*
    *Ortiz: The Problem of "Logically Antecedent" Inquiries,* 2004 Mich. St. L.
    Rev. 703, 729 (2004)........................................................................ 5

Defendants United Potato Growers of America, Inc.; United Potato Growers of Idaho, Inc; United II Potato Growers of Idaho, Inc; Albert Wada; Wada Farms, Inc.; Wada Farms Potatoes, Inc.; Wada-Van Orden Potatoes, Inc.; Wada Farms Marketing Group, LLC; Michael Cranney; Keith Cornelison; Cornelison Farms, Inc.; Snake River Plains Potatoes, Inc.; Lance Funk; and Raybould Brothers Farms, LLC ("Defendants"), respectfully submit this reply memorandum in response to [112][1] *Indirect Purchaser Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Indirect Purchaser Plaintiffs' Claims in the First Amended Class Action Complaint* ("Opposition") and in further support of [85] *Motion to Dismiss the Indirect Purchasers' Claims* ("Motion").

## I. INTRODUCTION

The Defendants assert that the Capper-Volstead Act not only shields them from federal liability, but also pre-empts the Indirect Purchaser Plaintiffs' ("Plaintiffs") state law claims.  In their Opposition, however, the Plaintiffs concede unequivocally that "if state law precludes activity expressly allowed under federal law, state law is preempted."  On this basis alone, the Court should dispense with these claims.

The Defendants further contend that the Plaintiffs lack standing to assert claims arising from the laws of the thirteen jurisdictions in which they did not suffer injury or reside.  The Plaintiffs concede that they neither reside nor were injured in those jurisdictions, but ask the Court to delay its ruling on standing until after class certification.  As discussed below, the Plaintiffs' argument in support of this delay is based upon a misunderstanding of Supreme Court precedent.  Moreover, the Plaintiffs' approach is inconsistent with the law recognized by the Ninth Circuit as well as numerous other courts that have considered the issue.  The Court should

---

[1]  Unless otherwise indicated, docket numbers refer to *In re Fresh and Process Potatoes Antitrust Litigation*, Case No. 4:10-md-02186-BLW.

make the threshold standing inquiry now and dismiss the Plaintiffs' claims arising from the laws of the District of Columbia, Kansas, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Utah and West Virginia.

Finally, the Plaintiffs cannot escape the fact that indirect purchasers, like direct purchasers, must show antitrust standing. The factors identified in *Associated General Contractors of California v. California State Council of Carpenters,* 459 U.S. 519 (1983) ("*AGC*") provide the Court with the most reasonable approach to determine antitrust standing, a point the Plaintiffs fail to rebut inasmuch as they do not offer any alternative for determining standing. The courts in many of the cases cited by the Plaintiffs, while not explicitly deciding whether a particular state's courts would adopt the *AGC* approach, nonetheless utilize the *AGC* factors to determine the antitrust standing of indirect plaintiffs.

As shown below, nothing in the Plaintiffs' Opposition demonstrate that they have antitrust standing. First, the Plaintiffs' alleged injury is vague and speculative with respect to the composition of the class, the relevant market and the market participants. Second, the Plaintiffs' alleged injury is too attenuated and remote from the alleged anticompetitive act, especially in the case of the so-called "process" potatoes, where there are numerous intervening stages of process and costs. Third, the Plaintiffs damages are difficult to calculate and are too speculative to establish antitrust standing. Fourth, dramatic duplicative recovery is a near certainty. For all these reasons, the Defendants respectfully move the Court to dismiss the Plaintiffs' claims.

## II.  ARGUMENT

### A.    FEDERAL LAW PRE-EMPTS PLAINTIFFS' STATE LAW CLAIMS.

In their opening brief, the Defendants observed that the Capper-Volstead Act preempts contrary state law. (Def's. Mem. Supp. at 2.) Therefore, if the Court concludes that the Defendants conduct is immune under federal law, the state law indirect purchaser claims must

2

also be dismissed. The Plaintiffs concede unequivocally that that is correct: "[I]f state law precludes activity expressly allowed under federal law, state law is preempted."  (Pls.' Mem. Opp. at 23.)  That concession disposes of the preemption issue without more.

**B.**   **THE PLAINTIFFS LACK STANDING TO BRING CLAIMS ARISING FROM THE LAWS OF JURISDICTIONS IN WHICH THEY HAVE NOT BEEN INJURED.**

The Plaintiffs do not contend that they have standing to bring suit based on the laws of the District of Columbia, Kansas, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Utah or West Virginia.  They have not alleged that they reside in or have suffered injury in those jurisdictions.  Rather, they ask the Court to put off what the Supreme Court has called the "threshold" constitutional issue of standing until the class certification stage.  However, precedent from the Supreme Court, the Ninth Circuit, and most other courts that have considered the issue does not support such a delay.

To the contrary, the Supreme Court has repeatedly declared that standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  "The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

Despite this long history, the Plaintiffs point to several cases in which courts have held that it can be proper to evaluate class certification issues before standing.  These courts have largely relied upon a misinterpretation of two related United States Supreme Court opinions, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1998), and *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997).  Particularly, these courts have focused on the Supreme Court's statement in *Ortiz* that,

> [T]he class certification issues [in *Ortiz*] are, as they were in *Amchem*, "logically antecedent" to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III standing.

*Ortiz*, 527 U.S. at 831 (internal citations omitted).  The courts in the cases cited by the Plaintiffs seem to reason that class certification is "logically antecedent" to the question of standing and should be resolved first because standing issues will arise only if class certification is granted.

However, the Plaintiffs and the cases they cite fail to analyze the "logically antecedent" language in proper context.  They also turn a blind-eye to the long history of Supreme Court case law that compels a court to consider standing as a threshold matter.  Placing the "logically antecedent" language in proper context makes clear that standing remains the threshold judicial inquiry except in very rare circumstances that are not present in this case.

*Amchem* and *Ortiz* both arose from what the Supreme Court called "an asbestos-litigation crisis," *Amchem*, 521 U.S. at 597, that "defie[d] customary judicial administration."  *Ortiz*, 527 U.S. at 821.  Both cases focused on certification of a proposed class of plaintiffs who had only been "exposed" to asbestos but had yet to suffer cognizable injury.  They were both "settlement-only" cases in which the parties sought approval from the court for settlements upon which they had already reached agreement.  The claims were never "intended to be litigated."  *Amchem*, 521 U.S. at 601.

Further, both *Ortiz* and *Amchem* centered on proposed class members who were not parties.  The Supreme Court was faced with the question of whether a non-party had standing to pursue a claim she did not yet have.  "Thus, the question of whether the proposed class members could become parties to the case was logically antecedent to the question of whether they had standing to make claims against the defendants in those cases."  *In re Packaged Ice Litigation*, No. 08-md-01952, 2011 WL 891169, at *11 (E.D. Mich. Mar. 11, 2011) (citations omitted).

4

979806

Faced with this conundrum, the Supreme Court adopted the approach that the Third Circuit had employed in *Amchem*.[2]  The court followed the "fundamental and long-standing principle of judicial restraint [which] requires that courts avoid reaching constitutional questions in advance of necessity of deciding them."  *Lyng v. NW. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988); *see also*, *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 623 (3d Cir. 1996) (disposing of the case on class certification grounds rather than on standing, stating it was "prudent not to decide issues unnecessary to the disposition of the case, especially when many of these issues implicate constitutional questions"); *see generally,* Linda S. Mullenix, *Standing and Other Dispositive Motions after Amchem and Ortiz: The Problem of "Logically Antecedent" Inquiries,* 2004 MICH. ST. L. REV. 703, 729 (2004).

It is critical to note that in both cases the Supreme Court reviewed class certification issues first because the resolution of those issues rendered analysis under Article III unnecessary. There was no reason to reach the thorny constitutional issues related to standing because the Supreme Court could dispose of the cases on other grounds.  In other words, the Court ruled on the issues of class certification because those issues were ***dispositive***.  Indeed, there is absolutely nothing in *Amchem* or *Ortiz* that suggests a court should ***defer*** its decision on standing until the class certification stage.  Those cases simply stand for the very limited proposition that a court may, on rare occasions, avoid ruling on jurisdictional grounds when there is another basis for ***disposing*** of the case.

Like the numerous other courts that have considered this issue, the Ninth Circuit has held that the question of standing is properly considered as a threshold issue prior to class

---

[2]  "We therefore follow the path taken by the Court of Appeals, mindful that Rule 23's requirements must be interpreted in keeping with Article III constraints, and the Rules Enabling Act, which instructs that rules of procedure shall not abridge, enlarge, or modify any substantive right."  *Amchem*, 521 U.S. at 612–13 (internal quotations omitted).

5

certification, except in extraordinary circumstances. *Easter v. Am. W. Fin.*, 381 F.3d 948, 962

(9th Cir. 2004). In *Easter*, the Ninth Circuit held that "[t]he district court correctly addressed the

issue of standing before it addressed the issue of class certification." *Id.* A similar conclusion

has been reached by numerous federal courts that have addressed the issue. *See, e.g., In re*

*Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007) ("*GPU*")

(holding that the "Ninth Circuit . . . has held that standing can be addressed before class

certification, where . . . the court is not considering a global class settlement"); *In re Ditropan XL*

*Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106–07 (N.D. Cal. 2007) (citing *Easter*, 381 F.3d 948,

and recognizing that the "Ninth Circuit has rejected [the] exact argument" that determination of

class standing is premature prior to class certification"); *Cornelius v. Fidelity Nat'l Title Co.,* No.

08–754, 2009 WL 596585, at *9 (W.D. Wash. Mar. 9, 2009) (in accord).[3]

---

[3] *See also Ford v. NYLCare Health Plans of Gulf Coast, Inc.,* 301 F.3d 329, 333 n.2 (5th Cir.
2002) (Article III standing must be decided prior to the class certification issues); *Rivera v.
Wyeth-Ayerst Laboratories*, 283 F.3d 315, 318-22 (5th Cir. 2002) (The district court erred by not
determining standing before it certified the class); *Taylor v. Enter. Rent-A-Car Co.*, No. 10-cv-
1849, 2011 WL 1195898 (C.D. Cal. Mar. 30, 2011) (rejecting argument that court should
postpone question of standing until class-certification stage); *Catlin v. Hanser*, No. 10-cv-451,
2011 WL 1002736 (S.D. Ind. Mar. 17, 2011) (declining to defer standing analysis); *In re
Packaged Ice Antitrust Litig.*, No. 08–md–01952, 2011 WL 891169 (E.D. Mich. Mar. 11, 2011)
(*citing Easter* and holding that law does not require class standing be deferred until class has
been certified); *In re Wells Fargo Mortg.-Backed Certs. Litig.*, 712 F. Supp. 2d 958, 965 (N.D.
Cal. 2010) (refusing to "depart from the principle that a lead plaintiff cannot prosecute a class
action based on claims he could not advance individually"); *Gunther v. Capital One, N.A.*, 703 F.
Supp. 2d 264 (E.D.N.Y. 2010) (adopting approach that standing generally should be assessed
prior to class certification); *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524 (E.D. Pa. 2010)
(finding no reason to delay standing determination); *In re Potash Antitrust Litig.*, 667 F. Supp.
2d 907 (N.D. Ill. 2009) (same); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D.
Pa. 2009) (same and stating the "Court will not indulge in the prolonged and expensive
implications of the plaintiffs' position only to be faced with the same problem months down the
road"); *Smith v. Lawyers Title Ins. Corp.*, No. 07-cv-12124, 2009 WL 514210 (E.D. Mich.
Mar. 2, 2009) (same); *Lyons v. Coxcom, Inc.*, No. 08-cv-2047, 2009 WL 347285 (S.D. Cal.
Feb. 6, 2009) (same); *Carfango v. Schnitzer*, 591 F. Supp. 2d 630 (S.D.N.Y. 2008) (deciding
standing first); *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1309 (N.D. Cal.
2008) (determining to "address[] the issue of standing prior to class certification"); )*Thomas v.*

The *Easter* court further explained that the Supreme Court's choice in *Ortiz* to consider class issues before individual standing issues was a product of a specific situation, namely, a mandatory global settlement class.  *Id.*

Given this background, the question becomes whether the named plaintiffs have standing to sue based on the laws of the District of Columbia, Kansas, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Utah or West Virginia, where none of them has suffered injury or resides.

In order to establish Article III standing, a plaintiff must show that he has suffered "injury-in-fact."

> This is no less true with respect to class actions than with respect to other suits. "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'

*Lewis v. Case*, 518 U.S. 343, 357 (1996) (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 40 n.20 (1976), quoting *Warth v. Seldin,* 422 U.S. 490, 502 (1975)).

---

*Met. Life Ins. Co.*, 540 F. Supp. 2d 1212 (W.D. Okla. 2008 (rejecting argument that standing issue should be deferred until after class certification); *Brothers v. Hewlett-Packard Co.*, No. 06-cv-2254, 2006 WL 3093685, at *3 (N.D. Cal. 2006) (citing *Easter v. Am. W. Fin.,* 381 F.3d 948 (9th Cir. 2004) and holding that in "the Ninth Circuit, the issue of standing must be addressed before the issue of class certification"); *Siemers v. Wells Fargo & Co.*, No. 05-0452006, 2006 WL 3041090 (N.D. Cal. Oct. 24, 2006) (declining to defer standing decision); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 606–07 (S.D.N.Y. 2006) (Article III standing determination should precede that of class certification); *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 119 (D. Mass. 2006) (in accord and noting that a "plaintiff may not avoid the standing inquiry merely by styling his suit as a class action); *In re AllianceBernstein Mutual Fund Excessive Fee Litig.*, No. 04-cv-4885, 2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005) (concluding that it would be inappropriate to proceed to class certification without first determining standing); *In re Eaton Vance Corp. Securities Litig.*, 220 F.R.D. 162, 169 (D. Mass. 2004) (determining standing first because otherwise "any plaintiff could sue a defendant against whom the plaintiff has no claim in a putative class action, on the theory that some member of the hypothetical class, if a class were certified, might have a claim"); *Mull v. Alliance Mortg. Banking Corp.*, 219 F. Supp. 2d 895, 909 n.10 (W.D. Tenn. 2002) (in accord)**.**

Moreover, "there must be a named plaintiff with constitutional standing to assert each particular claim." *In re Checking Account Overdraft Antitrust Litig.*, 694 F. Supp. 2d 1302, 1324 (S.D. Fla. 2010) (holding that "there must be a named plaintiff with constitutional standing to assert each particular claim," and that therefore "Plaintiffs may only assert a state statutory claim if a named plaintiff resides in that state").[4] Here, there is not.  Contrary to the Plaintiffs' suggestion, numerous courts have dispensed with claims based on the law of jurisdictions in which plaintiffs suffered no injury or did not reside.[5]

---

[4]  The Ninth Circuit has stated that "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."  *Lierboe v. State Farm Mut. Auto Ins. Co.,* 350 F.3d 1018, 1022–23 (9th Cir. 2003) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1924)).

[5]  *See Catlin v. Hanser*, No. 10-cv-451, 2011 WL 1002736 (S.D. Ind. Mar. 17, 2011) (dismissing claims of thirty-three states where named plaintiff did not suffer injury); *In re Packaged Ice Antitrust Litig*, No. 08–md–01952, 2011 WL 891169, at *13 (E.D. Mich. Mar. 11, 2011) (named plaintiffs did not have standing to state law claims in states in which they did not suffer injury); *In re Lehman Bros. Sec. and ERISA Litig.*, 684 F. Supp. 2d 485, 490-91 (S.D.N.Y. 2010) (dismissing claims where named plaintiff did not suffer injury and holding standing is a threshold constitutional requirement that cannot be dispensed with by styling the complaint as a class action); *In re Actimmune Mktg. Litig.*, No. 08-02376, 2009 WL 3740648, at *17 (N.D. Cal. Nov. 6, 2009) (dismissing plaintiffs' claims brought under the consumer protection statutes in states where they do not have a representative plaintiff residing); *In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 920–23 (N.D. Ill. 2009) (concluding that plaintiffs lacked *Article III* standing to assert claims under the laws of states in which no named plaintiff resided); *In re Wellbutrin XL Antitrust Litig.,* 260 F.R.D. 143, 152–156 (E.D. Pa. 2009) (the court dismissed claims brought by named plaintiffs under the laws of states where no named plaintiffs were located); *In re Flonase Antitrust Litig.,* 610 F. Supp. 2d 409, 418–419 (E.D. Pa. 2009) (named plaintiffs had standing only in states where they reside); *In re Flash Memory Antitrust Litig.,* 643 F. Supp. 2d 1133, 1163–1164 (N.D. Cal. 2009) (where representative plaintiff lacking from a state, claims based on that state's laws must be dismissed); *Cornelius v. Fidelity Nat. Title Co.*, No. 08–754, 2009 WL 596585, at *9 (W.D. Wash. Mar. 9, 2009) (holding that plaintiffs who do not allege that they suffered the invasion of a legally protected interest under the laws of any state other than Washington did not have standing to represent unnamed out-of-state plaintiffs); *Smith v. Lawyers Title Ins. Corp.,* No. 07-cv-12124, 2009 WL 514210, at *3 (E.D. Mich. Mar. 2, 2009) (plaintiff lacked standing to bring state law claims arising under the laws of any other state than that in which he resided); *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 530-32 (S.D.N.Y. 2008) (plaintiffs' case cannot be entirely disposed of by merely addressing class certification, and accordingly the constitutional question cannot be avoided by merely addressing the issue of class

The Plaintiffs' argument with respect to the Class Action Fairness Act of 2005, otherwise known as CAFA, is also unavailing.  None of the authorities to which the Plaintiffs cite supports their contention that the Court must look to the entire proposed class and not the named plaintiffs to determine standing.  In fact, CAFA does not address standing at all.  Rather, the Plaintiffs cite to CAFA for its unique diversity jurisdiction requirement, *i.e.*, diversity jurisdiction exists when there is any diversity between any defendant and any unnamed member of the plaintiff class. 28 U.S.C.A. § 1332(d).  This question of diversity is not at issue here.  What is squarely before the Court is whether the named plaintiffs have standing to bring claims in states where they were not injured and do not reside.

Contrary to the Plaintiffs' assertions, the few courts that have addressed the standing issue while taking CAFA into consideration have indicated that the named plaintiffs should show standing for each claim.  For example, in *Feheley v. Lai Games Sales, Inc.*, No. 08-23060, 2009 WL 2474061 (S.D. Fla. Aug. 11, 2009), the plaintiff filed a class action against the defendant based on allegations that its arcade game was no different than slot machines, which were prohibited by the consumer protection laws of Florida and several other states.  *Id.* at *1.  The

---

certification); *In re Apple & AT&TM Antitrust Litig*., 596 F. Supp. 2d 1288 (N.D. Cal. 2008) (addressing the issue of standing prior to class certification and dismissing claims in forty states where named plaintiffs do not reside); *Temple v. Circuit City Stores, Inc.,* Nos. 06CV5303 and 06CV5304, 2007 WL 2790154, at *8 (E.D.N.Y. Sept. 25, 2007) (dismissing claims arising out of states where plaintiffs did not suffer injury); *In re Graphics Processing Units Antitrust Litig.,* 527 F. Supp. 2d 1011, 1026–27 (N.D. Cal. 2007)  (holding that named plaintiffs did not have standing to bring antitrust claims in those states where none resided); *In re Ditropan XL Antitrust Litig.,* 529 F. Supp. 2d 1098, 1106–07 (N.D. Cal. 2007) (holding that *Ortiz* did not require the court to defer ruling on plaintiffs' standing to bring claims in states where they did not reside and finding no Article III standing under the laws of those states); *In re Terazosin Hydrochloride Antitrust Litig.,* 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) ("named plaintiffs cannot rely on unidentified persons within those states [in which they do not reside] to state a claim for relief"); Am. Bar Ass'n, *Indirect Purchaser Handbook*, 93 ("[T]he dominant line of cases holds that [where] a plaintiff has not suffered injury in each of the states [under which law she brings claims], she cannot represent the citizens of those states who are absent class members").

9

court recognized CAFA and its diversity jurisdiction requirement but stated that "[n]evertheless, in class actions, at least one named class representative must have standing to raise each class claim." *Id.* at *6.  While the court allowed additional briefing on the issue, it noted that the plaintiff had failed to allege any facts that he played the game in any of the other states besides Florida or that any of the foreign state's consumer protection laws conferred standing upon him, a Florida resident, to bring the cause of action.  On this basis, the court found that the claim was "likely due for dismissal."  *Id.  See also Tidd v. Adecco USA, Inc.*, No. 07-11214, 2008 WL 4286512, at *1 (D. Mass. Sep. 17, 2008) (CAFA was not sufficiently pleaded and "plaintiffs had standing only to bring claims under the laws of the States in which they resided.").

The Plaintiffs have not alleged that they suffered injury or reside in the District of Columbia, Kansas, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Utah or West Virginia.  Accordingly, the Court should dismiss the Plaintiffs' claims, based both on statute and common law that arise out the laws of those jurisdictions.[6]

---

[6]  In addition, Plaintiffs may not use their unjust enrichment claims to make an end-run around the obstacles blocking their antitrust claims by seeking recovery in equity.  This approach is consistently rejected.  "[W]here an antitrust defendant's conduct cannot give rise to liability under state antitrust and consumer protection laws, the Plaintiffs should be prohibited from recovery under a claim for unjust enrichment."  *In re Flonase*, 692 F. Supp. 2d 524, 533 (E.D. Pa. 2010); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1191 (N.D. Cal. 2009) ("plaintiffs may not circumvent the restrictions on antitrust claims . . . by reframing those claims as unjust enrichment actions.").  Accordingly, if Plaintiffs' antitrust claims fail, so do their unjust enrichment claims.  Moreover, there is hardly uniformity in state law unjust enrichment claims as Plaintiffs allege.  *See In re Aftermarket Filters Antitrust Litig.*, 2010 WL 1416259, at *2 (N.D. Ill. Apr. 1, 2010) (unjust enrichment claims dismissed because "[g]iven the admitted differences in the states' legal theories of unjust enrichment, it is impossible for this claim to be brought as a nationwide class").

### C.   THE PLAINTIFFS LACK ANTITRUST STANDING TO ASSERT THEIR CLAIMS.

#### 1.   The Plaintiffs Do Not Have Automatic Standing.

The Defendants do not dispute a state's authority to enact repealer statutes to allow indirect purchaser claims. (Defs.' Mem. Supp. at 8.)  The point made by the Defendants, and left untouched by the Plaintiffs, is that even where a state has adopted a repealer statute, an indirect purchaser must still establish antitrust standing.  In other words, repealer statutes do not eliminate the universal requirement that an antitrust plaintiff – even an indirect purchaser plaintiff – show antitrust standing in its initial pleading.

Analysis of the repealer statutes support this conclusion.  For example, California's repealer statute allows a person to bring an antitrust claim "regardless of whether such injured person dealt directly or indirectly with the defendant."  CAL. BUS. & PROF. CODE § 16750(a).  Another typical repealer statute states that "any person threatened with injury or injured in his business or property, directly or indirectly" may bring an antitrust action.  N.M. STAT. ANN. § 57-1-3(A).  Other repealer statutes have similar language.  *See*, *e.g.*, *California v. ARC Am. Corp.*, 490 U.S. 93, 98 n.3 (1989).  Although the exact language of the repealer statutes may vary, virtually none, if any, makes a distinction between a direct purchaser and an indirect purchaser.  *Id.*  The right to bring an antitrust claim is the same for both.  *Id.*  Neither the direct purchaser nor the indirect purchaser is to be treated differently or elevated to a privileged class.

The fact that the repealer statutes place both direct and indirect purchasers in the same position is telling.  A direct purchaser is required to establish antitrust standing.  *See*, *e.g., AGC,* 459 U.S. at 545.  Like the direct purchaser, the indirect purchaser must make the same showing.  The repealer statutes only removed the *per se* bar on claims by indirect purchasers; they did not remove the requirement to establish antitrust standing.  State legislatures, by passing repealer

statutes, "did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages to injury to his business or property." *Blue Shield of Virginia, Inc. v. McCready*, 457 U.S. 465, 476–77 (1982). Even Justice Brennan, the author of the vigorous dissent in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) which spawned the repealer movement, conceded the necessity of antitrust standing for the indirect purchaser when he stated "that despite the broad wording of § 4 there is a point beyond which the wrongdoer should not be held liable." *Id.* at 760.

The Plaintiffs must, therefore, make a showing of antitrust standing at the pleading stage or risk dismissal. *See*, *e.g.*, *AGC*, 459 U.S. at 521 (complaint dismissed on the basis that plaintiff failed to sufficiently allege it had antitrust standing). Rather than make the requisite allegations, the Plaintiffs simply reject the *AGC* test offering no alternative for determining antitrust standing.[7] However, as the case law shows, the *AGC* factors provide the Court with the most reasonable approach to determine antitrust standing.

The cases cited by the Plaintiffs for the proposition that federal courts should not apply the *AGC* factors without a clear directive from a state's legislature or high court do not help Plaintiffs. (Pls.' Mem. Opp. at 34). None of those courts rejected *AGC* on the merits, but rather

---

[7] Antitrust standing must be shown in addition to the typical constitutional standing requirement. *AGC*, 459 U.S. 519, 535 n. 31 (1983) ("[T]he focus of . . . 'antitrust standing' is somewhat different from that of standing as a constitutional doctrine. Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action."). It is often compared with "proximate cause." *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 940 (N.D. Ill. 2009) ("Because the concept of antitrust standing was developed with common law proximate causation standards in mind, directness is a particularly important factor in this Court's analysis."). Although courts have developed various ways to test antitrust standing (*i.e.* "directness of the injury," "target area of the antitrust conspiracy," "zone of interest"), the U.S. Supreme Court decided that the *AGC* factors offered the better test. *AGC*, 459 U.S. at 536 n.33 ("In our view, courts should analyze each situation in light of the factors set forth in the text").

declined to rule on its applicability based on the record before them.  For example, *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1097 (N.D. Cal. 2007) ("*GPU II*"), the court stated that it "may yet prove correct to apply the federal test for standing in those states" but reserved the question for a later date, doing so "***particularly since . . . indirect purchasers have shown standing*** under *AGC.*"  *GPU II*, 540 F. Supp. 2d at 1097 (emphasis added).  In other words, while the court declined to hold that *AGC* was the law of certain states, it applied the *AGC* factors anyway to determine antitrust standing.  *Id.* at 1098.

Similarly, the same district court in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 586 F. Supp. 2d 1109 (N.D. Cal. 2008) ("*LCD*") and *In re Flash Memory Antitrust Litigation*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ("*Flash Memory*") declined to reach a decision on the applicability of *AGC* to the state law claims but rather waited for a "clearer directive," *LCD*, 586 F. Supp. 2d at 1123, or "individualized analysis."  *Flash Memory*, 643 F. Supp. 2d at 1153.  Significantly, however, like the *GPU II* court, both *LCD* and *Flash Memory* went on to apply the *AGC* factors in any event.  *LCD*, 586 F. Supp. 2d at 1123-24; *Flash Memory*, 643 F. Supp. 2d at 1153–56.  These courts tacitly recognized that an indirect purchaser does not have a free pass when it comes to antitrust standing and that a modified *AGC* test, like the one set forth by the Defendants, offers the best measure as to whether the indirect purchaser has properly pleaded antitrust standing.

The cases cited by the Plaintiffs also directly contradict their contention that "the application of AGC cannot be resolved at the pleading stage."  (Pls.' Mem. Opp. at 34.)  The *GPU II*, *LCD*, and *Flash Memory* courts all tackled the *AGC* issue on motions to dismiss and all applied the *AGC* factors (though declining to determine whether *AGC* would be applied in certain repeater states).  *GPU II¸* 540 F. Supp. 2d at 1097; *LCD*, 586 F. Supp. 2d at 1123-24;

13

*Flash Memory*, 643 F. Supp. 2d at 1153-56.  These cases also show that the application of *AGC*

is not limited to Section 4 of the Clayton Act, as claimed by the Plaintiffs.  None of the indirect

plaintiffs in *GPU II*, *LCD*, or *Flash Memory* brought a Section 4 claim, yet the courts

nonetheless conducted an *AGC* analysis.  *Id.*; *GPU II*, 540 F. Supp. 2d at 1090; *LCD*, 586 F.

Supp. 2d at 111; *Flash Memory*, 643 F. Supp. 2d at 1142.[8]

In sum, the *AGC* factors provide the Court with the best approach to determine antitrust

standing, and the Court should apply the *AGC* factors in this matter.

> **2.     The Plaintiffs Do Not Satisfy the *AGC* Factors.**
>
> **a.     *The Alleged Injury Is Inherently Vague and Speculative.***

The Plaintiffs claim that in order to satisfy the first and most important *AGC* factor –

antitrust injury – they need only allege that "each Plaintiff purchased fresh or processed potatoes

that resulted in antitrust injury."  (Pls.' Mem. Opp. at 39.)  The case they cite, however, *In re*

*Napster, Inc. Copyright Litigation*, 354 F. Supp. 2d 1113, 1125 (N.D. Cal. 2005), does not

support their argument.  Rather, it illustrates the concerns courts have over unsupported,

speculative, and unidentifiable antitrust injury.  The *Napster* court was unwilling to allow a

vague and speculative antitrust claim to survive a motion to dismiss: "Simply put, the antitrust

laws are not intended to provide a remedy for such speculative assertions of injury."  *Id.* at

1124.[9]  Therefore, while an indirect purchaser may suffer injury as a customer in the relevant

market, as cited by the Plaintiffs, "[a]t the same time, the standing afforded to indirect purchasers

. . . does not permit a court to dispense with the requirement that an antitrust plaintiff allege an

---

[8]  Although *GPU II*, *LCD*, and *Flash Memory* found that the indirect plaintiffs established
antitrust standing under *AGC*, such holdings are limited to the particular facts of each case and
not a universal holding that every indirect purchaser has automatic antitrust standing.

[9]  In *Napster*, the defendants failed to plead "the nature of the investments that [defendant] had
planned to make nor disclose[d] any steps that it had taken in preparation for doing so."  *Napster*,
354 F. Supp. 2d at 1124.

injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Id.* at 1125 (citations omitted). Accordingly, the court granted the motion to dismiss on those claims that lacked sufficient specificity or were "unidentified." *Id.* at 1124-25.[10]

The same is true here. As discussed in the Defendants' Memorandum, the Plaintiffs' allegations are vague and speculative with respect to the relevant market. They have not adequately pleaded what they allegedly purchased or from whom they purchased. Now, in their Opposition, it becomes apparent that the Plaintiffs' definition of the purported "Class" they represent is so vague and speculative that one cannot discern whether the Plaintiffs and the rest of the proposed Class are actual participants in the same relevant market sufficient to determine antitrust injury. *Ass'n of Washington Public Hosp. Districts. v. Philip Morris, Inc.*, 241 F.3d 696, 704–05 (9th Cir. 2001) (antitrust injury requires that "the injured party be a participant in the same market as the alleged malefactors").

The Plaintiffs claim in their Opposition that they represent the "ultimate consumers of fresh and process potatoes." (Pls.' Mem. Opp. at 38.) As an initial matter, "ultimate" is not defined in the Opposition or the complaints and is inherently vague. The Plaintiffs state in a footnote that they are all "consumers of fresh and process potatoes." (Pls.' Mem. Opp. 41 n.31). "Consumer," they contend, relying on Black's Law Dictionary, is a "person who buys goods and services for personal, family, or household use, with no intention of resale." *Id.* But that is not how the Plaintiffs have defined the Class in their complaints. For instance, in their consolidated complaint, the Plaintiffs define the Class as "[a]ll persons and/or entities . . . who indirectly

---

[10] The other case cited by the Plaintiffs, *Erickson v. Pardus*, 551 U.S. 89 (2007), involved a *pro se* plaintiff. The court stated that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* at 94. The Plaintiffs are not *pro se* and cannot claim a less stringent standard.

15

purchased fresh or process potatoes." (IP Compl. ¶ 165.)  Each of the underlying complaints defines their class similarly.  The complaints do not limit the class to ultimate consumers. Indeed, there is no absolutely limitation as to whether the alleged "persons" or "entities" are, in fact, the "ultimate" consumer.

The only limitation in the Plaintiffs' definition of the Class is that it consists of "indirect purchasers."  The Supreme Court has defined "indirect purchaser" as those who are not "immediate buyers." *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 207 (1990).  Thus, the purported Class as defined in the complaints encompasses innumerable diverse "persons," potentially including manufacturers, distributors, wholesalers, restaurants, convenience stores, households, as well as each and every person who indirectly purchased a potato or potato products up and down the supply chain.

The Plaintiffs have failed to sufficiently identify what the relevant market is, who was allegedly injured in that market, and who they purportedly represent.  The Court should dismiss the Plaintiffs' claims on that basis.

> **b.      The Relation Between the Alleged Antitrust Act and Injury Is Too Remote.**

The Defendants have not argued that the Plaintiffs lack antitrust standing because they are indirect rather than direct purchasers, as claimed by the Plaintiffs.  (Pls.' Mem. Opp. at 36). Rather, the Defendants contend that the connection between the alleged antitrust violations and the claimed injuries are too remote.  The number and nature of the intervening acts alleged between the farm and the "ultimate consumer" undermines the Plaintiffs' standing because the alleged injury is too remote and crosses the "point beyond which the wrongdoer should not be held liable." *Illinois Brick*, 431 U.S. at 760.

16

The attenuated connection between the Plaintiffs' alleged injury and the Defendants' alleged conduct is illustrated in the Plaintiffs' definition of "process potatoes."  The Plaintiffs concede that their antitrust claims do not include any products that incorporate process potatoes as a component.  (Pls.' Mem. Opp. at 40) ("food products or meals that incorporate process potatoes as a component, such as soups, or meals served in a restaurant, are ***not*** included in Plaintiff's definition").

Even with this concession, the Plaintiffs' claims lack the requisite directness between the alleged injury and the alleged antitrust violation needed to proceed.  The number and nature of intervening economic factors with the so-called "process potatoes" (defined as potato chips, shoestring potatoes, instant potatoes and other varieties of frozen potatoes) raise the same concerns as do component potatoes.  For example, a bag of potato chips starts as potatoes in a farmer's field but is handled by a number of intervening actors before it reaches the ultimate consumer – many of whom are also indirect purchaser class members under the Plaintiffs' definition of Class.  The potato may be sold to a chip manufacturer, processed into a chip by the manufacturer, packaged, shipped to a distributor, sold and shipped to a retail outlet, and then sold to the ultimate consumer.  Each intervening stage adds a layer of cost (including labor, machinery, and shipping costs).  The same is true for any other form of process potatoes. Consequently, the Plaintiffs fail to allege whether any of them actually purchased a process potato that is traceable to any specific defendant.  The absence of this most basic information is a fundamental flaw to antitrust standing that merits dismissal.[11]

---

[11]  The Plaintiffs' claim that the Defendants failed to challenge their claims regarding fresh potatoes is also wrong.  The Plaintiffs simply ignore the Defendants' argument that the Plaintiffs failed to identify whether they purchased fresh or process potatoes, who produced the potatoes and whether the producer is a defendant – the same pleading defect found in the allegations related to process potatoes.

### c. The Alleged Damages Are Speculative and too Difficult to Calculate.

The Plaintiffs argue that remote or speculative injury is not something a court should be concerned about at the pleading stage because "the discovery process is necessary" to develop facts bearing on the directness of the injury.  (Pls.' Mem. Opp. at 42, citing *D.R. Ward Construction Co. v. Rohm and Haas Co.*, 470 F. Supp. 2d 485 (E.D. Pa. 2006)).  *Ward*, on which they rely, was decided before *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and is inconsistent with its holding.  *Twombly* now controls.  *See*, *e.g.*, *Sawl v. The Borough of West Kittanning*, No. 10-008, 2010 WL 1444868, at *6 (W.D. Pa. Apr. 9, 2010) (*Twombly* articulates "the controlling standard regarding the sufficiency of pleadings under the Federal Rules.").

In *Twombly*, the Supreme Court stated that "it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive."  *Twombly*, 550 U.S. at 558 (internal citations omitted).  It reasoned a court must be able "to insist upon some specificity in pleading" before allowing a massive antitrust case to go forward.  *Id.*  Without this pleading standard for antitrust cases, "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases . . . ."  *Id.* at 559.[12]  Accordingly, the speculative or remote nature of an indirect purchaser's damage theory is relevant to the antitrust standing inquiry at the pleading stage.  It is reasonable to require at least some specificity from the Plaintiffs in pleading the damage prong of their antitrust claims.

Like other aspects of their claim, the Plaintiffs fail to plead their alleged damages with the necessary specificity.  As discussed above, the Plaintiffs do not plead what they purchased or

---

[12]  Even *Lorix v. Crompton Corp.*, 736 N.W.2d 619 (Minn. 2007), a case rejecting *AGC* on state law grounds and which the Plaintiffs cite approvingly, concedes that "whether the damages claims are speculative is relevant to standing under Minnesota antitrust law." *Id.* at 628, 633.

18

from whom.  Nor do they take into account all the intervening steps involved with fresh and

process potatoes.  The alleged rise in potato prices could be attributed to any one of the

intervening factors like machinery costs, processing costs, labor costs and shipping costs,

including price increases imposed by fellow class members as defined in the complaints.

The definition of the Class, as discussed above, also injects an impermissible layer of

speculation into the Plaintiffs' alleged damages.  For example, at least some of the "entities" and

other indirect purchasers that are included in the Class would have sold to subsequent "indirect

purchasers" and would have passed along any alleged price increase.  Calculating damages

would be a Herculean task requiring unreliable speculation.  The Plaintiffs' allegations lack the

specificity needed to determine whether their damage claims are viable.  Their claims should be

dismissed.

### d.    *Duplicative Recovery Is Inevitable.*

With respect to the issue of duplicative recovery, the Plaintiffs overstate the holding in

*California v. ARC America Corp.*, 490 U.S. 93 (1989) ("*ARC*").  (Pls.' Mem. Opp. at 43.)  In that

case, the Supreme Court said only that state indirect purchaser claims are "ordinarily" not

preempted "solely" on the basis of duplicative recovery.  *ARC*, 490 U.S. at 105.  It did not hold

that duplicative recovery is never a consideration in antitrust standing analysis or that it should

not be a consideration.  In fact, many of the applicable state statutes expressly recognize the

significance of the issue.[13]

---

13  *See*, *e.g.*, S.D. CODIFIED LAWS § 37-1-33 (2009) ("the court may take any steps necessary to
avoid duplicative recovery against a defendant"); MINN. STAT. ANN. § 325D.57 (2010) ("the
court may take any steps necessary to avoid duplicative recovery against a defendant"); N.Y.
GEN. BUS. LAW § 340(6) (McKinney 2009) ("a defendant shall be entitled to prove as a partial or
complete defense to a claim for damages that the illegal overcharge has been passed on to others
who are themselves entitled to recover so as to avoid duplication of recovery of damages"); N.M.
STAT. ANN. § 57-1-3(C) (2009 ("any defendant, as a partial or complete defense against a
damage claim, may, in order to avoid duplicative liability, be entitled to prove that the plaintiff

19

Duplicative recovery is a factor that the Court should consider in tandem with the other *AGC* factors.  In this case, the risk of duplicative recovery is real; the direct purchasers already have an action pending before this Court based on the same alleged antitrust acts.  Moreover, as discussed above, the definition of the Class includes "entities" and all others that purchased fresh and process potatoes, many of whom may have passed on the alleged price increase to the next level *in seriatim*.  Should the Plaintiffs prevail, class members would receive recoveries for damages they did not incur, and the Defendants would be exposed to damages for each layer of purchase resulting in not mere duplicative but multiplicative recovery.

This factor as well as the other factors identified in *AGC* supports dismissal of the Plaintiffs' claims.

### III.  CONCLUSION

The Capper-Volstead Act not only shields the Defendants from federal liability; it also pre-empts the Plaintiffs' state law claims.  In fact, the Plaintiffs concede that "if state law precludes activity expressly allowed under federal law, state law is preempted."

The Plaintiffs lack standing to pursue claims based on the laws of thirteen jurisdictions.  They do not contend that they were injured in any of the thirteen jurisdictions for which they have no representative.  Nevertheless, they ask the Court to defer the issue of standing until the next stage of litigation.  The Plaintiffs' position is inconsistent with Supreme Court and Ninth Circuit precedent as well as numerous other federal courts to have considered the issue.  The Court should make the threshold standing determination now and dismiss the Plaintiffs' claims arising from the laws of the District of Columbia, Kansas, Mississippi, Nebraska, Nevada, New

---

purchaser or seller in the chain of manufacture, production, or distribution who paid any overcharge or received any underpayment, passed on all or any part of such overcharge or underpayment to another purchaser or seller in such chain"); VT. STAT. ANN. tit. 9, § 2465(b) (2009) ("The court shall take all necessary steps to avoid duplicate liability").

Hampshire, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Utah and West Virginia.

Finally, indirect purchasers, like direct purchasers, must show antitrust standing.  The *AGC* factors provide the Court with the most reasonable approach to determine antitrust standing – a point the Plaintiffs essentially concede by failing to offer any alternative for determining standing.  The Plaintiffs' alleged injury is too vague and speculative with respect to the composition of the class, the relevant market and the market participants.  It is also too attenuated and remote from the alleged antitrust violation with regards to process potatoes, where there are numerous intervening stages of process and costs.  Moreover, the Plaintiffs' damages are too difficult to calculate, are speculative, and fail to take into account the near certainty of duplicative recovery.

For the foregoing reasons, the Plaintiffs' claims should be dismissed.

Respectfully submitted on June 3, 2011.

By: /s/ _____
JONES WALDO HOLBROOK & MCDONOUGH PC
James S. Lowrie
Andrew G. Deiss
Billie J. Siddoway

HOLLAND & HART LLP
James E. Hartley
Steven B. Andersen

PORTER WRIGHT
Donald M. Barnes
Salvatore A. Romano

*Counsel for United Potato Growers of Idaho, Inc.; United Potato Growers of America, Inc.; United II Potato Growers of Idaho, Inc.; Albert Wada; Wada Farms, Inc.; Wada Farms Potatoes, Inc.; Wada-Van Orden Potatoes, Inc.; Wada Farms Marketing Group, LLC; Michael Cranney; Keith Cornelison; Cornelison Farms, Inc.; Snake River Plains Potatoes, Inc.; and Raybould Brothers Farms LLC*

21

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 3rd day of June, 2011, I caused the foregoing to be electronically filed through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | | |
|---|---|---|
| Albert P. Barker<br>abp@idahowaters.com | David J. Syrios<br>dsyrios@ademilaw.com | Jay S. Cohen<br>jcohen@srkw-law.com |
| Allen Steyer<br>asteyer@steyerlaw.com | David R. Lombardi<br>drl@givenspursley.com | Jeffrey L. Spector<br>jspector@srkw-law.com |
| Andrew G. Deiss<br>adeiss@joneswaldo.com | Donald Michael Barnes<br>dbarnes@porterwright.com | John Michael Avondet<br>javondet@beardstclair.com |
| Arthur N. Bailey, Jr.<br>abailey@hausfeldllp.com | Donald Amamgbo<br>Donald@amamgbolaw.com | Jon T. King<br>jking@hausfeldllp.com |
| Bart M. Davis<br>bmdavis@bmdlaw.net | Douglas A. Millen<br>dmillen@fklmlaw.com | Joseph Michael Barton<br>jbarton@glancylaw.com |
| Benjamin Andrew Schwartzman<br>bschwartzman@bwslawgroup.com | Elizabeth McKenna<br>emckenna@milberg.com | Julio Joaquin Ramos<br>ramosfortrustee@yahoo.com |
| Billie Jean Siddoway<br>bsiddoway@joneswaldo.com | Eugene A. Spector<br>espector@srkw-law.com | Kimberly A. Kralowec<br>kkralowec@kraloweclaw.com |
| Bonny E. Sweeney<br>bonnys@rgrdlaw.com | Gregory L. Crockett<br>gregcrockett@hopkinsroden.ocm | Lionel Z.  Glancy<br>lglancy@glancylaw.com |
| Brad P. Miller<br>bmiller@hawleytroxell.com | Guri Ademi<br>gademi@ademilaw.com | Lauren Block<br>lblock@milberg.com |
| Bruce S. Bistline<br>bbistline@gordonlawoffices.com | Hollis Salzman<br>hsalzman@labaton.com | Mark A Griffin<br>mgriffin@kellerrohrback.com |
| Carmen A. Medici<br>cmedici@rgrdlaw.com | James A. Wilson<br>jawilson@vorys.com | Matthew McBurney<br>mmcburney@crowell.com |
| Christopher Emrich Ondeck<br>condeck@crowell.com | James E. Hartley<br>jhartley@hollandhart.com | Matthew S. Wild<br>mwild@wildlawgroup.com |
| Chad V. Bonanni<br>chad@essex.bpflegal.com | James S. Lowrie<br>jlowrie@joneswaldo.com | Michael D. Gaffney<br>gaffney@beardstclair.com |
| Daniel G. Swanson<br>dswanson@gibsondunn.com | James Pizzirusso<br>jpizzirusso@hausfeldllp.com | Michael P. Lehmann<br>mlahmann@hausfeldllp.com |
| Daniel M. Cohen<br>danielc@cuneolaw.com | Jay L. Himes<br>jhimes@labaton.com | Michael M. Goldberg<br>mmgoldberg@glancylaw.com |

| | | |
|---|---|---|
| Michael Kowsari<br>mkowsari@girardikeese.com | Robert Rosenfeld<br>rrosenfeld@orrick.com | Steven A. Asher<br>asher@wka-law.com |
| Mindee J. Reuben<br>reuben@wka-law.com | Ronald J. Aranoff<br>aranoff@bernlieb.com | Steven A. Kanner<br>skanner@fklmlaw.com |
| Monte N. Stewart<br>stewart@belnaplaw.com | Salvatore Anthony Romano<br>sromano@porterwright.com | Steven B. Andersen<br>sandersen@hollandhart.com |
| Neil D. McFeeley<br>nmcfeeley@eberle.com | Samuel G. Liversidge<br>sliversidge@gibsondunn.com | Steven Bomse<br>sbomse@orrick.com |
| Paul Novak<br>pnovak@milberg.com | Sharron Williams Gelobter<br>sgelobter@yurumeinlaw.com | Wade L. Woodard<br>wwoodard@bwslawgroup.com |
| Peter Safirstein<br>psafirstein@milberg.com | Shpetim Ademi<br>sademi@ademilaw.com | William L. Greene<br>William.greene@leonard.com |
| Michael D. Gaffney<br>gaffney@beardstclair.com | Stephen R. Thomas<br>srt@moffatt.com | William V. Reiss<br>wreiss@labaton.com |
| Michael P. Lehmann<br>mlahmann@hausfeldllp.com | Susan G. Kupfer<br>skupfer@glancylaw.com | Winston V. Beard<br>winston@beardstclair.com |

In addition, a true and correct copy of the foregoing was caused to be sent by United States mail, postage prepaid to the following attorneys not registered to receive electronic notice via CM/ECF:

Charles Slidders
One Pennsylvania Plaza, 48th Fl
New York, NY 10119


/s/  Billie J. Siddoway