UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **IN RE: FRESH AND PROCESS POTATOES ANTITRUST LITIGATION** | Case No. 4:10-MD-2186-BLW<br>MDL No. 2186 |
| THIS DOCUMENT RELATES TO:<br>*KANSAS TAG-ALONG ACTION ONLY*<br><br>*Assoc. Wholesale Grocers, Inc. v. United Potato Growers of America, Inc., et. al.*<br>No. 13-cv-00251-BLW | **ORDER RE POTANDON PRODUCE LLC'S MOTION TO COMPEL (MDL Dkt. 493)** |

Potandon filed a motion to compel on October 13, 2013, (Dkt. 493), and AWG filed a response (Dkt. 518). Through additional meet and confer sessions, the parties reached agreement on all but four of the 87 document requests served on AWG. The four requests at issue relate to Potandon's request for AWG's downstream sales data; patronage payments to AWG Shareholders; membership agreements; and retail outlets that sell potatoes sold by AWG. AWG argues that the requests by Potandon are not relevant, and the burden of production outweighs any potential probative value.

AWG offered instead to produce exemplars of the data requested. Potandon rejected this offer. The Court on December 11, 2013, required AWG to produce the information described in

**ORDER RE: POTANDON PRODUCE LLC'S MOTION TO COMPEL - 1**

its Response Brief (Dkt. 518) in an effort to mediate the dispute. AWG produced the information, and the Court set a telephonic status conference with the parties on February 27, 2014. The parties provided status reports to the Court prior to the status conference.

The Court issues the following order, **granting in part and denying in part** Potandon's Motion to Compel (Dkt. 493) as follows:

1. **AWG Membership Documents (No. 30):**

Potandon alleges a conspiracy between AWG and its members. It requested AWG's membership agreements so it can learn who AWG's members are. AWG objected on the grounds of relevance. The Court finds the membership agreements are relevant. Because AWG cannot easily discern which members purchased only potatoes and limit its production of the membership agreements to only those members, the Court orders that all membership agreements must be produced. The parties agree that the relevant time period for production is from 2001 through April 17, 2013.

2. **Patronage Payments (No. 13) and AWG Potato Sales Data (Nos. 2-4).**

Potandon requests information regarding patronage payments based upon AWG's assertion in its answer to Potandon's counterclaim that it rebates a percentage of its net income back to members, and that patronage amounts are apportioned to members based upon qualifying warehouse purchases. Potandon seeks information about the patronage program so it can calculate how potato prices were reduced for each AWG member that purchased potatoes. Potandon asserts that the patronage information may reveal the individualized dollar figure of the rebate or discount received by the member, and they allege that each co-conspirator (member) may therefore have paid its own net price for potatoes.

**ORDER RE: POTANDON PRODUCE LLC'S MOTION TO COMPEL - 2**

Additionally, Potandon seeks transactional data regarding individual sales. Potandon argues that the information requested would allow it to analyze prices actually paid over time and across regions. Potandon contends that AWG's sales data will show that the collective purchasing agreements of AWG and its members reduced potato prices paid over time compared with prices paid by non-AWG members.

AWG objects to producing the "micro" patronage payments and transactional data, because such data does not exist prior to 2006, and for years 2006-2012, backup tapes sorted by SKU number and in code would require restoration. However, the data requested for 2012 and 2013 is not subject to that limitation.

The Court orders AWG to produce the transactional data and patronage data for 2012 and 2013, as it exists in the ordinary course of business, without any waiver of Potandon's ability to obtain the data on the backup tapes. Potandon shall have the opportunity to review the documents, and if it determines that it requires the data on the backup tapes, Potandon and AWG shall work together to find a reasonable solution to extract the data. Potandon suggested copying the tapes and turning them over to a vendor to extract the data, which the Court believes could be a solution to the parties' impasse.

The second category of documents falling under the request for patronage payments involves email ESI and other electronic documents contained in AWG's files. AWG agreed at the status conference to produce the requested information from 2001 up through April 17, 2013, and the Court deems the matter resolved.

3.      **Identification of Retail Outlets (No. 31).**

Potandon requested documents identifying retail stores or outlets selling potatoes sold by AWG . Potandon contends the identity of the retail outlets is necessary to calculate damages.

AWG's membership agreements may contain exhibits attached to the agreement that show the members' retail outlets. AWG contends the information request is overly broad, because AWG does not sell potatoes from a retail store. Rather, the members sell the potatoes purchased through AWG to retail stores.

The Court finds that the identification of the retail outlets is relevant and, to the extent the information is contained in attachments to the membership agreements, not burdensome to produce. If the membership agreements do not sufficiently identify the members' retail outlets, Potandon may bring the issue back before the Court.

4.   **Search Terms Applied to ESI**

Potandon proposes broader terms, while AWG proposes to modify each term with the word "potato." AWG believes it can resolve this issue with Potandon given the Court's order. The Court requires the parties to come to a resolution on this issue on or before March 7, 2014. If the parties are unable to agree on the search terms to apply to AWG's ESI, the parties are to call Law Clerk Kirsten Wallace at (208) 334-9111 on March 10, 2014, and the Court will schedule a telephonic conference with the parties to resolve the issue.

5.   **Website Data Spoliation**

Potandon requested archived copies of webpages maintained by AWG as those pages appeared on July 3, 2013, or to confirm that the websites were not preserved. AWG confirmed that the websites were preserved, and the Court orders that the production occur on or before March 7, 2014.

6.   **Production Schedule**

Potandon is concerned it will not have enough time to review AWG's documents and schedule depositions within the time remaining for discovery. The Court therefore orders AWG

**ORDER RE: POTANDON PRODUCE LLC'S MOTION TO COMPEL - 4**

to produce the 2012-2013 transactional and patronage data on or before March 7, 2014. For all other production requests, the production must be **completed** no later than March 28, 2014.

    **IT IS SO ORDERED.**

Dated: **February 27, 2014**

Honorable Candy W. Dale
United States Magistrate Judge

**ORDER RE: POTANDON PRODUCE LLC'S MOTION TO COMPEL - 5**