**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: FRESH AND PROCESS POTATOES ANTITRUST LITIGATION | Case No.: 10-md-02186-BLW<br>Case No.: 13-cv-00251-BLW |
| THIS DOCUMENT RELATES TO:<br><br>Kansas Tag-Along Action Only<br>*Associated Wholesale Grocers, Inc., v. United Potato Growers of America, Inc., et al.,* Case No. KS/2:13-cv-02182 (LAH) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' POSITION REGARDING THE ANTITRUST STANDARD**
**APPLICABLE TO THEIR AFFIRMATIVE DEFENSES**

Defendants, pursuant to this Court's direction at the October 23, 2014 status conference, submit this brief in support of their position that Associated Wholesale Grocers, Inc. ("AWG") should not be allowed to claim that a different legal standard applies to Potandon Produce L.L.C.'s ("Potandon") counterclaim (or Defendants' affirmative defenses) simply because of the unique timing of the Kansas legislature's revision of the Kansas Restraint of Trade Act ("KRTA"), K.S.A. § 50-101 *et seq*. In addition, Defendants reiterate their position that any determination by the Court as to the legal standard applicable to AWG's original claims or Potandon's counterclaim is premature. This is an exceedingly important issue that should be addressed only upon a full record and with full briefing.

## I. INTRODUCTION

In seeking, prematurely, summary judgment on Potandon's counterclaim, AWG argues that its own claims are entitled to be treated under a *per se* standard, but Potandon's counterclaim is not. The Court directed Potandon to file a brief presenting its position on the contention that the Kansas legislature's revision of Kansas law subjected its counterclaim to a different version of the KRTA than that which applies to AWG's claim. AWG has not moved for summary judgment on Defendants' affirmative defenses that assert AWG's own anticompetitive conduct as a complete defense to AWG's Kansas law claims and as a mitigating damages argument. Nevertheless, because AWG's argument implicates whether AWG will be subject to the *per se* standard for its own conduct, Defendants requested, and were granted, permission to file this memorandum in order to show that while this determination is premature, under no construction of the Kansas legislature's actions can the Defendants' affirmative defense of unclean hands to AWG's Kansas law claims be subject to a different standard than AWG's own claims.

AWG filed its complaint against Defendants on April 17, 2013, the day before the KRTA amendments took effect. Each of Defendants asserted as affirmative defenses AWG's own anticompetitive conduct and unclean hands.[1] As discussed below, K.S.A. § 50-116 provides a specific statutory defense to Defendants based upon AWG's own actions as an unlawful combination under the KRTA. As a matter of Kansas law and constitutional right, the same legal standards must apply to this affirmative defense as to AWG's claims under Kansas law. Accordingly, if the Court reaches this issue, it should find that AWG is subject to the same standard of antitrust liability to the extent AWG at the time its claims arose constituted an arrangement, contract, agreement, trust, or combination designed to advance, reduce, or control price, or one that tended to advance, reduce, or control price. As explained previously, Defendants intend to show, at the appropriate time, that the antitrust "rule of reason" standard governs all or, at a minimum, most of the anticompetitive cooperative conduct alleged by AWG. But, assuming *arguendo* that this Court concludes that AWG's KRTA claims against Defendants may ultimately be subject to a *per se* standard (a determination which will be made later in the schedule upon a full record and briefing), the Court cannot hold Potandon's Counterclaim (or Defendants' KRTA affirmative defenses) against AWG to a more difficult standard.

---

[1] *See* Amended Answer of R.D. Offutt Company to AWG Complaint (filed July 24, 2013) (Affirmative Defenses ¶¶ 28, 30, 34, 48; Amended Answer of Ronald Offutt to AWG Complaint (filed July 3, 2013) (Affirmative Defenses) ¶¶ 28, 30, 34, 48; Answer of Driscoll Potatoes, Inc. to Complaint (filed July 2, 2013) (Thirtieth and Thirty-First Affirmative Defenses); Answer of Blaine Larson Farms to Complaint (filed July 2, 2013) (Thirtieth and Thirty-First Affirmative Defenses); Answer of Rigby Produce to Complaint (filed July 2, 2013) (Thirtieth and Thirty-First Affirmative Defenses); Amended Answer of Idahoan Foods to Complaint (filed July 24, 2013) ¶¶ 414, 428, 442, 444, 445; Second Amended Answer of Potandon Produce to Complaint (filed July 25, 2013) (Affirmative Defenses ¶¶ 21, 28, 35, 39, Answer of United Potato Growers of Idaho, Inc. *et al.* to Complaint (filed July 3, 2013) (Nineteenth, Thirty-Second, Forty-Fifth, Forty-Sixth, Fifty-Fifth and Fifty-Sixth Affirmative Defenses).

## II.     ARGUMENT

### A.     The Issue of What Legal Standard Applies in this Litigation Is Exceedingly Important and Should Only Be Addressed upon a Full Record with Full Briefing

It is premature for the Court to make any judgments about the legal standard applicable in this case—regardless of context.  This issue cuts across all of the cases, and touches upon both claims and defenses in the class actions as well as AWG's opt-out case.  To bypass the careful consideration of these issues by taking one part "out of turn" now, with an incomplete record and no opportunity for full briefing would be a serious mistake, and highly unfair and prejudicial to the Defendants.  *See also* Memorandum in Further Support of Counterclaim Plaintiff Potandon Produce LLC's Motion for a Scheduling Order Regarding Its Counterclaim (Dkt. No. 700) (filed Oct. 3, 2014).

The rule of reason is, of course, the presumptive standard under the antitrust laws.  *See, e.g., Texaco, Inc. v. Dagher,* 547 U.S. 1, 5 (2006) ("[T]his Court presumptively applies rule of reason analysis.").  It is supplanted only in a narrow range of cases involving certain conduct with which the courts have had sufficient experience to conclude that the practice in question has no potential pro-competitive justifications.  *See, e.g.*, *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 723 (1988) ("[P]er se rules are appropriate for 'conduct that is manifestly anticompetitive'").  That has been true for more than a century beginning with the Supreme Court's seminal decision in *Standard Oil*[2] and continuing through *Chicago Board of Trade*[3], *BMI*[4], *State Oil v. Kahn*[5], *Dagher* and *Leegin*[6], to name but a few.  As these cases indicate, the

---

[2]  *Standard Oil Co. v. United States,* 222 U.S. 1, 58 (1911).
[3] *Chicago Board of Trade v. United States,* 246 U.S. 231, 238 (1918).
[4] *Broadcast Music, Inc. v. CBS*, 441 U.S. 1, 9 (1979).
[5] 522 U.S. 3, 10 (1997).

category of cases in which the Court has endorsed application of a *per se* standard has been steadily shrinking.

Defendants understand that AWG and the Class Plaintiffs believe that they can assert a *per se* theory as to at least some of their claims in the current set of MDL cases. At an appropriate time, and on an appropriate record, they should have the opportunity to advance that argument. However, Defendants equally need to have a full opportunity to explain why those assertions are wrong and deciding the issue now deprives Defendants of this right and thereby unjustly prejudices their defenses in this case. Defendants are entitled to present factual and expert evidence, and legal arguments, relating to various matters, including, but not limited to: (i) the unique character of agriculture and agricultural policy as it interfaces with antitrust law; (ii) the competitive benefits that result from such practices as allowing pre-planting restrictions (as compared with, say, the destruction of crops after they are grown and land has been committed to what turns out to be non-productive purposes, as opposed to being used to grow alternative crops for which there is unmet consumer demand); and (iii) the impact of the Capper-Volstead Act and the policies underlying it (whether or not the precise requirements of the statute have been met). While Plaintiffs will argue that output restriction is a category of conduct well-known to the antitrust laws, that begs the question. Indeed, the plaintiffs in cases such as *BMI* and *Dagher* vigorously made the same type of arguments, but ultimately to no avail, that the practices involved represented garden-variety price-fixing.

Here, however, the point is narrower: The issue of what legal standard applies to any conduct in this case must be decided within the broad context of this litigation, following, at the

---

[6] *Leegin Creative Leather Products v. PSKS, Inc.,* 551 U.S. 877, 883 (2007).

very least, (i) the full development of the record (including expert reports which are not yet due); and (ii) considered briefing and argument. Defendants certainly cannot defend their position on this issue within the severe limits (pages and time) of the current briefing. Therefore, the proper course is not to let any aspect of this issue "jump the queue" merely because it conceivably can be argued to present a version of the issue in a particular, limited context. The orderly disposition of this litigation continues to require respect for the schedule that was previously agreed to by the parties, and endorsed by the Court. Letting any decision about legal standards await another day is the only fair, and sensible, course to follow.

### B. The KRTA Contains an "Unclean Hands" Defense to Antitrust Claims

The KRTA, unlike federal antitrust law, contains an express statutory defense barring a plaintiffs' KRTA claim, if it is shown that the plaintiff also violated provisions of the KRTA:

> **K.S.A. 50-116. Pleading in bar or abatement of civil action that plaintiff is member or agent of unlawful combination.**
>
> When an action at law or suit in equity shall be commenced in any court of this state, it shall be lawful in the defense thereof to plead in bar or in abatement that the plaintiff or any other person interested in the prosecution of the case is a member or agent of an unlawful combination as described in *K.S.A. 50-112* and *50-113*, or that the cause of action grows out of such combination, or out of some business or transaction thereof.

As the Kansas Supreme Court has put it, under the Kansas antitrust statute, "it is a good defense to plead and prove that the cause of action grows out of a business transaction made in violation of the act." *In re Holmes' Estate*, 132 Kan. 443, 445, 295 P. 716, 718 (1931).

Under the Kansas Supreme Court's decision in *O'Brien v. Leegin,* 294 Kan. 318, 277 P.3d 1062 (Kan. 2012), Defendants contend that AWG is and was at the time its claims arose, "an arrangement, contract, agreement, trust, or combination between persons designed to

advance, reduce, or control price, or one that tends to advance, reduce, or control price." Under *O'Brien*, such arrangements, contracts, trusts and combinations – unless exempted by an applicable immunity – are judged under a *per se* standard of illegality. In other words, if their activity concerns advancing, reducing, or controlling price, and is not otherwise exempt, their actions violate K.S.A. 50-112. 294 Kan. at 347-49, 277 P.3d at 1082-83. As shown below, if the Court preliminarily (and, as argued above, prematurely) determines that AWG's claims may be subject to this *per se* standard, then as a matter of statutory and constitutional interpretation and of equity, the same standard must apply to the Defendants' affirmative defense of AWG's KRTA claims in this case.

### C. Retroactive Application of Kansas S.B. 124 to Preclude Application of a Consistent Legal Standard to the Defense under K.S.A. 50-116 Would Be Contrary to the Kansas Legislature's Intent

As discussed in greater detail in Potandon's memorandum regarding its counterclaim against AWG, in reaction to the *O'Brien* decision, on April 5, 2013, the Kansas Senate and House passed Revised S.B. 124. S.B. 124 was presented to the Governor of Kansas on April 12, 2013, and signed on April 16, 2013. On April 18, 2013, S.B. 124 was published in the Kansas Register and became effective. As the detailed recitation of the legislative history of this act in Potandon's Memorandum makes clear, the application of a different legal standard to claims than to defenses under the KRTA was never considered in the course of adopting this legislation

Likewise, the Kansas legislature made no change to K.S.A. 50-116. By its express language, K.S.A. 50-116 looks to the time at which the alleged KRTA violation occurred, not conduct at a different time. Had the Kansas legislature wanted to change the standard and link between AWG's cause of action and Defendants' affirmative defense (assuming it

constitutionally could), it would have needed to amend the language of K.S.A. 50-116 to disentangle it from the underlying alleged offense. It did not.

### D. Retroactive Application of Kansas S.B. 124 to Preclude Application of a Consistent Legal Standard to the Defense under K.S.A. 50-116 Would Be Contrary to the Rule that Defenses Relate Back to the Date of the Complaint

As a matter of law and equity, affirmative defenses to a claim vest when the claim is filed. Under Fed. R. Civ. P. 3, the action commenced on April 17, 2013, and therefore must be governed by the law in effect on that date. "An affirmative defense is defined as a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (quotation marks omitted)); 5 Charles Alan Wright, et al., Federal Practice & Procedure § 1271 (3d ed. 2012); *Black's Law Dictionary* 482 (9th ed. 2009) (defining an affirmative defense as "defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true."). Thus, an affirmative defense is not a separate claim, but rather intrinsic to the claim itself. Accordingly, the same law and legal standard that applies to a claim must apply to any affirmative defense to that claim.

As the Supreme Court of Kansas has acknowledged, "there is no distinction between a vested right of action and a vested right of defense." *Jackson v. Am. Best Freight System, Inc.*, 238 Kan. 322, 325, 709 P.2d 983 (Kan. 1985). In *Jackson*, the court determined that the defendants had a "vested right of defense" based on the statute of limitations that existed before the effective date of the statute, and thus retrospective application of the statute would be improper "where a vested right of defense exists prior to the effective date" of the statute. The

court reasoned that "the general rule is that a vested right to an existing defense is protected in like manner as a right of action, with the exception only of those defenses which are based on informalities not affecting substantial rights.") *Id.* (citing *Pritchard v. Norton*, 106 U.S. 124 (1882). Because defendants' defenses did not fall under the umbrella of that exception, the court affirmed the trial court's dismissal of plaintiff's claims. Likewise, Defendants' affirmative defenses are vested rights protected the same manner as its compulsory counterclaims. *See Pritchard v. Norton*, 106 U.S. 124, 132 (1882) ("A vested right to an existing defense is equally protected, saving only those which are based on informalities not affecting substantial rights, which do not touch the substance of the contract and are not based on equity and justice.").

As Potandon's Memorandum shows, the applicable standard (whether ultimately *per se* or Rule of Reason) cannot have been changed retroactively as applied to its counterclaim, since the counterclaim related back to the filing of the complaint. *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1044 (C.D. Cal. 2011) ("[A] compulsory counterclaim relates back to the time of the filing of the plaintiff's complaint."); *Schuller v. Gen. Motors Corp.*, 932 F. Supp. 1113, 1114-16 (N.D. Ill. 1996) (holding that, where a complaint was filed before the effective date of a statute altering the standard of proof, an amended complaint filed after the effective date and adding similar claims against a new defendant was "not a new cause of action" subject to the new standard of proof); *Falk v. FFF Indus., Inc.*, 731 F. Supp. 134, 140 (S.D.N.Y. 1990) ("It is elemental that the effective date of counterclaims for the purposes of the tolling of the applicable statute of limitations related back to the date the original complaint was filed."). The same rule must apply to Defendants' affirmative defenses.

E.  **Retroactive Application of Kansas S.B. 124 to Preclude Application of a Consistent Legal Standard to the Defense under K.S.A. 50-116 Would Unconstitutionally Deprive Defendants of a Vested Right**

Retroactive statutes will not be applied where they affect a vested substantive right. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269, 280 (1994) (holding that laws that retroactively "take[] away or impair[] vested rights acquired under existing laws" are unconstitutional). An accrued cause of action is a substantive right which cannot be abated by a purportedly retroactive statute. *See Resolution Trust Corp. v. Fleischer*, 257 Kan. 360, 366, 892 P.2d 497, 501 (Kan. 1995) (A substantive law is one which "gives or defines the right . . . or gives the right or denounces the wrong." Such laws "affect vested rights and are not subject to retroactive legislation."); *see also N. Natural Gas Co. v. Martin, Pringle, Oliver, Wallace & Bauer, L.L.P.*, 289 Kan. 777, 791, 217 P.3d 966, 976 (Kan. 2009); *Eakes v. Hoffman-LaRoche, Inc.*, 220 Kan. 565, 568, 552 P.2d 998, 1000 (Kan. 1976); *Johnson v. Warren*, 192 Kan. 310, 314, 387 P.2d 213, 216 (Kan. 1963); *Ward v. Marzolf Hardwood Floors, Inc.*, 190 Kan. 809, 811, 378 P.2d 80, 82 (Kan. 1963).

Similarly, an affirmative defense concerning another party's violation of the law is a vested substantive right and is subject to the same protections as a right of action. *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 948 (1997); *see also Waller v. Pittsburgh Corning Corp.,* 946 F.2d 1514, 1515 (10th Cir. 1991); *Jackson*, 238 Kan. at 325 ("There is no distinction between a vested right of action and a vested right of defense. Accordingly, the general rule is that a vested right to an existing defense is protected in like manner as a right of action. . . ."); *Harding v. K.C. Wall Prods, Inc.*, 250 Kan. 655, 668, 831 P.2d 958 (Kan. 1992) (right to a defense based on expiration of statute of repose is a vested right). Thus, where a

purportedly retroactive statute effectively eliminates a vested right to an affirmative defense, it impermissibly affects a party's substantive rights.

Finally, given that the KRTA is penal in nature, imposing penalties beyond actual damages suffered by a party, a retroactive change to the defenses available under the statute would violate the *ex post facto* prohibition imposed on state laws by Art. I, § 9, cl. 3 of the United States Constitution. If a statute "changes the legal consequences of acts completed before its effective date," *id.* at 31, it may run afoul of the *ex post facto* clause. Although the prohibition generally applies to criminal statutes, it may also be applied in civil cases where the civil remedy is in effect a penalty. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 595 (1952); *see also DeVeau v. Braisted*, 363 U.S. 144, 160 (1960) (plurality opinion) ("The mark of an *ex post facto* law is the imposition of what can fairly be designated punishment"). Damages such as the full consideration damages claimed by AWG clearly fall within the category of penalties that call the *ex post facto* clause into play. *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 972 (2d Cir. 1985) (finding the *ex post facto* provision applies to treble damages provision). Accordingly, even if it were the Kansas legislature's intent, it could not constitutionally remove the *per se* standard from the Defendant's affirmative defenses under K.S.A. 50-116.

## III. CONCLUSION

For the forgoing reasons, the Court should find that AWG's operations are subject to a *per se* standard of liability to the extent AWG, at the time its claims arose, constituted an arrangement, contract, agreement, trust, or combination designed to advance, reduce, or control price, or one that tended to advance, reduce, or control price, and that the enactment of Kansas S.B. 124 neither could (nor did) change that standard.

Dated: November 14, 2014                Respectfully submitted,

      /s/ *James A. Wilson*                     /s/ *Steven B. Andersen*
James A. Wilson                         Steven B. Andersen
Vorys Sater Seymour & Pease LLP         Andersen Banducci PLLC
52 East Gay Street                      101 S. Capitol Blvd., Suite 1600
Columbus, OH 43216-1008                 Boise, ID 83702
Tel: (614) 464-5606                     Tel: (208) 342-4411
Fax: (614) 464-719-5039                 Fax: (208) 342-4455
jawilson@vorys.com                      sba@andersenbanducci.com

*On behalf of Idahoan Foods, LLC*       *On behalf of United Potato Growers of Idaho, Inc.; United Potato Growers of America, Inc.; United II Potato Growers of Idaho, Inc.; Albert T. Wada; Wada Farms, Inc.; Wada Farms Potatoes, Inc.; Wada-Van Orden Potatoes, Inc.; Wada Farms Marketing Group, LLC; Wada Family LLC; Pro Fresh, LLC; Cedar Farms, Inc.; Michael Cranney d/b/a Cranney Farms; Cornelison Farms, Inc.; Keith Cornelison; Snake River Plains Potatoes, Inc.; Lance Funk d/b/a Lance Funk Farms; Raybould Brothers Farms LLC; Pleasant Valley Potato, Inc.; KCW Farms, Inc.; and Kim Wahlen d/b/a Kim Wahlen Farms*

      /s/ *William L. Greene*                   /s/ *Robert Rosenfeld*
William L. Greene                       Robert Rosenfeld
Stinson Leonard Street LLP150 S. Fifth  Orrick Herrington & Sutcliffe LLP
Street, Suite 2300                      The Orrick Building
Minneapolis, MN 55402                   405 Howard Street
Tel: (612) 335-1568                     San Francisco, CA 94105-2669
Fax: (612) 335-1657                     Tel: (415) 773-5700
william.greene@stinsonleonard.com       Fax: (415) 773-5759
                                        rrosenfeld@orrick.com
*On behalf of R.D. Offutt Co.*
                                        *On behalf of Blaine Larsen Farms, Inc., Driscoll Potatoes, Inc., Rigby Produce, Inc.,*

| | |
|---|---|
|     /s/ *Christopher Ondeck* |     /s/ *Brian McGovern* |
| Christopher Emrich Ondeck | Brian McGovern, Esq. |
| Proskauer Rose LLP | McCarthy, Leonard & Kaemmerer, L.C. |
| 1001 Pennsylvania Avenue, NW | 400 South Woods Mill Rd., Suite 250 |
| Suite 400 South | Chesterfield, MO 63017 |
| Washington, DC 20004-2533 | Tel: (314) 392-5200 |
| Tel: (202) 416-5865 | Fax: (314) 392-5221 |
| Fax: (202) 416-6899 | bmcgovern@mlklaw.com |
| condeck@ proskauer.com | |
| | *On behalf of Ronald D. Offutt, Jr.* |
| *On behalf of Potandon Produce L.L.C.* | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of November, 2014, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | | |
|---|---|---|
| Steven B. Anderson<br>sba@andersenbanducci.com | Ronald J. Aranoff<br>aranoff@bernlieb.com | Donald Amamgbo<br>Donald@amamgbolaw.com |
| John Michael Avondet<br>javondet@beardstclair.com | Arthur N. Bailey, Jr.<br>abailey@hausfeldllp.com | Steven A. Asher<br>asher@wka-law.com |
| Steven Bomse<br>sbomse@orrick.com | Joseph Michael Barton<br>jbarton@glancylaw.com | Albert P. Barker<br>apb@idahowaters.com |
| Jay S. Cohen<br>jcohen@srkw-law.com | Bruce S. Bistline<br>bbistline@gordonlawoffices.com | Winston V. Beard<br>winstonbeard@me.com |
| Sharon Williams Gelobter<br>sgelobter@yurumeinlaw.com | Chad V. Bonanni<br>cbonanni@essex.bpflegal.com | Richard C. Boardman<br>rboardman@perkinscoie.com |
| Philip Howard Gordon<br>pgordon@gordonlawoffices.com | Gregory L. Crockett<br>gregcrockett@hopkinsroden.com | Daniel M. Cohen<br>danielc@cuneolaw.com |
| James E. Hartley<br>jhartley@hollandhart.com | Eric P. Enson<br>epenson@jonesday.com | Bart M. Davis<br>bartdavis@me.com |
| Steven A. Kanner<br>skanner@fklmlaw.com | Lionel Z. Glancy<br>lglancy@glancylaw.com | Michael D. Gaffney<br>gaffney@beardstclair.com |
| Kimberly A. Kralowec<br>kkralowec@kraloweclaw.com | William Greene<br>william.greene@stinsonleonard.com | Michael M. Goldberg<br>mmgoldberg@glancylaw.com |
| Jeffrey Alan LeVee<br>jlevee@jonesday.com | Michael Hausfeld<br>mhausfeld@hausfeldllp.com | Mark A Griffin<br>mgriffin@kellerrohrback.com |
| Elizabeth McKenna<br>emckenna@milberg.com | Jon T. King<br>jking@hausfeldllp.com | Jay L. Himes<br>jhimes@labaton.com |
| James J. Pizzirusso<br>jpizzirusso@hausfeldllp.com | Susan G. Kupfer<br>skupfer@glancylaw.com | Michael P. Lehmann<br>mlehmann@hausfeldllp.com |
| Mindee J. Reuben<br>reuben@wka-law.com | Samuel G. Liversidge<br>sliversidge@gibsondunn.com | Neil D. McFeeley<br>nmcfeeley@eberle.com |
| Robert Rosenfeld<br>rrosenfeld@orrick.com | Andrew Funk<br>funk@stuevesiegel.com | Douglas A. Millen<br>dmillen@fklmlaw.com |
| Eugene A. Spector<br>espector@srkw-law.com | Carmen A. Medici<br>cmedici@rgrdlaw.com | Christopher Emrich Ondeck<br>condeck@proskauer.com |
| Allan Steyer<br>asteyer@steyerlaw.com | Paul Novak<br>pnovak@milberg.com | Monte N. Stewart<br>stewart@bstm-law.com |
| David J. Syrios<br>dsyrios@ademilaw.com | Julio Joaquin Ramos<br>ramosfortrustee@yahoo.com | Bonny E. Sweeney<br>bonnys@rgrdlaw.com |
| Jeannine M. Kenney<br>jkenney@hausfeld.llp.com | Peter G.A. Safirstein<br>psafirstein@forthepeople.com | Reginald Von Terrell<br>Reggiet2@aol.com |

MEMORANDUM IN SUPPORT OF DEFENDANTS' POSITION
REGARDING THE ANTITRUST STANDARD APPLICABLE TO
THEIR AFFIRMATIVE DEFENSES                                                        13

Aaron M. Sheanin
asheanin@pswplaw.com

Bobby Pouya
bpouya@pswlaw.com

Kathleen Styles Rogers
krogers@kraloweclaw.com

Robert W. Finnerty
rfinnerty@girardikeese.com

Daniel E. Williams
danw@thomaswilliamslam.com

Lauren Block
Iblock@milberg.com

Charles Slidders
cslidders@milberg.com

Daniel W. Bower
dbower@stm-law.com

Randall B. Weill
rweill@preti.com

D Scott Macrae
smacrae@bamlawlj.com

Michael Sanford Smith
msmith@preti.com

Anthony D Phillips
aphillips@bermandevalerio.com

Christopher Dandurand
dandurand@stuevesiegel.com

Patrick J Stueve
stueve@stuevesiegel.com

Matthew McBurney
mmcburney@vrowell.com

Brian E Robison
brobison@gibsondunn.com

Jeffrey L. Spector
jspector@srkw-law.com

Daniel G. Swanson
dswanson@gibsondunn.com

Stephen R. Thomas
srt@moffatt.com

James A. Wilson
jawilson@vorys.com

Robert W. Biederman
rbiederman@steyerlaw.com

Daniel J. Vitelli
dvitelli@constantinecannon.com

Brent V. Manning
bmanning@mc2b.com

Robert A. Miller
rmiller@mlklaw.com

Peter J. Schwingler
Peter.schwingler@leonard.com

David Alan Scupp
dscupp@cpny.com

Robert Wozniak
rwozniak@fklmlaw.com

Todd A Seaver
tseaver@bermandevalerio.com

David Hickey
hickey@stuevesiegel.com

Aaron M Chandler
amc@andersenbanducci.com

Kenneth J Rubin
kjrubin@vorys.com

Patrick J Miller
pjm@givenspursley.com

Gregory P. Hansel
ghansel@preti.com

Gary G. Sackett
gsackett@joneswaldo.com

Brad P. Miller
bmiller@hawleytroxell.com

Brian E. McGovern
bmcgovern@mlklaw.com

Amanda K. Brailsford
akb@andersenbanducci.com

Phillip A. Proger
202-879-3939

Lauren James Parker
Iparker@orrick.com

Wendy Butler Curtis
wcurtis@orrick.com

Hollis Salzman
hsalzman@labaton.com

Sylvia M Sokol
ssokol@constantinecannon.com

Steve Six
six@stuevesiegel.com

Adrian Fontecilla
afontecilla@proskauer.com

Brian E McGovern
bmcgovern@mlklaw.com

David R Lombardi
drl@givenspursley.com

/s/ *Adrian Fontecilla*
Adrian Fontecilla