UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **IN RE: FRESH AND PROCESS POTATOES ANTITRUST LITIGATION** | Case No. 4:10-md-2186-BLW-CWD<br>4:13:cv-00251-BLW |
| **THIS DOCUMENT RELATES TO:**<br><br>Kansas Tag-Along Action Only<br>*Associated Wholesale Grocers, Inc. v. United Potato Growers of America, Inc., et al.*<br>No. KS/2:13-CV-2182-LAH | **MEMORANDUM DECISION AND ORDER**<br>**RE: ASSOCIATED WHOLESALE GROCER'S MOTION TO COMPEL (MDL Dkt. No. 768)** |

Pending before the Court is Associated Wholesale Grocers' (AWG) motion to compel directed at third party Randon Wilson and his law firm, Jones Waldo, in the last of the long and protracted discovery dispute process that has spanned nearly two years in this complex anti-trust case. (MDL Dkt. 768.) The parties are commended for following the Court's directives and the legal principles governing privilege and waiver, and narrowing the universe of documents possessed by Jones Waldo and Mr. Wilson, and for which they claimed privilege, from thousands to 111 remaining disputed documents. *See* Order, Oct. 27, 2014 (MDL Dkt. 734.) Jones Waldo submitted all 111 documents to the Court for in camera review to determine whether its claim of privilege protects the documents from disclosure to AWG.[1] AWG also has requested the Court to order Randon Wilson to appear for an additional one day, seven hour deposition, which Jones Waldo opposes.

---

[1] Because of the stay imposed during settlement discussions, direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs reserved their respective rights to revisit this issue.

**MEMORANDUM DECISION AND ORDER - 1**

The parties, including intervenor National Council of Farmer Cooperatives (NCFC), have briefed the motion and it is ripe for the Court's review. Given the Court's familiarity with the issues and its in camera review, a hearing is not necessary. What follows is the Court's disposition of the motion.

## DISCUSSION

**1.  Documents Withheld**

AWG's memorandum categorizes the 111 documents into seven groups in section II of its memorandum. Each group of documents is discussed separately, and various arguments are asserted in support of its motion to compel depending upon the group of documents. Accordingly, the Court has employed a similar organization.

**A.  Section II.A.1 - Handwritten Notes**

The Court has reviewed the in camera production of 44 of Mr. Wilson's handwritten notes falling within this category.[2] The Court previously instructed that, with respect to Mr. Wilson's handwritten notes, anything other than Mr. Wilson's private musings not given or communicated to the client must be produced. After in camera

---

[2] JWRW 006258 - JWRW 006263; JWRW 006273 - JWRW 006281; JWRW 006353 - JWRW 006357; JWRW 006371 - JWRW 006375; JWRW 006851 - JWRW 006855; JWRW 006969 - JWRW 006971; JWRW 007148 - JWRW 007152; JWRW 008155 - JWRW 008160; JWRW 008311 - JWRW 008314; JWRW 008356; JWRW 008606 - JWRW 008607; JWRW 010169 - JWRW 010170; JWRW 010228 - JWRW 010231; JWRW 010642 - JWRW 010643; JWRW 010652 - JWRW 010658; JWRW 010662 - JWRW 010663; JWRW 011817 - JWRW 011818; JWRW 011821 - JWRW 011824; JWRW 011891 - JWRW 011900; JWRW 011912; JWRW 011940 - JWRW 011942; JWRW 011946 - JWRW 011948; JWRW 011951 - JWRW 011953; JWRW 011967 - JWRW 011968; JWRW 011980 - JWRW 011986; JWRW 012267 - JWRW 012271; JWRW 012281; JWRW 012313 - JWRW 012314; JWRW 012471 - JWRW 012474; JWRW 012736; JWRW 013045 - JWRW 013046; JWRW 013053 - JWRW 013055; JWRW 013549; JWRW 013842 - JWRW 013846; JWRW 013902 - JWRW 013903; JWRW 013949; JWRW 013955; JWRW 014036; JWRW 014115 - JWRW 014116; JWRW 015934 - JWRW 015938; JWRW 016221; JWRW 016317; JWRW 016447 - JWRW 16449; JWRW 018594 - JWRW 018597.

review, the Court is satisfied that all 44 documents are protected from disclosure. The documents reflect to-do lists, diagrams, random thoughts, and Mr. Wilson's mental impressions, thought process, and analysis. In other words, these documents are private musings. All 44 documents are appropriately withheld as work product; it does not appear from the face of the notes themselves that any of the notes or their contents were communicated to a client.

### B. Section II.A.2 – Shared Documents

Here, AWG is challenging ten documents it argues were shared by Mr. Wilson with Defendants or among Defendants, or communicated to privilege-waiving Defendants. In response, Jones Waldo divided this collection of documents into five documents responsive to the arguments in section II.A.2 of AWG's brief, and discussed the other five redacted documents in Section III of its response. Accordingly, the Court has done the same here, and will discuss the redacted documents in Section III.

Jones Waldo contends five documents were withheld on the grounds they reflect legal advice provided to Defendants in this litigation.[3]

After in camera review, the Court is satisfied that one of the five documents withheld on the grounds of attorney-client privilege was properly withheld. JWRW 012463 is an email communication from Mary Russell, a Jones Waldo staff member, transmitting a confidential client communication to Mr. Wilson. The email is protected

---

[3] The five documents within this category are Bates stamped as follows: JWRW 011591 - JWRW 011593; JWRW 012460 - JWRW 012462; JWRW 012463; JWRW 012464 - JWRW 12466; JWRW 012467 - JWRW 012469.

**MEMORANDUM DECISION AND ORDER - 3**

attorney-client communication. *See Himmelfarb v. U.S.* 175 F.2d 924, 939 (9th Cir. 1949) (where presence of third party, such as attorney's secretary, is indispensable to delivery of legal advice, privilege is not waived).

However, JWRW 012460 - JWRW 012462, a letter provided to UPGA's accountants dated September 15, 2010, and JWRW 011591 - JWRW 011593, a later, almost identical letter provided to UPGA's accountants dated September 23, 2011, and two prior drafts of the same letter, JWRW 012464 - JWRW 12466 and JWRW 012467 - JWRW 012469, are letters mailed to and shared with UPGA's accountants. Mr. Lee Frankel, the President and CEO of UPGA, requested that Jones Waldo provide UPGA's accountants with information. Granted, the information in the letter discusses information about <u>this</u> litigation. But, the information was freely shared with UPGA's accountants, and therefore the privilege was waived because it was shared with third parties. *Chevron Corp.*, 974 F.2d at 1162 (voluntary disclosure of privileged attorney communication to a third party constitutes waiver of privilege, citing *Weil v. Investment/Indicators, Research & Mgt.*, 647 F.2d 18, 24 (9th Cir. 1981)); s*ee also Himmelfarb*, 175 F.2d at 939 (matters client authorized attorney to disclose to client's accountant were not protected by attorney-client privilege); *Roberts v. Fearless Farris Serv. Stations, Inc.*, No. CV05-472-S-EJL*,* 2007 WL 625423 *4 (D. Idaho Feb. 23, 2007) ("Federal law does not recognize an accountant-client privilege," citing *Couch v. United States*, 409 U.S. 322, 334 (1973)). These four documents are subject to disclosure.

**MEMORANDUM DECISION AND ORDER - 4**

### C. Section II.A.3 – Notes Regarding DOJ

Here, AWG challenges six of Mr. Wilson's handwritten notes that reflect topics allegedly discussed with the Department of Justice and Defendants.[4] After in camera review, the Court has determined that, from the face of these notes, it is evident none of the information contained within the handwritten notes was actually communicated with or to Defendants. The documents do not contain information shared between DOJ and Defendants. Rather, they all appear to be personal notes Mr. Wilson wrote to himself, or to the file. The documents are properly withheld as attorney work-product.

### D. Section II.B – UPGA Audit Documents

AWG challenges six documents in this category allegedly related to an audit of UPGA's Capper-Volstead compliance, which was initiated prior to the filing of this litigation.[5] After in camera review, the Court has concluded the representations concerning the character of the documents set forth in Jones Waldo's brief are accurate. Three documents clearly reflect legal advice given to Defendants in <u>this</u> litigation, and are not subject to the advice of counsel privilege waiver. Another document is a communication between Mr. Wilson and the Director of United Potato Growers of Wisconsin, which is not a Defendant in this lawsuit. United Potato Growers of Wisconsin has not waived its privilege. And finally, two documents are internal communications

---

[4] JWRW 011806 - JWRW 011807; JWRW 012075; JWRW 012087 - JWRW 012088 [REDACTED]; JWRW 012087 - JWRW 012088 [UNREDACTED]; JWRW 012155; JWRW 012478 - JWRW 012498; JWRW 012545 - JWRW 012546.

[5] The notes and documents are Bates stamped JWRW 011594; JWRW 011595; JWRW 011633 - JWRW 011634; JWRW 011635 - JWRW 011636; JWRW 011637; JWRW 011638 - JWRW 011641.

**MEMORANDUM DECISION AND ORDER - 5**

about legal strategy between members of the Jones Waldo firm, and are thus attorney work product. The documents were properly withheld.

### E. Section II.C.1 – Documents Shared with Donald Barnes

In this category, there are seven documents AWG contends were shared with third-party attorney Donald Barnes and should be disclosed.[6] Jones Waldo maintains these seven documents are protected by the work-product and common-interest doctrine of the attorney-client privilege, explaining Donald Barnes was retained by the Defendant cooperatives for his assistance in responding to the Department of Justice Civil Investigative Demand. Mr. Wilson attests that UPGI, a Defendant here, engaged Mr. Barnes in the summer of 2009 for his assistance in responding to the DOJ's Civil Investigative Demand, and the Defendant cooperatives engaged Mr. Barnes at the beginning of their defense of this lawsuit until Anderson Banducci assumed their defense. Aff. of Wilson ¶ 7 (Dkt. 779-1 at 16.)

There are three documents Jones Waldo contends are protected by the common interest privilege. (JWRW 012290, JWRW 012291 - JWRW 012311, JWRW 016390 - JWRW 016391.) The common interest privilege, or joint defense privilege, is an extension of the attorney client privilege. *U.S. v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012). The privilege applies if "(1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to

---

[6] The notes and documents are Bates stamped JWRW 010908 - JWRW 010912, JWRW 011965 - JWRW 011966, JWRW 012007, JWRW 012243 - JWRW 012247, JWRW 012290, JWRW 012291 - JWRW 012311, JWRW 016390 - JWRW 016391.

further that effort; and (3) the privilege has not been waived." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D.Cal. 2007).

The rationale for the rule is to allow "persons who share a common interest in litigation [to] be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims." *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990). Although the privilege is not limited to situations in which litigation has commenced or is in progress, there must be some common legal effort in furtherance of anticipated litigation. *In re Grand Jury Subpoenas,* 902 F.2d at 249; *U.S. v. Schwimmer*, 892 F.2d 237 244 (2nd Cir. 1989); *Gonzalez*, 669 F.3d at 980; *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D.Cal. 2007). The doctrine does not, however, extend to communications about a joint business strategy that happens to include a concern about litigation. *FSP Stallion 1, LLC v. Luce*, 201 WL 3895914 *18 (D. Nev. Sept. 30, 2010).

Based upon in camera review, the Court concludes all three documents meet the elements of the attorney-client privilege, and those of the common interest doctrine. The Court is satisfied the documents were properly withheld. From the face of the documents, it is readily apparent the communications between Mr. Barnes and Mr. Wilson were designed to further the joint litigation strategy of both attorneys' clients in the face of actual, threatened legal action from the DOJ. It does not appear these three documents were shared beyond Mr. Wilson and Mr. Barnes. Further, the documents discuss litigation strategy by the two lawyers on behalf of their respective clients, both of whom were facing the threat of DOJ action.

**MEMORANDUM DECISION AND ORDER - 7**

As to the remaining four documents, Jones Waldo claims work-product protection and again the common interest doctrine. The Court previously explained that documents analyzing the law, facts, or trial strategy of the case reflecting the attorney's mental impressions but that were not given to the client fall outside of the waiver effected by the advice-of-counsel defense here. *Informatica Corp. v. Business Objects Data Integration, Inc.*, 454 F.Supp.2d 957, 964 (N.D. Cal. 2006).

Again, the Court's independent in-camera review of the four documents falling within this subcategory has convinced the Court the documents are protected by either the work-product privilege or common-interest doctrine. The documents were shared among Mr. Wilson and Mr. Barnes in furtherance of the respective clients' joint litigation strategy under the threat of a DOJ lawsuit. This conclusion is apparent from the plain text of the documents themselves. Further, it does not appear the documents were shared with third parties.

All seven documents falling within this category were properly withheld.

### F. Section II.C.2 – NCFC Documents

AWG challenges the assertion of privilege over thirty-seven documents[7] on the grounds that privilege was waived because the documents were shared with NCFC

---

[7] JWRW 010660; JWRW 010666 - JWRW 010669; JWRW 011809; JWRW 011810 - JWRW 011811; JWRW 011864; JWRW 011865; JWRW 011888 - JWRW 011889; JWRW 011938 - JWRW 011939; JWRW 011944 - JWRW 011945; JWRW 011949 - JWRW 011950; JWRW 011957 - JWRW 011958; JWRW 011960; JWRW 011961; JWRW 011962 - JWRW 011963; JWRW 011964; JWRW 012056; JWRW 012076 - JWRW 012081; JWRW 012090; JWRW 012111 - JWRW 012137; JWRW 012156; JWRW 012172; JWRW 012173; JWRW 012202; JWRW 012203; JWRW 012223; JWRW 012241 - JWRW 012242; JWRW 012286; JWRW 012312; JWRW 012316 - JWRW 012317; JWRW 012318 - JWRW 012320; JWRW 012475 - JWRW 012477; JWRW 012536 - JWRW 012538; JWRW (Continued)

**MEMORANDUM DECISION AND ORDER - 8**

attorneys. AWG argues Mr. Wilson was not acting as NCFC's attorney, and because NCFC general counsel Marlis Carson sought legal advice outside of NCFC, any privilege was waived. NCFC, intervenor in this discovery dispute, submitted a separate brief outlining its position. NCFC asserts it owns the privilege, it has not waived any applicable privilege, and that the group of attorneys from which NCFC general counsel Marlis Carson sought advice was formed from NCFC membership attorneys. All of the attorneys with whom Ms. Carson communicated were part of NCFC's Legal and Tax Advice (LTA) working committee, and the attorneys forming this committee provided NCFC with legal advice and strategy to combat DOJ's investigation into the practices of NCFC member cooperatives, which were not limited to the potato cooperatives.

The Court has reviewed all thirty seven documents in camera, as well as its October 27, 2014 Order. (MDL Dkt. 734.) The Court outlined the scope of discovery vis-a-vis Defendants' advice of counsel defense. The Court articulated that documents and communications touching upon Defendants' organization under the antitrust laws, and specifically Capper-Volstead, as well as the greater universe of communications concerning Defendants' conduct for which Defendants sought counsel's advice, must be produced. This group of documents certainly does fall into this general concept. But, none of the thirty-seven documents, which are mostly emails and research compilations,

---

012541; JWRW 012547 - JWRW 012548 [REDACTED]; JWRW 012547 - JWRW 012548 [UNREDACTED]; JWRW 012549 [REDACTED]; JWRW 012549 [UNREDACTED]; JWRW 012550 - JWRW 012551 [REDACTED]; JWRW 012550 - JWRW 012551 [UNREDACTED]; JWRW 020598 - JWRW 020599.

**MEMORANDUM DECISION AND ORDER - 9**

are relevant to Defendants' state of mind in this case, which the Court explained was the relevant inquiry here. None of the emails appears to have been shared beyond the group of LTA attorneys, which apparently banded together to assist NCFC with its own legal position to combat DOJ's investigation into various cooperative organizations who happened also to be NCFC members.

Second, the Court noted in its October 2014 order that, on the basis of the privilege log, it was "not clear that documents related to NCFC would be protected from disclosure, … to the extent there was no actual, threatened, or impending litigation affecting NCFC for which Mr. Wilson provided advice." Upon review of the documents and email exchanges, it is apparent from the context that Mr. Wilson, and other members of the LTA who were themselves attorneys, were providing legal advice to and discussing legal strategy with NCFC general counsel Marlis Carson. The legal strategy did not relate specifically to Mr. Wilson's clients, nor to any other LTA attorney's client. Rather, the legal strategy was NCFC's strategy, and not necessarily that of its members. While the potato industry was certainly represented, there were other industries NCFC represented as well, and this appears to have been a collective NCFC strategy on behalf of itself and its members.

Finally, the Court finds the assessment of the district court in *In re Processed Egg Prods. Antitrust Litigation*, MDL No. 08-2002, 2014 WL 6388436 (E.D. Pa. Nov. 17, 2014), persuasive. There, the court grappled with the scope of the attorney-client privilege when trade associations asserted the privilege. The court analogized trade associations with corporations, and applied the principles of *Upjohn Co. v. United States*,

**MEMORANDUM DECISION AND ORDER - 10**

449 U.S. 383 (1981), when it determined there may be scenarios in which trade associations may properly assert privilege over confidential communications made between its attorneys and its members concerning legal advice for the association. 2014 WL 6388436 at *11. The court explained there was no blanket privilege, but the communications must be within the scope of the attorney-associational client relationship, which in turn required analysis into the content and context of the communications between counsel for the association and its members. *Id.*

The court elaborated, noting that "if the communications were within the attorney-associational client relationship—that is, if the communications were attorney advice within the scope of the member's role within the association and given for the sake of advising the association—then the privilege would belong to" the association. *Id*. at *12. Finally, the court added a caveat. If the association communicated with a member's attorney, that outside attorney-member must be wearing her "association membership" hat, not her "in-house counsel" hat, for the privilege to protect the communication. *Id. see also In re Plasma-Derivative Protein Therapies Antitrust Litigation*, No. 09-C-7666, 2003 WL 791432 *3 (N.D. Ill. Mar. 4, 2013) (explaining that the analysis of whether communications between the association's counsel and its member company representatives are protected legal advice must be made on a case-by-case-basis).

Here, NCFC explains it has not shared any of the communications initiated by its general counsel Marlis Carson, or those shared among the LTA working group attorney members and forwarded or copied to Ms. Carson, with any third party. Further, it appears from the context of all thirty-seven communications or documents that the LTA group, all

**MEMORANDUM DECISION AND ORDER - 11**

of whom were attorneys and whose clients were members of NCFC, were wearing their LTA-NCFC hats, not that of their respective client, when they rendered advice to NCFC. And, all thirty-seven communications or documents relate to NCFC's legal strategy on behalf of all its members given the threat of DOJ litigation against its agricultural cooperative members.

Accordingly, the Court finds the attorney-client privilege appropriately asserted by NCFC as to communications between and among NCFC general counsel Marlis Carson, and the lawyer-members comprising the LTA and advising NCFC. The Court therefore finds it unnecessary to consider NCFC's additional arguments asserting estoppel and First Amendment protection.

### G. Section II.C.3 – Steve Ottum Email

Here, there is one email exchange dated September 4, 2006, between Steve Ottum of Potandon and Mr. Wilson. (JWRW 009033). AWG argues the attorney-client privilege is inapplicable because Potandon was not Mr. Wilson's client. Potandon submitted a separate response brief addressing this email communication, asserting that Mr. Ottum sought legal advice from outside counsel of his choosing, in this instance Mr. Wilson, for the purpose of securing legal advice on behalf of Potandon. Decl. of Ottum ¶ 4 (Dkt. 778-2 at 2.) Potandon argues it has never asserted the advice of counsel defense in this lawsuit, and Mr. Ottum's subjective belief that an attorney-client relationship existed is sufficient to assert the privilege.

The attorney-client privilege exists where: "(1) [ ] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the

**MEMORANDUM DECISION AND ORDER - 12**

communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir.2011) (internal citations omitted). Because these privileges are being asserted in a federal question case, federal common law governs the scope of the privilege, not Idaho law. *Buckner v. U.S*, CV 94-491-N-EJL, 1995 WL 687055 (D. Idaho Oct. 10, 1995).[8] "The fact that a person is a lawyer does not make all communications with that person privileged." *U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)). Under federal law, the attorney-client privilege is strictly construed. *Id.* at 609. "[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication." *U.S. v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010).

Mr. Ottum, on behalf of Potandon, sought legal advice on four matters, and expected his communication to be confidential. Decl. of Ottum ¶ 4 (Dkt. 778-2 at 2.) However, there is no evidence of a formal attorney-client relationship between Potandon

---

[8] Accordingly, Potandon's citations to this Court's decisions in *Storfer v. Dwelle*, 3:12–cv–00496–EJL, 2014 WL 3965033 (D. Idaho Aug. 13, 2014) and *Swensden v. Corey*, 2011 WL 1458441, *3 (D. Idaho 2011), which relied upon Idaho law, do not apply. Under Idaho law, absent assent by both attorney and client to an attorney client relationship, the analysis hinges upon whether the client's subjective belief that such a relationship existed was reasonable. *Swensden*, 2011 WL 1458441 at *3. The Ninth Circuit has rejected that approach when the matter involves a federal question. *Ruehle*, 583 F.3d at 608 (reversing district court's decision applying "reasonable belief" standard under California law to alleged privileged communications between individual and lawyer in federal question case).

and Mr. Wilson.[9] Mr. Ottum sought consultative advice from an attorney who was not hired to represent Potandon. Therefore, Potandon has not carried its burden that an attorney-client relationship existed with Mr. Wilson at the time Mr. Ottum asked his questions. Moreover, the nature of the email suggests that Mr. Ottum had questions as a result of a meeting[10] he attended a few weeks prior. Thus, although the advice sought pertained directly to Potandon's operations, the impetus for the questions was Mr. Ottum's attendance at a meeting which prompted follow up questions. The document is therefore <u>not</u> protected from disclosure.

### H. Section III – Redacted Documents

Five redacted documents fall under this subcategory.[11] AWG contends these five documents are part of the larger set of ten discussed above in Section II.A.2, and are subject to disclosure because the emails were communicated among privilege waiving Defendants. Jones Waldo, however, is now unable to locate the five unredacted documents, and does not recall what lies behind the redactions. Jones Waldo argues that AWG, as well as other Plaintiffs, have possessed the five documents in redacted form for

---

[9] Potandon again cited inapplicable authority to support its contention that formal retention of an attorney is not required for the attorney-client privilege to apply. Potandon cited *Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*, 991 F.2d 1501, 1505-06 (9th Cir. 1993), which held that, under New York and California state law, a formal contract is not necessary for the court to find formation of an attorney-client relationship. As the Court explained in footnote 6, supra, the Ninth Circuit has rejected that approach when the case involves a question of federal law, like the case here, brought under the Sherman Antitrust Act.

[10] The email does not reference what meeting Mr. Ottum attended, or who else was present other than Mr. Wilson.

[11] JWRW 005818, JWRW 005819 - JWRW 005820, JWRW 006053 - JWRW 006054, JWRW 009348, JWRW 009682 - JWRW 009683.

nearly two years, and until now, no challenge to the redactions has been made. Thus, Jones Waldo argues that requiring it to manually search through the several dozen banker boxes potentially containing the unredacted emails amounts to an undue burden.

Essentially, Jones Waldo is seeking a protective order pursuant to Fed. R. Civ. P. 26(c)(1). Rule 26(c)(1) permits a party to move for a protective order upon a showing of good cause to protect that party or person from undue burden or expense. One remedy is to preclude the disclosure or discovery. Fed. R. Civ. P. 26(c)(1)(A).

In the context of this case, the Court precludes disclosure. AWG has had the five documents in its possession for two years. The redactions are clearly noted on the documents. At this stage in the discovery process, it is too late for the Court to order Jones Waldo to incur the time and expense of looking for what amounts to a needle in a haystack. Although the Court is not necessarily inclined to agree with Jones Waldo's characterization of the documents as "inconsequential," upon reviewing the documents the Court is not left with an overwhelming concern that Jones Waldo is concealing the "smoking gun" in this litigation. The redactions have been apparent for two years, AWG can likely place the communications in context with the other thousands of documents and emails already produced. The Court is not condoning Jones Waldo's inability to locate the original documents or the process utilized to Bates stamp the documents, but, because the parties are well past the point of diminishing returns, will accept Jones Waldo's representations in its memorandum as truthful.

AWG's motion is denied with regard to the five redacted documents.

## 2. Deposition of Mr. Wilson

AWG argues an additional seven hours of deposition is warranted because of Mr. Wilson's failure to disclose 2,676 documents until after his July 16, 2014 deposition, and the close of discovery. AWG provides a recap of the disclosure history. The initial subpoena *duces tecum* Plaintiffs served upon Randon Wilson on November 16, 2012, sought documents relevant to certain cooperative Defendants' good-faith reliance on counsel defense. On June 26, 2013, the Court ordered Randon Wilson and his law firm, Jones Waldo, to update his privilege log and produce all responsive documents created before November 16, 2012. Disputes arose about the scope of Defendants' privilege waiver. On April 11, 2014, the Court issued an order clarifying the scope of certain Defendants' waiver of privilege, and Judge Winmill affirmed the Order on May 8, 2014. Mr. Wilson then produced 1,159 documents, and continued to withhold 3,200. On July 2, 2014, at the direction of privilege waiving Defendants, Jones Waldo produced to AWG approximately 1,250 additional documents, and another 122 documents were produced on the afternoon of July 16, 2014, during Mr. Wilson's deposition.

On September 8, 2014, Direct Purchaser and Indirect Purchaser Plaintiffs filed a motion to compel directed at Defendants and Randon Wilson, which motion was joined by AWG. Mr. Wilson then produced 453 documents. On October 27, 2014, the Court entered an order providing guidance on the four broad bases for withholding the remaining documents and instructed the parties to meet and confer again. At that time, only 1,076 challenged documents remained on Jones Waldo's privilege log. On

December 22, 2014, Jones Waldo produced an additional 806 documents and a revised privilege log. In January of 2015, another 26 documents were produced.

Because of the piecemeal nature of document production, its occurrence after the July 16, 2014 deposition, and Mr. Wilson's pivotal role in advising certain Defendants in this case, AWG contends that the seven hour deposition permitted under the Court's discovery order was insufficient. AWG asserts it has been deprived of the opportunity to examine Mr. Wilson about the advice he gave to the cooperative Defendants, advice which is material to Defendants' advice-of-counsel defense.

Jones Waldo contends, however, that it was not until after the conclusion of the July 16, 2014 deposition that Plaintiffs, including AWG, expressed any objection to the July 2, 2014 document disclosure or the length of the deposition. Additionally, Jones Waldo objects because it was not until July 21, 2014, that Class Plaintiffs emailed Jones Waldo claiming many of the remaining documents on Jones Waldo's privilege log should be produced. In essence, Jones Waldo contends that, had it known earlier, it would have reviewed and responded to the request prior to Mr. Wilson's deposition. Jones Waldo offered to make Mr. Wilson available to AWG for an additional two hours of deposition, limited to questioning related to documents produced after July 16, 2014. All Defendants agreed to the proposal, but AWG did not.

At issue here is Defendants' state of mind in relation to their advice-of-counsel defense. The parties knew, well in advance and at the time the Court entered its discovery order, of the complex nature of the case, Mr. Wilson's role in advising the cooperative Defendants, and the mountain of documents involved. Given the lack of any objection to

**MEMORANDUM DECISION AND ORDER - 17**

the Court's discovery order limiting Mr. Wilson's deposition to seven hours and the failure to raise the insufficiency of the Court's limitation, the Court concludes that an additional seven hours of deposition is unwarranted. Additionally, AWG has had in its possession numerous documents produced by Defendants relevant to their advice-of-counsel defense.

But, the Court concludes also that AWG has shown good cause for some additional time because of the later production of documents Jones Waldo continued to withhold. The Court is familiar with the types of documents requested and produced, and the information the documents likely contain, at this point in the litigation. Given its familiarity, the Court concludes three hours is sufficient. The deposition will be limited to questioning Mr. Wilson about the documents produced after July 16, 2014.

## CONCLUSION

For the above reasons, the motion will be granted in part and denied in part. The following Bates stamped documents are subject to disclosure: JWRW 011591 - JWRW 011593; JWRW 012460 - JWRW 012462; JWRW 012464 - JWRW 12466; JWRW 012467 - JWRW 012469; and JWRW 009033. Jones Waldo shall immediately produce the above documents to AWG. Further, AWG may depose Randon Wilson for an additional three hours relative to documents produced after July 16, 2014, including those compelled by this Order. The Court defers any ruling regarding attorney fees.

# **ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff Associated Wholesale Grocers, Inc.'s Motion to Compel (MDL Dkt. 768) is **GRANTED IN PART AND DENIED IN PART.**

Dated: **March 17, 2015**

Honorable Candy W. Dale
United States Magistrate Judge