Philip Gordon, Esq. (ISBN 1996)
GORDON LAW OFFICES
623 W. Hays Street
Boise, Idaho 83702
Phone: (208) 345-7100
Fax: (208) 345-0050
pgordon@gordonlawoffices.com
[Additional Counsel listed on signature page]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: FRESH AND PROCESS POTATOES ANTITRUST LITIGATION | ) | Civil Case No. 4:10-md-02186 BLW |
| ──────────────────────────── | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| *Direct Purchaser Plaintiffs' Action.* | ) | |
| | ) | |
| ──────────────────────────── | ) | |

**DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR:
1) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
2) CERTIFICATION OF A SETTLEMENT CLASS & APPOINTMENT OF
SETTLEMENT CLASS COUNSEL & EXECUTIVE COMMITTEE;
3) APPROVAL OF THE NOTICE PLAN AND FORM OF NOTICE AND
ORDER DIRECTING NOTICE TO THE SETTLEMENT CLASS.**

**TABLE OF CONTENTS**

I.   INTRODUCTION .........................................................................................................1

II.   BACKGROUND .........................................................................................................2

    A.   The Litigation.................................................................................................2

    B.   The Settlement Negotiations.........................................................................5

III.   PROVISIONS OF THE SETTLEMENT AGREEMENT.................................................9

    A.   The Settlement Class.....................................................................................9

    B.   Consideration to the Proposed Class and Rescission Provisions..........................10

    C.   Release Provisions .......................................................................................13

IV.   THE PROPOSED SETTLEMENT IS SUFFICIENTLY FAIR, REASONABLE
    AND ADEQUATE ......................................................................................................13

    A.   Standards for Preliminary Approval of a Settlement.............................................14

    B.   The Proposed Settlement Satisfies the Standard for Preliminary Approval. .........16

        1.   The Settlement Amount is within the Range of Reasonableness
            Given the Cash Consideration, Injunctive Relief and the Risks of
            Continued Litigation. ................................................................................16

        2.   The Settlement is the Product of Vigorous & Extensive Arms'
            Length Negotiation. .................................................................................19

        3.   In Class Counsel's View, the Settlement is Fair and Reasonable.............20

        4.   The Settlement Was Reached Long After the Close of Fact
            Discovery. ...............................................................................................21

        5.   There Are No Deficiencies in the Settlement Agreement. ........................21

V.   CERTIFICATION OF THE PROPOSED SETTLEMENT CLASSES IS
    WARRANTED ............................................................................................................22

    A.   This Case Satisfies The Prerequisites Of Rule 23(a). ...........................................23

        1.   The Settlement Class is sufficiently numerous........................................23

        2.   The Settlement Class is ascertainable. .....................................................24

3.       There are common questions of law and fact. ...........................................24

4.       The Representative Plaintiffs' claims are typical of those of the Settlement Class.................................................................................26

5.       The Representative Plaintiffs will fairly and adequately protect the interests of the Class. ..............................................................27

VI.    THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(B)(3)..........28

A.    Common Issues Predominate over Individualized Issues......................................29

B.    This Class Action is Superior to other Methods of Adjudication. .........................30

VII.   THE PROPOSED NOTICE PLAN AND FORM OF NOTICE MEET THE REQUIREMENTS OF RULE 23 AND SHOULD BE APPROVED. ..............................32

A.    Proposed Notice Plan ............................................................................................32

1.       Direct Mail Notice ....................................................................................32

2.       Publication Notice......................................................................................33

3.       Press Release..............................................................................................35

4.       Other Methods to Reach Class Members...................................................35

B.    The Notice Plan and Content of the Notice Comply with Rule 23 and Constitutional Due Process and Should Be Approved. ........................................36

1.       The Notices Meet Rule 23's "Plain Language" & Content Requirements. .............................................................................................36

2.       The Notice Plan Provides the Best Notice Practicable. .............................37

VIII.  THE COURT SHOULD APPOINT HAUSFELD LLP AS SETTLEMENT CLASS COUNSEL & APPOINT THE INTERIM EXCUTIVE COMMITTEE AS THE SETTLEMENT EXECUTIVE COMMITTEE....................................................39

IX.    CONCLUSION......................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
 276 F.R.D. 364 (C.D. Cal. 2011) .......................................................................23, 26, 28, 32

*Alvarado Partners, L.P. v. Mehta*,
 723 F. Supp. 540 (D. Colo. 1989) ...................................................................................19

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997).....................................................................................................30, 32

*Amgen v. Conn. Ret. Plans & Trust Funds*,
 133 S. Ct. 1184 (2013) ......................................................................................................30

*Bafus v. Aspen Realty, Inc.*,
 236 F.R.D. 652 (D. Idaho 2006) ..................................................................................24, 28

*Brigiotta's Farmland & Produce Garden Ctr. v. United Potato Growers of Idaho*,
 No. 10-cv-307, 2010 WL 3928544 (D. Idaho Oct. 4, 2010)...............................19, 29

*In re Catfish Antitrust Litig.*,
 826 F. Supp. 1019 (N.D. Miss. 1993) ..............................................................................27

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 No. C-07-5944, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) ........................23, 25

*Churchill Village, L.L.C. v. Gen. Elec.*,
 361 F.3d 566 (9th Cir.2004) .............................................................................................37

*In re Citric Acid Antitrust Litig.*,
 No. 95–1092, C–95–2963, 1996 WL 655791 (N.D. Cal. Oct. 2, 1996) ................................27

*Collins v. Thompson*,
 679 F.2d 168 (9th Cir. 1982) ............................................................................................13

*Comcast Corp. v. Behrend*,
 133 S. Ct. 1426 (2013)..................................................................................................30, 31

*Cotton v. Hinton*,
 559 F.2d 1326 (5th Cir. 1977) ..........................................................................................13

*Cummings v. Connell*,
 316 F.3d 886 (9th Cir. 2003), *cert. denied*, 539 U.S. 927 (2003)............................................28

*K.W. ex rel. D.W. v. Armstrong*,
   298 F.R.D. 479 (D. Idaho 2014) ........................................................................25

*In re Dynamic Random Access Memory Antitrust Litig.*,
   No. M 02–1486, 2006 WL 1530166 (N.D. Cal. June 5, 2006)....................................23, 26, 31

*Four In One Co. v. S.K. Foods, L.P.*,
   No. 08-cv-3017, 2014 WL 28808 (E.D. Cal. Jan. 2, 2014) ....................................17

*Gates v. Rohm & Haas Co.*,
   248 F.R.D. 434 (E.D. Pa. 2008)........................................................................15

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982)........................................................................................23

*Haley v. Medtronic, Inc.*,
   169 F.R.D. 643 (C.D. Cal. 1996) ......................................................................24

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .....................................................................26, 30

*Harrington v. City of Albuquerque*,
   222 F.R.D. 505 (D.N.M. 2004)........................................................................40

*In re High-Tech Emp. Antitrust Litig.*,
   289 F.R.D. 555 (N.D. Cal. 2013)..................................................................23, 31

*Leyva v. Medline Indus., Inc.*,
   716 F.3d 510 (9th Cir. 2013) ..........................................................................31

*Lilly v. Jamba Juice Co.*,
   No. 13-cv-02998, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ...........................15

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) .............................................................18, 21

*In re Linerboard Antitrust Litig.*,
   296 F. Supp. 2d 568 (E.D. Pa. 2003) ................................................................17

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ..........................................................................36

*Moore v. City of San Jose*,
   615 F.2d 1265 (9th Cir. 1980) .........................................................................13

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .....................................................................18

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................................... *passim*

*Nen Thio v. Genji, LLC*,
   14 F. Supp. 3d 1324, 1335 (N.D. Cal. 2014) ....................................................15

*In re NVIDIA Corp. Derivative Litig.*,
   No. C-06-06110, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008).....................14, 15

*Officers for Justice v. Civil Service Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................16

*In re Online DVD Rental Antitrust Litig.*,
   No. M 09-2029, 2010 WL 5396064 (N.D. Cal. Dec. 23, 2010) .................26, 27, 28

*Oregon Laborers-Emp's. Health & Welfare Trust Fund v. Philip Morris, Inc.*,
   188 F.R.D. 365 (D. Or. 1998) ...........................................................................24

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ............................................................................27

*Pecover v. Elec. Arts Inc.*,
   No. C 08–2820, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ...........................27

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138, 2007 WL 1991529 (N.D. Cal. June 30, 2007).............................39

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ......................20, 22

*Ries v. Ariz. Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012).......................................................................25

*In re Rubber Chem. Antitrust Litig*,
   232 F.R.D. 346 (N.D. Cal. 2005).................................................................24, 31

*Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*,
   254 F.R.D. 294 (W.D. Tex. 2008) .....................................................................39

*Shoshone-Bannock Tribes of Fort Hall Reservation v. Norton*,
   No. CV–02–9, 2005 WL 2387595 (D. Idaho Sep. 28, 2005) ..........................31, 32

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) ............................................................................38

*Simpao v. Gov't of Guam*,
   369 F. App'x 837 (9th Cir. 2010) ......................................................................39

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
   No. 12-cv-4 (E.D. Tenn. Aug. 5, 2014) ...................................................................39

*In re Static Random Access Antitrust Litig.*,
   No. C 07-01819, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) ...................................23, 32

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) .................................................................................31

*Stockwell v. City and Cnty. of San Francisco*,
   749 F.3d 1107 (9th Cir. 2014) .................................................................................25

*In re Sugar Indus. Antitrust Litig.*,
   1976 WL 1374 (N.D. Cal. May 21, 1976) ...................................................................24

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...............................................................14, 15

*In re TFT-LCD Antitrust Litig.*,
   267 F.R.D. 291 (N.D. Cal. 2010) ....................................................................23, 27, 31

*In re Urethane Antitrust Litig.*,
   251 F.R.D. 629 (D. Kan. 2008) ...............................................................................23

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) .................................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ...................................................................................25, 26

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
   No. 4:03-MD-015, 2004 WL 3671053 (W.D. Mo. Apr. 20, 2004) ...................................39

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) .................................................................................30

**Statutes**

Capper-Volstead Act, 7 U.S.C. § 291 ...............................................................3, 17, 26

**Other Authorities**

Fed. R. Civ. P. 23 ...............................................................................................*Passim*

Fed. R. Civ. P. 30(b)(6) ...................................................................................4, 5

3 William B. Rubenstein et al., *Newberg on Class Actions* § 8.32 (4th ed.) ...............................38

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Direct Purchaser Plaintiffs ("Plaintiffs") move this Court for entry of an Order: (1) ) preliminarily approving the class action settlement agreement ("Settlement") reached between Plaintiffs and Defendants; (2) certifying the Settlement Classes and appointing Settlement Class Counsel and a Settlement Executive Committee; and (3) approving the plan for, and form of, Notice and directing Notice to the Settlement Classes.

## I.     INTRODUCTION

Plaintiffs and the Defendants entered into a Settlement Agreement creating a settlement fund of $19,500,000 and providing for entry of a Consent Order which, among other things, prohibits released potato producers and their cooperatives from engaging in the acreage management scheme that was the core of this litigation, in exchange for a release of all class members' antitrust claims against Defendants and related entities as defined in the Settlement Agreement. The Settlement Agreement and its accompanying exhibits are attached hereto as Exhibit 1.

The Settlement resulted from extensive arms-length negotiations over the course of more than a year, with respect to all Defendants, and over the course of several years with respect to one group of Defendants. These settlement discussions were held among experienced and informed counsel and the Settlement represents an excellent recovery for the class. The Settlement is well within the range of possible approval to justify sending and publishing notice of the Settlement to potential Settlement Class Members, as well as scheduling a final Fairness Hearing. Accordingly, Plaintiffs respectfully request the Court enter the Proposed Order, attached hereto as Exhibit 2, preliminarily approving the Settlement Agreement, certifying the Settlement Class and appointing Settlement Class Counsel and a Settlement Executive Committee, and approving the form and plan of class notice and directing notice to the

1

Settlement Classes in substantially the same form as submitted herewith. The Order provides, among other things, that:

- the settlement proposed in the Settlement Agreement has been negotiated at arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Settlement Class;

- the Settlement Class defined in the Settlement Agreement be certified, designating Class Representatives, Settlement Class Counsel, and a Settlement Executive Committee, as defined therein; and

- a fairness hearing on the settlement proposed in the Settlement Agreement shall be held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

These provisions will set in motion the procedures necessary to obtain final approval of the proposed settlements as required by Rule 23(e) of the Federal Rules of Civil Procedure.

At this time, in considering whether to grant preliminary approval of a proposed settlement, the Court need determine only whether the settlement is within the range of possible approval. A final determination of whether the Settlement is sufficiently fair, reasonable, and adequate will be made at or after the Fairness Hearing, after notice of the settlement has been mailed and published and Class Members have been given the opportunity to object to it or opt-out of the class. As set forth below, the Settlement Agreement amply satisfies the required standards and should be preliminarily approved by the Court.

## II.     BACKGROUND

### A.     The Litigation

This case arises from an alleged conspiracy among potato growers and their membership associations, packing sheds, dehydrators, marketers, and various other co-conspirators to raise prices for fresh potatoes by unlawfully controlling and suppressing the supply of potatoes in the United States. Plaintiffs alleged that Defendants effectuated the conspiracy by, among other

means, agreeing to restrict acreage planted to fresh potatoes, diverting fresh potatoes into non-fresh markets, and restricting the flow of fresh potatoes into the fresh market, among other conduct. The purpose and result of this alleged collusion was to artificially fix, maintain, and raise prices for all customers who directly purchased fresh potatoes from the Defendants and their co-conspirators. Plaintiffs have alleged that all direct purchasers were commonly impacted by the increased prices that resulted from the supply restrictions that Defendants allegedly coordinated through United Potato Growers of America ("UPGA") and its chapters, including Defendants United Potato Growers of Idaho ("UPGI") and United II Potato Growers of America, Inc. ("United II"). The class action lawsuit sought damages, injunctive relief, attorneys' fees, and costs from Defendants. Defendants denied all allegations of wrongdoing in this action and continue do to so.

Plaintiffs filed their initial complaint in June 2010[1] and an Amended Complaint in December 2010.[2] Defendants moved to dismiss the case, arguing, among other things, that their conduct was exempt from the Sherman Act by the Capper-Volstead Act, 7 U.S.C. § 291.[3] On December 2, 2011, the Court denied the individual motions to dismiss as to most defendants and denied a joint motion on two grounds: (1) that Plaintiffs' allegations regarding Defendants' pre-production market controls stated an antitrust claim that would not be protected by the Capper-Volstead Act if the allegations were proven true; and (2) the Court would not conclude as a matter of law that fully integrated producers qualify for protection under the Act, finding that to be a fact-specific question. ECF No. 159 at 6-21. The Court further advised that Plaintiffs' allegation regarding participation by non-eligible members and non-members, "[i]f proved …

---

[1] Compl., No. 10-cv-307 (ECF No. 1).

[2] Am. Compl. No. 10-md-2186 (ECF No. 39).

[3] *See* No. 10-md-2186, ECF Nos. 70, 72, 73, 75, 76, 79, 85, 98, 137.

3

could preclude application of the Capper-Volstead exemption." *Id.* at 13. The Court dismissed the following defendants: Wada Defendants, Pleasant Valley, Potandon, United II, Idahoan, Dole Defendants, and R.D. Offutt Company, but granted Plaintiffs leave to amend for all but the Dole Defendants. *Id.* at 67-68. After Plaintiffs filed an amended Complaint (ECF No. 163), adding new allegations and naming Ronald D. Offutt, Jr., the previously dismissed Defendants moved to dismiss again, but the Court denied all motions (ECF No. 225).

Discovery began in the summer of 2012, and was extensive, spanning approximately two years. Document productions were massive: Defendants produced more than 1.3 million documents totaling more than 3.6 million pages; third parties produced an additional 33,000 documents. Declaration of James Pizzirusso in Support of Motion ("Pizzirusso Decl.") ¶ 2. To streamline their review, Plaintiffs used advanced computer analytics (predictive coding) to review the document production, ranking each document by likely relevancy to key issues in the case. Attorneys then conducted a second-tier review of the documents ranked highest by the predictive coding methodology, resulting in more than one-quarter of a million fully coded documents. *Id.* ¶ 3. Additionally, Plaintiffs analyzed complex transactional data productions from Defendants and third parties. *Id.* Direct and Indirect Purchasers took 45 depositions, including depositions under Rule 30(b)(6) that encompassed multiple days and often involved multiple designees. *Id.* ¶ 4. Defendants and third-party Randon Wilson produced dozens of initial privilege logs identifying thousands of documents withheld from discovery on grounds of attorney-client privilege and attorney work product. *Id.* ¶ 5. After months of negotiations, Plaintiffs filed a motion to compel production of many of the documents on the ground that, *inter alia*, Defendants waived the attorney-client privilege by asserting an affirmative defense based

on a "good faith" reliance on the advice of counsel. The motion was largely granted (ECF No. 625), and Defendants and Randon Wilson produced hundreds of additional documents as a result.

Plaintiffs' economic expert, Dr. Michael A. Williams, Ph.D., analyzed sales transaction data from 1998 to 2012 covering sales of billions of pounds of potatoes by certain Defendants. The sales data produced by those Defendants and third parties in the course of discovery include information regarding individual shipments, prices, and/or price adjustments. (ECF No. 685-2 (Decl. of Dr. Michael A. Williams) ¶ 9 (Filed Under Seal)) Dr. Williams also reviewed additional business records produced by Defendants along with publicly available information, including U.S. Department of Agriculture ("USDA") reports about potato sales and industry studies and reports. *Id.* Plaintiffs filed a motion for class certification on August 29, 2014 and a supporting declaration of Dr. Williams.[4] (ECF Nos. 685, 685-2)

### B.     The Settlement Negotiations

The Chair of the Direct Purchaser Plaintiffs' Executive Committee, Hausfeld LLP, and certain members of that Executive Committee (collectively "Class Counsel"), and counsel for all Defendants engaged in extensive arm's-length negotiations intermittently over the course of approximately more than a year to reach the current settlement. The scope and details of the negotiations are described in the Pizzirusso Declaration filed herewith. Class Counsel and Defendants' counsel, who are highly experienced and capable, vigorously advocated their respective clients' positions in the settlement negotiations. As a consequence of this vigorous advocacy, settlement negotiations were protracted and intermittent during this period. At many times, it appeared as if no agreement would be reached.

---

[4] A Corrected Declaration of Michael A. Williams, Ph.D. was filed on October 21, 2014 . (ECF No. 723)

The Class Counsel first began serious discussions regarding the possibility of settlement with the defendants represented by the Orrick firm—Blaine Larsen Farms, Inc., Driscoll Potatoes, Inc., and Rigby Produce, Inc. ("Orrick Defendants") in mid-2012. These discussions proved unsuccessful as the parties positions were too far apart, and the litigation against those and other Defendants continued. Pizzirusso Decl. ¶ 8. In August, 2013, Direct Purchasers resumed discussions with the Orrick firm via email and telephone, which led to an in person meeting in December 2013; those discussions did not lead to an agreement, but the parties maintained communications. *Id.* ¶ 9. Following that meeting, in late January 2014, all parties in this litigation agreed to enter into mediation with a skilled and experienced mediator to more formally pursue global settlement discussions. *Id.* ¶ 10. In February 2014, the parties prepared extensive mediation briefs for submission to the mediator, with plaintiffs' joint mediation brief comprising nearly 30 pages and 200 footnoted citations to hundreds of documents supporting their view of the case. *Id.* ¶ 11. Then, in early March 2014, all plaintiffs in the case and all Defendants participated in the joint mediation before the Honorable Daniel Weinstein (Ret.) of JAMS, a respected former jurist. *Id.* ¶ 12. The mediation lasted over two days and concluded with a mediator's proposal for settlement, with deadlines for acceptance; several weeks later, one or more parties rejected the proposal, but the parties made considerable progress in narrowing a range for possible settlement. *Id.* During this period, the litigation proceeded without entry of a stay, and following the mediation, the Parties continued to aggressively litigate this case, further pursuing production of documents from certain Defendants and third parties, taking numerous depositions, serving and responding to additional written discovery, and preparing their class certification papers, as discussed in more detail *infra*.

Following Plaintiffs' motion for class certification in late August 2014, Direct Purchaser

Plaintiffs, Indirect Purchaser Plaintiffs, and Defendants resumed settlement negotiations. To facilitate those efforts, on October 21, 2014, Direct and Indirect Purchaser Plaintiffs and Defendants informed the Court of the settlement discussions, and those parties stipulated to an extension of the deadline for Defendants to file their opposition to the Class Certification Motion from December 19, 2014 to February 2, 2015, with a comparable extension for Plaintiffs' reply briefs, to suspend negotiations on outstanding discovery disputes with Defendants, and to moot Defendants' motion for two-day depositions of Direct and Indirect Purchasers' experts. (ECF No. 725) The Court subsequently entered an Order granting the stipulation. (ECF No. 733) After multiple rounds of telephone calls and email communications, in late November, Class Counsel and the Defendants reached an agreement in principle to resolve this matter, which included an agreement on the settlement amount to be payable by all Defendants, along with other general terms. Pizzirusso Decl. ¶ 15. For specifics associated with some of these terms, such as injunctive relief, terms related to the Motion by the Jones Waldo firm for fees and costs related to Plaintiffs' subpoena served on Randon Wilson of that firm (ECF No. 607), and rescission terms, the parties agreed that further negotiations would be required. *Id.* ¶ 16. The settlement amount and broad outlines of other terms of the agreement in principle were memorialized in an email among counsel for the parties, dated November 25, 2014. *Id.* ¶ 17. The parties also agreed to seek a 60-day stay for deadlines and motions filed in the case, and, following a telephonic conference with the Court on December 8, 2014, the Court entered that stay on December 22, 2014, staying deadlines and motions through February 6, 2005. *Id.*; ECF No. 752. The parties were unable to finalize the terms of the settlement by February 6, 2015 and requested an additional 30 day stay of deadlines and motions, which the Court granted during a telephonic conference on February 5, 2015. Pizzirusso Decl. ¶ 18.

In early March 2015, the parties' efforts to memorialize the settlement agreement in principle broke down when the parties were unable to reach a global agreement with all Defendants on the terms of the injunctive relief; Plaintiffs did, however, agree to settle with the Orrick Defendants. *Id.* ¶ 19. Consequently, at a telephonic status conference with the Court on March 9, 2015, the parties informed the Court an agreement with only the Orrick Defendants had been reached and Plaintiffs requested that the litigation proceed according to scheduled deadlines applicable after the stay against the remaining Defendants, including the timely filing of the remaining Defendants' opposition to Plaintiffs Class Certification Motion. *Id.* The remaining Defendants requested a further extension of the deadline for filing their opposition to Plaintiffs' Motion for Class Certification, which Plaintiffs opposed. *Id.* ¶ 20; The Court indicated reluctance to grant any further extensions. Remaining Defendants filed a formal request for an extension on March 16, 2005. (ECF No. 800) Settlement discussions with remaining Defendants resumed, and on March 18, 2015, Plaintiffs and Remaining Defendants reached agreement on the injunctive relief portion of the settlement agreement in principle. Pizzirusso Decl. ¶ 21. The parties informed the Court during a telephonic status conference that day that a global agreement had been reached with all Defendants, including an agreement on injunctive relief. *Id.* ¶ 22. That agreement included both cash consideration of $19,500,000 and a Consent Order enjoining potato producers released by the Settlement Agreement and UPGI, UPGA (and its constituent cooperatives), and United II from agreeing to set the number of acres of fresh potatoes they will plant and to comply with all antitrust laws. *Id.*

The Court stayed the case through April 3, 2015, ordering the parties to settle the case by that date. (ECF 805) The parties requested and the Court granted a one-week extension of the April 3, 2015 deadline (ECF No. 810), and the parties informed the Court via email on April 10,

2015 that the formal Settlement Agreement had been executed. Consistent with the prior agreement in principle, prior to execution of the Settlement Agreement, Defendants provided to Plaintiffs financial information sufficient to show their financial condition which was a significant factor leading to Plaintiffs' agreement to the settlement amount. Pizzirusso Decl. ¶ 24.

After extensive factual investigation of both the merits of the case and, importantly, Defendants' financial condition, it is Class Counsel's opinion that the Settlement Amount of $19,500,000 combined with the significant value of the Consent Order is fair, reasonable, and adequate to the Class. Pizzirusso Decl. ¶ 25. Plaintiffs respectfully submit that the Settlement is in the best interest of the Class and should be preliminarily approved by the Court as within range of possible approval, that the two classes defined below and in the Settlement Agreement should be certified for purposes of the Settlement, and that notice of the Settlement Agreement, substantially similar to the Notice Plan and Form of Notice proposed by this motion, should commence.

**III.     PROVISIONS OF THE SETTLEMENT AGREeMENT**

    **A.     The Settlement Class**

The Settlement Agreement defines the proposed Settlement Class as follows:

Direct Purchaser Plaintiff Monetary Relief Class:

> All persons and entities who, between June 18, 2006 and the date on which the Court enters an order preliminarily approving the Settlement and certifying the Class for settlement purposes, directly purchased Fresh Potatoes grown in the United States, other than Specialty Potatoes, from: (1) any Defendant or any parent, subsidiary or affiliate thereof; (2) any member of the cooperative members of United Potato Growers of America, or any parent, subsidiary or affiliate thereof; and any member of the United Potato Growers of Idaho, Inc., or any parent, subsidiary, or affiliate thereof; and (3) any entity that packed or marketed fresh potatoes grown by any Defendant, by any member of United Potato Growers of Idaho, Inc., or by any member of the cooperative members of United Potato Growers of America.

Direct Purchaser Plaintiff Injunctive Relief Class:

> All persons and entities who, between June 18, 2006 and the date on which the Court enters an order preliminarily approving the Settlement and certifying the Class for settlement purposes, directly purchased Fresh Potatoes grown in the United States, other than Specialty Potatoes, from: (1) any Defendant or any parent, subsidiary or affiliate thereof; (2) any member of the cooperative members of United Potato Growers of America, or any parent, subsidiary or affiliate thereof; and any member of the United Potato Growers of Idaho, Inc., or any parent, subsidiary, or affiliate thereof; and (3) any entity that packed or marketed fresh potatoes grown by any Defendant, by any member of United Potato Growers of Idaho, Inc., or by any member of the cooperative members of United Potato Growers of America, Inc.

> Excluded from the Classes are Defendants and their Co-Conspirators, including, but not limited to, any member of United Potato Growers of Idaho, Inc. and United II, the members of the United Potato Growers of America, Inc., and any member of the cooperative members of United Potato Growers of America, Inc., and their respective subsidiaries, affiliates and members; any entity that packed or marketed fresh potatoes grown by any Defendant, by any member of United Potato Growers of Idaho, Inc., any member of United II Potato Growers of Idaho, Inc., and by any member of the cooperative members of United Potato Growers of America, Inc., and their respective parents, subsidiaries, affiliates and members; and any governmental entities.

Settlement Agreement ¶ 22 (Pizzirusso Decl., Ex. A).

## B.    Consideration to the Proposed Class and Rescission Provisions

The Settlement Agreement provides that, within thirty (30) days of its execution, Defendants will pay $19,500,000.00 in cash (the "Settlement Amount"), by wire to the escrow account with the Escrow Agent. *See* Settlement Agreement ¶¶ 17, 37 & Ex. A to Settlement Agr. Prior to execution of the Agreement, Defendants submitted to Class Counsel current financial information for each Defendant that is still in operation. Defendants also submitted to Class Counsel the amount each Defendant Group is contributing to the global settlement amount of $19.5 million, which shall be made available to the Court upon request. Class Counsel are satisfied that the amount contributed to the global settlement amount by each Defendant Group is

fair, reasonable, and adequate in light of their ability to pay and corresponding risk of liability. Defendants wired the Settlement Amount in one payment to the Escrow Agent on May 13, 2015. Pizzirusso Decl. ¶ 23. The Settlement Fund shall be maintained in an escrow account controlled by the Defendants and Class Counsel, subject to the Escrow Agreement (Ex. B to the Settlement Agreement) pending entry of an order finally approving the Agreement, after which Class Counsel control and maintain responsibility for the fund.

As consideration for the release provided under the Settlement Agreement, in addition to the monetary payment to the Settlement Class, Defendants entered into a Consent Order, in effect for seven years, that prohibits any releasee that grows potatoes along with UPGI, UPGA, and United II and any of their constituent entities from engaging in the conduct complained of in the action. *See* Consent Order (Ex. F to Settlement Agreement). Specifically, the Consent Order provides that, as of the date of entry, Defendants are prohibited "from entering into any agreement, either directly or indirectly . . . with or among producers of potatoes . . . setting the number of acres that any producer of potatoes will plant to Fresh Potatoes or otherwise setting the volume or amount of potatoes that any producer of Fresh Potatoes will plan or grow." *Id.* ¶ 4. The Consent Order also mandates that the Cooperative Defendants and any Successor Entities require, as a condition of initial and continuing membership, that their members agree to the terms of the Consent Order. *Id.* ¶ 6. Defendants must also work with qualified antitrust compliance counsel to review the existing and proposed policies and practices to ensure their compliance with antitrust law with respect to all potatoes grown or sold in the United States. *Id.* ¶¶ 7-8. Finally, it requires that all Releasees comply with state and federal antitrust laws. *Id.* ¶ 8. Plaintiffs' economic expert Dr. Williams estimates the value of the Consent Order in potential savings by direct purchasers over the seven-year life of the Consent Order in the aggregate,

based on national Fresh Potato market and sales by all potato growers in 2013, as between $1.62 and $1.99 billion.[5] While sales by defendant growers amount to  less than five percent of the total sales of fresh potatoes,[6] that fact relates to the likelihood of satisfying any large damages judgment.  By contrast, the injunction applies to the members of UPGI and UPGA.[7]

Additionally, the Settlement Agreement requires most Defendants to indemnify Plaintiffs, up to $200,000, for any monetary losses or liabilities arising out of any award by the Court to the Jones Waldo Firm or third-party Randon Wilson related to Jones Waldo's motion for attorneys' fees in responding to the subpoena on Randon Wilson (ECF No. 607), and to bear the in-kind costs of preparing Plaintiffs' opposition and objection papers related to such motion if Jones Waldo continues to pursue it. Settlement Agr. ¶ 45.[8] This provision provides additional consideration by limiting Class Members' and counsels' exposure to further costs.

Plaintiffs and Defendants each have the right and option to rescind the Settlement Agreement for the reasons described in paragraph 34 of the Agreement, including Court rejection of the Agreement or any part thereof. Defendants also have the right and option to rescind the entire Agreement, including both cash and injunctive components, should the combined market share of gross domestic grocery sales by class members who timely exclude themselves exceed a threshold percentage of the market set forth in the confidential Supplemental Agreement, which will be disclosed to the Court for *in camera* inspection prior to the preliminary approval hearing.

---

[5] *See* Decl. of Michael A. Williams, Ph.D., in Supp. of DPPs' Mot. for Preliminary Approval ¶ 8, and Table 1.

[6] As estimated for 2013 sales and production by Counsel for Defendants.

[7] Plaintiffs brought claims against only a subset of UPGI grower-members, and did not sue the members of UPGA's constituent cooperatives. The injunction, however, applies to UPGI and UPGA, binding its grower-members to the terms of the Consent Order even though Plaintiffs could not have recovered damages from these unnamed entities. Consent Order ¶¶ 4, 6. Thus, the Consent Order provides significant value to the Injunctive Settlement Class.

[8] Although the Court has since terminated the motion, the Jones Waldo Firm has the option to refile. (ECF Nos. 806, 809)

*Id.* ¶ 35. Additionally, the Settlement Agreement provides that Class Counsel may, at a time approved by the Court, seek from the Settlement Amount an award of attorney's fees, reimbursement of expenses, and incentive awards for class representatives. *Id.* ¶ 42.

>   **C.    Release Provisions**

In exchange for the consideration described above, Plaintiffs have agreed to release the Defendants, the members of UPGI and United II, the constituent cooperatives of UPGA, and the producer-members of UPGA's cooperative-members from any and all claims arising out of or resulting from any actions or conduct alleged DPP's Second Amended Complaint, including, but not limited to, planting, growing, supplying, producing, selling, marketing, or distributing Fresh Potatoes produced in the United States. The full text of the proposed releases, including the limitations thereof, is set forth in the Settlement Agreement. *Id.* ¶¶ 30-33.

## IV.    THE PROPOSED SETTLEMENT IS SUFFICIENTLY FAIR, REASONABLE AND ADEQUATE

Rule 23(e) provides that a class action shall not be dismissed or settled without the approval of the court, and that notice of the proposed settlement shall be provided in reasonable manner to all class members who would be bound. Fed. R. Civ. P. 23(e)(1). The primary concern of this subsection is ensure that the rights of the class members have been given due regard by the negotiating parties. *Collins v. Thompson*, 679 F.2d 168, 172 (9th Cir. 1982).

By its very nature, settlement results from compromise, "a yielding of absolutes and an abandoning of highest hopes." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (quotation omitted); *Moore v. City of San Jose*, 615 F.2d 1265, 1271 (9th Cir. 1980). Courts have recognized that settlement is favored in class action cases, which are particularly complex to litigate and therefore quite expensive. "[T]here is an overriding public interest in settling and quieting litigation . . . particularly . . . in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529

F.2d 943, 950 (9th Cir. 1976); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221

F.R.D. 523, 526 (C.D. Cal. 2004) ("Unless the settlement is clearly inadequate, its acceptance

and approval are preferable to lengthy and expensive litigation with uncertain results.") (citations

omitted).

The settlement approval process set forth in Rule 23(e) involves three steps: (1)

preliminary approval of the proposed settlement; (2) dissemination of notice of the proposed

settlement to all class members; and (3) a formal fairness hearing, during which class members

may be heard regarding the proposed settlement, and at which time counsel may introduce

evidence and present argument concerning the settlement's fairness, adequacy, and

reasonableness. *See, e.g., Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 525 (citing Manual for

Complex Litigation, Third, § 30.41, at 236–37 (1995)). This procedure safeguards class

members' due process rights and enables the Court to fulfill its role as guardian of class interests.

A. **Standards for Preliminary Approval of a Settlement.**

The purpose of the Court's preliminary evaluation of the proposed settlement is to

determine whether it falls within "the range of reasonableness," and warrants providing notice to

the Class of the terms and conditions of the settlement, and scheduling a formal fairness hearing.

Preliminary approval should be granted "'[i]f the proposed settlement appears to be the product

of serious, informed, non-collusive negotiations, has no obvious deficiencies . . . and falls within

the range of possible approval . . . .'" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,

1079-80 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)).

Obvious deficiencies may include "'unduly preferential treatment of class representatives or of

segments of the class, or excessive compensation for attorney[s] . . . .'" *In re NVIDIA Corp.

Derivative Litig.*, No. C-06-06110, 2008 WL 5382544, at \*2 (N.D. Cal. Dec. 22, 2008) (quoting

Manual For Complex Litigation Fourth, § 30.41 at 237 (West 2008)).

14

To determine whether a settlement is within the range of reasonableness (or "range of possible approval"),[9] the "[c]ourt must evaluate whether the Settlement is "fair, reasonable, and adequate" and ensure that the agreement is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.* (citation omitted). "To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.,* 484 F. Supp. at 1080. But courts also consider adequacy in light of the continued risks, expense, and duration of continued litigation. *See id.* (considering settlement value in light of risk, expense and complexity of further litigation); *Lilly v. Jamba Juice Co.*, No. 13-cv-02998, 2015 WL 1248027, at *7 (N.D. Cal. Mar. 18, 2015) (considering substantive fairness in light of partial class certification and risks associated with establishing damages).

Some courts may also cursorily "preview" the factors applicable at the final approval stage, some of which overlap with the factors for preliminary approval: "[1] the strength of plaintiff's case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1335 (N.D. Cal. 2014) (quotations and citation omitted);[10] *but see Gates v. Rohm & Haas Co.,* 248 F.R.D. 434, 444 n.7 (E.D. Pa. 2008) ("[T]he Court need not address these factors, as the standard for preliminary approval is far less demanding."). Though a trial court has broad discretion in

---

[9] *In re Tableware Antitrust Litig*., 484 F. Supp. 2d at 1079-80.

[10] Some of these factors are not applicable to preliminary approval, such as the reaction to the class, since the class has not yet received notice at the preliminary approval stage.

determining whether to grant preliminary approval of a proposed settlement, in exercising that discretion, however, the Ninth Circuit instructs that a settlement approval hearing should not be "turned into a trial or rehearsal for trial on the merits." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). As the Court noted in *Officers*, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate . . . ." *Id*.

**B.      The Proposed Settlement Satisfies the Standard for Preliminary Approval.**

       **1.      The Settlement Amount is within the Range of Reasonableness Given the Cash Consideration, Injunctive Relief and the Risks of Continued Litigation.**

The Settlement Agreement provides for significant direct monetary compensation—$19.5 million—to the Class in light of the complexity of the litigation, the risks of continued litigation, and the potential difficulty of recovering damages from Defendants in the event of a favorable verdict. In addition, the estimated value of the injunctive relief under the Consent Order—on average, more than $250 million annually[11]—and the procedural protections it provides to the Class, such as Defendants' mandatory retention of antitrust counsel and requirements imposed as a condition of membership in the cooperatives—offers substantial value to the Settlement Class.

Class counsel have considered the complexities of this litigation, the risks, expense, and duration of continued litigation against Defendants, Defendants' ability to satisfy a potential judgment (many of which have very limited cash or other liquid assets), and the likelihood of

---

[11] Plaintiffs alleged an ongoing conspiracy and in their Joint Statement of Facts in support of their Class Certification Motions, expressly identified conduct that continued after the filing of the Amended Complaint and conduct they believe support a finding that some Defendants may still be engaging in the complained of conduct. ECF No. 687 at 14-17, 37-38.

years of appeal if Plaintiffs prevail at trial. After weighing these against the guaranteed recovery and injunctive relief under the Consent Order provided to the Plaintiffs in the Settlement Agreement, Class Counsel strongly believe the Settlement is favorable to and in the best interests of the Plaintiffs and the Class. Continuing this litigation against either party would entail a lengthy and expensive legal battle, which already has consumed almost five years.

The settlement is particularly reasonable given the inherent risks in moving forward with litigation towards trial. Antitrust class actions are among the most complex to prosecute given, in particular, the need for expert testimony. *See, e.g., Four In One Co. v. S.K. Foods, L.P.*, No. 08-cv-3017, 2014 WL 28808, at *10 (E.D. Cal. Jan. 2, 2014) (citing cases); *In re Linerboard Antitrust Litig.,* 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003). This case is even more complex than the typical antitrust litigation because of the legal defenses asserted. In particular, certain Defendants have asserted the defense that the conduct alleged, even if proven, is protected by the Capper-Volstead Act, 7 U.S.C. § 291, which provides a limited antitrust exemption for associations of agricultural producers that collectively handle, process, or market their members' products. This case presents untested questions associated with that defense, including, but not limited to, whether the statute protects: (1) agreements regarding pre-production volumes; (2) producer associations that do not themselves collectively sell their members' products, collectively bargain for the terms of sale of their members' products, or collectively process or handle their members' products; and (3) producer associations that include members that are vertically integrated into processing and handling. Further, this case presents the question of whether limited marketing activity on behalf of some, but not all association members, qualifies as "marketing" under the statute. This case also presents unique questions of agency law in connection with Capper-Volstead: whether bona fide producers may designate non-exempt

17

entities to participate as their agents in some aspects of cooperative activity or whether inclusion eviscerates any Capper-Volstead protection. Although Plaintiffs believe these Capper-Volstead questions would be resolved in their favor, they recognize the risks: namely, that resolution of one or more of these issues against them would substantially foreclose or eliminate further litigation against some or all of the Defendants. And certain Defendants have also raised other novel defenses: that they in good faith believed their conduct was lawful and reasonably relied on the advice of their counsel, and thus lacked the requisite intent to violate the antitrust laws. While Plaintiffs disagree that there is such a legally cognizable defense, they recognize its novelty significantly increases the risk of an appeal and resulting delay in a resolution of the case.

Additionally, the settlement was reached while Plaintiffs' motion for class certification was pending before the Court. Although Plaintiffs are confident that their motion would have been granted, they recognize there can be no certainty as to the result as class certification has become a heated battleground in many antitrust cases. Further, the Parties recognize that a jury trial might well turn on questions of proof, making the outcome inherently uncertain for both Plaintiffs and Defendants. *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475-76 (S.D.N.Y. 1998) ("Antitrust litigation in general, and class action litigation in particular, is unpredictable. . . . [T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.").

Moreover, Defendants have asserted the Class has suffered no injury because prices absent the conspiracy would not have differed from prices actually paid. Plaintiffs believe differently, their expert having estimated overcharges resulting from the conspiracy. *See* DPP Mem. In Supp. Of Mot. for Class Cert. at 40 (ECF No. 685). Nevertheless, and although

18

Plaintiffs believe the potential damages in this case far exceed the cash consideration offered here, even if Plaintiffs succeed at trial as a class, they face the risk that an Idaho jury might not award the damages sought. They also face the very real risk that recovery of any judgment awarded may be difficult (or impossible in the case of some Defendants)—perhaps pursued in bankruptcy proceedings subordinated to other creditors—based on Counsel's review of current financial information as part of the settlement negotiations. The risk of little or no recovery down the road, even if Plaintiffs' prevail at trial, was a substantial factor considered by Plaintiffs during settlement discussion, and weighs heavily in favor of approval of the settlement agreement. *See Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 547 (D. Colo. 1989) ("It has been held prudent to take a bird in the hand instead of a prospective flock in the bush" in weighing the value of an immediate recovery against "the mere possibility of future relief after protracted and expensive litigation.") (quotations omitted). Finally, even after trial is concluded, there could be one or more lengthy appeals that could delay for many years any monetary recovery that might be had. *See Nat'l Rural Telecomms.*, 221 F.R.D. at 526-27.

## 2.   The Settlement is the Product of Vigorous & Extensive Arms' Length Negotiation.

As discussed above and in the accompanying Pizzirusso Declaration, the global Settlement here was the product of vigorous and extensive arms' length negotiations between Class Counsel and counsel for the Defendants, all of whom are experienced and capable in complex class action and/or antitrust matters.[12] Defendants' counsel and Class Counsel vigorously advocated their clients' positions during negotiations and were prepared to litigate the case fully if no settlement was reached. As noted, the parties *did not* seek a stay of the litigation

---

[12] The Court acknowledged the qualifications of Class Counsel in its Order and Opinion appointing the Plaintiffs' Executive Committee. *Brigiotta's Farmland & Produce Garden Ctr. v. United Potato Growers of Idaho*, No. 10-cv-307, 2010 WL 3928544 (D. Idaho Oct. 4, 2010).

during those global negotiations, and following the unsuccessful two-day mediation with Judge Weinstein in spring 2014, to which all Parties devoted significant time and financial resources, the parties did in fact vigorously litigate the case through close of fact discovery and Plaintiffs' motion for Class Certification. Of the forty-five depositions Plaintiffs took in this case, all but six took place shortly after those initial settlement talks faltered. Pizzirusso Decl. ¶ 4.

When settlement discussions resumed in fall 2014, they took place over the course of several months during which litigation continued and the Parties did not seek a stay of proceedings until an agreement in principle had been reached. Further, once a stay was entered, negotiations remained protracted and complex (involving complex injunctive relief and rescission terms), and contentious. *Id.* ¶¶ 8-21. And after the second stay expired and global negotiations failed, Plaintiffs were immediately prepared to move forward, opposing any extension of time for filing of the remaining Defendants' class certification opposition papers during the telephonic conference with the Court on March 8, 2015. Pizzirusso Decl. ¶ 20. Nothing in the course of Plaintiffs' negotiations with the Defendants, or in the substance of the proposed Settlement Agreement, presents any reason to doubt the Agreement's fairness. *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138, 2007 WL 4171201, at *4 (N.D. Cal. Nov. 26, 2007).

### 3.    In Class Counsel's View, the Settlement is Fair and Reasonable.

It is Class Counsel's view that the Settlement is fair and reasonable, which is entitled to great weight given their familiarity with the facts. *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528. Class Counsel have substantial experience litigating antitrust class actions and strongly believe that the settlement amount is appropriate cash consideration in light of Defendants' financial condition, and, importantly, that the injunctive relief provides substantial value in exchange for the discharge of the claims against the Defendants. This determination is based in

part on the risk and expense of continuing to litigate the claims against Defendants. *See id.* ("[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (quotation omitted); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 640 ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel . . . ." (internal quotations omitted). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance fairness.

### 4.   The Settlement Was Reached Long After the Close of Fact Discovery.

Discovery that is well-advanced at the time a settlement agreement is reached supports approval because it ensures that the agreement was reached "based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop.,* 221 F.R.D. at 527. Here, the proposed Settlement was reached after years of litigation. Fact discovery was closed and Plaintiffs' class certification brief and expert report had been filed when this Settlement Agreement was reached. Only expert discovery remained. Moreover, Class Counsel had reviewed hundreds of thousands of documents produced by Defendants and taken dozens of depositions of Defendants and third parties, providing them with a full understanding of the strengths and weaknesses of their case. Pizzirusso Decl., ¶¶ 2-5. Accordingly, the amount of discovery completed supports a finding that the Settlement is within the range of reasonableness. *See In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *4 (nearly four years of litigation, motions practice, research, and extensive witness interviews supported approval).

### 5.   There Are No Deficiencies in the Settlement Agreement.

There are no obvious deficiencies in the Agreement. The settlement is fair to the class as a whole and provides substantial consideration. It provides no preferential treatment to Class Representatives, and the allocation of settlement funds will be distributed *pro rata* based on each

class member's (including Class Representative's) purchases of fresh potatoes, as indicated in the attached proposed forms of notice. *See* Declaration Daniel Rosenthal ("Rosenthal Decl."), Ex. 2 at Question 8. Class representatives benefit from the Settlement Agreement in the same way as any other Settlement Class member. Moreover, Class Counsel will petition the Court for reimbursement of fees and costs and incentive awards to Class Representatives on or before August 28, 2015 per the Court's May 21 Order, (ECF No. 821), and any such awards will be subject to approval by the Court.

Accordingly, the proposed Settlement meets the standards of preliminary approval.

## V.    CERTIFICATION OF THE PROPOSED SETTLEMENT CLASSes IS WARRANTED

The Supreme Court has long recognized that class certification is particularly appropriate in horizontal price-fixing cases like this one, because it "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (internal quotation marks omitted).[13] Courts in this Circuit have certified similar class actions alleging horizontal price-fixing conspiracies. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) ("*CRTs*"); *In re High-Tech Emp. Antitrust Litig.*, 289 F.R.D. 555 (N.D. Cal. 2013); *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 276 F.R.D. 364 (C.D. Cal. 2011) ("*Auto Lights*"); *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 291 (N.D. Cal. 2010) ("*LCDs*"); *In re Static Random Access Antitrust Litig.*, No. C 07-01819, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) ("*SRAM*"); and

---

[13] *See also In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 635 (D. Kan. 2008) ("[I]t is widely recognized that the very nature of horizontal price-fixing claims are particularly well suited to class-wide treatment because of the predominance of common questions.

*In re Dynamic Random Access Memory Antitrust Litig.*, No. M 02–1486, 2006 WL 1530166 (N.D. Cal. June 5, 2006) ("*DRAM*").

Rule 23 governs class certification for both litigation and settlement classes. A settlement class should be certified where the five requirements of Rule 23(a) are satisfied, and when one of the three subsections of Rule 23(b) is also met.

### A.      This Case Satisfies The Prerequisites Of Rule 23(a).

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) the class is objectively ascertainable; (3) there are common questions of law and fact; (4) the claims or defenses of the named plaintiffs are typical of those for the class; and (5) the named plaintiffs will fairly and adequately protect class interests.

### 1.      The Settlement Class is sufficiently numerous.

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all members would be "impracticable." There is no threshold number required to satisfy the numerosity requirement and the most important factor is whether joinder of all the parties would be impracticable for any reason. *In re Rubber Chem. Antitrust Litig*, 232 F.R.D. 346, 350 (N.D. Cal. 2005); *In re Sugar Indus. Antitrust Litig.,* 1976 WL 1374, at *12 (N.D. Cal. May 21, 1976) (noting that there is no minimum number to satisfy numerosity and observing that generally the requirement is met if the number of plaintiffs exceeds 40). Moreover, numerosity is not determined solely by the size of the class but also by the geographic location of class members. *Haley v. Medtronic, Inc.,* 169 F.R.D. 643, 648 (C.D. Cal. 1996).

During the Class period, Defendants submissions (per paragraph 24 of the Settlement Agreement) reveal that there were nearly 3,300 customers around the country that directly

purchased potatoes from Defendants.[14] Since joinder of all Class members would be impracticable, the Settlement Class is sufficiently numerous to satisfy Rule 23(a)(1). *Bafus v. Aspen Realty, Inc.*, 236 F.R.D. 652, 655 (D. Idaho 2006) ("The difficulty in joining as few as 40 class members should raise the presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.") (quotation omitted); s*ee also Oregon Laborers-Emp's. Health & Welfare Trust Fund v. Philip Morris, Inc.*, 188 F.R.D. 365, 372-73 (D. Or. 1998) (noting same).

## 2.      The Settlement Class is ascertainable.

The implied requirement of ascertainability is also satisfied because the Class is objectively defined and its members are readily identifiable from Defendants' own sales records. *See CRT*, 2013 WL 5391159, at *2 (noting that a "class definition must also be precise, objective, and presently ascertainable, meaning that it must be administratively feasible for the court to determine whether an individual is a member of the class"); *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 535-36 (N.D. Cal. 2012).

## 3.      There are common questions of law and fact.

Commonality requires the identification of a common contention, one "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "A class action satisfies the commonality requirement when it has "'the capacity . . . to generate common answers to common questions of law or fact that are 'apt to drive the resolution of the litigation.'" *K.W. ex rel. D.W. v. Armstrong*, 298 F.R.D. 479, 486 (D. Idaho 2014) (quoting *Mazza v. Am. Honda*

---

[14] Pursuant to the terms of the Settlement Agreement, Defendants identified 3,260 unique potential Class Members to whom Class Notice will be sent by direct mail. Rosenthal Decl. ¶ 11.

*Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012)). The likelihood of prevailing on the answers to those questions, however, does not play into to commonality determination. *See Stockwell v. City and Cnty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014) (subsequent history omitted).

Plaintiffs' Second Amended Complaint asserts a single claim under Section One of the Sherman Act alleging that Defendants conspired to inflate potato prices by restraining potato production. To satisfy Rule 23(a)(2), "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Courts in this Circuit have repeatedly held that this prong is satisfied where, as here, price-fixing conspiracy is alleged. "[T]he very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist.'" *DRAM*, 2006 WL 1530166, at *3 (quoting *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 357 (N.D. Cal. 2005)); *see also Auto Lights*, 276 F.R.D. at 368; *In re Online DVD Rental Antitrust Litig.*, No. M 09-2029, 2010 WL 5396064, at *3 (N.D. Cal. Dec. 23, 2010).

Although "even a single common question will do," *Dukes*, 131 S. Ct. at 2556, Plaintiffs have identified multiple questions of law and fact common to the named representatives and the putative class. *See* SAC ¶ 186 (ECF No. 39). These include:

- whether Defendants engaged in or entered into a conspiracy among themselves to fix, maintain, raise and/or stabilize potato prices;

- whether Defendants' unlawful conduct enabled them to increase, raise, maintain, or stabilize potato prices at supra-competitive levels;

- the duration of the contract, combination, or conspiracy alleged herein;

- whether Defendants violated Section 1 of the Sherman Act; and

25

- whether Defendants and their actions are exempt from the antitrust laws under the Capper-Volstead Act.

Because there are several common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met.

### 4. The Representative Plaintiffs' claims are typical of those of the Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the named plaintiffs be "typical of the claims or defenses of the class." The test is whether "other members have the same or similar injury, . . . the action is based on conduct which is not unique to the named plaintiffs, and . . . other class members have been injured by the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). The rule is permissive: class representatives' claims need be only "'reasonably coextensive with those of absent class members.'" *Id.* (quoting *Hanlon*, 150 F.3d at 1020). As with commonality, courts have found typicality readily satisfied in horizontal price-fixing cases because "[i]n antitrust cases, typicality usually 'will be established by plaintiffs and all class members alleging the same antitrust violations by defendants.'" *Pecover v. Elec. Arts Inc.*, No. C 08–2820, 2010 WL 8742757, at *11 (N.D. Cal. Dec. 21, 2010) (quoting *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998)); *see also In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993).

In class actions alleging violations of Section One of the Sherman Act, typicality focuses on the conduct of the *defendants*, not on their dealings or transactions with *plaintiffs*. *See, e.g.*, *Online DVD Rental*, 2010 WL 5396064, at *4. Thus, in antitrust cases, typicality is satisfied even when the plaintiff used different purchasing methods, purchased different amounts or at different prices, or purchased a different mix of products than others in the class. *See, e.g., LCDs*, 267 F.R.D. at 300. Here, Plaintiffs' claims—that Defendants agreed to restrict output and artificially

26

fix the prices of potatoes—are typical of those of the Settlement Class because "they stem from the same event, practice, or course of conduct that forms the basis of the claims of the class and are based on the same legal or remedial theory." *In re Citric Acid Antitrust Litig.*, No. 95–1092, C–95–2963, 1996 WL 655791, at *3 (N.D. Cal. Oct. 2, 1996). Accordingly, typicality is satisfied.

     **5.**    **The Representative Plaintiffs will fairly and adequately protect the interests of the Class.**

Plaintiffs also satisfy Rule 23(a)(4), which looks to whether the named plaintiffs or their counsel have any conflicts with the Class and whether they can and will vigorously litigate on behalf of the class. *Bafus*, 236 F.R.D. at 657 (citations omitted). Courts regularly find this requirement satisfied in price-fixing cases. *See, e.g., Auto Lights*, 276 F.R.D. at 374 (where plaintiffs have "alleged a broad conspiracy, courts have not required . . . that the representative ha[s] purchased from all of the defendants or that he ha[s] been adversely affected by all of the means and methods by which the alleged conspiracy was implemented.") (internal quotation marks omitted, brackets and ellipses in original). Adequacy is satisfied where class counsel are "qualified and competent" and the named plaintiffs do not have any interests that are "antagonistic to the remainder of the class." *Online DVD Rental*, 2010 WL 5396064, at *4. Hypothetical or potential conflicts are insufficient. *See Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003), *cert. denied*, 539 U.S. 927 (2003).

Here, this standard satisfied here for several reasons. First, the interests of the named Plaintiffs are coextensive with and do not conflict with those of absent Class members: Plaintiffs allege that all Class members were injured by paying artificially inflated prices for potatoes as result of the same conspiracy, named plaintiffs seek the same relief as all class members, and they share an identical interest in proving Defendants' liability and establishing damages. When they prove their own claims, Plaintiffs necessarily prove those of their fellow Class members.

Furthermore, the Class Representatives have demonstrated their commitment to this action and the entire Class: they have conferred with Class Counsel, and actively participated in discovery, producing documents, answering interrogatories, and sitting for two depositions each.

Second, Plaintiffs have retained highly-skilled counsel with extensive experience in prosecuting antitrust cases, class actions, and other complex cases to successful resolution. The undersigned counsel outlined their extensive experience in prosecuting similar actions in their motion for appointment of the interim Plaintiffs' Executive Committee which Plaintiffs incorporate herein,[15] and the Court recognized these skills in granting that motion. *See Brigiotta's Farmland & Produce Garden Ctr. v. United Potato Growers of Idaho.*, No. 10-cv-307, 2010 WL 3928544 (D. Idaho Oct. 4, 2010). Plaintiffs' proposed class counsel have significant expertise in complex class actions and antitrust litigation; have served in leadership roles in numerous class actions throughout the country; have done extensive work in identifying and investigating Plaintiffs' claims; and have vigorously represented Plaintiffs in this litigation. Plaintiffs' counsel have demonstrated their effectiveness by, among other things, drafting the Complaints, defeating the motions to dismiss, conducting discovery of Defendants and third parties, and filing their motion for class certification. Plaintiffs' counsel have committed, and will continue to commit, the resources necessary to vigorously represent the class.

## VI.    THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(b)(3).

In cases like this one that involve claims for damages, Rule 23(b)(3) provides for class certification if "the court finds that the questions of law or fact common to class members

---

[15] *See also* Pls.' Motion for Appointment of Interim Lead Counsel, No. 10-cv-307, ECF No. 91 & accompanying exhibits (outlining qualifications of proposed Plaintiffs' leadership committee).

One counsel initially appointed by this Court, Girardi Keese, is no longer actively involved in the prosecution of this case. Plaintiffs seek appointment of Kralowec Law Offices in its place for the Settlement Executive Committee. *See infra* Part VIII.

predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

A.     **Common Issues Predominate over Individualized Issues.**

Predominance requires that the proposed Class is "'sufficiently cohesive to warrant adjudication by representation.'" *Amgen v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010)*.* "'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Hanlon*, 150 F.3d at 1022. (Citation omitted). Predominance does not require a showing that plaintiffs will prevail on the merits of common questions, nor does it require that every element of the claims is susceptible to class-wide proof; some individualized issues may be present. *See Amgen*, 133 S. Ct. at 1196. "What [it] does require is that common questions '*predominate* over any questions affecting only individual [class] members.'" *Id.* (emphasis in original, citations omitted). As the Supreme Court has noted, "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Certification of the proposed Settlement Classes under Rule 23(b)(3) will serve these purposes.[16]

---

[16] *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) poses no barrier to certification here. In that case, injury was premised on four theories of impact (each theory may have affected some but not all class members); although the court rejected all but one theory, the damages model did not isolate injury tied to the remaining theory and thus impact could not be proven class-wide. 133 S. Ct. at 1430, 1434-35.

Here, Plaintiffs offer just one theory of liability—Defendants conspired to curtail supply and thus artificially inflated the price of fresh potatoes—which is capable of measurement on a class-wide basis since all class members directly purchased fresh potatoes, as demonstrated in Plaintiffs' experts' declaration providing a model for estimating common impact.

Here, the alleged conspiracy is the overriding question in this case. And, as alleged in the Complaint, it permitted all Defendants to artificially maintain or inflate the price of fresh potatoes by eliminating the risk that customers would be able to avoid the non-competitive price, thus imposing an antitrust injury on the entire class. *See* SAC, *e.g.*, ¶¶ 2, 174, 191-196, 323. Accordingly, common proof will also predominate with respect to the fact of injury or impact in this case.[17] Accordingly, the alleged conspiracy presents a predominant, common issue.

### B.    This Class Action is Superior to other Methods of Adjudication.

Rule 23(b)(3) requires that class resolution be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Where common questions predominate, superiority is generally satisfied. *See LCDs* , 267 F.R.D. at 314; *see also Rubber Chems*. 232 F.R.D. at 354; *DRAM*, 2006 WL 1530166, at *10. The mere need to individually calculate damages is insufficient to preclude a finding of superiority. *Leyva*, 716 F.3d at 514. In evaluating the superiority of a class action, the Court should inquire as to the class members' interest in individually controlling the prosecution of separate actions, the extent and nature of any litigation concerning the controversy already commenced by members of the class, and the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).

Here, it would be inefficient to litigate the predominating common issues in hundreds of individual proceedings in this Court, rather than on a class basis. *See High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1228-29 (N.D. Cal. 2013) ("[T]he nature of Defendants' alleged overarching conspiracy and the desirability of concentrating the litigation in one proceeding

---

[17] While variation the amount of damages suffered by a putative class member is virtually inevitable, that damages are "'invariably an individual question'" that "'does not defeat class action treatment.'" *Stearns v. Ticketmaster Corp*., 655 F.3d 1013, 1026 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 970 (2012) (quoting *Yokoyama v. Midland Nat'l Life Ins. Co*., 594 F.3d 1087, 1094 (9th Cir. 2010)). *Comcast* did not change that rule. *Leyva v. Medline Indus., Inc*., 716 F.3d 510, 514 (9th Cir. 2013).

weigh heavily in favor of finding that class treatment is superior. . . ."). Failure to certify would require each class member to establish the same "claim on an individual basis, which would 'unnecessarily burden the judiciary.'" *Shoshone-Bannock Tribes of Fort Hall Reservation v. Norton*, No. CV–02–9, 2005 WL 2387595, at *4 (D. Idaho Sep. 28, 2005) (quoting *Hanlon*, 150 F.3d at 1023).

A class action is also superior because "[i]n antitrust cases such as this, the damages of individual direct purchasers are likely to be too small to justify litigation, but a class action would offer those with small claims the opportunity for meaningful redress." *SRAM*, 2008 WL 4447592, at *7; *Auto. Lighting*, 276 F.R.D. at 375. In this case there are many Class members whose claims may be relatively small and who will, as a practical matter, have no redress absent class certification. *See Shoshone-Bannock Tribes*, 2005 WL 2387595 at *4 (absent certification "many individuals would be forced to forego their claim due to limited resources"). This action provides a single forum to adjudicate the rights of thousands of potato purchasers, and thus affords an efficient resolution of this controversy. Class treatment is the only realistic alternative to what otherwise would be many scattered lawsuits with possibly contradictory results. *See Amchem*, 521 U.S. at 625. (acknowledging unique qualities of antitrust cases that often mean a class action is superior to individual lawsuits).

Finally, no inherent difficulties undermine the maintenance of a class action here. The Class members are each purchasers identifiable from Defendants' own records. All members can be readily notified that a class has been certified. Furthermore, the case can be managed efficiently in this forum where, as already discussed, common questions predominate and only minimal individualized determinations, if any, will be necessary.

VII.    **THE PROPOSED NOTICE PLAN AND FORM OF NOTICE MEET THE REQUIREMENTS OF RULE 23 AND SHOULD BE APPROVED.**

Plaintiffs retained Kurtzman Carson Consultants ("Administrator" or "KCC"), an experienced and highly qualified notice and claims administrator, to design an appropriate plan and forms of notice, implement the notice plan, and administer the claims process. KCC has substantial experience in developing and implementing comprehensive notice plans in connection with class action settlements. The Declaration Daniel Rosenthal ("Rosenthal Decl."), a Special Consultant to KCC and a notice expert, sets forth his own experience and KCC's in detail. See Rosenthal Decl. ¶¶ 6-9. For example, KCC has designed and implemented legal notice programs for a wide variety of class action and consumer cases. *Id.* ¶¶ 7, 9.

As set forth below, and consistent with the opinion of Mr. Rosenthal, the Proposed Notice Plan and the Proposed Forms of Notice meet the requirements of Rule 23 and Constitutional due process.

### A.    Proposed Notice Plan

Plaintiffs propose that individual notice be disseminated to potential Class Members through a variety of means including via direct mail notice to known Settlement Class members, supplemental post card notice to potential class members, publication notice in online and print trade publications targeted to potential class members, a press release distributed via wire services reaching thousands of media outlets along with release to a targeted media list covering the produce industry, and use of other innovative, targeted internet-based strategies designed to provide maximum reach to potential class members.

#### 1.    Direct Mail Notice

Under the terms of the Settlement Agreement, Defendants were required to transmit to the Claims Administrator the names and addresses of their customers. Settlement Agr. ¶ 24.

Those submissions resulted in nearly 3,300 unique mailing addresses for known Settlement Class Members. Proposed "Long-Form" Direct Notice and a Claim Form, *see* Rosenthal Decl. ¶ 11 & Exs. 2 & 3, will be mailed directly to these Settlement Class Members. The Long-Form Notice provides detailed information about the litigation, the Settlement itself, the Settlement Class Members' rights, and the Fairness Hearing, among other information, as discussed in greater detail below.

Additionally, Plaintiffs will purchase an additional mailing list from InfoUSA that KCC, using various SIC codes, has identified as reaching the targeted audience of more than 20,000 food wholesalers, which Plaintiffs believe represent a significant subset of potential Settlement Class Members. Summary "Postcard" Notice, *see id.* ¶ 11 & Ex. 4., will be sent to this group of potential Settlement Class Members. Although less extensive than the long-form direct notice, the Summary Postcard will notify the Settlement Class of certain information regarding the litigation, the Settlement, and proposed fairness hearing, as required by Federal Rule 23(c)(2)(B), and will provide the website and toll-free number (discussed *infra*) from which these potential Settlement Class Members may obtain the Long-Form notice, the Claim Form, the Settlement Agreement itself, and other pertinent court documents.

Long-form and Summary Postcard Notice will be mailed to these potential class members during the week of July 2, 2015. *Id.* ¶ 11.

### 2.    Publication Notice

In conjunction with the Direct Mail Notice detailed above, KCC, together with Class Counsel, has designed and will implement a national media campaign to further publicize and advice Settlement Class members of the Settlement. As part of this media campaign, KCC will publish Summary Notice, *see Id.* ¶ 14 & Ex. 5, in a number of national trade publications, with wide-circulation, targeted to reach potential Settlement Class Members not receiving either

33

Long-Form or Summary Postcard Notice. These publications were chosen with assistance from the Administrator and include those identified by Plaintiffs during discovery as significant sources of information for potato buyers. Publication of the Summary Notice will appear one time, in the following trade publications:

- *The Packer* (in the July 13, 2015 issue), a publication with a circulation of 13,019 that is the leading source for produce industry news, providing news and information on fresh fruit and vegetable marketing, covering every aspect of the produce industry.

- *Produce News* (in the July 13, 2015 issue), a publication with a circulation of 13,197, which reaches retail chains, wholesale grocers, buying brokers, food service distributors and grower-shippers, among others in the produce business.

- *Supermarket News* (in the August 2015 issue, mailed on July 29, 2015), a publication with a circulation of 28,000 that provides grocery brand food-retail professionals with competitive intelligence, news, and information.

- *Food Service Director* (in the August 2015 issue, available to readers August 17, 2015), a publication with a circulation of more than 45,000, which reaches institutional food service providers such as hospitals, schools, and governmental entities and their vendors.

*Id.* ¶ 14, 15. Based on the KCC's expertise, Plaintiffs believe that a large number of potential Settlement Class Members will receive notice through these publications. The Administrator will oversee publication of the Summary Notice and will certify to the Court that publication occurred.

To further supplement notice exposures to potential Settlement Class Members, online banner notices, *see Id.* ¶ 15 & Ex. 6, will be placed on websites maintained by *The Packer* (www.thepacker.com) and *Produce News* (www.producenews.com) for approximately one month beginning the week of July 2, 2015. Banner notices will also be placed one time in e-newsletters distributed by *The Packer* and *Produce News*. The banner ads will provide an embedded hyperlink to the dedicated settlement website and will drive traffic to that site.

34

### 3.     Press Release

Additionally, a press release, *see Id.* ¶ 18 & Ex. 7, will be issued once during the notice period. The release will be sent to 6,580 media outlets via PR Newswire, as well as 464 specialty outlets which focus on publications in the food industry. *Id.* ¶ 18. The Administrator will track the number of articles and other mentions resulting from the press release's issuance.

### 4.     Other Methods to Reach Class Members

The Administrator will establish a website, www.potatoesantitrustsettlement.com, to further advise Settlement Class members about the litigation and Settlement and make available to Class Members the following information: (1) Plaintiffs' Operative Complaint; (2) Defendant's Answer; (3) the Settlement Agreement and exhibits; (3) Long-Form Notice and the Claim Form; (4) all pertinent Court documents, such as the preliminary approval order, if this motion is granted; (5) Plaintiffs' Motion for Reimbursement of Attorneys' Fees and Costs and Incentive Awards, upon filing on August 28, 2015; [18] (6) Plaintiffs' Motion for Final Approval upon filing; (7) Deadlines for opting-out of the settlement, objecting and filing a claim form and how to go about exercising those options; (8) The date of the Fairness Hearing; (9) any updates associated with the Settlement; and other such documents as the parties may agree or the Court shall require. The website address will be printed in the Long-Form, Summary Postcard, and Summary Publication Notices. Rosenthal Decl. ¶ 19. The documents on the website will be available for Class Members to review and print. *Id.* There will also be a Frequently Asked Questions area of the website that will provide detailed responses to common questions. *Id.*

---

[18] Under the Court's Order, the Plaintiffs' Motion for Reimbursement of Attorneys' Fees and Costs and Incentive Awards will be filed on or before August 28, 2015. (ECF No. 821). The Notices will inform potential Settlement Class Members that the motion will be filed on that date and posted on the settlement website. That deadline, six weeks prior to the opt-out and objection deadlines, provide Settlement Class Members with sufficient time to review the motion and determine whether to object or opt-out. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994, 993-95 (9th Cir. 2010).

To drive traffic to the settlement website, sponsored search results on Google will be purchased beginning July 2, 2015 for a period of a month.[19] *Id.* ¶¶ 16-17. For example, Plaintiffs will purchase certain "keywords" daily during this period from Google where possible; when internet users type key phrases, such as "potato" or "potatoes lawsuit," a sponsored ad providing a link to the settlement website will appear on the page.

KCC will also establish a toll-free telephone number that Potential Settlement Class Members may use if they have questions about the Settlement, the claims, objections, or opt-out process, or to request copies of the Notices or other documents. Rosenthal Decl. ¶ 20. The toll-free number and website will be operational on July 1, 2015. *Id.* ¶ 21. Finally, potential Settlement Class Members will be able to ask questions of the Administrator using the email address info@PotatoesAntitrustSettlement.com. *See, e.g.*, Ex. 2 (Long-Form Notice).

**B.      The Notice Plan and Content of the Notice Comply with Rule 23 and Constitutional Due Process and Should Be Approved.**

**1.      The Notices Meet Rule 23's "Plain Language" & Content Requirements.**

Class notice must "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion or for raising objections; and the binding effect of a later class judgment on class members. *See* Fed. R. Civ. P. 23(c)(2)(B). Additionally, the notice must be sufficient to "generally describes the terms of the settlement in

---

[19] Counsel for the Indirect Purchaser Plaintiffs and Direct Purchaser Plaintiffs have agreed to work cooperatively on certain aspects of the notice plan, including using a joint landing page for their web sites, **www.potatoesantitrustsettlement.com**. From this website Class Members can determine whether they may be members of the IPP class or the DPP class (or both) and can then click through to the proper sites. The notice program adopted by the IPPs, which includes publication in *People* Magazine, will point readers to this joint website, which will further increase the reach of the DPP notice plan.

sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir.2004) (internal quotation marks omitted).

The Long-Form and Summary Postcard and Publication Notices provide this information and are designed to comply with the "plain language" requirement. *See* Rosenthal Decl. ¶ 22. Additionally, they describe: the nature of the action; the Settlement Class definition and exclusions; the terms of the settlement including the injunctive relief and the scope and impact of the release; Class Members' rights and options regarding the settlement, including the right to opt out, object, do nothing, or file a claim; and the deadlines for doing so and the implications of each action or failure to act (including the binding effect of the judgment and release for Settlement Class Members who do not opt-out); and inform Class Members of Class Counsel's representation of the Settlement Class and their right to appear on their own or through their own counsel at the Final Fairness Hearing. *See* Rosenthal Decl., Exs. 2 at 1 & Questions 2-8, 12-13, 16-18, 21-22 (Long Form Notice); 4 (Summary Postcard notice noting case name, outline of classes, options, including right to hire a lawyer and appear, deadlines, and fairness hearing); 6 (Summary Publication notice explaining nature of the case and classes, options, including right to hire a lawyer to appear, deadlines for acting, and fairness hearing. Additionally, Potential Class Members are informed on each form of notice that they can obtain further detailed information, including the Settlement Agreement itself, from the Settlement website. *See* 3 William B. Rubenstein et al., *Newberg on Class Actions* § 8.32 (4th ed.) (noting Rule 23 requires notice inform class members that complete and detailed information is available on the website).

### 2.    The Notice Plan Provides the Best Notice Practicable.

Rule 23 requires the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The notice must be "reasonably calculated, under all the circumstances, to

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "There is no one 'right way' to provide notice as contemplated under Rule 23(e)." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. 4:03-MD-015, 2004 WL 3671053, at *8-9 (W.D. Mo. Apr. 20, 2004) (citations omitted). Notice plans are not expected to reach every class member; Rule 23 requires the best notice 'practicable,' not perfect notice. *See* Fed. R. Civ. P. 23(c)(2)(B).

Here, Plaintiffs have proposed direct mail notice to Settlement Class Members that can be reasonably identified—those whose names and addresses were provided by Defendants. In addition, Plaintiffs have proposed additional Summary Postcard Notice to some additional 20,000 potential class members. And to supplement notice to those that cannot be reached by direct mail notice and who are not readily identifiable, Plaintiffs have proposed extensive publication notice both in print and online publications targeted precisely to those audiences most likely to include direct purchasers of fresh potatoes, along with an overall media campaign. This proposed notice plan satisfies due process and Rule 23. *See Simpao v. Gov't of Guam*, 369 F. App'x 837, 839 (9th Cir. 2010) (finding notice plan satisfied due process where notice as mailed to class members with reliable addresses and was supplemented by mail notice); *In re Portal Software, Inc. Sec. Litig.*, No. C 03 5138, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) ("The court agrees with plaintiffs that notice by mail and publication is the "best notice practicable under the circumstances," as mandated by FRCP 23(c)(2)(B).") (citing Manual for Complex Litigation (4th ed. 2004) § 21.311 ("Publication in magazines, newspapers, or trade journals may be necessary if class members are not identifiable after reasonable effort")); Order, *In re Skelaxin (Metaxalone) Antitrust Litig*., No. 12-cv-4, ECF No. 782, Order at ¶ 5 (E.D. Tenn.

Aug. 5, 2014) (attached as Exhibit 3) (finding direct mail notice, publication notice in national

trade press, PR Newswire press release satisfy Rule 23(e) and due process); *cf. Stoffels ex rel.*

*SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 254 F.R.D. 294, 298 (W.D. Tex. 2008)

(approving notice plan involving direct mail notice and web site notice, but requiring summary

notice in three trade publications likely to reach class members for whom addresses were

unavailable).

## VIII.   THE COURT SHOULD APPOINT HAUSFELD LLP AS SETTLEMENT CLASS COUNSEL & APPOINT THE INTERIM EXCUTIVE COMMITTEE AS THE SETTLEMENT EXECUTIVE COMMITTEE.

Rule 23(c)(1)(B) states that "[a]n order that certifies a class action . . . must appoint class

counsel under Rule 23(g)." Rule 23(g)(1)(A) states that "[i]n appointing class counsel, the court

(i) must consider: [1] the work counsel has done in identifying or investigating potential claims

in the action; [2] counsel's experience in handling class actions, other complex litigation, and the

types of claims asserted in the action; [3] counsel's knowledge of the applicable law; and [4] the

resources that counsel will commit to representing the class." All factors weigh in favor of

appointing Hausfeld LLP as Settlement Class Counsel and the remaining members of Interim

Plaintiffs' Executive Committee as the Settlement Executive Committee to assist Hausfeld in

management of this Settlement.[20] As noted, the Court already has appointed Hausfeld LLP as

Chair of the Plaintiffs' Executive Committee and members of the interim Executive Committee

to manage this litigation. These firms have and continue to be willing and able to vigorously

prosecute this action and to devote all necessary resources to obtain the best possible result for

the Class Members. Rule 23(g)(1)(C) includes a presumption that the attorneys who were

---

[20] Plaintiffs seek the appointment of Kralowec Law Offices in place of Girardi Keese, which is no longer litigating this case. For the qualifications of the Kralowec firm, *see* Affidavit of Kim Kralowec and attached firm resume (ECF No. 686), filed in conjunction with DPP's Motion for Class Certification.

appointed to represent the Class will be appointed as class counsel, because it requires the Court to consider "the work counsel has done in identifying or investigating potential claims in the action." *Harrington v. City of Albuquerque*, 222 F.R.D. 505, 520 (D.N.M. 2004). The Hausfeld firm and each of the Executive Committee members meet the criteria of Rule 23(g)(1)(C)(i) and should be appointed as Settlement Class Counsel and Settlement Executive Committee, respectively.

## IX.  CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court enter the attached orders: (1) preliminarily approving the Settlement; (2) certifying the settlement class; and (3) approving the notice plan and forms of notice and directing notice to the Settlement Class.

Dated: June 1, 2015                                                 Respectfully submitted,

                                                                    /s/ James J. Pizzirusso
                                                                    James J. Pizzirusso, Esq.
                                                                    Michael D. Hausfeld, Esq.
                                                                    Jeannine M. Kenney, Esq.
                                                                    **HAUSFELD LLP**
                                                                    1700 K Street, N.W., Suite 650
                                                                    Washington, DC 20006
                                                                    Phone: (202) 540-7200
                                                                    Fax: (202) 540-7201
                                                                    mhausfeld@hausfeldllp.com
                                                                    jpizzirusso@hausfeldllp.com
                                                                    jkenney@hausfeldllp.com

                                                                    Michael Lehmann, Esq.
                                                                    Art Bailey, Jr., Esq.
                                                                    **HAUSFELD LLP**
                                                                    44 Montgomery Street, Suite 3400
                                                                    San Francisco, CA 94104
                                                                    Phone: (415) 633-1908
                                                                    Fax: (415) 358-4980
                                                                    mlehmann@hausfeldllp.com
                                                                    abailey@hausfeldllp.com

                                                                    ***Chair, Direct Purchaser Plaintiffs'
                                                                    Executive Committee***

Stanley D. Bernstein, Esq.
Ronald J. Aranoff, Esq.
Christian Siebott, Esq.
Gabriel G. Galletti, Esq.
**BERNSTEIN LIEBHARD LLP**
10 East 40th Street, 22nd Floor
New York, NY 10016
Phone: (212) 779-1414
Fax: (212) 779-3218
bernstein@bernlieb.com
aranoff@bernlieb.com
siebott@bernlieb.com
galletti@bernlieb.com

Bruce L. Simon, Esq.
Aaron M. Sheanin, Esq
**PEARSON SIMON WARSHAW PENNY,
LLP**
44 Montgomery Street
Suite 1200
San Francisco, CA 94104
Phone: (415) 433-9000
Fax: (415) 433-9008
bsimon@pswplaw.com
asheanin@pswplaw.com

Mindee J. Reuben, Esq.
**WEINSTEIN KITCHENOFF & ASHER
LLC**
1845 Walnut Street
Suite 1100
Philadelphia, PA 19103
Phone: (215) 545-7200
Fax: (215) 545-6535
reuben@wka-law.com

Jay Himes, Esq.
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Phone: (212) 907-0717
Fax: 212-818-0477
JHimes@labaton.com

Eugene A. Spector, Esq.
Jay S. Cohen, Esq.
Jeffrey L. Spector, Esq.
**SPECTOR ROSEMAN KODROFF AND
WILLIS, P.C.**
1818 Market Street, Suite 2500
Philadelphia, Pennsylvania 19103
Phone: (215) 496-0300
Fax: (215) 496-6611
espector@srkw-law.com
jcohen@srkw-law.com
jspector@srkw-law.com

Daniel L. Warshaw, Esq.
**PEARSON SIMON WARSHAW PENNY.
LLP**
15165 Ventura Boulevard
Suite 400
Sherman Oaks, CA 91403
Phone: (818) 788-8300
Fax: (818) 788-8104
dwarshaw@pswplaw.com

Bonny E. Sweeney, Esq.
Carmen A. Medici, Esq.
**ROBBINS GELLER RUDMAN & DOWD
LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Phone: (619) 231-1058
Fax: (619) 231-7423
bonnys@rgrdlaw.com
cmedici@rgrdlaw.com

Allan Steyer, Esq.
**STEYER LOWENTHAL BOODROOKAS
ALVAREZ & SMITH LLP**
One California Street, Third Floor
San Francisco, CA 94111
Phone: (415) 421-3400
Fax: (415) 421-2234

asteyer@steyerlaw.com

Steven A. Kanner, Esq.
Douglas A. Millen, Esq.
**FREED KANNER LONDON & MILLEN
LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015 USA
Phone: (224) 632-4500
Fax: (224) 632-4521
skanner@fklmlaw.com
dmillern@fklmlaw.com

*Direct Purchaser Plaintiffs' Executive Committee*

Mark Griffin, Esq.
**KELLER ROHRBACK LLP**
1201 Third Street, Suite 3200
Seattle, WA 98101
Phone: (206) 623-1900
Fax: (206) 623-3384
mgriffin@kellerrohrback.com

Daniel Cohen, Esq.
**CUNEO GILBERT & LADUCA LLP**
106-A South Columbus Street
Alexandria, VA 22314
Phone: (202) 789-3960
Fax: (202) 789-1813
danielc@cuneolaw.com

Benjamin Bianco, Esq.
**FRANK AND BIANCO LLP**
275 Madison Ave, Suite 705
New York, NY 10016
Phone: (212) 682-1853
Fax: (212) 682-1892
bbianco@frankandbianco

Arthur N. Bailey, Sr., Esq.
**ARTHUR N. BAILEY & ASSOCIATES**
111 West Second St., Suite 4500
Jamestown, NY 14701
Phone: (716) 483-3732
Fax: (716) 664-2983
artlaw@windstream.net

Kimberly A. Kralowec, Esq.
**THE KRALOWEC LAW GROUP**
188 The Embarcadero, Suite 800
San Francisco, CA 94105
Phone: (415) 546-6800
Fax: (415) 546-6801
kkralowec@kraloweclaw.com

*Additional Counsel for Direct Purchaser Plaintiffs*