# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: FRESH AND PROCESS POTATOES ANTITRUST LITIGATION | ) ) ) | Case No. 4:10-MD-02186-BLW-CWD |
| ——————————————————— | ) ) | MDL No. 2186 |
| THIS DOCUMENT RELATES TO: | ) ) | **SETTLEMENT AGREEMENT** |
| *Direct Purchaser Plaintiff Actions* | ) ) ) | **BETWEEN DIRECT PURCHASER PLAINTIFFS AND DEFENDANTS** |

This Settlement Agreement ("Settlement") is made and entered into this 10th day of April, 2015, by and between:

a.  Defendants Albert T. Wada; Wada Farms, Inc.; Wada Family, LLC; Wada Farms Potatoes, Inc.; Wada Farms Marketing Group, LLC; Wada-Van Orden Potatoes, Inc., Pro Fresh LLC; Cedar Farms, LLC, Blaine Larsen Farms, Inc.; Cornelison Farms, Inc.; Michael Cranney d/b/a/ Cranney Farms; Driscoll Potatoes, Inc.; Idahoan Foods LLC; Kim Wahlen; KCW Farms, Inc.; Lance Funk d/b/a Lance Funk Farms; Pleasant Valley Potato, Inc.; Potandon Produce L.L.C.; Raybould Brothers Farms, LLC; Ronald D. Offutt Jr.; RD Offutt, Co.; Rigby Produce, Inc.; Snake River Plains Potatoes, Inc.; United Potato Growers of America, Inc.; United Potato Growers of Idaho, Inc.; and United II Potato Growers of Idaho, Inc., together with their past and present parents, subsidiaries and affiliates ("Defendants"); and

1

   b.   Direct Purchaser Plaintiff Class Representatives, individually and on behalf

       of the Classes (as defined herein at Paragraph 22) ("Plaintiffs").

   WHEREAS, Plaintiffs are prosecuting the above-captioned Direct Purchaser

Plaintiff action currently pending and consolidated in the District of Idaho, and including

all Direct Purchaser actions transferred for coordination (the "Action") on their own

behalf and on behalf of the Classes against Defendants;[1]

   WHEREAS, Plaintiffs allege that Defendants participated in an unlawful

conspiracy to raise, fix, maintain, and/or stabilize the price of Fresh Potatoes grown in the

United States at artificially high levels in violation of Section 1 of the Sherman Act (15

U.S.C. § 1), and that such conduct was not protected or authorized under any federal or

state statute;

   WHEREAS, Plaintiffs have conducted extensive discovery and investigation into

the facts and the law regarding the Action and have concluded that a settlement with

Defendants according to the terms set forth below is fair, reasonable, adequate and

beneficial to and in the best interests of Plaintiffs and the Classes;

   WHEREAS, Defendants deny that they acted unlawfully or conspired at any time

to raise, fix, or maintain prices of Fresh Potatoes and further, Defendants allege that all

their conduct was protected and authorized by antitrust laws.  However, despite their

belief that they are not liable for, and have defenses to, the claims alleged in the Action,

Defendants desire to settle the Action to avoid the expense, risk, exposure, inconvenience

---

[1] This Agreement does not include the action filed by Associated Wholesale Grocers, Inc.:  *Associated Wholesale Grocers, Inc. v. United Potato Growers of America, Inc., et al.*, Case No. 13-cv-2182 (D. Kan.); No. 13-cv-251 (D. Idaho). *See* Paragraph 52 herein.

and distraction of continued litigation of the Action, or any action or proceeding relating to the matters being fully settled and finally put to rest in this Settlement;

WHEREAS, Class Counsel and Defendants' Counsel have engaged in extensive arm's-length settlement negotiations, and this Settlement has been reached as a result of these negotiations;

NOW, THERFORE, in consideration of the covenants, agreements and releases set forth herein, and for other good and valuable consideration, it is agreed by and among the undersigned that, subject to approval by the Court, all Released Claims (as defined below) shall be finally, fully and forever settled, compromised and released, and the Action be dismissed on the merits with prejudice as to Defendants, without costs as to Plaintiffs and the Classes, on the following terms and conditions:

**A.     Definitions**

The following terms, as used in this Settlement, have the following meanings:

1.     "Claims Administrator" refers to the entity, to be proposed by Plaintiffs in their Motion for Preliminary Approval of this Settlement and subject to approval by the Court, to provide Class Notice and administer claims filed in this Settlement.

2.     "Lead Class Counsel" refers to the law firm Hausfeld LLP, 1700 K Street NW, Suite 650, Washington, DC 20006, Chair of the Direct Purchaser Plaintiffs' Executive Committee.  "Class Counsel" refers to Lead Class Counsel and to members of the Plaintiffs' Executive Committee listed below:

a.     Bernstein Liebhard LLP, 10 East 40th Street | New York, NY 10016;

b.     Freed Kanner London & Millen, 2201 Waukegan Road, Suite 130, Bannockburn, IL 60015;

c.      The Kralowec Law Group, 188 The Embarcadero, Suite 800, San

Francisco, CA 94105;

d.      Labaton Sucharow LLP, 140 Broadway, New York, NY 10005;

e.      Pearson Simon Warshaw Penny, LLP, 15165 Ventura Boulevard, Suite

400, Sherman Oaks, CA 91403;

f.      Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900,

San Diego, CA 92101;

g.      Spector Roseman Kodroff & Willis, P.C., 1818 Market Street, Suite 2500,

Philadelphia, Pennsylvania 19103;

h.      Steyer Lowenthal Boodrookas Alvarez & Smith LLP, One California

Street, Third Floor, San Francisco, CA 94111; and

i.      Weinstein Kitchenoff & Asher LLC, 1845 Walnut Street, Suite 1100,

Philadelphia, PA 19103.

3.      "Class Member" means each member of the Settlement Classes, as

defined in Paragraph 22 of this Settlement, who does not timely elect to be excluded from

the Classes, and includes, but is not limited to, Plaintiffs.

4.      "Counsel" means both Lead Class Counsel and Defendants' Counsel, as

defined herein.

5.      "Defendant(s)" means the parties listed as defendants in the Second

Amended Complaint filed on January 31, 2012 (ECF No. 163).

6.      "Defendants' Counsel" refers to:

a.      The law firm of Andersen Banducci PLLC, 101 S. Capitol Blvd.,

Suite 1600,  Boise, ID 83702, representing Defendants Albert T. Wada;

4

Wada Farms, Inc.; Wada Family, LLC; Wada Farms Potatoes, Inc.; Wada Farms Marketing Group, LLC; Wada-Van Orden Potatoes, Inc., Pro Fresh LLC; Cedar Farms, LLC; Cornelison Farms, Inc.; Michael Cranney d/b/a/ Cranney Farms; Kim Wahlen; KCW Farms, Inc.; Lance Funk d/b/a Lance Funk Farms; Pleasant Valley Potato, Inc.; Raybould Brothers Farms, LLC; Snake River Plains Potatoes, Inc.; United Potato Growers of America, Inc.; United Potato Growers of Idaho, Inc.; and United II Potato Growers of Idaho, Inc.;

b.      The law firm of Orrick Herrington & Sutcliffe LLP, The Orrick Building, 405 Howard Street, San Francisco, CA 94105, representing Defendants Blaine Larsen Farms, Inc.; Rigby Produce, Inc.; and Driscoll Potatoes, Inc.;

c.      The law firms of McCarthy, Leonard & Kaemmerer, L.C., 825 Maryville Centre Drive, Suite 300, Town & Country, MO 63017 and Stinson Leonard Street LLP, 150 S Fifth St, Suite 2300, Minneapolis, MN 55402, representing Defendants R.D. Offutt Co. and Ronald D. Offutt, Jr.;

d.      The law firm of Vorys, Sater, Seymour and Pease LLP, 52 East Gay Street, P.O. Box 1008, Columbus, OH 43216-1008, representing Defendant Idahoan Foods, LLC; and

e.      The law firm of Proskauer Rose LLP, 1001 Pennsylvania Ave NW, Suite 600 South, Washington, DC 20004, representing Defendant Potandon Produce L.L.C.

7.      "Escrow Agent" means Citibank N.A. as set forth in the Escrow

Agreement attached hereto as Exhibit A.

8.      "Execution Date" means the date the Settlement is signed by all Settling

Parties.

9.      "Final Approval" means the definition given to that phrase in Paragraph

29 herein.

10.     "Fresh Potatoes" means potatoes grown in the United States and sold for

fresh consumption.  Fresh Potatoes does not include Process Potatoes.

11.     "Opt-Outs" means those potential Settlement Class Members that have

exercised their right to request exclusion from the Classes prior to the Opt-Out Deadline.

12.     "Opt-Out Deadline" means the deadline established by the Court and set

forth in the Class Notice by which potential Class Members must request exclusion from

the Settlement Classes.

13.     "Plaintiffs" refers to each of Brigiotta's Farmland Produce and Garden

Center, Inc., and J.R. Mazzola, Inc.

14.     "Process Potatoes" means potatoes grown in the United States and sold for

Further Processing by a processor.  "Further Processing" includes dehydrating, freezing,

canning, chipping, dicing, slicing, chopping, and packaging by persons whose business it

is to engage in such processing, excluding restaurants and food service entities, and that

package such process potatoes for further sale, or the processing of potatoes into non-

food products.

15.     "Releasees" refers, individually and collectively, to: (a) each and every

Defendant, and their parents, subsidiaries, and affiliated companies or businesses,

regardless of organizational form, including, without limitation, corporations, trusts, partnerships, sole proprietorships or limited liability companies and any LLC managers or LLC members thereof; (b) all past and present cooperative members of United Potato Growers of America, Inc. ("UPGA"), identified in Exhibit B; (c) all past and present members of the cooperative members of UPGA, identified in Exhibit C; (d) all past and present members of United Potato Growers of Idaho, Inc, identified in Exhibit D; (e) all past and present members of United II Potato Growers of Idaho, Inc., identified in Exhibit E; and (f) the past and present officers, directors, employees, agents, insurers, attorneys (excluding the Jones Waldo Law Firm and its past and present attorneys), shareholders, joint venturers, partners and representatives; and the predecessors, successors, heirs, executors, administrators, and assigns of each and every one of the foregoing Releasees.

16.    "Releasors" refers, jointly and severally, and individually and collectively, to Plaintiffs, the Class Members, and each of their respective past and present officers, directors, employees, agents, attorneys, representatives, parents, subsidiaries, affiliates, partners, and insurers, and to the predecessors, successors, heirs, executors, administrators and assigns of each of the foregoing.

17.    "Settlement Amount" refers to nineteen million and five hundred thousand United States dollars ($19,500,000).

18.    "Settlement Class Period" means the period beginning June 18, 2006 and extending until and including the date on which the Court enters an order preliminarily approving the Settlement.

19.     "Settlement Fund" refers to the Settlement Amount, paid in United States dollars, plus any accrued interest on said deposits once in escrow as set forth in Paragraphs 37 and 38 below.

20.     "Settling Parties" shall mean Defendants and Plaintiffs, through their counsel.

21.     "Specialty Potatoes" means organic, fingerling, blue, long white, and purple potatoes.

**B.     Settlement Class Certification**

22.     Plaintiffs and Defendants hereby stipulate for purposes of settlement only that the requirements of Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied, and, subject to Court approval, the following Classes shall be certified for settlement purposes as to all Defendants:

Direct Purchaser Plaintiff Monetary Relief Class:

All persons and entities who, between June 18, 2006 and the date on which the Court enters an order preliminarily approving the Settlement and certifying the Class for settlement purposes, directly purchased Fresh Potatoes grown in the United States, other than Specialty Potatoes, from: (1) any Defendant or any parent, subsidiary, or affiliate thereof; (2) any member of the cooperative members of United Potato Growers of America, or any parent, subsidiary, or affiliate thereof; any member of the United Potato Growers of Idaho, Inc., or any parent, subsidiary, or affiliate thereof; and (3) any entity that packed or marketed fresh potatoes grown by any Defendant, by any member of United Potato Growers of Idaho, Inc., or by any member of the cooperative members of United Potato Growers of America, Inc.

Direct Purchaser Plaintiff Injunctive Relief Class:

All persons and entities who, between June 18, 2006 and the date on which the Court enters an order preliminarily approving the Settlement and certifying the Class for settlement purposes, directly purchased Fresh Potatoes grown in the United States, other than Specialty Potatoes, from: (1) any Defendant or any parent, subsidiary, or affiliate thereof; (2) any member of the cooperative members of United Potato Growers of America, or any parent, subsidiary, or affiliate thereof; any member of the United Potato Growers of Idaho, Inc., or any

8

parent, subsidiary, or affiliate thereof; and (3) any entity that packed or marketed fresh potatoes grown by any Defendant, by any member of United Potato Growers of Idaho, Inc., or by any member of the cooperative members of United Potato Growers of America, Inc.

Excluded from the Classes are Defendants and their Co-Conspirators, including, but not limited to, any member of United Potato Growers of Idaho, Inc. and United II, the members of the United Potato Growers of America, Inc., and any member of the cooperative members of United Potato Growers of America, Inc., and their respective subsidiaries, affiliates and members; any entity that packed or marketed fresh potatoes grown by any Defendant, by any member of United Potato Growers of Idaho, Inc., any member of United II Potato Growers of Idaho, Inc., and by any member of the cooperative members of United Potato Growers of America, Inc., and their respective parents, subsidiaries, affiliates and members; and any governmental entities.

## C.     Approval of this Settlement and Dismissal of Claims

23.     Plaintiffs and Defendants shall recommend approval of this Settlement by the United States District Court for the District of Idaho.  Plaintiffs and Defendants shall use their best efforts to effectuate this Settlement, including cooperating in promptly seeking Court approval of this Settlement and securing both the Court's certification of the Settlement Classes and the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)), to secure the prompt, complete, and final dismissal with prejudice of the Action.

24.     Within thirty (30) days after the Execution Date, Defendants, their parents, affiliates and subsidiaries (whether owned in whole or part by Defendants) shall, at Defendants' expense, transmit to the Claims Administrator and in electronic, comma- and tab- delimited text format the names and addresses of potential Class Members as they have available. The customer information transmitted by Defendants to the Claims Administrator shall be treated as Confidential, and shall be used only by the Claims

Administrator for purposes of creating and maintaining a customer database and for disseminating notice.

25.     Within a reasonable time after the Execution Date, Plaintiffs shall file with the Court a motion (the "Motion"), which Defendants shall not oppose, for: (a) entry of an order preliminarily approving the Settlement and certifying the Classes for settlement purposes (together, "Preliminary Approval"); and (b) authorization to disseminate notice of Class certification and the Settlement.  The Motion shall include: (a) the proposed definitions of the Settlement Classes for settlement purposes as set forth in Paragraph 22 of this Settlement; (b) a proposed form of, plan for, and date of dissemination of notice to the class of the Settlement ("Class Notice"); (c) a proposed schedule for the filing of Plaintiffs' Motion for Fees and Expenses and incentive awards, the filing of a Motion to approve finally the Settlement, the date by which any Settlement Class Member must seek exclusion from the Settlement Class and/or object to the Settlement or to Plaintiffs' Motion for Fees and Expenses and incentive awards, and a final Fairness Hearing; and (d) a proposed form of order preliminarily approving the Settlement and certifying the Classes for settlement purposes.  The Motion shall recite and ask the Court to find that the proposed forms and methods for dissemination of Class Notice are valid, due and sufficient notice of the Classes, constitute the best notice practicable under the circumstances and comply fully with the requirements of the Rule 23 of the Federal Rules of Civil Procedure.

Lead Class Counsel shall, prior to filing the Motion with the Court, share with Defendants a draft of the Motion and supporting papers, and, prior to filing shall consider, in good faith, any comments Defendants may collectively have; provided,

however, that Defendants shall submit to Lead Class Counsel one collective set of comments to the Motion and supporting papers within three (3) calendar days of receipt from Lead Class Counsel.  If the Court sets a deadline by which Class Counsel must file the Motion, Lead Class Counsel shall share with Defendants a draft of the Motion and supporting papers five (5) calendar days prior to the filing deadline, and Defendants shall submit to Lead Class Counsel one collective set of comments on such papers three (3) calendar days after receipt of from Lead Class Counsel, which Lead Class Counsel shall consider in good faith.

26.     After Preliminary Approval, and subject to approval by the Court of the means for dissemination of notice, individual notice of the Settlement shall be mailed to persons and entities who are located in the United States and who purchased Fresh Potatoes directly from Defendants, from the parents, affiliates or subsidiaries thereof, or from any entity that packed or marketed fresh potatoes that is owned in whole or part by any Defendant during the Class Period that: (a) are identified by Defendants pursuant to Paragraph 24 herein; and (b) are identified by Plaintiffs and Class Counsel.  In addition, after Preliminary Approval, and subject to Court approval of the means for dissemination of notice, Lead Class Counsel shall also cause Class Notice of the Settlement to be published in print and/or online publications, as proposed by Lead Class Counsel and ordered by the Court, to provide notice to Class Members who may not be capable of being identified for purposes of individual notice.

27.     Within twenty (20) days after expiration of the Opt-Out Deadline, Plaintiffs shall provide Defendants, through Defendants' Counsel, notice of all Opt-Outs by providing a written list of the same ("Opt-Out Notice").

28.     Plaintiffs and Defendants shall, in accordance with the schedule set forth in the Preliminary Approval Order, jointly seek entry of the Consent Order (attached as Exhibit F) and an order and final judgment.  The terms of such order shall be proposed by Plaintiffs subject to the agreement of Defendants, which agreement shall not be unreasonably withheld, and shall include, as appropriate and necessary:

a.      Finding that the notices given constitute adequate, due and sufficient notice, and meet the requirements of due process, and Federal Rules of Civil Procedure, and any applicable state laws;

b.      As to the Action, approving finally this Settlement and its terms as being a fair, reasonable, and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and applicable state law, and directing its consummation according to its terms;

c.      Directing that the Action be dismissed with prejudice and, except as explicitly provided for in this Settlement, without costs, and entering the Consent Order;

d.      Reserving to the United States District Court for the District of Idaho exclusive jurisdiction over the Settlement, including the administration and consummation of this Settlement and Consent Order;

e.      Determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay, and directing that the Consent Order and final judgment of dismissal of the Action shall be entered; and

f.      Requiring Lead Class Counsel to file with the Clerk of the Court a record of potential Class Members that timely excluded themselves from the Class, and to provide a copy of the record to Counsel for Defendants.

29.     This Settlement shall become final upon the occurrence of all of the following: (a) the Court has entered an order finally approving this Settlement under Rule 23(e) of the Federal Rules of Civil Procedure; (b) the Court has entered final judgment dismissing the Action on the merits with prejudice as to all Class Members and without costs and has entered the Consent Order, attached hereto as Exhibit F ; and (c) the time

for appeal or to seek permission to appeal from the Court's approval of this Settlement

and entry of a final judgment as described in clause (b) above has expired or, if appealed,

approval of this Settlement and the final judgment have been affirmed in their entirety by

the Court of last resort to which such appeal has been taken and such affirmance has

become no longer subject to further appeal or review ("Final Approval").  Neither the

provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28

U.S.C. § 1651, shall be taken into account in determining if the conditions for Final

Approval have been satisfied. On the Execution Date, Plaintiffs and Defendants shall be

bound by the terms of this Settlement, and the Settlement shall not be rescinded except in

accordance with Paragraphs 34 through 36 of this Settlement.

**D.      Release and Discharge**

30.      In addition to and not in lieu of the effect of any final judgment entered in

accordance with this Agreement, upon Final Approval of this Agreement, and for other

valuable consideration as described herein, Releasees shall be completely released,

acquitted, and forever discharged from any and all claims, demands, actions, suits and

causes of action, whether Class, individual or otherwise in nature, that Releasors, or each

of them, ever had, now has, or hereafter can, shall, or may have on account of or arising

out of, any and all known and unknown, foreseen and unforeseen, suspected or

unsuspected injuries or damages, and the consequences thereof, resulting from any

actions or conduct alleged in the Plaintiffs' Second Amended Class Action Complaint

(ECF No. 163, filed on January 31, 2012) (the "Complaint") including without limitation

any conduct by any Releasee relating to planting, growing, supplying, producing, selling,

marketing, or distributing of Fresh Potatoes produced in the United States (including any

conduct, whether or not concealed or hidden, alleged, and causes of action asserted, or

that could have been alleged or asserted, in the Complaint) that may have occurred or did

occur from the beginning of time through the Execution Date, and which in whole or in

part arise from the facts or actions described in the Complaint, including any claims,

demands, actions, suits and causes of action under any federal or state antitrust, unfair

competition, unfair practices, price discrimination, unitary pricing, trade practice,

consumer protection, fraud, RICO, civil conspiracy law, or similar laws, including,

without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 et seq. (the "Released

Claims").

      Notwithstanding anything in this Paragraph, Released Claims shall not include,

and this Agreement shall not and does not release, acquit or discharge, claims based

solely on purchases of Process Potatoes, Specialty Potatoes, or Fresh Potatoes outside of

the United States on behalf of persons or entities located outside of the United States at

the time of such purchases.  This Release is made without regard to the possibility of

subsequent discovery or existence of different or additional facts.

      31.    Each Releasor waives California Civil Code Section 1542 and similar or

comparable present or future law or principle of law of any jurisdiction.  Each Releasor

hereby certifies that he, she, or it is aware of and has read and reviewed the following

provision of California Civil Code Section 1542 ("Section 1542"):

> "A general release does not extend to claims which the creditor does not know or
> suspect to exist in his or her favor at the time of executing the release, which if
> known by him or her must have materially affected his or her settlement with the
> debtor."

The provisions of the release set forth above shall apply according to their terms,

regardless of the provisions of Section 1542 or any equivalent, similar, or comparable

present or future law or principle of law of any jurisdiction.  Each Releasor may hereafter

discover facts other than or different from those which he, she, or it knows or believes to

be true with respect to the claims that are the subject matter of this Settlement, but each

Releasor hereby expressly and fully, finally and forever waives and relinquishes, and

forever settles and releases any known or unknown, suspected or unsuspected, contingent

or non-contingent, claim whether or not concealed or hidden, without regard to the

subsequent discovery or existence of such different or additional facts, as well as any and

all rights and benefits existing under (i) Section 1542 or any equivalent, similar or

comparable present or future law or principle of law of any jurisdiction and (ii) any law

or principle of law of any jurisdiction that would limit or restrict the effect or scope of the

provisions of the release set forth above, without regard to the subsequent discovery or

existence of such other or different facts.

32.     In addition to the provisions of Paragraphs 30 and 31, each Releasor

hereby expressly and irrevocably waives and releases, upon this Settlement becoming

finally approved by the Court, any and all defenses, rights, and benefits that each

Releasor may have or that may be derived from the provisions of applicable law which,

absent such waiver, may limit the extent or effect of the release contained in Paragraphs

30 and 31 herein.  Each Releasor also expressly and irrevocably waives any and all

defenses, rights, and benefits that the Releasor may have under any similar statute in

effect in any other jurisdiction that, absent such waiver, might limit the extent or effect of

the release.

33.     The release and discharge set forth in Paragraphs 30 through 32 herein do not include claims relating to payment disputes, physical harm, defective product, or bodily injury (the "Excepted Claims").

**E.     Rescission**

34.     If the Court refuses to approve this Settlement or any part hereof or refuses to enter the Consent Order, or if such approval modifies materially the Agreement, including the Consent Order, or if approval is set aside on appeal, or if the Court does not enter the final judgment and the Consent Order as provided in Paragraph 28 of this Settlement, or if the Court enters the final judgment and the Consent Order and appellate review is sought, and on such review, such final judgment and entry of the Consent Order is not affirmed, then Defendants, acting collectively, and Plaintiffs, shall have the right and option to rescind this Settlement in its entirety within ten (10) days of the action giving rise to such option. If Defendants, collectively, or Plaintiffs elect to rescind this Settlement under this Paragraph, the rescinding party shall provide written notice of such election to all other Settling Parties.  If this Settlement is rescinded, within ten (10) days of both the notice of rescission by a party to this Settlement and to the Escrow Agent and Defendants' written instructions to the Escrow Agent, all amounts in the escrow account created pursuant to Paragraph 38 hereof, less any expenses authorized pursuant to this Settlement, shall be wire transferred to Defendants, pursuant to their instructions; provided, however, that simultaneous with their written instructions to the Escrow Agent, Defendants shall provide to Lead Class Counsel notice of such instructions, and Lead Class Counsel shall, within five (5) days of receipt of such notice, notify the Escrow Agent of any objections to Defendants' instructions and funds shall not

be wired until expiration of that objection deadline. If Lead Class Counsel object, the provisions of Article I, subsection (h) the Escrow Agreement shall govern.

35.     If Defendants determine that potential Class Members identified in the Settling Parties' Supplemental Agreement, which is incorporated into this Settlement by reference, whose combined market share of gross domestic grocery sales, as determined by the terms of that Supplemental Agreement, exceeds the percentage set forth in a Supplemental Agreement ("the Opt-Out Threshold") have timely elected to exclude themselves from the Settlement, Defendants, pursuant to the terms of Paragraph 2 of the Supplemental Agreement, shall have the right and option to rescind the Settlement, subject to the dispute provisions of the Supplemental Agreement. Defendants shall, within twenty-one (21) days of the Opt-Out Deadline or the provision of the Opt-Out Notice, as provided in paragraph 27, whichever is later, give written notice to Lead Class Counsel to invoke their rights under this Paragraph to rescind the Settlement. The Settling Parties intend that the Supplemental Agreement shall be specifically disclosed to the Court and offered for *in camera* inspection by the Court at the time of or prior to entry of the Preliminary Approval Order, but, subject to the Court's approval, it shall not be filed with the Court before the expiration of the Opt-Out Deadline unless ordered otherwise by the Court. The Settling Parties shall seek to keep the Supplemental Agreement and Opt-Out Threshold confidential before the Opt-Out Deadline. In the event that the Court directs that the Supplemental Agreement be filed prior to the Opt-Out Deadline, no party shall have any right to any relief by reason of such disclosure.

If, pursuant to this Paragraph, Defendants exercise their right and option to rescind the Settlement, subject to the terms of the Supplemental Agreement, all amounts

in the escrow created pursuant to Paragraph 38 herein, less any expenses, fees, or taxes authorized pursuant to this Settlement, will be wire transferred by the Escrow Agent to Defendants fifteen (15) days after receipt by the Escrow Agent of Defendants' joint written instructions to the Escrow Agent.  Simultaneous with their written instructions to the Escrow Agent, Defendants will provide to Lead Class Counsel notice and a copy of such instructions, and Lead Class Counsel shall, within ten (10) days of receipt of such notice, notify the Escrow Agent of any objections to Defendants' instructions. If Lead Class Counsel object, the provisions of Article I, subsection h of the Escrow Agreement shall govern.

      36.      In the event of rescission, if Final Approval of this Settlement is not obtained, or if the Court does not enter the final judgment and the Consent Order provided for in Paragraph 28 of this Settlement, Lead Class Counsel and Defendants agree that this Settlement, including its exhibits, and any and all negotiations, documents, information, and discussions associated with it shall be without prejudice to the rights of Defendants or Plaintiffs.  This Settlement, regardless of whether rescinded or not, shall not be deemed or construed to be an admission or denial, or evidence or lack of evidence of any violation of any statute or law or of any liability or wrongdoing, or of the truth or falsity of any of the claims or allegations made in this Action in any pleading.  This Settlement, regardless of whether rescinded or not, shall not be used directly or indirectly, in any way, whether in this Action or in any other proceeding, unless such documents and/or information is otherwise obtainable by separate and independent discovery permissible under the Federal Rules of Civil Procedure.

**F.      Settlement Consideration**

*Payment*

37.      Defendants shall pay or cause to be paid the Settlement Amount in

settlement of the Action.

Within thirty (30) days after the Execution Date of this Agreement, the Settlement

Amount shall be wire transferred by Defendants or their designee into the Settlement

Fund, which shall be established as an escrow account with the Escrow Agent, and

administered in accordance with the Escrow Agreement attached hereto as Exhibit A.  No

Motion for Preliminary Approval shall be filed until all such funds are wired into the

escrow account.

38.      The Settling Parties will cooperate to ensure that, within five (5) days after

the Execution Date, the Escrow Account has been established.  The Settling Parties will

cooperate to ensure that appropriate wiring instructions have been provided to

Defendants within three (3) days prior to the deadline on which Defendants must wire

transfer the Settlement Amount.  Defendants shall not be liable for wire transfer fees or

bank fees charged by the receiving bank, for interest, notice costs, administrative costs, or

attorney's fees associated with the maintenance of any account(s) holding these funds or

with the allocation or distribution of these funds.

39.      After this Settlement becomes final within the meaning of Paragraph 29,

the Settlement Fund shall be distributed in accordance with the plan for distribution of the

Settlement Fund to be submitted at the appropriate time by Lead Class Counsel, subject

to approval by the Court.

40.     Each Class Member shall look solely to the Settlement Amount for settlement and satisfaction, as provided herein, of all claims released by the Releasors pursuant to this Settlement.

41.     Class Counsel may petition the Court for an award of attorneys' fees of up to forty percent of the Settlement Payment, reasonable litigation expenses, and incentive awards for class representatives. Such awards will be paid out of the Settlement Amount after the Final Approval of the Settlement.  Defendants agree not to object to Class Counsels' petition(s) to the Court for payment of attorneys' fees, costs, expenses, and incentive awards for class representatives from the Settlement Amount.

42.     Upon entry of an order by the Court approving the request for an award of attorneys' fees and expenses and incentive awards for class representatives ("Attorneys' Fees Order") made pursuant to Paragraph 41 herein, attorneys' fees and expenses and incentive awards may be distributed from the Settlement Fund pursuant to the terms of the Attorneys' Fees Order, provided however that if Class Counsel seek to draw down their share of the attorneys' fees prior to Final Approval and the Attorneys' Fees Order becoming final shall secure the repayment of the amount drawn down by a letter of credit.  The Attorneys' Fees Order becomes final when the time for appeal or to seek permission to appeal from the Attorneys' Fees Order has expired or, if appealed, has been affirmed by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.

43.     In order to receive distribution of funds pursuant to Paragraph 42 prior to Final Approval and the Attorneys' Fees Order becoming final, any Class Counsel electing to draw down their share of attorneys' fees shall be required to reimburse the

Settlement Fund within thirty (30) days all or the pertinent portion of the draw-down with interest, calculated as the rate of interest published in the *Wall Street Journal* for 3-month U.S. Treasury Bills as of the close on the date that the draw-down was distributed, if Final Approval is not granted or if the award of attorneys' fees is reduced or overturned on appeal.

44.     Disbursements for any payments and expenses incurred in connection with taxation matters relating to this Settlement shall be made from the Settlement Amount upon written notice to the Escrow Agent by Class Counsel of such payments and expenses, and such amounts shall not be refundable to Defendants in the event that this Settlement is disapproved, rescinded, or otherwise fails to become effective.

*Indemnification of Plaintiffs*

45.     Separate from the payment of the Settlement Amount, Defendants (excluding Potandon Produce L.L.C.) shall, jointly and severally, hold harmless and indemnify the Direct Purchaser Plaintiffs[2] and Indirect Purchaser Plaintiffs[3] against any monetary losses and liabilities suffered by the Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs arising out of any award by the Court to the Jones Waldo Law Firm or Randon Wilson and payable by Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs or their counsel, or any other monetary sanction imposed on the Direct Purchaser Plaintiffs and Indirect Purchaser  Plaintiffs or their counsel, related to the Motion to Award Jones Waldo Its Costs In Responding To The Subpoena of Randon

---

[2] "Direct Purchaser Plaintiffs" refers collectively to Plaintiffs, as defined in Paragraph 13 of this Settlement, and "Class Counsel," as defined in Paragraph 2 of this Settlement.

[3] "Indirect Purchaser Plaintiffs" means the plaintiffs whose complaints have been consolidated for pre-trial purposes in No. 10-md-2186 (D. Idaho), and who, through their counsel, are party to the separate "Settlement Agreement Between Indirect Purchaser Plaintiffs and Defendants."

Wilson (ECF No. 607) or any similar motion refiled by the Jones Waldo Firm or Randon

Wilson pursuant to the Court's Order dated March 30, 2015 (ECF No. 809) ("Jones

Waldo Motion"), up to two-hundred thousand United States dollars ($200,000).  If the

Court grants the Jones Waldo Motion in whole or in part, or imposes any monetary

sanction on Direct Purchaser Plaintiffs or Indirect Purchaser Plaintiffs related to the Jones

Waldo Motion, Defendants (excluding Potandon Produce L.L.C.) shall wire transfer to

the Direct Purchaser Plaintiffs and Indirect Purchaser  Plaintiffs, pursuant to the Direct

Purchaser Plaintiffs and Indirect Purchaser Plaintiffs' joint written instructions, in one

amount, the full amount of any award granted to Jones Waldo, and any other monetary

amount or sanction the Court may impose, up to $200,000, no later than five (5) days

after either: (a) the magistrate or district court judge in the Action grants in whole or part

the Jones Waldo Motion and awards fees and/or costs payable to Jones Waldo or

otherwise imposes monetary sanctions on the Direct Purchaser Plaintiffs or Indirect

Purchaser Plaintiffs related to the Jones Waldo Motion; or, (b) in the event that objections

to an order of the magistrate judge denying or granting the Jones Waldo Motion in whole

or in part are filed or an appeal of the district court's ruling is filed, after disposition of

such objections or appeal.  Any indemnification payment made to Direct Purchaser

Plaintiffs and Indirect Purchaser Plaintiffs pursuant to this Section shall be allocated

between them in a manner decided solely by the those Plaintiffs.

46.     At the election of the Direct Purchaser Plaintiffs and Indirect Purchaser

Plaintiffs, Defendants' Counsel shall, at their own cost, which costs shall not be

reimbursable by the Direct Purchaser Plaintiffs or Indirect Purchaser Plaintiffs, and under

the direction and supervision of the Direct Purchaser Plaintiffs and Indirect Purchaser

Plaintiffs: (a) conduct all factual and legal research and all analysis necessary for the Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs to oppose the Jones Waldo Motion; (b) draft and finalize all legal memoranda in opposition to the Jones Waldo Motion and prepare or cause to be prepared all supporting exhibits, declarations, and affidavits; (c) conduct all factual and legal research and all analysis necessary for any motion by the Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs seeking sanctions against Jones Waldo related to the subpoena served on third-party Randon Wilson and the Jones Waldo Motion that the Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs may elect to file; and (d) draft and finalize all legal memoranda in support of Plaintiffs' motion for sanctions and prepare or cause to be prepared all supporting exhibits, declarations, and affidavits.  The Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs will be responsible for arguing the Jones Waldo Motion.  If the Court grants in whole or part any motion for sanctions filed by Direct Purchaser Plaintiffs or Indirect Purchaser Plaintiffs, any monetary award resulting therefrom is payable solely to Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs.

*Injunctive Relief*

47.     The Settling Parties have stipulated and agreed to the Consent Order attached hereto as Exhibit F, incorporated into this Settlement by reference, enjoining certain conduct by Defendants and Releasees.  Within ten (10) days of the Execution Date, the Settling Parties shall file a joint motion for entry of the Consent Order. The Settling Parties agree to issuance of the Consent Order and the Court's continuing exercise of jurisdiction over enforcement of its terms for the period contained therein.

**G.      Notice of Settlement to Class Members**

48.      Class Counsel shall take all necessary and appropriate steps to ensure that Class Notice and the date of the hearing scheduled by the Court to consider the fairness, adequacy, and reasonableness of this Settlement is provided in accordance with the Federal Rules of Civil Procedure and any Court orders.  Class Notice will be issued after Preliminary Approval by the Court and subject to any Court orders regarding the means of dissemination of notice.

49.      Subject to Court approval, disbursements for any payments and expenses incurred in connection with the costs of Class Notice and administration of the Settlement by the Claims Administrator shall be made from the Settlement Amount upon written notice to the Escrow Agent by Lead Class Counsel of such payments and expenses, which shall not be refundable to Defendants in the event that this Settlement is disapproved, rescinded, or otherwise fails to become effective.

**H.      Taxes**

50.      Lead Class Counsel shall be solely responsible for directing the Claims Administrator to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Amount.  Further, Lead Class Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Escrow Funds ("Tax Expenses").  Lead Class Counsel shall be entitled to direct the Escrow Agent in writing to pay customary and reasonable Tax Expenses, including reasonable professional fees and expenses incurred in connection with carrying out their responsibilities as set forth in this Paragraph, from the applicable Escrow Fund by

notifying the Escrow Agent in writing and as provided in paragraph 45 herein.

Defendants shall have no responsibility to make any tax filings relating to this Settlement.

51.   For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Settlement Amount shall be the Claims Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Settlement Amount (including, without limitation, all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B 2(1)).

52.   The Settling Parties and their Counsel shall treat, and shall cause the Claims Administrator to treat, the Settlement Amount as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B 1.  In addition, the Claims Administrator and, as required, the Settling Parties, shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B 1(j)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Claims Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Settlement shall be interpreted in a manner that is consistent with the Settlement Amount being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B

53.   The Settlement Fund shall be used for the payment of all monetary relief claims of the Class Members, subject first to the payment of attorneys' fees and

reimbursement of litigation expenses and costs in the Action, including costs of Class

Notice and settlement administration. All other funds shall be used for payment of claims

of the members of the Classes, as defined herein.

54.     In the event monies remain as residue in the Settlement Fund following all

distribution efforts approved by the Court, Counsel shall move the Court for an order

disposing of all such funds.

**J.      Conduct During The Pendency Of This Settlement**

55.     Defendants need not respond to formal discovery from Plaintiffs and shall

not otherwise participate in the Action during the pendency of this Settlement

commencing upon execution of this Agreement. Neither Defendants nor Plaintiffs shall

file motions against the other in the Action during the pendency of the Settlement.

**K.      Miscellaneous**

56.     This Settlement does not effect in any way, settle or compromise any

claim by Associated Wholesale Grocers ("AWG") asserted in its action against

Defendants (or any cross claims asserted against AWG), or any of them, nor is the

Settlement contingent on any resolution of the claims asserted by AWG against

Defendants. All rights of AWG against Defendants are specifically reserved by AWG.

57.     Subject to Court approval, the United States District Court for the District

of Idaho shall retain jurisdiction over the implementation, enforcement, and performance

of this Settlement and shall have exclusive jurisdiction over any suit, action, proceeding,

or dispute arising out of or relating to this Settlement or the applicability of this

Settlement that cannot be resolved by negotiation and agreement by Plaintiffs and

Defendants. This Settlement shall be governed by and interpreted according to the

substantive laws of the State of Idaho without regard to its choice of law or conflict of

laws principles. Defendants submit to the jurisdiction in the District of Idaho only for the

purposes of this Settlement and the implementation, enforcement, and performance

thereof. Defendants otherwise retain all defenses to the Court's exercise of personal

jurisdiction over Defendants.

58.     This Settlement, together with the Supplemental Agreement described in

Paragraph 35 and incorporated by reference herein, the Consent Order described in

paragraph 47 and incorporated by reference herein, and all Exhibits hereto, constitute the

entire agreement among Plaintiffs (and the other Releasors) and Defendants (and the

other Releasees) pertaining to the settlement of the Action against Defendants, and

supersedes any and all prior and contemporaneous undertakings of Plaintiffs and

Defendants in connection therewith.  In entering into this Settlement, Plaintiffs and

Defendants have not relied upon any representation or promise made by Plaintiffs or

Defendants not contained in this Settlement. This Settlement may be modified or

amended only by a writing executed by Plaintiffs and Defendants and approved by the

Court.

59.     This Settlement shall be binding upon, and inure to the benefit of, the

successors and assigns of Releasors and Releasees.  Without limiting the generality of the

foregoing:  (a) each and every covenant and agreement made herein by Plaintiffs, Class

Counsel, or Plaintiffs' Counsel shall be binding upon all Class Members and Releasors;

and (b) each and every covenant and agreement made herein by Releasees shall be

binding upon all Releasees, subject to the Court's approval of the Consent Order.

27

60.     This Settlement may be executed in counterparts by Lead Class Counsel and Defendants' Counsel, and an electronically-scanned (in either .pdf or .tiff format) signature will be considered an original signature for purposes of execution of this Settlement.

61.     The headings in this Settlement are included for convenience only and shall not be deemed to constitute part of this Settlement or to affect its construction.

62.     In the event this Settlement is not approved or is terminated, or in the event that the order and final judgment approving the settlement is entered but is substantially reversed, modified, or vacated, the pre-settlement status of the litigation (including, without limitation,  any applicable tolling of all statutes of limitations) shall be restored, and the Settlement shall have no effect on the rights of Defendants or Plaintiffs to prosecute or defend the pending Action in any respect, including the right to litigate fully the issues related to Class certification, raise personal jurisdictional defenses, or any other defenses, which rights are specifically and expressly retained by Defendants.

63.     Neither Defendants nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Settlement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Settlement.

64.     Nothing expressed or implied in this Settlement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasors, Defendants, and Releasees any right or remedy under or by reason of this Settlement.

65.     Any putative Class Member that does not opt out of the Class created

pursuant to the Settlement may remain in the Class without prejudice to the right of such

putative Class Member to opt out of any other past, present, or future settlement class or

certified litigation class in the Action.

66.     Where this Settlement requires any party to provide notice or any other

communication or document to any other party, such notice, communication, or

document shall be provided by electronic mail, receipt confirmed, or overnight delivery

to:

James J. Pizzirusso
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, D.C. 20006
jpizzirusso@hausfeldllp.com
-    For the Direct Purchaser Plaintiff Class

Robert Rosenfeld
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105
rrosenfeld@orrick.com
-    *For Defendants Blaine Larsen Farms, Inc.; Rigby Produce, Inc.; and Driscoll Potatoes, Inc.*

Steven B. Andersen
ANDERSEN BANDUCCI PLLC
101 S. Capitol Blvd., Suite 1600,
Boise, ID 83702
sba@andersenbanducci.com
-    *For Defendants Albert T. Wada; Wada Farms, Inc.; Wada Family, LLC; Wada Farms Potatoes, Inc.; Wada Farms Marketing Group, LLC; Wada-Van Orden Potatoes, Inc., Pro Fresh LLC; Cedar Farms, LLC; Cornelison Farms, Inc.;; Michael Cranney d/b/a/ Cranney Farms; Kim Wahlen; KCW Farms, Inc.; Lance Funk d/b/a Lance Funk Farms; Pleasant Valley Potato, Inc.; Raybould Brothers Farms, LLC; Snake River Plains Potatoes, Inc.; United Potato Growers of America, Inc.; United Potato Growers of Idaho, Inc.; and United II Potato Growers of Idaho, Inc.*

29

Brian McGovern
MCCARTHY, LEONARD & KAEMMERER, L.C.,
825 Maryville Centre Drive, Suite 300
Town & Country, MO 63017
bmcgovern@mlklaw.com
- *For Defendants R.D. Offutt Co. and Ronald D. Offutt, Jr.*

James Wilson
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street, P.O. Box 1008,
Columbus, OH 43216-1008
jawilson@vorys.com
- *For Defendant Idahoan Foods, LLC*

Christopher Ondeck
PROSKAUER ROSE LLP
1001 Pennsylvania Ave NW, Suite 600 South
Washington, DC 20004
condeck@proskauer.com
- *For Defendant Potandon Produce L.L.C.*


67.    Each of the undersigned attorneys represents that he is fully authorized on

behalf of the parties he or she represents in this Action to enter into the terms and

conditions of, and to execute, this Settlement, subject to Court approval.


[Remainder Of This Page Intentionally Left Blank]

Dated: April 10, 2015

_____
James J. Pizzirusso, Esq.
HAUSFELD LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
jpizzirusso@hausfeldllp.com

*Chair of the Plaintiffs' Executive
Committee on behalf of all Counsel
for Direct Purchaser Plaintiffs and
the Proposed DPP Class*

_____
Steven B. Andersen
Andersen Banducci PLLC
101 S. Capital Blvd., Suite 1600
Boise, ID 83702
Tel: (208) 342-4411
Fax: (208) 342-4455
sba@andersenbanducci.com

*On behalf of Albert T. Wada; Wada
Farms, Inc.; Wada Farms Potatoes,
Inc.; Wada-Van Orden Potatoes,
Inc.; Wada Farms Marketing Group,
LLC; Wada Family LLC; Pro Fresh
LLC; Cedar Farms, Inc.; Michael
Cranney d/b/a Cranney Farms;
Cornelison Farms, Inc.; Snake River
Plains Potatoes, Inc.; Lance Funk
d/b/a Lance Funk Farms; Raybould
Brothers Farms LLC; Pleasant
Valley Potato, Inc.; KCW Farms,
Inc.; Kim Wahlen d/b/a Kim Wahlen
Farms; United Potato Growers of
Idaho, Inc.; United Potato Growers
of America, Inc.; and United II
Potato Growers of Idaho, Inc.*

Dated: April 10, 2015

James J. Pizzirusso, Esq.
HAUSFELD LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
jpizzirusso@hausfeldllp.com

*Chair of the Plaintiffs' Executive*
*Committee on behalf of all Counsel*
*for Direct Purchaser Plaintiffs and*
*the Proposed DPP Class*

Steven B. Andersen
Andersen Banducci PLLC
101 S. Capital Blvd., Suite 1600
Boise, ID 83702
Tel: (208) 342-4411
Fax: (208) 342-4455
sba@andersenbanducci.com

*On behalf of Albert T. Wada; Wada*
*Farms, Inc.; Wada Farms Potatoes,*
*Inc.; Wada-Van Orden Potatoes,*
*Inc.; Wada Farms Marketing Group,*
*LLC; Wada Family LLC; Pro Fresh*
*LLC; Cedar Farms, Inc.; Michael*
*Cranney d/b/a Cranney Farms;*
*Cornelison Farms, Inc.; Snake River*
*Plains Potatoes, Inc.; Lance Funk*
*d/b/a Lance Funk Farms; Raybould*
*Brothers Farms LLC; Pleasant*
*Valley Potato, Inc.; KCW Farms,*
*Inc.; Kim Wahlen d/b/a Kim Wahlen*
*Farms; United Potato Growers of*
*Idaho, Inc.; United Potato Growers*
*of America, Inc.; and United II*
*Potato Growers of Idaho, Inc.*

31

Robert A. Rosenfeld  *STEPHEN V. BOMSE*
Orrick Herrington & Sutcliffe
405 Howard Street
San Francisco, CA 94105-2669
Tel: (415) 773-4190
Fax: (415) 773-5759
rrosenfeld@orrick.com

*On behalf of Blaine Larsen Farms,
Inc.; Driscoll Potatoes, Inc.; and
Rigby Produce, Inc.*


James A. Wilson
VORYS SATER SEYMOUR
AND PEASE LLP
52 East Gay Street
Columbus, OH  43215
Tel: (614) 464-5606
Fax: (614) 719-5039
jawilson@vorys.com

*On behalf of Idahoan Foods LLC*


Christopher E. Ondeck
PROSKAUER ROSE LLP
1001 Pennsylvania Ave, N.W.
Suite 600 South
Washington, DC 20004-2533
Tel: (202) 416-5865
Fax: (202) 416-6899
condeck@proskauer.com

*On behalf of Potandon Produce
L.L.C.*

32

Robert A. Rosenfeld
Orrick Herrington & Sutcliffe
405 Howard Street
San Francisco, CA 94105-2669
Tel: (415) 773-4190
Fax: (415) 773-5759
rrosenfeld@orrick.com

*On behalf of Blaine Larsen Farms,
Inc.; Driscoll Potatoes, Inc.; and
Rigby Produce, Inc.*

James A. Wilson
VORYS SATER SEYMOUR
AND PEASE LLP
52 East Gay Street
Columbus, OH  43215
Tel: (614) 464-5606
Fax: (614) 719-5039
jawilson@vorys.com

*On behalf of Idahoan Foods LLC*

Christopher E. Ondeck
PROSKAUER ROSE LLP
1001 Pennsylvania Ave, N.W.
Suite 600 South
Washington, DC 20004-2533
Tel: (202) 416-5865
Fax: (202) 416-6899
condeck@proskauer.com

*On behalf of Potandon Produce
L.L.C.*

32

_____
Robert A. Rosenfeld
Orrick Herrington & Sutcliffe
405 Howard Street
San Francisco, CA 94105-2669
Tel: (415) 773-4190
Fax: (415) 773-5759
rrosenfeld@orrick.com

*On behalf of Blaine Larsen Farms,
Inc.; Driscoll Potatoes, Inc.; and
Rigby Produce, Inc.*

_____
James A. Wilson
VORYS SATER SEYMOUR
AND PEASE LLP
52 East Gay Street
Columbus, OH  43215
Tel: (614) 464-5606
Fax: (614) 719-5039
jawilson@vorys.com

*On behalf of Idahoan Foods LLC*

_____
Christopher E. Ondeck
PROSKAUER ROSE LLP
1001 Pennsylvania Ave, N.W.
Suite 600 South
Washington, DC 20004-2533
Tel: (202) 416-5865
Fax: (202) 416-6899
condeck@proskauer.com

*On behalf of Potandon Produce
L.L.C.*

Brian M. McGovern
MCCARTHY, LEONARD &
KAEMMERER, L.C.
825 Maryville Centre Drive, Ste. 300
Town and Country, MO  63017-5946
Tel: (314) 392-5200
Fax: (314) 392-5221
bmcgovern@mlklaw.com

*On behalf of R.D. Offutt Co. and
Ronald D. Offutt, Jr.*

# Exhibit A

# Citibank Preferred Custody Services

Agreement
Between
Citibank, N. A.
as 'Escrow Agent'
and

Albert T. Wada; Wada Farms, Inc.; Wada Family, LLC; Wada
Farms Potatoes, Inc.; Wada Farms Marketing Group, LLC; Wada-
Van Orden Potatoes, Inc., Pro Fresh LLC; Cedar Farms, LLC,
Blaine Larsen Farms, Inc.; Cornelison Farms, Inc.; Michael
Cranney d/b/a/ Cranney Farms; Driscoll Potatoes, Inc.; Idahoan
Foods LLC; Kim Wahlen; KCW Farms, Inc.; Lance Funk d/b/a
Lance Funk Farms; Pleasant Valley Potato, Inc.; Potandon
Produce L.L.C.; Raybould Brothers Farms, LLC; Ronald D. Offutt
Jr.; RD Offutt, Co.; Rigby Produce, Inc.; Snake River Plains
Potatoes, Inc.; United Potato Growers of America, Inc.; United
Potato Growers of Idaho, Inc.; and United II Potato Growers of
Idaho, Inc.

_____

("Settling Defendants")

and

Hausfeld LLP, Chair, Direct Purchaser
Plaintiffs' Executive Commitee

_____

("Interim Plaintiffs' Executive Committee Chair")

1

_____
(Account Number)

# Citibank Escrow Agent Custody Account

THIS ESCROW AGREEMENT is made this 10th day of April 2015 between/among Albert T. Wada; Wada Farms, Inc.; Wada Family, LLC; Wada Farms Potatoes, Inc.; Wada Farms Marketing Group, LLC; Wada-Van Orden Potatoes, Inc., Pro Fresh LLC; Cedar Farms, LLC, Blaine Larsen Farms, Inc.; Cornelison Farms, Inc.; Michael Cranney d/b/a/ Cranney Farms; Driscoll Potatoes, Inc.; Idahoan Foods LLC; Kim Wahlen; KCW Farms, Inc.; Lance Funk d/b/a Lance Funk Farms; Pleasant Valley Potato, Inc.; Potandon Produce L.L.C.; Raybould Brothers Farms, LLC; Ronald D. Offutt Jr.; RD Offutt, Co.; Rigby Produce, Inc.; Snake River Plains Potatoes, Inc.; United Potato Growers of America, Inc.; United Potato Growers of Idaho, Inc.; and United II Potato Growers of Idaho, Inc. (the "Settling Defendants" herein), Hausfeld LLP, ("Interim Plaintiffs' Executive Committee Chair" herein), and CITIBANK, N.A. (the "Escrow Agent" or "Citibank" herein).

Pursuant to that certain Settlement Agreement, dated as of April 10, 2015, by and between Settling Defendants and Interim Plaintiffs' Executive Committee Chair (the "Settlement Agreement"), the above-named parties appoint said Escrow Agent, with the attendant duties and responsibilities, and upon the terms and conditions provided in Schedule A annexed hereto and made a part hereof.  Capitalized terms used but not defined herein shall have the meaning set forth in the Settlement Agreement.

**ARTICLE FIRST**: The above-named parties agree that the following provisions shall control with respect to the rights, duties, liabilities, privileges and immunities of the Escrow Agent:

a) The Escrow Agent shall neither be responsible for or under, nor chargeable with knowledge of, the terms and conditions of any other agreement, instrument or document executed between/among the parties hereto, except as may be specifically provided in Schedule A annexed hereto.  This Escrow Agreement sets forth all of the obligations of the Escrow Agent, and no additional obligations shall be implied from the terms of this Escrow Agreement or any other agreement, instrument or document.

b) The Escrow Agent, acting in good faith, may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it and signed by an authorized signer for Interim Plaintiffs' Executive Committee Chair firms and counsel for all Settling Defendants, collectively.   The Escrow Agent may, in good faith, act in reliance upon any signature believed by it to be genuine, and to be the signature of a duly authorized person.

2

c) After adjudication by the court presiding over the Fresh and Process Potatoes Antitrust Litigation, Interim Plaintiffs' Executive Committee Chair, acting solely on behalf of the Plaintiffs' Executive Committee and Class Plaintiffs, agree to reimburse the Escrow Agent on demand for, and to indemnify and hold the Escrow Agent harmless against and with respect to, any and all loss, liability, damage or expense (including, but without limitation, attorneys' fees, costs and disbursements) that the Escrow Agent may suffer or incur in connection with this Escrow Agreement and its performance hereunder or in connection herewith, except to the extent such loss, liability, damage or expense arises from its willful misconduct or gross negligence.

d) The Escrow Agent shall be entitled to compensation for services rendered pursuant to this Escrow Agreement as provided in Schedule B attached hereto. In addition, if the Escrow Agent is required to engage the services of legal counsel due to uncertainty about the Escrow Agent's obligations under this Escrow Agreement and, if the court presiding over the Fresh and Process Potatoes Antitrust Litigation determines that such consultation was reasonable and warranted due to the uncertainty, the Escrow Agent shall be entitled to reimbursement from Interim Plaintiffs' Executive Committee Chair for the payment of the reasonable fees and expenses of the Escrow Agent's counsel.

e) The Escrow Agent shall open and maintain a separate and distinct escrow account set apart from the Escrow Agent's assets as provided in Section I of Schedule A. The Escrow Agent shall be under no duty to give the property held in escrow by it hereunder any greater degree of care than it gives its own similar property.

f) The Escrow Agent shall invest the property held in escrow in such a manner as directed in Section III of Schedule A annexed hereto, which may include deposits in Citibank and money market mutual funds advised, serviced or made available by Citibank or its affiliates even though Citibank or its affiliates may receive a benefit or profit therefrom. The Escrow Agent and any of its affiliates are authorized to act as counterparty, principal, agent, broker or dealer while purchasing or selling investments as specified herein. The Escrow Agent and its affiliates are authorized to receive, directly or indirectly, fees or other profits or benefits for each service, task or function performed, in addition to any fees as specified in Schedule B hereof, without any requirement for special accounting related thereto.

**The parties to this Escrow Agreement acknowledge that non-deposit investment products are not obligations of, or guaranteed, by Citibank/Citigroup nor any of its affiliates; are not FDIC insured; and are subject to investment risks, including the possible loss of principal amount invested. Only deposits in the United States are subject to FDIC insurance.**

g) The Escrow Agent shall have no obligation to invest or reinvest the property held in escrow on the day of deposit if all or a portion of such property is deposited

3

with the Escrow Agent after 11:00 AM Eastern Time on the day of deposit. Instructions to invest or reinvest that are received after 11:00 AM Eastern Time will be treated as if received on the following business day in New York. The Escrow Agent shall have the power to sell or liquidate the foregoing investments whenever the Escrow Agent shall be required to distribute amounts from the escrow property pursuant to the terms of this Escrow Agreement. Requests or instructions received after 11:00 AM Eastern Time by the Escrow Agent to liquidate all or any portion of the escrowed property will be treated as if received on the following business day in New York. The Escrow Agent shall have no responsibility for any investment losses resulting from the investment, reinvestment or liquidation of the escrowed property, as applicable, provided that the Escrow Agent has made such investment, reinvestment or liquidation of the escrowed property in accordance with the terms, and subject to the conditions, of this Escrow Agreement.

h) In the event of any disagreement between/among any of the parties to this Escrow Agreement, or between/among them or either or any of them and any other person, resulting in adverse claims or demands being made in connection with the subject matter of the Escrow, or in the event that the Escrow Agent, in good faith, is in doubt as to what action it should take hereunder, the Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, the Escrow Agent shall not become liable in any way or to any person for its failure or refusal to act, and the Escrow Agent shall be entitled to continue so to refrain from acting until (i) the rights of all parties shall have been fully and finally adjudicated by the court presiding over the Fresh and Process Potatoes Antitrust Litigation, or (ii) all differences shall have been adjusted and all doubt resolved by agreement among all of the interested persons, and the Escrow Agent shall have been notified thereof in writing signed by all such persons. The Escrow Agent shall have the option, after 30 calendar days' notice to the other parties of its intention to do so, to file an action in interpleader requiring the parties to answer and litigate any claims and rights among themselves. The rights of the Escrow Agent under this paragraph are cumulative of all other rights which it may have by law or otherwise.

i) The Escrow Agent is authorized, for any securities at any time held hereunder, to register such securities in the name of its nominee(s) or the nominees of any securities depository, and such nominee(s) may sign the name of any of the parties hereto to whom or to which such securities belong and guarantee such signature in order to transfer, or in order to certify ownership of such securities to tax or other governmental authorities.

j) Notice to the parties shall be given as provided in Section VI of Schedule A annexed hereto.

4

**ARTICLE SECOND**: The Escrow Agent shall make payments of income earned on the escrowed property as provided in Section IV of Schedule A annexed hereto**.** Each such payee shall provide to the Escrow Agent an appropriate W-9 form for tax identification number certification or a W-8 form for non-resident alien certification.  The Escrow Agent shall be responsible only for income reporting to the Internal Revenue Service with respect to income earned on the escrowed property.

**ARTICLE THIRD:** The Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 30 calendar days' written notice to the parties to the Escrow Agreement herein.  The Escrow Agent may be removed as such at any time upon 30 calendar days' written notice to Escrow Agent by all Settling Defendants and Interim Plaintiffs' Executive Committee Chair, jointly.   Any such resignation or removal shall terminate all obligations and duties of the Escrow Agent hereunder except the obligation to cooperate with the parties hereto to transfer the funds held in escrow to a successor escrow agent of their joint choosing.  On the effective date of such resignation or removal, the Escrow Agent shall deliver this Escrow Agreement together with any and all related instruments or documents to any successor Escrow Agent agreeable to the parties, subject to this Escrow Agreement herein. If a successor Escrow Agent has not been appointed prior to the expiration of 30 calendar days following the date of the notice of such resignation or removal, the then acting Escrow Agent may petition the United States District Court for the District of Idaho for the appointment of a successor Escrow Agent, or other appropriate relief.  Any such resulting appointment shall be binding upon all of the parties to this Escrow Agreement.

**ARTICLE FOURTH**: The Escrow Agent shall receive the fees provided in Schedule B annexed hereto.  The Escrow Agent shall not debit the Escrowed Funds for any charge for its fees or its costs and expenses, until it shall have received a copy of an order issued by the Court, approving the amount of fees, costs and expenses to which it is entitled. Fees and expenses of the Escrow Agent charged against the Escrowed Funds shall, to the extent possible, be paid out of interest earned. Once fees have been paid, no recapture or rebate will be made by the Escrow Agent.

**ARTICLE FIFTH:** Any modification of this Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto.

**ARTICLE SIXTH:** In the event funds transfer instructions are given (other than in writing at the time of execution of this Escrow Agreement), whether in writing, by telecopier or otherwise, the Escrow Agent is authorized to seek confirmation of such instructions by telephone call back to the person or persons designated in Schedule A annexed hereto, and the Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated.  To assure accuracy of the instructions it receives, the Escrow Agent may record such call backs.  If the Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it will not execute the instruction until all issues have been resolved. The persons and telephone numbers for call backs may be changed only in writing actually

received and acknowledged by the Escrow Agent.  The parties agree to notify the Escrow Agent of any errors, delays or other problems within 30 calendar days after receiving notification that a transaction has been executed.  If it is determined that the transaction was delayed or erroneously executed as a result of the Escrow Agent's error, the Escrow Agent's sole obligation is to pay or refund such amounts as may be required by applicable law.   In no event shall the Escrow Agent be responsible for any incidental or consequential damages.  Any claim for interest payable will be at the Escrow Agent's published savings account rate in effect in New York, New York.

**ARTICLE SEVENTH**: This Escrow Agreement shall be governed by the law of the State of New York in all respects.  The United States District Court for the District of Idaho ("the Court"), the court presiding over the Fresh and Process Potatoes Antitrust Litigation, has continuing jurisdiction over the Escrow Agreement, the Escrow Account, and the Escrow Funds.  The parties hereto irrevocably and unconditionally submit to the Court's jurisdiction in connection with any proceedings commenced regarding this Escrow Agreement, including but not limited to, any interpleader proceeding or proceeding for the appointment of a successor escrow agent the Escrow Agent may commence pursuant to this Agreement, and all parties irrevocably submit to the jurisdiction of the Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue of inconvenient forum.

**ARTICLE EIGHTH:** This Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same agreement. Facsimile signatures on counterparts of this Escrow Agreement shall be deemed original signatures with all rights accruing thereto.

**ARTICLE NINTH**: The Escrow Agent shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control (including, but not limited to, any provision of any present or future law or regulation or any act of any governmental authority, any act of God or war or terrorism, or the unavailability of the Federal Reserve Bank wire services or any electronic communication facility).

**ARTICLE TENTH**: No printed or other material in any language, including prospectuses, notices, reports, and promotional material which mentions "Citibank" by name or the rights, powers, or duties of the Escrow Agent under this Agreement shall be issued by any other parties hereto, or on such party's behalf, without the prior written consent of the Escrow Agent.

In witness whereof the parties have executed this Agreement as of the date first above written.

**CITIBANK, N.A. as Escrow Agent**

**By:** _____
        (Signature)
**Title:** _____
**Date:** _____

**HAUSFELD LLP as Interim Plaintiffs' Executive Committee Chair**

**By:** _____
**Title:** Partner, Hausfeld LLP
**Date:**        4/10/2015

**ANDERSEN BANDUCCI PLLC as Counsel for Settling Defendants** *Albert T. Wada; Wada Farms, Inc.; Wada Family, LLC; Wada Farms Potatoes, Inc.; Wada Farms Marketing Group, LLC; Wada-Van Orden Potatoes, Inc., Pro Fresh LLC; Cedar Farms, LLC, Cornelison Farms, Inc.; Michael Cranney d/b/a/ Cranney Farms; Kim Wahlen; KCW Farms, Inc.; Lance Funk d/b/a Lance Funk Farms; Pleasant Valley Potato, Inc.; Raybould Brothers Farms, LLC; Snake River Plains Potatoes, Inc.; United Potato Growers of America, Inc.; United Potato Growers of Idaho, Inc.; and United II Potato Growers of Idaho, Inc.:*

**By:** _____
**Title:** _____
**Date:** _____

**ORRICK, HERRINGTON, AND SUTCLIFFE LLP as Counsel for Settling Defendants** *Blaine Larsen Farms, Inc.; Driscoll Potatoes, Inc.; and Rigby Produce, Inc.*:

**By:** _____
**Title:** _____
**Date:** _____

In witness whereof the parties have executed this Agreement as of the date first above written.

**CITIBANK, N.A. as Escrow Agent**

**By:** _____
                         (Signature)
**Title:** _____
**Date:** _____


**HAUSFELD LLP as Interim Plaintiffs' Executive Committee Chair**

**By:** _____
**Title:** Partner, Hausfeld LLP
**Date:** _____


**ANDERSEN BANDUCCI PLLC as Counsel for Settling Defendants** *Albert T. Wada; Wada Farms, Inc.; Wada Family, LLC; Wada Farms Potatoes, Inc.; Wada Farms Marketing Group, LLC; Wada-Van Orden Potatoes, Inc., Pro Fresh LLC; Cedar Farms, LLC, Cornelison Farms, Inc.; Michael Cranney d/b/a/ Cranney Farms; Kim Wahlen; KCW Farms, Inc.; Lance Funk d/b/a Lance Funk Farms; Pleasant Valley Potato, Inc.; Raybould Brothers Farms, LLC; Snake River Plains Potatoes, Inc.; United Potato Growers of America, Inc.; United Potato Growers of Idaho, Inc.; and United II Potato Growers of Idaho, Inc.:*

**By:** _____
**Title:** Partner
**Date:** 4-10-10


**ORRICK, HERRINGTON, AND SUTCLIFFE LLP as Counsel for Settling Defendants** *Blaine Larsen Farms, Inc.; Driscoll Potatoes, Inc.; and Rigby Produce, Inc.:*

**By:** _____
**Title:** _____
**Date:** _____

7

In witness whereof the parties have executed this Agreement as of the date first above written.

**CITIBANK, N.A. as Escrow Agent**

By: _____
Title: _____
Date: _____

**HAUSFELD LLP as Interim Plaintiffs' Executive Committee Chair**

By: _____
Title: _Partner, Hausfeld LLP_
Date: _____

**ANDERSEN BANDUCCI PLLC as Counsel for Settling Defendants** *Albert T. Wada; Wada Farms, Inc.; Wada Family, LLC; Wada Farms Potatoes, Inc.; Wada Farms Marketing Group, LLC; Wada-Van Orden Potatoes, Inc., Pro Fresh LLC; Cedar Farms, LLC, Cornelison Farms, Inc.; Michael Cranney d/b/a/ Cranney Farms; Kim Wahlen; KCW Farms, Inc.; Lance Funk d/b/a Lance Funk Farms; Pleasant Valley Potato, Inc.; Raybould Brothers Farms, LLC; Snake River Plains Potatoes, Inc.; United Potato Growers of America, Inc.; United Potato Growers of Idaho, Inc.; and United II Potato Growers of Idaho, Inc.:*

By: _____
Title: _____
Date: _____

**ORRICK, HERRINGTON, AND SUTCLIFFE LLP as Counsel for Settling Defendants** *Blaine Larsen Farms, Inc.; Driscoll Potatoes, Inc.; and Rigby Produce, Inc.:*

By: _____
Title: _Senior Counsel_
Date: _4/17/15_

7

**MCCARTHY LEONARD & KAEMMERER LLC** as Counsel for Settling Defendants *Ronald D. Offutt Jr. and RD Offutt, Co.:*

By: _____ Robert Miller
(Signature)
Title: _____PARTNER_____
Date: _____4-10-2015_____


**VORYS, SATER, SEYMOUR AND PEASE LLP** as Counsel for Settling Defendant *Idahoan Foods LLC:*

By: _____
(Signature)
Title: _____
Date: _____


**PROSKAUER ROSE LLP** as Counsel for Settling Defendant *Potandon Produce L.L.C.:*

By: _____
(Signature)
Title: _____
Date: _____

8

**MCCARTHY LEONARD & KAEMMERER LLC** as Counsel for Settling Defendants *Ronald D. Offutt Jr. and RD Offutt, Co.*:

By: _____
(Signature)

Title: _____

Date: _____


**VORYS, SATER, SEYMOUR AND PEASE LLP** as Counsel for Settling Defendant *Idahoan Foods LLC*:

By: _____
(Signature)

Title: Partner

Date: Apr. 10, 2015


**PROSKAUER ROSE LLP** as Counsel for Settling Defendant *Potandon Produce L.L.C.*:

By: _____
(Signature)

Title: _____

Date: _____

**MCCARTHY LEONARD & KAEMMERER LLC as Counsel for Settling Defendants** *Ronald D. Offutt Jr. and RD Offutt, Co.:*

**By:** _____
                          (Signature)
**Title:** _____
**Date:** _____


**VORYS, SATER, SEYMOUR AND PEASE LLP as Counsel for Settling Defendant** *Idahoan Foods LLC*:

**By:** _____
                          (Signature)
**Title:** _____
**Date:** _____


**PROSKAUER ROSE LLP as Counsel for Settling Defendant** *Potandon Produce L.L.C.*:

**By:** _____
                          (Signature)
**Title:** _Partner_____
**Date:** _April 10, 2015_____

8

**SEC Shareholder Disclosure Rule 14b-2:** SEC Rule 14b-2 directs us to contact you to request authorization to provide your name, address and share position with respect to the referenced account to requesting companies whose stock you have voting authority over. Under the Rule, we _must_ make the disclosures for accounts opened after December 28, 1986, if requested, _unless_ you specifically object to disclosure.  Hence, failure to respond will be deemed consent to disclosure.  Thank you for assisting us in complying with this SEC rule.

❑ Yes, we are authorized to release your name, address and share positions
❑ No, we are not authorized to release your name, address and share positions.

_____
_____
_(Signature)_                                                         _(Date)_

Reference Account No.:_____

Citi Private Bank is a business of Citigroup Inc. ("Citigroup"), which provides its clients access to a broad array of products and services available through bank and non-bank affiliates of Citigroup. Not all products and services are provided by all affiliates or are available at all locations.

| Investment Products: •No Bank Guarantee •Not FDIC Insured •May Lose Value |
| --- |

Citigroup Inc., its affiliates, and its employees are not in the business of providing tax or legal advice to any taxpayer outside of Citigroup Inc. and its affiliates.  These materials are not intended or written to be used, and cannot be used or relied upon, by any such taxpayer for the purpose of avoiding tax penalties.  Any such taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

Custody Services are provided by Citibank N.A.

Citi and Citi with Arc Design are registered service marks of Citigroup Inc. or its affiliates.

© 2015 Citigroup Inc. All rights reserved.

Citibank, N.A. **Member FDIC**

# Exhibit B

**EXHIBIT B**

All past and present cooperative members of United Potato Growers of America, Inc. ("UPGA") are:


United Fresh Potato Growers of Colorado, Inc.

United Fresh Potato Growers of Idaho, Inc.

United Fresh Potato Growers of Klamath Basin, Inc.

United Fresh Potato Growers of Montana, Inc.

Kern Produce Shippers Association, Inc.

Red River Valley Fresh Potato Growers Cooperative, Inc.

United Southwest Potato Growers, Inc.

United Fresh Potato Growers of Washington and Oregon, Inc.

United Potato Growers At-Large, Inc.

United Potato Growers Cooperative of Wisconsin, Inc.

# Exhibit C

## EXHIBIT C

All past and present members of the cooperative members of UPGA are:

## United Fresh Potato Growers of Colorado, Inc.:

4A Farms
Adam Ellithorpe
Alan Van Treese
Altitude Ag
Alvin Kunugi
Anna Brownell
Arthur Holland
Asbell Farms
Bassett Farms Inc
Beiriger Farms
Bigelow Associated Farms
Bill Ellithorpe
BJ Eagles
BJ Eagles
Blue Sky Farms
Bob Mattive
Bond Farms
Boyd Bigelow
Brett Deacon
Brian Brownell
Brian Harrison
Brian Neufeld
Brown & Shriver Farms
Bruce Heersink
Byron Kunugi
C&C Farms
Carl Worley
Carla Worley
Cary Hoffman
Charles Higgins
Charles Versaw
Chiles Farms
Chris Miner
Chuck Howey
Circle D Farms
CJ Robinson
Clarence Robinson
Clifton Curtis

1

Cody Carpenter
Cole Wakasugi
Cory Myers
Cottonwood Ranch
Covenant Farm
Craig Miner
Craig Perrin
CRC Farms
Crestone-View Farms LLC
Curt Kaiser
Dan Harvey
Daniel Davis
Danny Neufeld
David Radtke
David Warsh
Davis Farm
Deacon Farms
Dennis Beiriger
Donna Jenkins
Donna Mae Jenkins
Doug Gunnels
Doug Gunnels Farms
Doug Shriver
Dwayne Catalano
Dwight Barlow
Dylan Brown
Eagle Ag, LLC
El Rancho Salazar
Eleven Mile Partnership
Eric Ellithorpe
Ernie Ford
Ernie Myers
Esparanza Farms
Farming Technology Corp
Galen Harrison
Gary Gallagher
Gary Klecker
George Kirkpatrick
Gerald Myers
Gilbert Fransen
Gilbert Fransen, Jr.
Golden Valley Farm
Grant Mattive

Greg Peterson
H G Wright
Hart Farms
Higgins Farms
Hunter Sessums
J A Mason Farm
J&J Farms
Jack Felmlee
Jack Kuntz
James Beiriger
James Cooley
James Hart
James McCullough
James/Dennis/Mark Beiriger
Janell Martin
Janelle Martin
Janet Kuntz
Jared Myers
Jason Kirkpatrick
Jason Mitchell
JC Farms
JDS Farms
Jean Davis
Jed Ellithorpe
Jenkins, Donna Mae
Jeremy Mueller
Jim Echeverria
Jim Ford Farms
Jim Mason
Joe Barela Trucking
John Artaechevarria
John Myers
John Slane
Jon Brownell
Jones Farm
Jordan Produce
Jose Artaechevarria
JoshWagar
Kaiser Farms
KC Farms
Kehler Ranches Inc
Keith Holland
Keith Rogers

Kelly Deacon
Ken Carpenter
Kenneth Burback
Kent Palmgren
Kent Price
Klecker Farms
Kopfman Farms
Kris Asbell
Kunugi Farms
La Rue Farms, Inc
Lawrence Good
Lawrence Martin
LeRoy Salazar
Lobo Farm, Inc
Lynn Kopfman
Lynn McCullough
M&G Farms
M&M Grain & Produce
Mark Beiriger
Mark Deacon
Mark Mueller
Mark Peterson
Mark Rogers
Mark Smith
Martin Ranches
Martinez Farms
Matt Seger
Meadow Ranch
Michael Entz
Mike Jones
Mike Jordan
Mike Kruse
Mike Mitchell
Mike Mitchell Farms
Mike Mitchell Farms, LLC.
Mike Mueller
Mike Rierson
Mike Schreck
Mitchell Ag Production, FLP
Moe Bond
Monty Smith
Palmgren Farms
Peterson Farms

Phil Smartt
Ponderosa Partnership
Price Farms
Pro-Seed Inc
Randall Palmgren
Randy Brown
Ray Wright
Reid Mattive
Richard Noe
Rierson Farms
RMSM Family Farm LLC
Robert Jones
Robinson's Farm
Rod Kehler
Rod Steffans
Roger Christensen
Roger Mix
Rogers Brothers Farms
Rogers Farms
Ron Peterson
Ron Stoeber
Ron Pepper
Russell Brown
SAM Investments
San Luis Hills Farm
Schulz Farms LLC
Scott Scidmore
Scott Wolfe
Seger West
Segundo Diaz
SG Deacon Trust
Shawn Schulz
Sherrel Mix
Southern Colorado Farms
Spud Grower Farms
Steffens Farms Inc
Steve Tonso
Steve Myers
Steve Tonso
Summit Farms
Sun Dot Farms Inc
Sunny Valley Farms
Susan Knoll

Terry Good
Terry Chiles
Thad Elliott
Thomas Ford
Three S Ranch
Tom Biel
Tonso Farms
Trevan Pepper
Trevan Pepper Farms
Triple M Farms
Triple P Ranch
Valley Shippers
Virgil Valdez
VW Bill Ellithorpe
Wayne Wedel
Will Hathaway
Worley and McCullough, Inc
Worley Seed
Zapata Seed Co


**United Fresh Potato Growers of Idaho, Inc.**

*See* Exhibit D attached.

**United Fresh Potato Growers of the Klamath Basin, Inc.**

ANTHONY SAY
BIGFOOT FARMS
BLACKMAN FARMS
BOBBY D PURDOM
CHARLES MCAULIFFE
CHEYNE BROTHERS
CHIN FARMS
CLAUDE W CROSS
CODY DODSON
CRAWFORD FARMS
DANIEL CHIN
DAVE VERLEY
DENNIS FANNING
DON A RAJNUS
DON KIRBY
DON ROHRBACKER
EARL SCHULTZ
ED BALEY

ED STAUNTON
EDWIN J STASTNY
FRANK G PROSSER
GAVIN RAJNUS
HUFFMAN BROTHERS
JAMES LYMAN
JAMES WOODMAN
JEFFREY R BOYD
JERRY LEQUIEU
JESS GUTHRIE
JIM BALEY
JIM BOYD
JIM CHEYNE
JIM LYMAN
JOE BAIR
JOHN CRAWFORD
JOHN A BOWEN
JOHN D CROWELL
JOHN PARRISH
JOHN PROSSER
JOHN S CROSS
JOHN STAUNTON
KARISSA GUTHRIE
LARRY RICK
LE Q FARMS
MACY'S FLYING SERVICE
MARSHALL STAUNTON
MARTY MACY
MATHEW HUFFMAN
MDJ FARMS
NATHAN MATHEWS
NICK MACY
OTTO HUFFMAN
PAT PATTERSON
R&R ENTERPRISES
RICHARD WALSH
ROB CRAWFORD
ROBERT B CROSS
ROBERT M MANNING
ROD BALEY
ROD BLACKMAN
ROGER TAYLOR
RYAN K MCAULIFFE

SARA JO CROSS
SCOTT FENTERS
SHAWN L CROSS
SID STAUNTON
STAUNTON FARMS
TAD KLOEPPER
TERRY L GUTHRIE
TRACEY LYON
UC-IREC
VICKIE WOODMAN
WILLIAM J RAJNUS
WOODMAN FARMS

**United Fresh Potato Growers of Montana, Inc.**

ALAN VENEMA
ARNOLD FOUST
ART MANGELS
BAUSCH RANCH
BILL BUYAN
BILL COLE
BILL COLE CERTIFIED SEED
BILL KIMM
BILL SKINNER
BOB MARTIN
BROKSLE RANCH
BUYAN RANCH
CANYON VIEW FARMS
CARL SCHUTTER
CERTIFIED SEED POTATOES
CHAD HANSEN
CLIFF SCHUTTER
COTTOM SEED
DAN DYK
DAN HIGH
DAN KIMM
DENNIS DAY
DON KOBERG
DON KOBERG PARTNERSHIP
DOUG DYK
DROGE FARMS
DYK SEED POTATOES
EDWARD STARKEL

EDWARD STARKEL LLC
ERNEST FOUST
EUGENE COLE
EUGENE COLE FARM
FLEMING FARMS
FOUST FARMS
GLENN DROGE
HANSEN BROTHERS
JASON KIMM
JE DAY SEED POTATOES
JIM COTTOM
JJ FARMS
JOE BROOKS
JOHN VENHUIZEN
JUSTIN NICHOLES
KAMPS SEED FARM
KEN VELTKAMP
KENT KIRKSEY FARMING
KIMM BROTHERS FARMING
KIMM SEED POTATOES
LAKE FARMS
LAKE SEED
LAKE'S GLACIER VIEW FARMS
LEO NICHOLES
LEONARD SALOMON
LONDON HILLS FARMS
MANGELS & SONS CERTIFIED SEED
POTATOES
MANGELS FARMS
MANGELS SEED POTATOES
MARCUS BUYAN
MARK BAUSCH
MARK KIMM
MARTIN BROS & HANSEN BROS
MARTIN BROS FARMS
MAUGHAN FARMS
MICHAEL BUYAN
MONTANA SEED
MORKRID FARMS
NICHOLES SEED FARM
NICK SCHUTTER
NICK VENHUIZEN

NORTHWEST/VANDYKE
PARTNERSHIP
OREM FARMS
PAT FLEMING
RANDY REED
ROBERT SNELL
ROGER STARKEL
RON DYK
RON DYK
SALOMON FARMS
SCHUTTER SEED FARM
SCOTT KIMM
SID KAMPS
SID SCHUTTER
SKINNER SPUDS
SPRING CREEK FARMS
STARKEL FARMS
STEVE COTTOM
STEVE MAUGHAN
STEVE STREICH
STREICH & ASSOCIATES
TIM KAMPS
TOBOL FARMS
VENHUIZEN FARMS
VENHUIZEN SEED POTATOES
VERN DROGE
WATAVIEW FARM
WATAVIEW FARMS
WEIDENAAR & VANDER MOLEN
WEIDENAAR RANCHES
WHITE'S POTATO FARMS
WILLIAM & TAMI JONES

**Kern Produce Shippers Association, Inc.**

TRI FANUCCHI FARMS
GIUMARRA FARMS
JOHNSTON FARMS
KING PAK POTATO CO/GRIMWAY
KIRSCHENMAN ENTERPRISES
LEHR BROTHERS
PROGRESSIVE FARMS
MOUNTAIN KING PRODUCE

C HANDEL & SONS
ZUCKERMAN FAMILY FARMS

**Red River Valley Fresh Potato Growers Cooperative, Inc.**

ABC Ag Partnership
Allen Tucker
Andrew Moquist
Art & Jim Tallackson
Art & Jim Tallackson Farms Inc.
Ben Tucker
Bennett Tucker
Brian S. Peterson
Bryan Folson
Chris Thompson
Chris Thompson Farm
Chris Thompson Farms
Connor Oihus
Dale Collette
Darren DeMers
David Leum
David Moquist
Dean Tronson
DeMers Farm
Dennis Magnell
Donovan Schuster
Donovan Schuster Farms
Doug Davis
Doug Davis Farms
Doug Davis Farms Inc.
Doug Whelan
Douglas Whelen
Estad Farm Corp.
Figment Farms
Folson Farms Corp.
Francis Spokely
Gerald Omlid
Gerald Omlid Farms
Greg Campbell
Greg Hall
Hall's
Hall's
J.G. Hall & Sons

Jim Tallackson
Joe Dufner
Joe Dufner Farms
John F. DeSautel Farming Co.
Jorde Certified Seed LLC
Jud Molstad
Justin Schulz
K.A. Fossum, Inc.
Kelly Grotte
Kevin Hoenke
Leum Farms
Lonnie Spokely
Loren Estad
Loyland Farms
M.V. Collette Inc.
Mark Gourde
Mark Gourde Farms
MCM, Inc.
MG Farms
Mike Grzadzielewski
Mike Loyland
Mitch Jorde
Monson Farms
MV Collette Farms
O.C. Schulz & Sons
Omlid Farms
Paul Fossum
Paul Novacek
Peatland Reds
Richard Vivatson
Rick Vivatson
Robert Vivatson
Rodney Spokely
Ron McMartin
Ron Novacek
Scott Monson
Spokely Farms
Thomas J Hall
Timothy Myron
Tom Campbell
Tom Schulz
Tri-Campbell Farms
Tronson Farms

Vivatson Bros.
Vivatson Brothers
Whelen Farms

## United Southwest Potato Growers, Inc.

 BARRETT POTATO FARMS
 BILL ROENBAUGH
 BRUCE BARRETT
 CARY HOFFMAN
 DON OPPLINGER
 DON OPPLINGER COMPANIES
 FARMING TECHNOLOGY
 FRENCHMAN VALLEY PRODUCE
 GARY BOYD
 JASON BOX
 JIMMY LOTHRINGER
 JOE NEWTON
 JOSH JORDE
 JT FARMS
 KANSAS POTATOES
 KEITH BARRETT
 LANCE BARRETT
 LC POTATO CO
 LELAND LISSOLO
 LENZ FAMILY FARMS
 LOTHRINGER FARMS
 LYNN A MCCULLOUGH
 RANDALL PRESTON
 RANDALL PRESTON PRODUCE
 RICHARD BARRETT
 ROD LENZ
 SANDHILL POTATO CO
 SEMINOLE PRODUCE
 SPUD SELLER
 STEVE BARRETT
 THREE BO'S
 TIM GONZALEZ
 TIM MAY
 WARREN BOEGEL

**United Fresh Potato Growers of Washington and Oregon, Inc.**

3P FARMS
ALAN BIRD
AMSTAD FARMS
ANDY JENSEN
BALCOM AND MOE
BART CONNORS
BILL LAMPSON
BLAKAL PACKING CO
BLAKE BENNETT
BOB HALVORSON
BOUCHEY FARMS
BUD RICH
CARR FARMS
CHARLIE CONNORS
CURTIS GRANT
CZEBOTAR FARMS
DAN ELMORE
DAN HERRING
DAREL KOHN
DARRELL VAN DYKE
DARRELL & ANN VAN DYKE
DAVID YORGESEN
DEEANN AMSTAD
DEL CHRISTENSEN
DIAMOND M FARMS
DOUG MOORE
DOUG STETNER
EARL AYLETT
ED MACY
ELMORE FARMS
G2 FARMING
GARY LARSEN
GARY LARSON
GLEN CLIFFORD
GRANT FARMS
H&R FARMS
HEILIG FARMS
HERRING FARMS
HF FARMS
JACK JONES
JARED BALCOM

JEFF JONES
JEFF URBACH
JENSEN FARMS
JEROME FUHRMEN
JERRY HEILIG
JIM CARLSON
JIM REIMANN
JOHN STAHL
JONES PRODUCE
JR CARR
KEVIN BOUCHEY
KEVIN WEBER
KEVIN YORGESEN
KLRB FARMS
LARRY ALEXANDER
LARRY BARNES
LARSEN FARMS
LEW MCCULLOUGH
LYNN OLSEN II
M&R FARMS
MACY FARMS
MADRAS FARMING
MADRAS FARMS
MARK BOUCHEY
MIKAMI BROTHERS
MIKE CONNORS
MIKE JONES
MIKE MACY
MOLLY CONNORS
MORRIS IRRIGATED FARMS
MULLEN FARMS
NELSON COX
NELSON COX FARMS
PAMP MAIERS
PAUL MORRIS
PHILIP SEALOCK
R&R HALVORSON
RA FARMING
RANDY MULLEN
RICHARD MACY
ROBERT HALVORSON
ROLOFF FARMS
RUSSELL PIXTON

SATCH MIKAMI
SCHOONOVER HUTTERIAN BRETHREN
SKD FARMS
SKONE & CONNORS
STAHL HUTTERIAN BRETHREN
STETNER FARMS
STEVE ALEXANDER
STEVE CONNORS
TATOES
TERRY BAILIE
TERRY ROLOFF
TOM KIRSCH
TOM WORDEN
TONY AMSTAD
TONY CZEBOTAR
TROY BETZ
TUALATIN VALLEY POTATOES
WAYNE AMSTAD
WEBER FARMS
WILLY WALTER
WORDEN FARMS
YORGESEN FARMS

**United Potato Growers At-Large, Inc.**

BEN HOLMES POTATOES
EDLING FARMS
EWING FARMS
JCP FARMS
ZINTER BROTHERS
VANDERWEELE FARMS
BLUE SKY FARMS
RODNEY OLSON
JEROME EDLING
PETE EWING
JOHN PETRON
BOB/JOHN ZINTER
BEN VANDERWEELE
DANNY JOHNS
JEFF EDLING

**United Potato Growers Cooperative of Wisconsin, Inc.**

AG RESOURCES
ALSUM FARMS
ANDY DIERCKS
ANDY WALLENDAL
ANTHONY FARMS
ART SEIDL
B & D FARMS
BACON FARMS
BARTSCH FARMS
BILL PATOKA
BJ LAPACINSKI
BJ LAPACINSKI & SONS
BOB HELBACH
BRIAN BUSHMAN
BRIAN/JOE BUSHMAN
BRUCE FALDET
BRUCE SOIK
BUCK-A-WAY ACRES
BULA POTATO FARMS
BULA-GIERINGER FARMS INC.
BURNS & SONS
BUSHMAN ASSOCIATES
BUSHMAN ASSOCIATION
BUSHMAN RIVERSIDE RANCH
CHRIS ANTHONY
COLOMA FARMS
D&H FARMS
DANIEL YESKA
DENNIS BULA
DENNIS ZELOSKI
DON/GENE GAGAS
DONALD HAMERSKI
FALDET FARMS
FELIX ZELOSKI FARMS
FENSKE FARMS
FIRKUS FARMS
FRANK WOLOSEK
GAGAS FARMS
GARY BULA
GARY BULA FARMS
GLEN WOLTER

GUMZ MUCK FARMS LLC
H AND J WILLIAMS FARMS
HAMERSKI FARMS
HEARTLAND FARMS
HELBACH FARMS
HOWARD CHILEWSKI
HOWARD/JON FEMSKE
HYLAND LAKE SPUDS
ISHERWOOD COMPANY
J W MATTEK & SONS INC
JAMES BURNS
JEFF LAURITZEN
JESSE J TEAL
JESSE TEAL
JIM BACON
JIM MATTEK
JJ POTATOES
JOE BUSHMAN
JOE FIRKUS
JOHN ALBERS
JOHN T SCHROEDER
JONATHON BUSHMAN
JUSTIN ISHERWOOD
JW MATTEK
JW MATTEK & SONS
KELLY FLETCHER
KUCZMARSKI FARMS
LARRY ALSUM
LAURITZEN INC
LONNIE FIRKUS
MIKE BAGINSKI
MYRON SOIK
MYRON SOIK & SONS
NATHAN WOLOSEK
NICK SOMERS
NICK SOMERS
NUTO FARMS, INC.
OKRAY FAMILY FARMS
PARAMOUNT FARMS
PAT DAILY
PATOKA FARMS
PAUL MILLER
PAUL MILLER FARMS

PAUL PHILLIPPI
PETE SCHROEDER
PETER STEUCK
PLOVER RIVER FARMS
PLOVER RIVER FARMS ALLIANCE
PRAIRIE STAR RANCH
R&K FLETCHER FARMS
REBL ACRES
REB'L ACRES
RICHARD OKRAY
RICHARD PAVELSKI
RICK BEGGS
ROB SCHROEDER
ROBERT WOYAK
ROGER KUCZMARSKI
RON H HUTKOWSKI
RUSS WYSOCKI
RUSSELL WYSOCKI
SCHROEDER BROS FARMS
SCHULTZ POTATO FARMS
SCOTT ERDMAN
SCOTT PARR
SEIDL FARMS
SHIPROCK FARMS
STEVE BARTSCH
SUNNY GROVE FARMS
TED BAGINSKI & SONS
TIM WORZELLA
TODD SCHULTZ
TOM WEEKLY
TRIPLE C ACRES
WAGNER FARMS
WALLENDAL SUPPLY
WEEKLY FARMS
WORZELLA & SONS
WOYAK FARMS
WYSOCKI PRODUCE FARMS
YESKA BROS FARMS

# Exhibit D

**EXHIBIT D**

All past and present cooperative members of United Potato Growers of Idaho, Inc. ("UPGI") are:

4 Ace Farms LLC
5R Farms
A West & Sons Farms
A.C. Farms
Adam Crane
Adam Crane Farms Inc.
Adam Neibaur
Alan Crand
Alan Kelsch
Albert Daw & Sons LLC
Albert Wada
B & B Jensen Farms
B & C Farms, Inc
B & E Farms
B & H Farming
B & K Farms
B&S Farms Inc.
Baker Farms Inc
Ball Farms
Barry Christensen
Bart Wattenbarger
Bart Webster
Bart Webster Farms\Franko Farms
BBK Farms
Beadz Bros.
Beesley Farms Inc
Bennett Creek Farms
Beta Western
Bevan Jeppesen Inc
Beven Jeppesen
Bill Jensen & Son Inc.
Bill Thiel
Bitter Farms
Bittersweet Farms
BJ Christensen & Sons
Blaine Larsen
Blaser Sunset Farms
Blaser's Sandy Sage Farm
Boyd Foster
Brad Jensen

Brad Nielson
Breding Farms
Bret Robins
Brett Jensen
Brian Harmon
Brower Farms
Bruce & Marc Foster
Bruce Harris
Bryan Larson
Bryan Searle
Buckhorn Farms
Burke Hanks
Burusco Farms
Buster Farms
Byron Evans
Byron Evans Farms
Byron Stanger
C&N Land & Family Inv.
C. Ladd Holmquist
C. Ladd Holmquist Farms
Carl Ball
Carl Dixon
Carl Taylor
CBC Farms
CD Farms
Chris Huskinson
Circle D Farms
Circle G Farms Inc.
Clawson Farms
Coma Farms
Conan Feld
Cornelison Farms
County Line Farms
Coy Crapo
Craid Larson
Crapo Bros
Cripple Creek Farms
Critchfield Farms
CSC Farms
Curt Jenksin
D & L Hansen Inc.
D & M Farms
D & N INC\Clayson Farms LLC

Dale Jensen
Dale Mecham
Dale Mickelsen
Dallan Jeppesen
Dalls Furness
Dan & Delila Weaver
Dan Moss
Dan Nedrow
Daren Bitter
Darren & Max Gould
Darren Watt
Dave & Mary DeMott
Dave Beesley
Dave Daw
Dave Robison
David & John Ellsworth
David & Nolan Clayson
David Crapo
David Crapo Farms/DVC Farms
David Critchfield
David Pickett
David Stolworthy
David Wood
Dean & Dennis Snarr
Dean Gibson
Dean Snarr & Son Farms
Delray Holm
Delray Holm & Sons Farms
DeMott Farm
Dennis Leavitt
Dewey Crane
Dillon Van Orden
Dillon VanOrden - Part of Garth VanOrden
Dixon Farms
Don Breding
Doran West
Doug Gross
Douglas G Harmon Farms
Douglas Hanks
Douglas Harmon
Drew Jensen
Driscoll Brothers Partnership
Duane Grant

Ellsworth Farms
Eric Jensen
Erikson Farms Inc
Eugene Matthews
Farbo Farms
Flying "H" Farms
Flying H Corp
Foster Company/Vista Valley
Foster Farms
Frank Summers
Fred Blaser
Funk Farms
Furness Farm
G&G Farms-
Garth Van Orden
Gary Ball
Gary Dixon
Gary Hansen
Gary Skidmore
Gary Whitely
G-Dot Farms
George Crapo
Glad Powell
Golden Sunset
Gordon Harmon
Grant Neibaur & Sons
Grant Ricks
Gregory Hirai
Gross Farms
Guy & Keith Erikson
Hal Buster
Hamer Farms
Hanks Farms
Hanny Farms
Hansen Farms
Hardy Farms Inc.
Harmon Farms
Harmon Farms
Hirai Farms
HJ Farms Inc
Howard Johnson
Hughes Farms
Isom Farms / Mountain Pride

J & A Farms -
Jack Poulson
Jack Poulson Farms
James Wood
Jason & Kevin Webster
JC Orr
Jed Wayment
Jeff Driscoll
Jeff Harper
Jeff Raybould
Jeff, Greg & Jim Pahl
Jenkins Farms
Jensen Farms
Jensen Farms
Jensen Farms/K-2 Fams
Jeppesen Farms
Jeppesen Farms
Jeppesen Farms Inc
Jerry Wageman
Jim Blake
Jim Blake Farms
Jim Siddoway
Joe Jeppesen
John Burusco
John Pocock Farm
John S. Pocock
Justin Mecham
JW & Jackson Allred
K & R Farms
Keith Cornelison
Keith Walker
Keith Wilcox & Sons / TLR
Kelsch Farms
Kent Bitter
Kent Linford
Kim Wahlen
Kip Poulson
Kirk Jacobs
Kirk Woodhouse
KW Huskinson & Sons
Kyle & Keith Jeppesen
Lance Funk
Lance Gardner

Larid Robinson
Larry and Dorene Hansen
Larsen Farms
Layne Rasmussen
Leavitt Farms
Lee Miller
LeeRoy Van Orden
Lockwood Farms
Lorraine, Dirk, Thayne & Brock Driscoll
Magic Water Farming LLC
Marc Thield
Mark Cummins
Mark Schroeder
Martin Farms
Marty & Marvin Fehringer
Marty Beadz
Mecham Farms/Mecham Brothers
Merrill Hanny
Mickelsen Farms
Mike & Ryan Cranney
Mike Clawson
Miller Farms/White Sands CO
Monte Vista Farms/Aggie Farms
Monty Funk
Moody Canyon
Moss Farms Operations LLC
Nedrow Farms
Neil King
Neville Farms
Noland Critchfield
North Slope LLC
Pahl Farms/US-2 Farms
Parkinson Farms
Paul Behrend
Paul Duncan
Phil Parkinson
Pocock Farms Inc
Polatis Farms
Poulson Farms
R Farms
R&R Properties LLC
Rad Orr
Rad Orr Farms

Radd Farbo
Ralph Isom
Ralph Miller
Ralph Risenmay
Randy Bauscher
Randy Hardy
Randy Hughes
Randy Huskinson
Randy Robinson
Rasmussen Farms
Ray Duffin
Ray Duffin Farms
Ray Pocock
Raybould Brothers Farms LLC
R-Farms
Rhett Summers
Richard Giesbrecht
Richard Polatis
Richard Smith Farms -
Rick & Kim Shawver
Ricks Farms
Risenmay Farms, Inc
Rising S Farms Inc
Rob & Shane Webster
Robert & Andrew Martin
Robert Giesbrecht
Robert Shillington
Robinson Family Farm
Robinson Farms
Robinson Farms
Robison Farms
Rocky Hollow/Ashton Farm
Roland Bean
Roland Blaser
Ron Ambrose
Ron Esplin
Ron Lockwood
Ron Lovell
Ronald Esplin & Sons
Roy, Tom and Paul Baker
RT Lovell Farms
Ryan Ashcraft
Schroeder Farms

Schwendiman Farms Inc
Scott & Stan Neville
Scott Poulson
Scott Poulson Farms
Searle Farms S & B
Shawn Webster
Siddoway Farms
Silver K Farms
Skidmore Farms
Smokey Gould
Son Rise/JWood Inc
Stan Schwendiman
Steve Neibar
Steve Neibaur Farms Inc
Steve Reynolds
Stolworthy Farms
Summerco Farms
SV - Antelope Hills
SV - Bean Brothers
SV - Bret Robins Farms, Inc.
SV - Crane Farms LLC
SV - Grant 4D
SV - Heward Brothers
SV - J & R Farm
SV - K & D Farms
SV - Larson Farms
SV - Matthews Farms
SV - Pickett Ranch
SV - Sun Valley Potatoes
SV -Cranney Brothers Farms
T & S Farms
Tal Singleton
Taylor & Son's/Taylor Farms
Terry, Keith & Lynn Wilcox
Thiel Bros
Thistle Ridge
Todd Brower
TR Webster & Son
Trent & Terisa Robinson
Triple K Desert - Kent Linford
T-Ville Ag
V.O. Enterprises
Val Wahlen

Van Orden Farms
Wada Farms
Wade & Todd Ward
Wahlen Farms
Wahlen Farms
Walker Farms
Ward Bros Inc.
Watt Farm LLC/ K & D Farms
Wattenbarger Farms
Wayne Robinson
Weaver Farms
Webster Mile High Farm
Websters Inc.
William Loughmiller
Willie Heward
WWWDF Inc.

# Exhibit E

**EXHIBIT E**

All past and present cooperative members of United II Potato Growers of Idaho, Inc. ("UNITED II") are:

4 ACE FARMS, LLC
5R FARMS, LLC
AC FARMS INC.
Adam Crane
ADAM CRANE FARMS, INC.
Adam Neibaur
AK PARTNERSHIP, LLC
Alan Crane
Alan Heward
Albert Wada
Allison Jenkins
ALLRED FARMS, INC.
Andy Martin
ANTELOPE HILLS FARMS, INC.
B&S FARMS, INC.
BAKER FARMS, INC.
BALEY TROTMAN FARMS
Barry Christensen
Bart Webster
BEAN BROTHERS
BEESLEY FARM, INC.
BEUTLER FARMS LLC
Bevan Jeppesen
BEVAN JEPPESEN, INC.
Bill Thiel
BITTER FARMS
BITTERSWEET BUTTE FARMS
BJ CHRISTENSEN & SONS LLC
Blair Crapo
Blair Esplin
BLASER'S SANDY SAGE FARMS, INC.
BLASER'S SUNSET FARMS, INC.
Bob Baley
BOB BALEY FARMS
Bobby Purdom

1

BOTT LAND, INC.
BREDING FARMS
Bret Robins
BRET ROBINS FARMS, INC.
Brett Jensen
BRETT JENSEN FARMS
Brian Bybee
Brian Loosli
Brook Bybee
Bruce Arnold
BRUCE ARNOLD FARM, LLC
Bruce Crapo
Bryan Larson
Bryan Wada
BUSTER FARMS, INC
C.W. Cross
CAL-WHITE FARMS
Carl Ball
Carl Taylor
CBC FARMS, INC.
CEA CORPORATION
Cheryl Esplin
Clen Atchley
Clint Gilbert
Conn Crapo
CORNELISON FARMS, INC.
Coy Crapo
Craig Larson
CRAIG LARSON FARMS, INC.
CRANE FARMS LLC
CRANNEY FARMS
CRAPO BROTHERS
CRAWFORD FARMS, INC.
CRIPPLE CREEK FARMS
CRITCHFIELD FARMS
CSC FARMS, INC.
Curtis Stoddard
D&N, INC.
Dallan Jeppesen
DALLAN JEPPESEN, INC.
Dallas Furness

Dan Nedrow
Dan Weaver
DAREK JENTZSCH
Darek Jentzsch
Daren Bitter
Dave Beesley
David Clayson
David Crapo
David Critchfield
David Ellsworth
David Nef
David Pickett
Delmar Raybould
Dennie Arnold
DENNIE ARNOLD FARMS, LLC
Dennis Fransen
DENNIS FRANSEN FARMS, INC.
Dewey Crane
Dirk Parkinson
Don Breding
Douglas Hanks
DVC FARMS, INC.
Ed Staunton
ELLSWORTH FARMS
Eric Arnold
Eugene Mathews
FRANCO FARMS
Frank Prosser
Fred Blaser
FURNESS FARMS
G & G FARMS, LLC
G DOT FARMS
Garth VanOrden
GARTH VANORDEN FARMS
Gary Hansen
Gary Skidmore
Gary Whitely
George Crapo
GIESBRECHT FARMS
GILBERT FARMS, LLC
Glade Powell

Grant Knoll
Hal Buster
HAMER FARMS, LLC
HANKS FARMS, INC.
HANSEN FARMS, J.V.
HARDY FARMS, INC.
HEWARD BROTHERS FAMILY PARTNERSHIP
HJ FARMS, INC.
HOOPES FARMS LLC
HOOPES FARMS LLC
Howard Johnson
HOWARD TAYLOR & SONS, INC.
HOWELL FARMS, INC.
HUGHES FARMS, INC.
Jack Steinman
Jackson Allred
James Baley
JAMES BALEY FARMS
James Lyman
JAMES LYMAN FARMS
James Wood
Jared Baum
Jason Howell
Jason Webster
Jed Wayment
Jeff Raybould
JEPPESEN FARMS
Jeremy Arnold
JK POTATOES LLC
John Crawford
John Cross
John Ellsworth
K & D FARMS
Keith Cornelison
Keith Jeppesen
Kent Bitter
Kent Taylor
Kevin Webster
Kim Wahlen
KIM WAHLEN FARMS
Kip Poulson

Kirt Hansen
KIRT HANSEN FARMS INC.
Kyle Jeppesen
Lance Funk
LANCE FUNK FARMS
Larry Kunz
Lon Baley
LOOSLI SEED POTATOES
Lorn Heward
Lynn Heward
Marc Thiel
Mark Andrews
Mark Johnson
Mark Schroeder
Mark Trotman
Marshall Bitter
Marshall Staunton
MARTIN FARMS
MATHEWS FARMS
MATT & MARSHALL BITTER
Matt Bitter
Melanie Likes
Michael Cranney
Mike Bott
Mike Telford
Mike Van Orden
MONTEVISTA FARMS, LLC
MOUNTAIN WEST SELECT, INC.
NEDROW FARMS LLC
Neil King
Neil King
NEWELL POTATO COOP
Noland Critchfield
NORMAN E NEF & SONS, INC.
NORTH RIDGE FARMS LLC
NORVUE FARMS
Paris Penfold
PARKINSON SEED FARM, INC.
Patrick Ambrose
Paul Baker
PENFOLD FARMS, INC.

PICKETT RANCH & SHEEP COMPANY
POLATIS FARMS
POULSON FARMS LLC
R MANNING FARMS, INC.
R&R MILLER PROPERTIES LLC
R.J. Ball
RAD ORR
Rad Orr
Ralph Miller
Randy Hardy
Randy Hughes
Randy Robinson
Ray Duffin
RAY DUFFIN FARMS
RAYBOULD BROTHERS FARMS LLC
Rex Baum
REX BAUM FARMS, INC.
Rich Blaser
Richard Crapo
Richard Gilbert
Richard Polatis
Rick Likes
RIVER RANCH ENTERPRISES, INC.
RIVERSIDE FARMS
Rob Webster
Robert Giesbrecht
Robert Manning
Robert Martin
Robert Shillington
Rodney Jentzsch
Roger Hoopes
Roger Taylor
Roland Bean
Roland Blaser
Ron Ambrose
Ron Esplin
RONALD ESPLIN & SONS
Roy Baker
Rudy Steinman
Ryan Cranney
Ryan Thiel

SCHROEDER AG, INC.
Sean Maupin
Shane Webster
Shawn Cross
Shawn Webster
Sid Staunton
SILVER CREEK SEED, LLC
SKIDMORE FARMS, INC.
SKYLINE FARMS
SON RISE, INC.
STAN CHRISTENSEN
Stan Christensen
Stan Schwendiman
STAN SCHWENDIMAN FARMS, INC.
STAUNTON FARMS, INC.
STEINMAN FARMS, A PARTNERSHIP
STODDARD FARMS, INC.
SUN VALLEY POTATOES, INC.
T.R. WEBSTER & SON, INC.
TAYLOR & SONS FARMS, INC.
TELFORD SUN VALLEY SEED
TETON RAINBOW RANCHES, INC.
THIEL BROTHERS, LLC
THISTLE RIDGE FARM
Tom Baker
Tom Howell
Tom Rudy
Travis Gilbery
TRENT & TERISA ROBINSON FAMILY FARM, LLC
Trent Robinson
Tyler Hoopes
Tyler Hoopes
V.O. ENTERPRISES
Val Schwendiman
VAL SCHWENDIMAN FARMS, INC.
VALLEY POINT FARMS, LLC
WADA FARMS, INC.
WEAVER FARMS
WEBSTER'S MILE HIGH FARM, INC.
WEBSTER'S, INC.
Wesley Beutler

William Heward
Wyatt Penfold

# Exhibit F

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: FRESH AND PROCESS | ) | |
| POTATOES ANTITRUST LITIGATION | ) | Case No. 4:10-MD-02186-BLW-CWD |
| _____ | ) | |
| THIS DOCUMENT RELATES TO: | ) | MDL No. 2186 |
| *Direct and Indirect Purchaser Plaintiff* | ) | |
| *Actions* | ) | **CONSENT ORDER** |
| | ) | |
| | ) | |

This agreement for the entry of an order by consent of the undersigned parties, upon

judicial approval ("Consent Order"), is entered into as of this 10th day of April, 2015, by Direct

Purchaser Plaintiffs and Indirect Purchaser Plaintiffs (collectively, "Plaintiffs") and by

Defendants[1] in connection with the proposed settlements of those direct and indirect purchaser

class actions pending before the United States District Court for the District of Idaho (the

"Court") for pretrial purposes under the heading *In re Fresh and Process Potatoes Antitrust*

*Litigation* (the "Actions").

**Whereas**, Plaintiffs and Defendants have entered into agreements to settle the Actions

("Settlements") that they intend to present to the Court for preliminary and final approval in

order to fully and finally resolve the Actions;

**Whereas,** the Settlements release Defendants and their past and present officers,

directors, employees, agents, insurers, attorneys, shareholders, joint venturers, partners and

_____

[1] Except as otherwise provided herein, capitalized terms used in this Consent Order shall have
the meaning ascribed to them in the Settlements.

1

representatives; the past and present cooperative members of United Potato Growers of America, Inc. ("UPGA") and the potato-grower members of UPGA's cooperative members, and the past and present potato-grower members of United Potato Growers of Idaho, Inc. and United II Potato Growers of Idaho, Inc.; and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing, from current and future liability for claims demands, actions, suits and causes of action arising in whole or part from the facts and/or actions described in the Complaints, as specified by the Settlements;

**Whereas**, a material term of the Settlements and the release provided therein is entry of this Consent Order;

**Whereas**, Plaintiffs recognize and acknowledge that 7 U.S.C. § 291 and similar state and federal statutes permit, subject to certain conditions, persons engaged in the production of agricultural products to act together in associations and to engage in certain conduct, as permitted by such statutes, including collectively processing, preparing for market, handling and marketing the products of such producers, and that such associations may have marketing agencies in common to the extent permitted by law;

By entering into this Consent Order, Defendants do not admit that they, or any of them, have, in the past or at present violated any federal or state antitrust statute or other law or have engaged in any of the conduct that is enjoined under this Consent Order, but in fact deny that all or some of them have done so, and Plaintiffs do not admit that Defendants' conduct was lawful under federal and state antitrust statute or other law. However, Defendants and Plaintiffs agree to the limited provisions of this Consent Order in order to resolve this litigation.

2

**DEFINITIONS**

1.      For purposes of this Consent Order only, "Co-op Defendant" means United Potato Growers of Idaho, Inc.; United II Potato Growers of Idaho, Inc.; or United Potato Growers of America ("UPGA"), and any constituent organization that is a member or affiliate of United Potato Growers of America.  Collectively, they are referred to as "Co-op Defendants."

2.      For purposes of this Consent Order only, "Successor Entity" means any membership association of potato growers relating to the production, marketing, handling or preparing for market of potatoes and in which a majority of members, or a majority of the members of the Board of Directors (or other governing body), are subject to this Consent Order. For purposes of clarification, this term does not include existing cooperatives that are not affiliated with the Co-op Defendants.

3.      For purposes of this Consent Order only, "Fresh Potatoes" means potatoes planted with the intention that they will be sold into the fresh market or for fresh consumption in the United States.

**DEFENDANTS AND PLAINTIFFS AGREE AS FOLLOWS:**

4.      Releasees that are producers of potatoes, Cooperative Defendants, and each of them, are hereby prohibited, restrained, and enjoined from entering into any agreement, either directly or indirectly through any other entity, with or among producers of potatoes, whether oral or written, tacit or express, setting the number of acres that any producer of potatoes will plant to Fresh Potatoes or otherwise setting the volume or amount of potatoes that any producer of Fresh Potatoes will plant or grow.

3

5.      UPGA shall register to do business as a cooperative in the States of Arizona, California, Florida, Iowa, Kansas, Massachusetts, Michigan, Minnesota, Nevada, New York, North Carolina, Tennessee, Vermont, and Wisconsin.

6.      Co-op Defendants and any Successor Entity shall adopt rules requiring any applicant for membership, any grower member, or any associate or other type of member (whether voting or non-voting), and any agent thereof, to agree to the terms of this Consent Order so long as it remains in effect and that person[2] is a member of a Co-op Defendant or any Successor Entity.

7.      The Co-op Defendants and any Successor Entity shall work with qualified antitrust compliance counsel of their choosing to review their existing and any proposed polices, rules, practices, and procedures to ensure their compliance with applicable law and the provisions of this Consent Order.

8.      Per this Consent Order, Releasees shall adhere to all applicable state and federal antitrust laws including 15 U.S.C. §§ 1–7; 7 U.S.C. §§ 291-292; 15 U.S.C. § 17; 12 U.S.C. §1141; and 7 U.S.C §455 with respect to all of their potatoes grown and/or sold in the United States.

9.      Except as otherwise specifically provided herein, and subject to the provisions of paragraphs 8, nothing in this Consent Order is intended to prohibit any Co-op Defendant, or any Successor Entity, or any member thereof through any Co-op Defendant or Successor Entity, from: (a) exchanging information regarding past production; (b) with respect to potato crops that

---

[2] For purposes of this Consent Order, "person" refers to legal persons, and includes natural and juridical persons, including but not limited to, corporations, associations (whether incorporated or unincorporated), partnerships, joint ventures.

have already been planted, exchanging information about actual or anticipated yields,

production, varieties, estimated overall acreages or weather; (c) collecting and disseminating

statistical, economic or other similar market information on past crops; (d) sharing publicly

available information; (e) publishing aggregate supply and demand forecasts, including

advisories regarding the extent to which supply will fail to meet or will exceed demand at

particular production levels; (f) to the extent permitted by 7 U.S.C. § 291 and state law, the

collective marketing, pricing, preparing for market, processing, or handling, potatoes by a

registered cooperative; and (g) in the case of a producer member of a Co-op Defendant or any

Successor Entity, operating a packing shed or processing facility, directly or through affiliated

entities, so long as at least 50% of the potatoes packed or processed by the producer's shed or

facility are potatoes grown by that producer or affiliates.  Provided, however, that this paragraph

does not confer on Releasees safe harbor from liability arising from conduct that, in conjunction

or connection with the conduct described in parts (a) through (g) of this paragraph, violates state

or federal antitrust laws.

   10. The provisions of this Consent Order shall come into effect and be binding on

Releasees upon execution of the Settlement and shall remain in effect thereafter for a period of

seven years unless the Settlement is not preliminarily or finally approved by the Court or the

Court's order finally approving the Settlement or its entry of final judgment is overturned on

appeal, in which event the Consent Order shall no longer continue in effect or be binding on

Defendants.  Prior to the expiration of the Consent Order, any Defendant or other Releasee

bound by this Consent Order may petition the Court to, subject to notice and hearing, modify or

rescind the provisions of this Consent Order based on any intervening legislative change

materially affecting the provisions of this Consent Order or a decision of the United States

5

Supreme Court or of a United States Court of Appeals interpreting any statutes pertaining to the lawfulness of the conduct described herein.  At any other time following entry of an order by the Court finally approving the Settlement and the time for appeal having elapsed, this Consent Order may be modified or rescinded by written agreement of all parties, subject to notice, hearing, and approval by the Court.  In determining whether to modify or rescind this Consent Order, or portions thereof, the Court shall consider whether the proposed modification is consistent with the terms of applicable law, including any decision of the United States Supreme Court or of a United States Court of Appeals and with the public interest.  Any decision granting or refusing to grant such a modification shall be deemed to be a determination granting or refusing to grant an injunction within the meaning of 28 U.S.C. § 1292(a).

        11.     This Consent Order is binding upon Defendants and other Releasees as a condition of being released in this Action as provided for in the Settlement and is contingent upon Final Approval.


**IT IS SO ORDERED.**

Dated: _____          _____
                                       Hon. B. Lynn Winmill
                                       UNITED STATES DISTRICT COURT JUDGE


**STIPULATED AND AGREED TO BY:**

Dated: _4/10/2015_____          _____
                                        James J. Pizzirusso, Esq.
                                        HAUSFELD LLP
                                        1700 K Street, N.W, Suite 650
                                        Washington, DC 20006
                                        Tel: (202) 540-7200
                                        Fax: (202) 540-7201

6

jpizzirusso@hausfeldllp.com

*Chair of the Plaintiffs' Executive Committee*
*on behalf of all Counsel for Direct*
*Purchaser Plaintiffs and the Proposed DPP*
*Class*

Dated: *April 10, 2015*

Paul F. Novak
MILBERG LLP
One Kennedy Square
777 Woodward Avenue, Suite 890
Detroit, MI 48226
Tel: (313) 309-1760
Fax: (313) 447-2038

*On behalf of all Counsel for Indirect*
*Purchaser Plaintiffs and the Proposed IPP*
*Class*

Dated: _____

_____
Steven B. Andersen
Andersen Banducci PLLC
101 S. Capital Blvd., Suite 1600
Boise, ID 83702
Tel: (208) 342-4411
Fax: (208) 342-4455
sba@andersenbanducci.com

*On behalf of Albert T. Wada; Wada Farms,*
*Inc.; Wada Farms Potatoes, Inc.; Wada-Van*
*Orden Potatoes, Inc.; Wada Farms*
*Marketing Group, LLC; Wada Family LLC;*
*Pro Fresh LLC; Cedar Farms, Inc.; Michael*
*Cranney d/b/a Cranney Farms; Cornelison*
*Farms, Inc.; Snake River Plains Potatoes,*
*Inc.; Lance Funk d/b/a Lance Funk Farms;*
*Raybould Brothers Farms LLC; Pleasant*
*Valley Potato, Inc.; KCW Farms, Inc.; Kim*
*Wahlen d/b/a Kim Wahlen Farms; United*
*Potato Growers of Idaho, Inc.; United*
*Potato Growers of America, Inc.; and*
*United II Potato Growers of Idaho, Inc.*

7

jpizzirusso@hausfeldllp.com

*Chair of the Plaintiffs' Executive Committee
on behalf of all Counsel for Direct
Purchaser Plaintiffs and the Proposed DPP
Class*

Dated: _____

_____
Paul F. Novak
MILBERG LLP
One Kennedy Square
777 Woodward Avenue, Suite 890
Detroit, MI 48226
Tel: (313) 309-1760
Fax: (313) 447-2038

*On behalf of all Counsel for Indirect
Purchaser Plaintiffs and the Proposed IPP
Class*

Dated: ___4 - 10 - 15_____

_____
Steven B. Andersen
Andersen Banducci PLLC
101 S. Capital Blvd., Suite 1600
Boise, ID 83702
Tel: (208) 342-4411
Fax: (208) 342-4455
sba@andersenbanducci.com

*On behalf of  Albert T. Wada; Wada Farms,
Inc.; Wada Farms Potatoes, Inc.; Wada-Van
Orden Potatoes, Inc.; Wada Farms
Marketing Group, LLC; Wada Family LLC;
Pro Fresh LLC; Cedar Farms, Inc.; Michael
Cranney d/b/a Cranney Farms; Cornelison
Farms, Inc.; Snake River Plains Potatoes,
Inc.; Lance Funk d/b/a Lance Funk Farms;
Raybould Brothers Farms LLC; Pleasant
Valley Potato, Inc.; KCW Farms, Inc.; Kim
Wahlen d/b/a Kim Wahlen Farms; United
Potato Growers of Idaho, Inc.; United
Potato Growers of America, Inc.; and
United II Potato Growers of Idaho, Inc.*

7

Dated: 4/10/15

Robert A. Rosenfeld STEPHEN V. BOMSE
Orrick Herrington & Sutcliffe
405 Howard Street
San Francisco, CA 94105-2669
Tel: (415) 773-4190
Fax: (415) 773-5759
rrosenfeld@orrick.com

*On behalf of Blaine Larsen, Blaine Larsen Farms, Inc.; Driscoll Potatoes, Inc.; and Rigby Produce, Inc.*

Dated: _____

James A. Wilson
VORYS SATER SEYMOUR
& PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-5606
Fax: (614) 719-5039
jawilson@vorys.com

*On behalf of Idahoan Foods LLC*

Dated: _____

Christopher E. Ondeck
PROSKAUER ROSE LLP
1001 Pennsylvania Ave, N.W.
Suite 600 South
Washington, DC 20004-2533
Tel: (202) 416-5865
Fax: (202) 416-6899
condeck@proskauer.com

*On behalf of Potandon Produce L.L.C.*

8

Dated: _____          _____
                                        Robert A. Rosenfeld
                                        Orrick Herrington & Sutcliffe
                                        405 Howard Street
                                        San Francisco, CA 94105-2669
                                        Tel: (415) 773-4190
                                        Fax: (415) 773-5759
                                        rrosenfeld@orrick.com

                                        *On behalf of Blaine Larsen Farms, Inc.;*
                                        *Driscoll Potatoes, Inc.; and Rigby Produce,*
                                        *Inc.*

Dated: *Apr. 10, 2015*                  _____
                                        James A. Wilson
                                        VORYS SATER SEYMOUR
                                        & PEASE LLP
                                        52 East Gay Street
                                        Columbus, OH  43215
                                        Tel: (614) 464-5606
                                        Fax: (614) 719-5039
                                        jawilson@vorys.com

                                        *On behalf of Idahoan Foods LLC*

Dated: _____          _____
                                        Christopher E. Ondeck
                                        PROSKAUER ROSE LLP
                                        1001 Pennsylvania Ave, N.W.
                                        Suite 600 South
                                        Washington, DC 20004-2533
                                        Tel: (202) 416-5865
                                        Fax: (202) 416-6899
                                        condeck@proskauer.com

                                        *On behalf of Potandon Produce L.L.C.*

8

Dated: _____

    _____
Robert A. Rosenfeld
Orrick Herrington & Sutcliffe
405 Howard Street
San Francisco, CA 94105-2669
Tel: (415) 773-4190
Fax: (415) 773-5759
rrosenfeld@orrick.com

*On behalf of Blaine Larsen Farms, Inc.;
Driscoll Potatoes, Inc.; and Rigby Produce,
Inc.*

Dated: _____

    _____
James A. Wilson
VORYS SATER SEYMOUR
& PEASE LLP
52 East Gay Street
Columbus, OH  43215
Tel: (614) 464-5606
Fax: (614) 719-5039
jawilson@vorys.com

*On behalf of Idahoan Foods LLC*

Dated: ____April 10, 2015_____

    _____
Christopher E. Ondeck
PROSKAUER ROSE LLP
1001 Pennsylvania Ave, N.W.
Suite 600 South
Washington, DC 20004-2533
Tel: (202) 416-5865
Fax: (202) 416-6899
condeck@proskauer.com

*On behalf of Potandon Produce L.L.C.*

8

Dated: _April 10, 2015_

_Brian M. McGovern_/RAM
Brian M. McGovern
MCCARTHY, LEONARD &
KAEMMERER, L.C.
825 Maryville Centre Drive, Ste. 300
Town and Country, MO  63017-5946
Tel: (314) 392-5200
Fax: (314) 392-5221
bmcgovern@mlklaw.com

*On behalf of R.D. Offutt Co. and Ronald D. Offutt, Jr.*

9