IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO
EASTERN DIVISION

| | |
|---|---|
| IN RE: FRESH AND PROCESS POTATOES ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Direct Purchaser Plaintiffs Action* | Case No. 4:10-MD-2186-BLW |

**DECLARATION OF JAMES J. PIZZIRUSSO
IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN
SUPPORT OF MOTION FOR:**

**1) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
2) CERTIFICATION OF A SETTLEMENT CLASS & APPOINTMENT OF
SETTLEMENT CLASS COUNSEL & EXECUTIVE COMMITTEE;
3) APPROVAL OF THE NOTICE PLAN AND FORM OF NOTICE AND
ORDER DIRECTING NOTICE TO THE SETTLEMENT CLASS.**

1.  I am a partner with the law firm of Hausfeld LLP, one of the counsel for Direct Purchaser Plaintiffs. Hausfeld LLP is Interim Chair of the Plaintiffs' Executive Committee in this case, and I have served in that capacity for my firm in litigating this case. I make this Declaration in Support of Direct Purchaser Plaintiffs' Motion and Memorandum in Support for Preliminary Approval of Class Action Settlement; Certification of a Settlement Class and Appointment of Class Counsel; and Approval of the Notice Plan and Form of Notice and Order Directing Notice to the Settlement Class.

2.  Direct Purchaser Plaintiffs ("DPPs") filed their initial complaint in June 2010 and an Amended Complaint in December 2010. After initial motions practice, discovery began in in summer of 2012, and was extensive, spanning approximately two years. Document productions

1

were massive: Defendants produced more than 1.3 million documents totaling more than 3.6 million pages; third parties produced more than 33,000 additional documents.

3. To streamline our review, DPPs used advanced computer analytics (predictive coding) to review the document production, ranking each document by likely relevancy to the issues in the case. Attorneys then conducted a second-tier review of the documents ranked highest by the predictive coding methodology, resulting in more than one-quarter of a million fully coded documents. DPPs also analyzed complex transactional data productions from Defendants and third parties.

4. Along with the Indirect Purchasers (who coordinated discovery with DPPs), DPPs took forty five depositions of Defendants and third parties, including numerous depositions under Rule 30(b)(6) that encompassed multiple days and often involved multiple designees—for example, for the UPGI 30(b)(6) deposition, six witnesses were designated to testify on behalf of UPGI. All but six of these numerous depositions took place following the unsuccessful global settlement talks in March 2014.

5. Defendants and third party Randon Wilson produced dozens of privilege logs identifying thousands of documents withheld from discovery on grounds of attorney-client privilege and attorney work product. After months of negotiations, DPPs filed a motion to compel production of many of the documents on the ground that Defendants waived the attorney-client privilege by asserting an affirmative defense based on a "good faith" reliance on the advice of counsel. The Motion was largely granted.

6. DPPs filed a motion for class certification on August 29, 2014 along with a supporting declaration from Dr. Michael Williams, our economic expert.

7. Both prior to the filing of our Motion and afterwards, DPPs engaged in extensive arm's-length negotiations with individual Defendants and groups of Defendants to attempt to resolve this matter over the course of approximately 18 months. I participated directly in all of those efforts on behalf of the DPPs.

8. I first began serious discussions regarding the possibility of settlement with the Defendants represented by the Orrick firm in mid-2012. These Defendants included Rigby Produce, Inc., Blaine Larsen Farms, Inc., and Driscoll Potatoes, Inc. ("Orrick Defendants"). These initial discussions proved unsuccessful as the parties' positions were too far apart, and the litigation against those and other Defendants continued.

9. In August, 2013, Direct Purchasers resumed discussions with the Orrick firm via email and telephone, which led to an in-person meeting in December 2013. Those discussions did not lead to resolution of the case against those Defendants, but the parties maintained communications.

10. Following that meeting, in late January 2014, all parties in this litigation agreed to enter into mediation with a skilled and experienced mediator to more formally pursue global settlement discussions.

11. In February 2014, the parties prepared extensive mediation briefs for submission to the mediator, with plaintiffs' joint mediation brief comprising nearly 30 pages, with 200 footnoted citations to hundreds of documents supporting their view of the case.

12. In early March 2014, all plaintiffs in the case and all Defendants participated in the joint mediation before the Honorable Daniel Weinstein (Ret.) of JAMS, a respected former jurist. The mediation lasted over two days and concluded with a mediator's proposal for

settlement, with deadlines for acceptance. Several weeks later, one or more parties rejected the proposal, but the parties made considerable progress in narrowing a potential settlement range.

13. During preparation for and participation in the mediation, the litigation proceeded without entry of a stay. And following the unsuccessful mediation, the DPPs continued to aggressively litigate this case, further pursuing production of documents from certain Defendants and third parties, taking numerous depositions, serving and responding to additional written discovery, and preparing our class certification papers.

14. Following the DPPs' motion for class certification in late August 2014, we resumed settlement discussions with Defendants. To further facilitate those discussions, on October 21, 2014, we informed the Court of the settlement discussions, and the Direct and Indirect Purchaser Plaintiffs and Defendants stipulated to an extension of the deadline for Defendants to file their opposition to the Class Certification Motion from December 19, 2014 to February 2, 2015 and to a comparable extension for Plaintiffs' reply papers; to suspend negotiations on outstanding discovery disputes with Defendants; and to moot Defendants' motion for two-day depositions of Direct and Indirect Purchasers' experts.

15. After multiple rounds of telephone calls and email communications, in late November 2014, Class Counsel and the Defendants reached an agreement in principle to resolve this matter, which included an agreement on the settlement amount to be payable by all Defendants, along with other general terms.

16. For specifics associated with some of these terms, such as injunctive relief, terms related to the Motion by the Jones Waldo firm for fees and costs related to Plaintiffs' subpoena served on Randon Wilson of that firm, and rescission terms, we agreed that further negotiations would be required.

17. The settlement amount and broad outlines of other terms of the agreement in principle were memorialized in an email among counsel for the parties, dated November 25, 2014. We also agreed to seek a 60-day stay of deadlines and for motions filed in the case, and, following a telephonic conference with the Court on December 8, 2014, the Court entered that stay on December 22, 2014, staying deadlines and motions through February 6, 2015.

18. We were unable to finalize the terms of the settlement by February 6, 2015 and requested an additional 30 day stay of deadlines and motions, which the Court granted during a telephonic conference on February 5, 2015.

19. In early March 2015, the parties' efforts to memorialize the settlement agreement in principle broke down when the parties were unable to reach a global agreement with all Defendants on the terms of the injunctive relief; Plaintiffs did, however, agree to settle with the Orrick Defendants. Consequently, during a telephonic status conference with the Court on March 9, 2015, I informed the Court an agreement with only the Orrick Defendants had been reached and we requested that the litigation proceed against the remaining Defendants, including the timely filing of the remaining Defendants' opposition to the Direct and Indirect Purchasers' class certification motions. That day, I provided our experts' availability for depositions to Defendants.

20. The remaining Defendants requested a further extension of the deadline for filing their opposition to Plaintiffs' Motion for Class Certification, which we opposed.

21. Settlement discussions with remaining Defendants resumed, and on March 18, 2015, we reached an agreement with the remaining Defendants on the injunctive relief portion of the settlement agreement in principle.

22. We informed the Court during a telephonic status conference that day that a global agreement had been reached with all Defendants, including an agreement on injunctive relief. That agreement included both cash consideration of $19,500,000 and a Consent Order enjoining potato producers released by the Settlement Agreement and UPGI, UPGA, and United II (and UPGA's constituent members) from agreeing to set the number of acres of fresh potatoes they will plant or otherwise agree to the volume or amount of potatoes to be grown, and to comply with state and federal antitrust laws.

23. On May 6, 2015, Defendants wired the Settlement Amount of 19,500,000 to the Escrow Account established by the parties pursuant to the Settlement Agreement.

24. Consistent with the agreement in principle, prior to execution of the Settlement Agreement, Defendants provided to me financial information sufficient to show their financial condition. I personally reviewed all of those documents. Defendants' financial condition was a significant factor leading me to recommend and our clients to accept the settlement amount.

25. After extensive factual investigation of both the merits of the case and Defendants' financial condition and legal analysis, it is my opinion that the Settlement Amount of $19,500,000 combined with the significant value of the Consent Order is fair, reasonable, and adequate to the Class.

26. I believe that the proposed Settlement Agreement is in the best interest of the Class and should be preliminarily approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 1, 2015                    */s/ James J. Pizzirusso*
                                        James J. Pizzirusso