IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE FRESH AND PROCESS POTATOES | ) | |
| ANTITRUST LITIGATION | ) | Civil Case No. 4:10-md-02186 BLW |
| _____ | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| *Direct Purchaser Action.* | ) | |
| | ) | |
| _____ | ) | |

**DECLARATION OF MICHAEL A.WILLIAMS, PH.D.
IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS'
MOTION FOR PRELIMINARYAPPROVAL OF SETTLEMENT AGREEMENT**

TABLE OF CONTENTS

I.    INTRODUCTION .............................................................................................................. 1

   A.    *Qualifications* ........................................................................................................ 1

   B.    *Assignment* ............................................................................................................. 2

II.   QUANTIFYING THE DOLLAR VALUE OF THE CONSENT ORDER ............................................. 2

I.      INTRODUCTION

   A.      *Qualifications*

   1.      My name is Michael A. Williams. I am a Director at Competition Economics, LLC. Previously, I was an economist with the U.S. Department of Justice, Antitrust Division. I hold a B.A. degree in economics from the University of California, Santa Barbara, and I received my M.A. and Ph.D. degrees in economics from the University of Chicago. My resume, which contains more information on my background and qualifications, is contained in Appendix I.

   2.      I specialize in analyses involving antitrust, industrial organization, and regulation. I have published articles in a number of academic journals, including the *American Economic Review*, *Proceedings of the National Academy of Sciences*, *Journal of Economics and Management Strategy*, *International Journal of Industrial Organization*, *Journal of Industrial Economics*, *Economics Letters*, *Journal of Public Economic Theory*, *Behavioral Science*, *Review of Industrial Organization*, *Antitrust Bulletin*, *Texas Law Review*, and the *Yale Journal on Regulation*.

   3.      I have provided testimony before the United States District Court, Middle District of Alabama; the United States District Court, Northern District of California; the United States District Court, Northern District of Georgia; the United States District Court, District of Kansas; the United States District Court, Southern District of New York; the United States District Court, Eastern District of Pennsylvania; and the United States District Court, Northern District of Texas on subjects including common impact and antitrust damages. I also have testified before the United States Court of Federal Claims; the State of Connecticut, Superior Court; the State of Nevada, Gaming Commission and State Gaming Control Board; and public utilities commissions in Arkansas, Hawaii, Michigan, Minnesota, Missouri, Nebraska, New Mexico, Texas, and Washington. I testified on liability and class certification issues in *Comcast v. Behrend*. I testified

on liability, class certification, and damages issues in *Kirk Dahl et al. v. Bain Capital Partners LLC, et al*. I have been retained as an economic consultant by the U.S. Department of Justice, Antitrust Division; the U.S. Federal Trade Commission; and the Canadian Competition Bureau.

4.       Competition Economics LLC is being compensated at my standard hourly rate of $550, and neither my compensation nor the compensation of Competition Economics LLC is contingent on the outcome of this proceeding. Previously, I prepared an expert report in this matter dated October 21, 2014.[1]

B.       *Assignment*

5.       I have been asked by counsel for the Direct Purchase Plaintiffs ("Plaintiffs") to quantify the dollar value of the Consent Order.[2] I understand that the Consent Order bars releasees of the Settlement that grow Potatoes, as well as certain potato cooperatives, from entering into pre-production agreements to restrain the amount or volume of potatoes to be planted and grown. I understand that the Consent Order further provides that the Defendants must abide by state and federal antitrust laws.

II.      QUANTIFYING THE DOLLAR VALUE OF THE CONSENT ORDER

6.       This section describes the calculations and results for estimating the annual and discounted future consumer savings attributable to the Consent Order. In making these calculations, I assume that the effect of the Consent Order is to reduce the price of fresh potatoes from the actual price to the but-for price calculated in my prior report.[3]

---

[1] Corrected Declaration of Michael A. Williams, Ph.D., In Re: Fresh and Process Potatoes Antitrust Litigation (October 21, 2014) (hereinafter "Williams Declaration") (ECF No. 723).

[2] Consent Order, *In Re: Fresh and Process Potatoes Antitrust Litigation* (executed April 10, 2015) (Ex. F to Settlement Agreement).

[3] Williams Declaration, Section V.

7.      According to U.S. Department of Agriculture ("USDA"), the total dollar sales of potatoes in the U.S. in 2013 (the most recent year for which data are available) was $3.93 billion (see Table 1). In 2013, fresh potatoes accounted for 25.8% of the quantity of all potatoes sold in the U.S. Thus, total dollar sales of fresh potatoes in the U.S. in 2013 equals approximately $1.01 billion.[4] In my expert report, I estimated that the average nationwide overcharge for fresh potatoes attributable to the alleged collusion equals 30.0% at shipping point level and 24.4% at the wholesale level.[5] As shown in Table 1, the resulting estimated annual consumer savings equal $304 million at the shipping point level and $248 million dollars at the wholesale level for fresh potato buyers in 2013.[6]

8.      Assuming the same dollar sales level for seven years after 2013,[7] i.e., the length of time covered by the Consent Order, I use the average 7-year U.S. treasury yield curve rates (as of 2013) as the discount rate and apply the seven-year annuity formula to obtain the estimates of total discounted future consumer savings resulting from the Consent Order, if entered by the Court, which equal approximately $1.99 billion at the shipping point level and $1.62 billion at the wholesale level (see Table 1).

---

[4] All numbers are obtained from USDA, National Agricultural Statistics Service (September 2014), "Potatoes 2013 Summary," available at http://usda.mannlib.cornell.edu/usda/current/Pota/Pota-09-18-2014.pdf (accessed May 15, 2015). See detailed calculations in Table 1. Note that using quantity share of fresh potatoes as an estimate of dollar value share of fresh potatoes is conservative because average prices of fresh potatoes are higher than average prices of all potatoes.

[5] Williams Declaration, Section V.

[6] The estimated annual dollar value of consumer savings at the wholesale level is conservative. Wholesale prices and sales are higher than shipping point prices and sales (see USDA, "Potatoes 2013 Summary," p. 5). Therefore, using shipping point level dollar sales in the calculation of wholesale level consumer savings, as done in Table 1, yields conservative estimates.

[7] As shown in Figure 1, fresh potato sales have an increasing trend. Thus, it is conservative to assume that dollar sales remain at 2013 level for all subsequent years.

TABLE 1
CALCULATION OF DISCOUNTED FUTURE CONSUMER SAVINGS

| Item Number | Variable | Shipping Point Level | Wholesale Level |
|---|---|---|---|
| (1) | Surcharge | 30.0% | 24.4% |
| (2) | Total Sales of All Potatoes (billion dollars) | 3.93 | 3.93 |
| (3) | Fresh Quantity sold (1,000 cwt) | 104,326 | 104,326 |
| (4) | Total Quantity sold (1,000 cwt) | 404,118 | 404,118 |
| (5) | Fresh Quantity Percentage = (3) / (4) | 25.8% | 25.8% |
| (6) | Total Sales of Fresh Potatoes (billion dollars) = (2) × (5) | 1.01 | 1.01 |
| (7) | Annual Consumer Savings (billion dollars) = (6) × (1) | 0.30 | 0.25 |
| (8) | 2013 Average 7 Year Treasury Yield Curve Rate | 1.7% | 1.7% |
| (9) | Discounted Value of Total Consumer Savings (billion dollars)[1] | 1.99 | 1.62 |

[1] Calculated by applying the annuity formula, which equals $\dfrac{(annual\ consumer\ savings)(1-\frac{1}{(1+1.7\%)^7})}{1.7\%}$.

FIGURE 1
U.S. FRESH POTATO SALES
(MILLION DOLLARS)



I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 29th day of May 2015, in Emeryville, California.


_____
Michael A. Williams, Ph.D.

6

APPENDIX I

COMPETITION ECONOMICS LLC
2000 Powell Street
Suite 510
Emeryville, CA 94608
(510) 655-7504
(925) 200-5515 Cell

### MICHAEL A. WILLIAMS

I am a Director at Competition Economics, LLC. I specialize in analyses involving antitrust, industrial organization, and regulation. I have published articles in a number of academic journals, including the *American Economic Review, Proceedings of the National Academy of Sciences, Journal of Economics and Management Strategy, Journal of Industrial Economics, International Journal of Industrial Organization, Economics Letters, Journal of Public Economic Theory, Behavioral Science, Review of Industrial Organization, Antitrust Bulletin, Texas Law Review,* and *Yale Journal on Regulation.*

I have provided written and/or oral testimony before:

- United States District Court, Middle District of Alabama

- United States District Court, Central and Northern Districts of California

- United States District Court, Northern District of Georgia

- United States District Court, District of Kansas

- United States District Court, District of Massachusetts

- United States District Court, District of New Jersey

- United States District Court, Southern District of New York

- United States District Court, Eastern District of Pennsylvania

- United States District Court, Eastern District of Tennessee

- United States District Court, Northern District of Texas

- United States Court of Federal Claims

- State of Connecticut, Superior Court

- State of New Mexico, Second Judicial District

- State of Nevada, Gaming Commission and State Gaming Control Board

- Public utilities commissions: Arkansas, Hawaii, Michigan, Minnesota, Missouri, Nebraska, New Mexico, Texas, and Washington

I have been retained as an economic consultant by the U.S. Department of Justice, Antitrust Division, the U.S. Federal Trade Commission, and the Canadian Competition Bureau.

Previously, I was an economist with the U.S. Department of Justice, Antitrust Division. I hold a B.A. degree in economics from the University of California, Santa Barbara, and I receive my M.A. and Ph.D. degrees in economics from the University of Chicago.

## SELECTED CASEWORK (PAST FOUR YEARS)

UNITED STATES DISTRICT COURT, DISTRICT OF IDAHO
In Re Fresh and Process Potatoes Antitrust Litigation
     Expert report regarding antitrust claims (filed under seal), 2013-2015.

UNITED STATES DISTRICT COURT, DISTRICT OF MASSACHUSETTS
Kirk Dahl, et al., v. Bain Capital Partners, LLC, et al.
     Expert reports and deposition regarding antitrust claims (filed under seal), 2012-2014.

UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF PENNSYLVANIA
Caroline Behrend, et al. v. Comcast Corporation, Civil Action No. 03-6604
     Expert reports, deposition, and trial testimony on class certification and antitrust claims, 2009-2014.

STATE OF NEW MEXICO, SECOND JUDICIAL DISTRICT
Guidance Endodontics, LLC and Dr. Charles Goodis v. Modrall, Sperling, Harris & Sisk, P.A., Olshan, Grundman, Frome, Rosenzweig & Wolosky, LLP
     Expert report and deposition regarding damages claims, 2012-2013.

UNITED STATES DISTRICT COURT, DISTRICT OF NEW JERSEY
TransWeb, LLC v. 3M Innovative Properties Company and 3M Company
     Expert report and deposition regarding antitrust claims, 2012.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
In Re: Toyota Motor Corp. Hybrid Brake Marketing, Sales Practices, and Products Liability Litigation
     Expert reports and depositions regarding class certification and damages, 2012.

UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF TENNESSEE
ICare-EMS, Inc. v. Rural/Metro Corp.
     Expert report and depositions regarding antitrust claims, 2012.

FEDERAL COMMUNICATIONS COMMISSION
Applications of DBSD North America, Inc., TerreStar Networks Inc., and DISH Network and Gamma Acquisition LLC
     Economic analysis of request to acquire control of licenses and authorizations, 2011.

ARIZONA TAX COURT
Cable One, Inc. v. Arizona Department of Revenue
> Economic analysis of decision by the Arizona Department of Revenue to centrally assess Cable One as a telecommunications company for the purposes of property taxes, 2010-2011.

FEDERAL COMMUNICATIONS COMMISSION
Application of General Electric Company and Comcast Corporation
> Economic analysis of request to transfer control of licenses for NBC, 2010-2011.

IOWA DEPARTMENT OF INSPECTIONS AND APPEALS
Cable One, Inc. v. Iowa Department of Revenue
> Economic analysis of decision by the Iowa Department of Revenue to centrally assess Cable One as a telecommunications company for the purposes of property taxes, 2010-2011.

## PUBLICATIONS

"Leveling the Playing Field? The Role of Public Campaign Funding in Elections," *American Law and Economics Review* (forthcoming) (with Tilman Klumpp and Hugo M. Mialon).

"Global Evidence on the Distribution of Firm Growth Rates," *Physica A* (forthcoming) (with Brijesh P. Pinto and David Park).

"The Deterrent Effect of Cable System Clustering on Overbuilders: An Economic Analysis of *Behrend v. Comcast*," *Economics Bulletin* (2015), vol. 35, pp. 519-527 (with Philip J. Reny).

"Auctions and Bid Rigging," in *Oxford Handbook on International Antitrust Economics* (2015), vol. 2, eds. Roger D. Blair and D. Daniel Sokol, Oxford University Press, Chapter 20, pp. 498-522 (with Ken Hendricks and R. Preston McAfee).

"Evaluating Big Deal Journal Bundles," *Proceedings of the National Academy of Sciences* (2014), vol. 111, no. 26, pp. 9425-9430 (with Theodore C. Bergstrom, Paul N. Courant, and R. Preston McAfee).

Book Review, *Cartels, Competition and Public Procurement. Law and Economics Approaches to Bid Rigging*, by Stefan E. Weishaar, *Journal of Economic Literature* (2014), vol. 52, pp. 548-549 (with Brijesh P. Pinto).

"Oracle's Acquisition of PeopleSoft: *U.S. v. Oracle*," in *The Antitrust Revolution: Economics, Competition, and Policy* (2014), eds. John E. Kowka and Lawrence J. White, Oxford University Press, 6th ed. (with R. Preston McAfee and David S. Sibley).

"Predatory Hiring as Exclusionary Conduct: A New Perspective," *Pepperdine Journal of Business, Entrepreneurship, and the Law* (2013), vol. 7, pp. 1-25 (with Richard L. Braun).

"Tax Incidence Under Imperfect Competition: Comment," *International Journal of Industrial Organization* (2012), vol. 30, pp. 399-402 (with Philip J. Reny and Simon J. Wilkie).

"China's Anti-Monopoly Law: What is the Welfare Standard?," *Review of Industrial Organization* (2012), vol. 41, pp. 31-52 (with Pingping Shan, Guofu Tan, and Simon J. Wilkie).

"Estimating Monopoly Power with Economic Profits," *UC Davis Business Law Journal* (2010), vol. 10, pp. 125-150 (with Kevin Kreitzman, Melanie Stallings Williams, and William M. Havens).

Book Review, *Truth or Economics: On the Definition, Prediction, and Relevance of Economic Efficiency*, by Richard S. Markovits, *Journal of Economic Literature* (2009), vol. 47, pp. 1133-1135.

"Interpreting Concentration Indices in the Secondary Market for Natural Gas Transportation: The Implication of Pipeline Residual Rights," *Energy Economics* (2008), vol. 30, pp. 807-817 (with Michael J. Doane, R. Preston McAfee, and Ashish Nayyar).

"Evaluating the Likely Competitive Effects of Horizontal and Vertical Mergers: A New Approach," *Antitrust Report* (2007) Issue 2, pp. 33-40 (with Ken Hendricks and R. Preston McAfee).

"Report on Petroleum Products Markets in the Northeast," prepared for the Attorneys General of Maine, Massachusetts, New Hampshire, New York, and Vermont (2007) (with Justine S. Hastings and Michael L. Mitton).

"Assigning Market Shares in Technology Markets: Why 1/N is Rarely the Right Answer," *ABA Economics Committee Newsletter* (2006) vol. 6, pp. 11-16 (with Ashish Nayyar).

"Evaluating and Enhancing Competition in the Interstate Natural Gas Transportation Industry," *Natural Resources Journal* (2004) vol. 44, pp. 761-808 (with Michael J. Doane and R. Preston McAfee).

"Pricing Access to a Monopoly Input," *Journal of Public Economic Theory* (2004) vol. 6, pp. 541-555 (with David S. Sibley, Michael J. Doane, and Shu-Yi Tsai).

"What is a Barrier to Entry?," *American Economic Review* (2004) vol. 94, pp. 461-465 (with R. Preston McAfee and Hugo Mialon).

*Deregulation of Entry in Long-Distance Telecommunications* (2002), Institute of Public Utilities, Michigan State University (with Paul W. MacAvoy).

"The Costs and Benefits of Long-Distance Entry: Regulation and Non-Price Discrimination," *Review of Industrial Organization* (2001) vol. 18, pp., 275-282 (with Dennis L. Weisman).

"Measuring Anticompetitive Effects of Mergers When Buyer Power is Concentrated," *Texas Law Review*, (2001) vol. 79, no. 6, pp. 1621-1639 (with Ken Hendricks, Joshua M. Fried, R. Preston McAfee, and Melanie Stallings Williams).

"Collusive Bidding in the Market for Corporate Control," *Nebraska Law Review*, (2000) vol. 79, no. 1, pp. 48-74 (with Joshua M. Fried, R. Preston McAfee, and Melanie Stallings Williams).

"Having Your Cake—How to Preserve Universal-Service Cross Subsidies While Facilitating Competitive Entry," *Yale Journal on Regulation*, (1999) vol. 16, no. 2, pp. 311-326 (with Michael J. Doane and David S. Sibley).

"Four Decades of Regulatory Reform of the Gas Industry," *Oil & Gas Tax Quarterly*, (1996) vol. 45, no. 31-58 (with Paul W. MacAvoy and Michael J. Doane).

"Software Mergers: An Economic Perspective," *American Bar Association, Computer Industry Committee*, (1995) vol. 2, no. 3, pp. 7-9.

"Competitive Entry into Regulated Monopoly Services and the Problem of Stranded Costs," *Hume Papers on Public Policy*, (1995) (with Michael J. Doane).

"Collusive Bidding in Hostile Takeovers," *Journal of Economics and Management Strategy*, (1993) vol. 2, no. 4, pp. 449-482, (with R. Preston McAfee, Daniel Vincent, and Melanie Williams Havens).

"The Renaissance of Market Definition," *The Antitrust Bulletin*, (1993) vol. 38, no. 4, pp. 799-857, (with Joseph J. Simons).

"Horizontal Mergers in Spatially Differentiated Noncooperative Markets," *Journal of Industrial Economics*, (1992) vol. 40, no. 4, pp. 349-358, (with R. Preston McAfee and Joseph J. Simons).

"Recent Developments in Economic Theory Regarding the Competitive Effects of Horizontal Mergers," *International Merger Law* (1992) (with R. Preston McAfee).

"Horizontal Mergers and Antitrust Policy," *Journal of Industrial Economics*, (1992) vol. 40, no. 2, pp. 181-188 (with R. Preston McAfee).

"New U.S. Merger Enforcement Guidelines: Competitive Effects," *International Merger Law*, (1992) no. 21, pp. 6-9 (with R. Preston McAfee and Joseph J. Simons).

"On What Economic Grounds Should Horizontal Mergers Be Challenged?," *International Merger Law*, (1991) no. 7, pp. 16-18 (with R. Preston McAfee).

"Why Did So Many Savings and Loans Go Bankrupt?," *Economics Letters*, (1991) vol. 36, no. 1, pp. 61-66 (with Harindra de Silva, Michael F. Koehn, and Stanley I. Ornstein).

"Consumer Welfare Loss: The Unawarded Damages in Antitrust Suits," *University of Dayton Law Review*, (1990) vol. 15, no. 3, pp. 457-470 (with Melanie Williams Havens and Michael F. Koehn).

"Concentration, Potential Entry, and Performance in the Airline Industry," *Journal of Industrial Economics*, (1989) vol. 37, no. 2, pp. 119-139 (with Gloria J. Hurdle, Richard L. Johnson, Andrew S. Joskow, and Gregory J. Werden).

"The Department of Justice Merger Guidelines: A Critique and a Proposed Improvement," *Pepperdine Law Review*, (1989) vol. 16, no. 4, pp. 1069-1081 (with R. Preston McAfee).

"Can the Concentration-Collusion Hypothesis Be Refuted Empirically?," *Economics Letters*, (1989) vol. 30, no. 3, pp. 253-257 (with Gregory J. Werden).

"The Role of Stock Market Studies in Formulating Antitrust Policy Toward Horizontal Mergers," *Quarterly Journal of Business and Economics*, (1989) vol. 28, no. 4, pp. 3-21 (with Gregory J. Werden).

"The Role of Stock Market Studies in Formulating Antitrust Policy Toward Horizontal Mergers: Reply," *Quarterly Journal of Business and Economics*, (1989) vol. 28, no. 4, pp. 39-42 (with Gregory J. Werden).

"Can Event Studies Detect Anticompetitive Mergers?," *Economics Letters*, (1988) vol. 28, no. 2, pp. 199-203 (with R. Preston McAfee).

"An Empirical Test of Cooperative Game Solution Concepts," *Behavioral Science*, (1988) vol. 33, no. 3, pp. 224-237.

"Output-Inflation Tradeoffs in 34 Countries: Comment," *Journal of Economics and Business*, (1988) vol. 40, no. 1, pp. 97-101 (with Michael G. Baumann).

"Explaining and Predicting Airline Yields With Nonparametric Regression Trees," *Economics Letters*, (1987) vol. 24, no. 1, pp. 99-105 (with Andrew S. Joskow, Richard L. Johnson, and Gloria J. Hurdle).

"Rankings of Economics Departments By Field," *American Economist*, (1987) vol. 31, no. 1, pp. 56-61 (with Michael G. Baumann and Gregory J. Werden).

"International Evidence on Output-Inflation Tradeoffs: A Bootstrap Analysis," *Economics Letters*, (1986) vol. 21, no. 2, pp. 149-153 (with Michael G. Baumann).

"An Economic Application of Bootstrap Statistical Methods: Addyston Pipe Revisited," *American Economist* (1986) vol. 30, no. 2, pp. 52-58.

"Bootstrap Statistical Analysis of Time-Series Regressions," *SAS Communications*, (1986) vol. 11, no. 3 (with Michael G. Baumann).

"On the Demise of the Telephone Network and Why It Happened," *Public Utilities Fortnightly*, (1986) vol. 118, no. 5, p. 6.

## U.S. DEPARTMENT OF JUSTICE REPORTS (CONTRIBUTOR)

Reply Comments of the U.S. Department of Justice Before the Federal Communications Commission, "Policy and Rules Concerning Rates for Dominant Carriers," Docket No. 87-313, December 11, 1987.

Comments of the U.S. Department of Justice Before the Federal Communications Commission, "The Bell Atlantic Telephone Companies' Offer of Comparably Efficient Interconnection to Enhanced Service Providers," Docket No. 85-229, June 15, 1987.

Comments of the U.S. Department of Justice Before the Federal Communications Commission, "Decreased Regulation of Certain Basic Telecommunications Services," Docket No. 86-421, March 6, 1987.

Comments of the U.S. Department of Justice Before the Securities and Exchange Commission, "Self-Regulatory Organizations: Proposed Rule Change by New York Stock Exchange, Inc. Relating to Amendments to the Exchange's Voting Rights Listing Standards for Domestic Companies," File No. SR-NYSE-86-17, December 5, 1986.

Comments of the U.S. Department of Justice Before the Securities and Exchange Commission, "Concept Release on Takeovers and Contests for Corporate Control," File No. 57-18-86, October 17, 1986.

Comments of the U.S. Department of Justice Before the Federal Communications Commission, "Amendment of Section 64.702 of the Commission's Rules and Regulations (Third Computer Inquiry)," Docket No. 85-229 Phase II, August 8, 1986.

Comments of the U.S. Department of Justice Before the Federal Communications Commission, "Separation of Costs of Nonregulated Activities," Docket No. 86-111, July 30, 1986.

Comments of the U.S. Department of Justice Before the United States Postal Service, "Restrictions on Private Carriage of Letters; Proposed Suspension of the Private Express Statutes; International Remailing," July 17, 1986.

Comments of the U.S. Department of Justice Before the Federal Communications Commission, "Separation of Costs of Regulated Telephone Service From Costs of Nonregulated Activities," Docket No. 86-111, June 30, 1986.

Comments of the U.S. Department of Justice Before the United States Postal Service, "International Priority Airmail Service," June 9, 1986.

Comments of the U.S. Department of Justice Before the United States Postal Service, "Restrictions on Private Carriage of Letters; Proposed Clarification and Modification of Definition and of Regulations on Extremely Urgent Letters," December 12, 1985.

Notice of Intervention of the U.S. Department of Justice as a Limited Participator and Opposition to USPS Motion for Waiver, "Destination–BMC Parcel Post Classification and Rate Changes (Experiment)," November 22, 1985.

Comments of the U.S. Department of Justice Before the Federal Communications Commission, "Investigation of Access and Divestiture Related Tariffs," Docket No. 83-1145, April 8, 1985.


**U.S. DEPARTMENT OF JUSTICE CASES**

MERGER INVESTIGATIONS

General Electric Company's acquisition of RCA.

Westwood One, Inc.'s acquisition of NBC Radio.

Turner Broadcasting System, Inc.'s attempted acquisition of CBS.

Norfolk Southern, Inc.'s acquisition of North American Van Lines.

Cooper Industries, Inc.'s acquisition of Westinghouse Electric, Corp.'s Lighting Fixture Business.

Southwestern Public Service Company's acquisition of New Mexico Electric Service Company.

ITT-Continental Baking Company's acquisition of Bost Bakery, Inc.

Williams Companies' acquisition of Northwest Energy, Corp.

Archer-Daniel-Midland's acquisition of Gold Kist's Valdosta, Georgia soybean processing plant. PRICE FIXING

United States of America v. Weeks Marine, Inc.


CONSENT DECREES

United States of America v. Wallpaper Institute

United States of America v. Greyhound, Corp.

United States of America v. Balley Manufacturing, Corp.